**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MINNESOTA**

| | |
|---|---|
| CAROLYN WRIGHT and DEBBRA KENNEDY, ) <br> INDIVIDUALLY AND ON BEHALF OF ALL OTHERS ) <br> SIMILARLY SITUATED, ) <br>  ) <br>      *Plaintiffs*, ) <br>  ) <br> v. ) <br>  ) <br> CAPELLA EDUCATION COMPANY, and ) <br> CAPELLA UNIVERSITY, INC., ) <br>  ) <br>      *Defendant*. ) <br>  ) | Case No.: _____ <br><br> Judge: _____ <br><br><br> ***JURY TRIAL DEMANDED*** |

**CLASS ACTION COMPLAINT**

Plaintiffs Carolyn Wright and Debbra Kennedy ("Plaintiffs"), by and through their undersigned counsel, bring this Class Action Complaint ("Complaint") on behalf of themselves and all others similarly situated against Defendants Capella Education Company and Capella University, Inc. (collectively "Capella").

**NATURE OF THE ACTION**

1.     This action seeks redress for Plaintiffs and potentially thousands of similarly situated doctoral students who were harmed by Capella's deceptive doctoral degree process– a process intended to ensure that it would be difficult, if not impossible, for students to timely complete, or complete at all, their doctoral programs.

2.     Capella essentially operated a "bait and switch" program. The bait was displayed when Capella's marketing materials and recruiters misled prospective and current students making misleading statements about the time to completion and cost of their mostly student-loan financed doctoral degrees: Plaintiff Wright was told her Doctor of Nursing Practice degree would

1

take two years and cost approximately $35,000, and Plaintiff Kennedy was told that PhDs in Education or Doctoral Degrees in Education would cost approximately $45,000-$55,000 and take three to three-and-a-half years to complete.

3.    Capella's marketing materials, recruiters, and student handbooks (upon information and belief all prepared and/or located in Minnesota) also reassured prospective students that after their doctoral course work, colloquium, and/or field hours were completed, they would be awarded a doctoral degree.

4.    Capella doctoral students signed up for the program and completed their classes, colloquium, and/or field hours. Once the doctoral students were committed, having invested significant amounts of time and money in the program completing their coursework, problems began.

5.    Instead of completing the promised doctoral degree program requirements and being awarded a doctoral degree in the advertised time, Capella employed the "switch."  Capella created an endless routine of hurdles and benefitted from additional tuition payments.

6.    Students who believed they were getting ever closer to obtaining their doctoral degree were in fact stuck with decreasing resources, faculty turnover, disorganization and a lack of oversight, all of which increased the length of the doctoral students' enrollments at Capella.

7.    Frustrated, Plaintiffs, and upon information and belief thousands of other doctoral students, realized that contrary to Capella's promises, they did not have control over the time it would take to complete their doctoral degree program; they were at the mercy of Capella advisors who can and did ensure that doctoral students would be misled, confused, and ultimately cheated out of their money to the benefit of Capella.

8.      While students reasonably believed they were taking the necessary steps to obtain their doctoral degrees, weeks stretched into months, then into semesters, and then into years of continuing tuition payments and student loans.

9.      Capella's promises of approximately $35,000 and two years, and $50,000 and 3 years to complete a doctoral degree were replaced by skyrocketing student-loan debt, while the degree programs dragged on far past Capella's promised timelines.

10.     Finally, most students' debt would grow so large, they would have no choice but to un-enroll so they could dedicate themselves to working to pay back their crushing student loans … without degrees to show for their work.

11.     In reality, Capella later admitted that its doctoral programs were designed to take much longer than prospective students were promised.

12.     These facts, inconsistent as they may seem, were withheld from Plaintiffs prior to their enrollment at Capella, or while they attended for that matter.

13.     With these false promises and misleading statements, Capella ensnared thousands of doctoral students, including Plaintiffs.

14.     Universities exist to educate and grant degrees. However, Capella – a for-profit corporation -- created a smoke-and-mirrors doctoral degree process to receive ever-increasing amounts of money in the form of tuition payments and fees.

15.     The longer a student was kept in pursuit of their degree, the more tuition payments and fees that student would pay, and, importantly, the more money Capella would make.

16.     Further, having already paid tens of thousands of dollars to get "half way" through the program or potentially further (*i.e.,* completing the classroom work and colloquium), most

students would understandably be compelled to continue pursuing their degree despite Capella's hurdles, feeling they have what it takes if they just keep working.

17.     It was nearly a perfect plan. Given that the Capella doctoral program was mostly online, students were isolated from the vast majority of their peers, unable to see whether others faced the same challenges. Instead, the students would assume it was just them, and continue a fight they could not win.

18.     Capella intended to (and did) generate substantial additional profits by way of additional tuition and fees. The practice resulted in the members of the Class and Subclasses (defined below) paying substantially more for Capella's doctoral degree programs than promised by Capella (or reasonably anticipated by the students).

19.     Capella's acts caused substantial damage to Plaintiffs and Class and Subclass members. If Capella had not misrepresented the time – and therefore, the true cost – of its doctoral degree programs, Plaintiffs, and upon information and belief, Class and Subclass members would not have attended Capella, made tuition and fee payments, or borrowed any amount including but not limited to student loans for tuition and fees, room and board charges, costs of books and supplies and other expenses.

20.     Further, had Capella not misrepresented the timelines, real-world costs, and realities of its doctoral degree process, Plaintiffs and Class and Subclass members would not have registered for the program or paid for the educational services offered by Capella.

21.     Instead, Plaintiffs and those similarly situated relied upon Capella's misrepresentations and omissions when enrolling at Capella and when they continue term to term, and are now saddled with crippling debt, bad credit, inability to obtain additional student loans, useless course credits that will not transfer to other institutions, and most times, no doctoral degree.

## THE PARTIES

22.    Plaintiff Carolyn Wright is, and has been at all relevant times, a resident and citizen of the State of Kansas. She enrolled in Capella's doctoral program in 2013.

23.    Plaintiff Debbra Kennedy is, and has been at all relevant times, a resident and citizen of the State of Tennessee. She enrolled in Capella's doctoral program in 2014.

24.    Capella Education Company is a corporation organized under the laws of the State of Minnesota. Capella Education Company is publicly traded on the Nasdaq under ticker symbol CPLA. Further, Capella Education Company maintains its principal place of business at Capella Tower, 225 South Sixth Street, 9th Floor, Minneapolis, Minnesota 55402.

25.    Capella University, Inc. is a corporation organized and operating under the laws of the State of Minnesota.

26.    According to public disclosures made by Capella Education Company, Defendant Capella University is a wholly owned subsidiary or Capella Education Company.

27.    Capella University, Inc. shares its Minnesota address with its parent, Capella Education Company. A principal-agent relationship exists between Capella Education Company and Capella University, Inc.

28.    Upon information and belief, Capella University, Inc. also operated and operates a call center for enrollment from Minnesota as well.

29.    Capella Education Company is liable for the wrongful acts of its subsidiary-agent.

30.    Alternatively or additionally, the acts of the Defendants Capella Education Company and Capella University, Inc. were conducted in concert pursuant to an express or implied agreement amongst themselves to act in this collective manner. Defendants Capella Education

Company and Capella University, Inc. (collectively referred to herein as "Capella") are therefore jointly and severally liable for the acts complained of herein.

## JURISDICTION AND VENUE

31.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2) because the matter in controversy, upon information and belief, exceeds $5,000,000, exclusive of interest and costs, and this is a class action in which certain members of the Class and Defendant are citizens of different states.

32.    This Court has personal jurisdiction over Defendants because they are headquartered and conduct significant business in Minnesota.

33.    Venue is proper in this district, pursuant to 28 U.S.C. § 1391, because Defendants reside in, transact business in, are found within, and have agents in this District and a substantial part of the events giving rise to Plaintiff's claims arose in this District.

34.    Due to Capella's location in Minneapolis, the state of Minnesota is unique compared to other states where its students reside. Under SARA,[1] an agreement the state of Minnesota has nearly every U.S. state, the District of Columbia, and the U.S. Virgin Islands, out-of-state complaints that arise due to educational institutions that conduct programs via the internet are principally handled in the state where the educational institution resides.[2] Because of this, Minnesota, as the site of the home state portal agency under SARA, has authority to resolve

---

[1] "The members of SARA are states, not institutions or students. Therefore, a state "joins" or becomes a "member" of SARA while a college or university "operates under" or "participates in" SARA." See, Basic Questions About SARA, available from: http://nc-sara.org/content/basic-questions-about-sara#who).

[2] SARA "[s]hifts principal oversight responsibilities from the state in which the distance education is being received to the 'home state' of the institution offering the instruction." Key Attributes of Sara, available from: http://nc-sara.org/about/key-attributes-sara.

complaints from other SARA member states. For Capella, this means complaints from its students will principally be heard by the Minnesota Office of Higher Education.

## CAPELLA, ITS GROWTH AND FUNDING

35.     Capella was founded in 1991 as a Minnesota corporation.

36.     In 1993, Capella established a wholly-owned university subsidiary, then named The Graduate School of America, to offer doctoral and master's degrees through distance learning programs in management, education, human services and interdisciplinary studies.

37.     In 1995, Capella launched online doctoral and master's degree programs over the Internet.

38.     In 1997, Capella's university subsidiary received accreditation from the North Central Association of Colleges and Schools (later renamed The Higher Learning Commission).

39.     In 1998, Capella expanded its original portfolio of academic programs by introducing doctoral and master's degrees in psychology and a master of business administration degree.

40.     In 1999, to expand the reach of Capella's brand in anticipation of moving into the bachelor's degree market, Capella changed its name to Capella Education Company and the name of its university to Capella University.

41.     This helped Capella University, a for-profit corporation, seem like a legitimate educational institution.

42.     In 2004, Capella began offering four-year bachelor's degree programs in business and information technology.

43.    In November 2006, Capella completed an initial public offering, becoming not only a for-profit company, but additionally a publicly traded company with stockholders to appease.

44.    Capella has continued to create new programs and specializations, including the launch of doctoral, master's and bachelor's level programs.

45.    Currently, Capella offers approximately 1,840 online courses, 48 academic programs, and 163 specializations.

46.    Capella offers a number of online, doctorate level degrees: Doctor of Philosophy in Human Services, Doctor of Philosophy in Public Safety, Doctor of Public Administration (DPA), Doctor of Social Work (DSW), Doctor of Health Administration (DHA), Doctor of Public Health (DrPH), Doctor of Nursing Practice (DNP), Doctor of Philosophy in Advanced Studies in Human Behavior, Doctor of Philosophy in Counselor Education and Supervision, Doctor of Philosophy in Psychology, Doctor of Psychology (PsyD), Doctor of Psychology (PsyD) in School Psychology, Doctor of Business Administration (DBA), Doctor of Philosophy in Information Technology, Doctor of Philosophy in Business Management, Doctor of Education (EdD), Doctor of Philosophy in Education (PhD),

47.    Given the number of degrees offered and the large sums spent on marketing, enrollment at Capella has increased significantly over the last 15 years. In 2001, Capella had an enrollment of 3,759 students. On the last day of the quarter ended December 31, 2015, Cappella had 36,976 students.

48.     Of the approximately 36,000 students attending Capella on the last day of the quarter ended December 31, 2015, doctoral students made up 26.1%, or a total of 9,645 doctoral students.[3]

49.     Not surprisingly, the increased enrollment has led to a similar trajectory for Capella's profits. In 2007, Capella had profit of approximately $30,000,000. In 2010, Capella's profit had more than tripled to approximately $95,000,000.

50.     The vast majority of Capella's revenue is derived from federally funded student loans. In 2010, 80.8% ($338,000,000) of Capella's revenue was derived from federal education funds.

51.     As a for-profit college, Capella devotes substantial portions of revenue to both marketing and profit. As of 2009, Capella spent approximately 29.8% of its revenue ($100,000,000) on marketing and recruitment of new students. Likewise, in 2009, Capella allocated approximately 19.1% of its revenue ($64,000,000) to profit. The amount that Capella spends on marketing and recruitment, as well as amounts allocated to profit, is higher than average for other for-profit colleges.

52.     In just four years between 2006 and 2010, the profit generated by Capella increased by approximately $65,000,000 – from $30,000,000 to $95,000,000.

53.     In 2009, Capella spent only $1,650 per student on instruction compared to $4,538 per student on marketing. Even more striking, Capella realized $2,912 in profits per student. By way of comparison, the University of Minnesota spent $13,247 per student on instruction during the same time period.

---

[3] *See*, https://www.sec.gov/Archives/edgar/data/1104349/000110434916000042/form10-k2015.htm.

54. Capella students carry some of the highest student loan debts in the country. A 2015 Brookings Institution study found that by 2014, students had accumulated over $8 billion in debt while at Capella. This was the fifth largest amount of debt out of the more than 3,000 schools in the report.

55. Capella doctoral students (like all students) are required to pay back their student loan debt regardless as to whether they receive the degree they sought or not… and many do not.

56. The problem, however, as described in United States Senate Report on For-Profit Universities is:

> [w]hile aggressive recruiting and high cost programs might be less problematic if students were receiving promised educational outcomes, committee staff analysis showed that tremendous numbers of students are leaving for-profit colleges without a degree.

Exhibit A, at 324.

57. According to the Senate's 2012 investigation of For Profit Colleges, in the 2008-2009 timeframe, 5,018 doctoral students enrolled at Capella.[4]

| Degree Level | Enrollment | Percent Completed | Percent Still Enrolled | Percent Withdrawn | Number Withdrawn |
|---|---|---|---|---|---|
| Bachelor's Degree | 5,602 | 1.4% | 38.3% | 60.3% | 3,378 |
| Masters | 11,867 | 3.5% | 52.1% | 44.3% | 5,262 |
| Doctorate | 5,018 | 0% | 58.0% | 42.0% | 2,107 |
| All Students | 22,487 | 2.2% | 50% | 47.8% | 10,747 |

*Id.* Senate Report on For-Profit Universities, Capella at 325.

---

[4] Although unclear from the 2012 Senate Report, in the best light for Capella, it appears this information corresponds to students who newly enrolled in 2008 and 2009, given the 0% completion rate for doctoral students. If, however, this information corresponds to all doctoral students at Capella, then it had a 0% graduation rate for doctoral students.

58.    Furthermore, within two years, 42% of Capella's 2008-2009 enrollees had withdrawn without receiving a doctoral degree, despite committing countless hours and paying large sums of money (most likely via student loans) for tuition.

### CAPELLAS' NEVER-ENDING DOCTORAL PROGRAMS

59.    Through recruiting and marketing, Capella promises that obtaining a Doctor of Nursing Practice ("DNP") from Capella is not only feasible, it is relatively inexpensive and relatively quick. In fact, Capella uniformly told prospective and current students that the DNP program would take two years.

60.    For example, in at least its 2015 and 2016 webpages for the DNP program actively marketed to entice prospective students to enroll, Capella stated the DNP was a two-year degree:

## The Most Direct Path to Your Doctoral Degree

Reach your goals faster. Capella provides three pathways to your DNP degree:

DNP Program: In just two years you can earn your DNP and prepare to manage complex health care challenges in a program that focuses on practical nursing rather than research and theory.

See, Exhibit B, Archived Capella DNP Webpage.[5]

61.    Further, as described below, recruiters from Capella's call center would tell prospective students that the DNP program was a two-year program.

_____

[5] This DNP webpage for Capella marketed its program as a two-year program for at least 2015 and 2016. Such materials, however, were obtained from archive.org which is not a complete archive of all webpages or timeframes, so the full timespan that Capella made these misrepresentations (on this webpage of others) will need to be determined in discovery.

62.     Even after students enrolled, Capella would send materials re-enforcing its two-year promise. For example, Capella's "Doctor of Nursing Practice (DNP) Degree Program" document reiterates the DNP program is a two-year program, with "Year 1" and "Year 2" mapped out for students.

## Course Sequence

This course sequence assumes learners pursue a full-time course of study. Some learners may elect to take fewer courses per quarter based on workload and the amount of time available for graduate study.

| YEAR 1 | COURSES | | RESIDENCIES |
|---|---|---|---|
| Q1 | DNP8000 | Theoretical Foundations and Applications | |
| | DNP8001 | DNP Field Experience 1* | |
| Q2 | DNP8002 | Contemporary Issues in Advanced Nursing Practice | |
| | DNP8003 | DNP Field Experience 2* | |
| Q3 | DNP8004 | Investigation, Discovery, and Integration | |
| | DNP8005 | DNP Field Experience 3* | |
| Q4 | DNP8006 | Policy and Advocacy in Advanced Nursing Practice | |
| | DNP8007 | DNP Field Experience 4* | |
| | DNP8008 | Executive Leadership and Ethics in Health Care | |
| | DNP8009 | DNP Field Experience 5* | |

| YEAR 2 | COURSES | | RESIDENCIES |
|---|---|---|---|
| Q5 | DNP8010 | Management in Advanced Contemporary Nursing | |
| | DNP8011 | DNP Field Experience 6* | |
| | DNP8012 | Nursing Technology and Health Care Information Systems | |
| | DNP8013 | DNP Field Experience 7* | |
| Q6 | DNP8014 | Global Population Health | |
| | DNP8015 | DNP Field Experience 8* | |
| Q7 | DNP8016 | DNP Capstone 1 | |
| | DNP8017 | DNP Field Experience 9* | |
| Q8 | DNP8018 | DNP Capstone 2 | DNP-R8016  DNP Residential Colloquium† |
| | DNP8019 | DNP Field Experience 10* | |

Ex. C at 10.[6]

_____

[6] The final page of this document confirms it was created and sent from Capella's headquarters in Minnesota.

63.    Capella's repeated claims that the DNP program could be completed in "just two years," are false.

64.    In December 2014, Capella admitted the DNP program was actually "designed to take 30 months," (Ex. D) although only 13% of the students that completed the program did so in 30 months.



With only 13% of students *that graduated* completed the program in 30 months, the other 87% of students *that graduated* take even longer. And with Capella's focus on *graduating* students, Capella is silent on the number of enrolled students who did not complete the program, meaning even the 13% number is higher than it should be.

65.    Despite the actual "design" of its DNP program, Capella misrepresented that its students could complete the program in "just two years" which according to its own facts would be the exception to the rule.

66.     Further, with a program lasting well over 30 months (again, for *graduates* only), the estimated tuition of $39,945 was also understated. Upon information and belief, the calculated tuition would only reflect the 13% of students who graduated in 30 months … not the 87% of students that took longer or the students who were forced to unenroll with no degree.

67.     Remarkably, two years later, Capella updated this page to report a suspicious increase to an 84% graduation rate, though within a longer 39-month timespan.



Ex. E.

While this jump in graduation rate is suspect, it still confirms that Capella's DNP program is not a two-year program.

68.     Plaintiff Kennedy was interested in pursuing either a PhD or EdD in Education. She was initially interested, and enrolled in, the PhD program.  Capella's course materials and descriptions led Plaintiff Kennedy, and other prospective students, to believe they could complete a PhD in three years.

14

## Recommended Course Sequence

This recommended course sequence assumes learners transfer in 48 quarter credits of previous graduate course work and they take two courses per quarter. Some learners elect to take fewer or more based on workload and the amount of time available for graduate study. On-time completion for this specialization is 18 active quarters.

| YEAR 1 | COURSES | | RESIDENCIES |
|--------|---------|---|-------------|
| Q1 | ED8002 | Foundations of Theory and Practice in Doctoral Studies | |
| Q2 | ED7311 | Theory and Methods of Educating Adults | ED-R8921 PhD Colloquium Track 1 |
| | ED7314 | International and Multicultural Perspectives in Postsecondary and Adult Education | |
| Q3 | ED8112 | Educational Research Methods | |
| | ED7312 | Teaching Adults | |
| Q4 | ED7712 | Classroom Assessment in Education | ED-R8922 PhD Colloquium Track 2 |
| | ED8117 | Advanced Qualitative Research Methods | |

| YEAR 2 | COURSES | | RESIDENCIES |
|--------|---------|---|-------------|
| Q5 | ED7310 | Evaluating the Effectiveness of the Educational Process | |
| | ED7590 | Critical Thinking in Adult Education | |
| Q6 | ED8444 | Higher Education Curriculum Development and Teaching Strategies | |
| | ED7716 | Faculty Leadership | |
| Q7 | ED8122 | Statistics for Educational Research I | ED-R8923 PhD Colloquium Track 3 |
| Q8 | ED9919 | Doctoral Comprehensive Examination | |

| YEAR 3 | COURSES | | RESIDENCIES |
|--------|---------|---|-------------|
| Q9 | ED9919 | Doctoral Comprehensive Examination | |
| Q10 | ED9921 | Dissertation Research 1 | |
| | ED9920 | Dissertation Courseroom | |
| Q11 | ED9922 | Dissertation Research 2 | |
| | ED9923 | Dissertation Research 3 | |
| | ED9920 | Dissertation Courseroom | |
| Q12 | ED9924 | Dissertation Research 4 | |
| | ED9920 | Dissertation Courseroom | |

Ex. F, at 8.

69.     However, Capella disclosed in June 2017 that the program was actually designed to take 84 months.

15

**Capella University**

**Doctoral degree in PhD Education Instructional Design for Online Learning**

**Program Length: 84 months**

Print

**Students graduating on time**

**N/A\*** of Title IV students complete the program within 84 months ⓘ

\*Fewer than 10 students enrolled in this program. This number has been withheld to preserve the confidentiality of the students.

**Program Costs\***

**$107,455** for tuition and fees

**$4,900** for books and supplies

**$34,350** for off-campus room and board

Other Costs

Visit website for more program cost information

\*The amounts shown above include costs for the entire program, assuming normal time to completion.

Note that this information is subject to change.

**Students Borrowing Money**

**84%** of students who attend this program borrow money to pay for it ⓘ

**The typical graduate leaves with**

**N/A\*** in debt ⓘ

\*Fewer than 10 students completed this program within normal time. This number has been withheld to preserve the confidentiality of the students.

**The typical monthly loan payment**

**N/A\*** per month in student loans with **N/A\*** interest rate. ⓘ

\*Fewer than 10 students completed this program within normal time. This number has been withheld to preserve the confidentiality of the students.

**The typical graduate earns**

**$86,333** per year after leaving this program ⓘ

See, https://www.capellaresults.com/content/dam/vc/capella-results/gainful-employment/education/doctoral/PhD_Ed_IDOL_gedt.html, visited Jan. 11, 2018.

70.     Plaintiff Kennedy ultimately decided to enroll in the university's Doctor of Education capstone program (EdD), specializing in Adult Education.  The capstone program was also advertised as being able to complete in three years.

**EdD program**

Capella University's online EdD degree provides a structured doctoral program focused on practical knowledge and applied research that contributes to the solution of a recognized problem in the field. The curriculum was designed around the standards of a number of respected P–12 organizations and is aligned with the Competencies for Community College Leaders developed by the American Association of Community Colleges. The program is designed to be completed in less than 3 years, with all courses taken in sequence, allowing you to learn and build professional relationships with the same cohort of students. People likely to be interested in this degree program include higher education and P–12 administrators; higher education faculty and P–12 teachers transitioning to administrative or leadership positions; and government, corporate, and nonprofit leaders whose organization or position is focused on education. This degree program does not satisfy licensure requirements for P–12 public school teachers or administrators.

Ex. G.

71.    However, as with the PhD program, the EdD program was also designed to take much longer than advertised.  Plaintiff Kennedy was led to believe she could complete the program and graduate within three years (36 months).  However, Capella recently disclosed that the program was actually designed to take 45 months.  More egregiously, Capella admitted that fewer than 10 students enrolled in the program were able to complete it even in this expanded time frame.  However, as with the PhD program, the EdD program was also designed to take much longer than advertised.  Plaintiff Kennedy was led to believe she could complete the program and graduate within three years (36 months).  However, Capella recently disclosed that the program was actually designed to take 45 months.  As of January, 2018, Capella's website stated:

## Capella University
### Doctoral degree in Doctor of Education Adult Education
### Program Length: 45 months

Print

**Students graduating on time**
**N/A\*** of Title IV students complete the program within 45 months ⓘ
\*Fewer than 10 students enrolled in this program. This number has been withheld to preserve the confidentiality of the students.

**Program Costs\***
**$42,140** for tuition and fees
**$2,940** for books and supplies
**$20,610** for off-campus room and board
Other Costs
Visit website for more program cost information
\*The amounts shown above include costs for the entire program, assuming normal time to completion.
Note that this information is subject to change.

**Students Borrowing Money**
**78%** of students who attend this program borrow money to pay for it ⓘ
**The typical graduate leaves with**
**N/A\*** in debt ⓘ
\*Fewer than 10 students completed this program within normal time. This number has been withheld to preserve the confidentiality of the students.
**The typical monthly loan payment**
**N/A\*** per month in student loans with **N/A\*** interest rate. ⓘ
\*Fewer than 10 students completed this program within normal time. This number has been withheld to preserve the confidentiality of the students.
**The typical graduate earns**
**$75,800** per year after leaving this program ⓘ

**Graduates who got jobs**
**N/A\*** of program graduates got jobs
\*We are not currently required to calculate a job placement rate for program completers.
**Program graduates are employed in the following fields:**
Adult Basic and Secondary Education and Literacy Teachers and Instructors
Self-Enrichment Education Teachers

**Licensure Requirements** ⓘ
\*Program has no licensure requirements in any state.

Additional Information
Date Created 6/26/2017
These disclosures are required by the U.S. Department of Education

See https://www.capellaresults.com/content/dam/vc/capella-results/gainful-employment/education/doctoral/EdD_Adult_Ed_gedt.html, visited Jan. 11, 2018.

## PLAINTIFF WRIGHT'S EXPERIENCE AT CAPELLA

72.    When Plaintiff Wright began looking at obtaining her DNP, it was imperative that she complete her degree within 2 years. Plaintiff Wright called many different schools that offered DNP programs, and found Capella's was the quickest to completion at 2 years (the other schools were three years).

73.    On or about Dec. 2013, Plaintiff Wright spoke via telephone with Ben Groff, an enrollment counselor at Capella. Upon information and belief, Mr. Groff was located in a Capella call center in Minnesota. Mr. Groff confirmed the DNP was a two-year program. After speaking, Mr. Groff and/or Capella emailed Plaintiff Wright materials which included a two-year timeline for program completion. Upon information and belief, these materials were created in Minnesota.

74.    Plaintiff Wright chose to enroll in Capella's DNP program because of Capella's two-year promise to completion. Plaintiff Wright's father was a sixth-grade graduate, who could not read or write, and had been diagnosed with bone cancer. It was important for Plaintiff Wright when she enrolled to be able to complete her degree within the promised timeframe so her father could see her graduate.

75.    Plaintiff Wright enrolled in the DNP program at Capella and began her classes in the Spring Quarter of 2014.

76.    When enrolling, she relied upon Capella's promises that the DNP program was a two-year program. In fact, this was the reason she chose Capella over other schools that offered DNP programs.

77.    While attending, she took five course classes (receiving an A in each) and five DNP Practice Immersion classes earning a grade of S for satisfactory in each (the highest grade allowed).

78.    For all of the quarters she attended, Plaintiff Wright paid about $53,000.

79.    Well into her DNP project, Capella changed Plaintiff Wright's instructor, and although her DNP project had been approved for over a year, her new instructor informed her she would "have to start over." This was devastating to Plaintiff Wright as 1) her DNP project was previously approved by her prior instructor (Dr. Bressie) who previously called it a "great project," 2) her DNP project was already researched and 3) her preceptor hours were completed.

80.    After receiving this news, Plaintiff Wright emailed a letter to Capella explaining her situation.

> After many hours of research, meetings, calls, papers, notes and even interviews I am being told the college will not allow me to continue with this topic. Not only have I been told this today, but every term has been changed somehow leaving me with the lack of understanding of what is due, what needs to be done, changes in forms I must now use and even the fact that I might be dropped from the program if I obtain an unsatisfactory in 2 of the classes. Know when I enrolled I had enrolled under other expectations and now they are changing leading me to possible program failure. Why was I not grandfathered in? I have worked extremely hard given the circumstances and now I am faced with starting from square 1 when I should be heading towards the end of the program. Thousands of dollars have been spent on this program and now I am looking at thousands more only if I can start over and find a project to do which may be acceptable, make the extremely hard timeline set up for me, obtain a new preceptor, do extensive research, compile evidence, complete the smart form by the end of the term and be able to go forward next semester.

81.    After Plaintiff Wright expressed concern about this change, Capella falsely alleged that Plaintiff Wright forged her preceptor's signature. Despite Plaintiff Wright providing proof that Capella's accusations were false (including a letter a letter from her preceptor-physician and an actual script from the physician showing her signature), Capella ignored such evidence. Upon information and belief, Capella created these false accusations to retaliate against Plaintiff Wright.

82.     Rather than restart her DNP project and continue at a now-hostile school, Plaintiff Wright unenrolled and transferred to another school. At the time she unenrolled, she was a straight-A student.

83.     Despite being promised it would take two years to complete her degree, at the time she unenrolled from Capella, she was not near completion. Plaintiff Wright estimates it would have taken her at least another _year_ to complete her program.

84.     Unfortunately, Plaintiff Wright's father passed away on February 11, 2018, without seeing his daughter graduate with her doctoral degree. Had Capella complied with its two-year promise (or actually offered a two-year program), Plaintiff Wright would have graduated within the promised time frame, and her father would have seen his daughter obtain a doctoral degree. Capella's falsely representing a significantly-longer, DNP program as a two-year program deprived Plaintiff Wright from this opportunity.

85.     Had Plaintiff Wright been made aware of Capella's abysmally low completion rate, she would not have enrolled in the doctoral program or paid the tuition, supply costs, and other fees charged by Capella, or incurred student loans. Further, had Capella not misrepresented the timeline, costs, hurdles to obtaining a doctoral degree, or had it actually disclosed its true scheme, Plaintiff Wright would not have agreed to pay for the educational services offered by Capella.

86.     Capella has intentionally and unjustly prolonged Plaintiff Wright's work toward her doctoral degree and extracted extra tuition payments and costs from her for coursework that would never have been necessary but for Capella's scheme to generate additional tuition revenue. As a result of the scheme, Plaintiff Wright had to withdraw, knowing that to complete the educational process, at a minimum, would require more time and more tuition payments beyond what she had reasonably anticipated she would have had Capella not engaged in its illegal conduct.

21

## PLAINTIFF KENNEDY'S EXPERIENCE AT CAPELLA

87.     In 2013, Plaintiff Kennedy began researching schools that offered advanced degrees in education and was considering pursuing either a PhD or EdD degree.

88.     She spoke with two recruiters or advisors by telephone (Anne Hile and Mary Shustarich) to discuss the programs and the time required to complete her degree. Upon information and belief, Ms. Hile and Ms. Shustarich were located in a Capella call center in Minnesota. Plaintiff Kennedy was told that the EdD program would approximately take 3 years (for the Capstone which is intended to an accelerated program) and that the total cost would be no more than $50,000 by graduation.

89.     In order to entice her to select Capella, she was told that the cost to obtain the same degree at other Universities would be twice that as Capella. She was essentially told that she would save money and graduate in much shorter time frame at Capella, and that she could expect to graduate in the summer of 2017.

90.     Plaintiff Kennedy enrolled in her program in late 2013 or early 2014, and began her studies in the winter quarter (February) of 2014. She successfully completed all required coursework with an A grade point average.

91.     Plaintiff Kennedy began working on her dissertation in the winter quarter of 2016-17, continuing with spring 2017, summer 2017, into fall 2017. Due to continued delays in her dissertation progress and continually mounting student loan debt, Plaintiff Kennedy withdrew from Capella.

92.     As of now, Plaintiff Kennedy paid well over $100,000.00 for her time at Capella working on her degree. Despite being promised it would take three years, at the time she stopped enrolling at Capella, she was still only 1/5 of the way towards completion of her dissertation.

93.     Had Plaintiff Kennedy been made aware of Capella's low completion rate, she would not have enrolled in the doctoral program or paid the tuition, supply costs and other fees charged by Capella, or incurred student loans. Further, had Capella not misrepresented the timeline, costs, and undisclosed hurdles she would face in obtaining her degree or had it actually disclosed its true scheme, Plaintiff Kennedy would not have agreed to pay for the educational services offered by Capella.

94.     Capella has intentionally and unjustly prolonged Plaintiff Kennedy's work toward her doctoral degree and extracted extra tuition payments from her for coursework that would never have been necessary but for Capella's scheme to generate additional tuition revenue. As a result of the scheme, Plaintiff Wright had to withdraw, knowing that to complete the educational process, at a minimum, would require more time and more tuition payments beyond what she had reasonably anticipated she would have had Capella not engaged in its illegal conduct.

## CLASS ACTION ALLEGATIONS

95.     The experiences of Plaintiffs at Capella were substantially similar to those experienced by numerous other students attempting to navigate the process across Capella's doctoral degree programs.

96.     Plaintiffs requests the Court certify this lawsuit as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

97.     Plaintiffs bring this case as a class action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3), on behalf of a nationwide Class under Minnesota law defined as follows:

> All current or former students within the United States who enrolled in and paid tuition for a doctoral degree program at Capella University from 2006 until the present and did not receive full reimbursement for tuition, costs and student loans from Defendants (the "Class").

Excluded from the Class are: (i) Defendants and their officers and directors, agents, employees, affiliates, and subsidiaries; (ii) all Class members that timely and validly request exclusion from the Classes; and (iii) the Judge presiding over this action.

98.     Alternatively, Plaintiffs bring this case as a class action pursuant to Fed. R. Civ. P. 23(b)(3), on behalf of the following subclasses:

a) Kansas Class, by Plaintiff Wright (the "Kansas Class"):

All current or former students within the State of Kansas who enrolled in and paid tuition for a doctoral degree program at Capella University from 2006 until the present and did not receive full reimbursement for tuition, costs and student loans from Defendants.

b)  Tennessee Class, by Plaintiff Kennedy (the "Tennessee Class"):

All current or former students within the State of Tennessee who enrolled in and paid tuition for a doctoral degree program at Capella University from 2006 until the present and did not receive full reimbursement for tuition, costs and student loans from Defendants.

Excluded from the Classes are: (i) Defendants and their officers and directors, agents, employees, affiliates, and subsidiaries; (ii) all Class members that timely and validly request exclusion from the Classes; and (iii) the Judge presiding over this action.

99.     Further, as discovery unfolds, additional classes or modified classes might be possible or necessary, perhaps by doctoral program. However, as it appears Capella's fraudulent representations and omissions were made to students of all degree programs (e.g., quicker times to completion that conflicted with actual design times and failure to inform of abysmally low doctoral graduation rate), a single nationwide class is best-suited for this action and places Capella on notice of the broadest possible class that Plaintiffs could move for, as contemplated by the Federal Rules' notice-pleading standard.

100.    **Numerosity:** Upon information and belief, the members of the Class number in at least the thousands. As a result, the Class is so numerous that joinder of all members in a single action is impracticable. The members of the Class should be readily identifiable from academic records and enrollment records of Capella. The disposition of these claims will provide substantial benefits to the Class.

101.    **Commonality and Predominance:** There is a well-defined community of interest and common questions of law and fact which predominate over any questions affecting only individual members of the Class. These common legal and factual questions, which will generate common answers which are apt to drive the resolution of the litigation, do not vary between members of the Class. These common questions may be determined without reference to individual circumstances and will provide common answers. The following represent a non-exhaustive list of common questions:

a. Whether Capella maintains institutional control over its doctoral programs;

b. Whether, with knowledge of its abysmally low doctoral program completion rate, Capella promised potential and current students unrealistic timelines to completion of its doctoral programs;

c. Whether, with knowledge of its abysmally low doctoral program completion rate, Capella made false representations to its students about their actual chances of even completing a doctoral program at Capella;

d. Whether Capella constructed and implemented a system which caused the doctoral program to last longer than represented so that Capella could generate additional revenue though tuition payments;

e. Whether Capella have been unjustly enriched by their conduct at the expense of the Class;

f. Whether Capella breached its contracts with the Class;

g. Whether Capella violated consumer protection statues by virtue of its conduct toward the Class; and

h. Whether, as a result of Capella's conduct, Plaintiffs and the Class are entitled to damages, restitution, equitable relief and/or other relief, and, if so, the amount and nature of such relief.

102.    **Typicality:** The representative Plaintiffs' claims are typical of the claims of the Class. Plaintiffs and all members of the Class were injured by the same wrongful practices in which Capella has engaged. Further, the Plaintiffs and members of the Class seek relief based on the same legal theories. There may be differences in the amount of damages sustained by each member of the Class; however, Class-wide and individual damages can be determined readily. Individual damages issues will not bar Class certification.

103.    **Adequacy of Representation:** Plaintiffs will fairly and adequately protect and pursue the interests of the Class. Plaintiffs understand the nature of the claims herein, their role in the proceedings, and have and will vigorously represent the Class. Plaintiffs have retained Class counsel who are experienced in and qualified in prosecution of consumer protection class actions and other forms of complex litigation. Neither Plaintiffs, nor their attorneys, have interests which are contrary to or conflict with those of the Class.

104.    **Superiority and Manageability:** A class action is superior to all other available methods of adjudication of this lawsuit. Because individual litigation of the claims of Class members is economically infeasible and judicially impracticable, the class action device is the only way to facilitate adjudication of Plaintiffs' and the Class' claims. Although the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each member resulting from Capella's wrongful conduct are not significant enough for experienced counsel to handle on an individual basis. Further, due to the conduct of Capella, Plaintiffs and members of the Class have significant debt burdens from their time at Capella and cannot afford

to hire counsel to pursue their claims on an hourly-fee basis. Even assuming individual Class members could afford it, the likelihood of individual claims being pursued by the Class members is remote. Even then, the burden on the judicial system would be unjustifiable in light of the class action device. Individual members of the Class do not have significant interest in individually controlling the prosecution of separate actions and individualized litigation could result in varying, inconsistent or contradictory judgments. Plaintiffs know of no reason that this litigation should not proceed as a class action.

105.    The nature of notice to the Class is contemplated to be by direct mail upon certification of the Class or, if such notice is not practicable, by best notice possible under the circumstances including, inter alia, email, publication in major newspapers, and maintenance of a website.

## TOLLING AND ESTOPPEL

106.    Plaintiffs' causes of action did not arise until Plaintiffs discovered, or by the exercise of reasonable diligence should have discovered, that they were injured by Capella's intentional and deliberate scheme. Plaintiffs did not and could not have discovered the intentional scheme through reasonable diligence. For example, only Capella was in possession of the length of time its doctoral programs actually lasted. Further, given Capella is an online university, students were unaware that others were having similar experiences (delays in education).

107.    The applicable statutes of limitations have been tolled by Capella's knowing and active concealment of the material facts regarding its scheme to intentionally prolong the doctoral program and theses process. Capella kept Plaintiffs and the members of the Class ignorant of the vital information essential to pursue their claims, without any fault or lack of diligence on the part of Plaintiffs and Class members.

27

108.    Capella was and is under a continuous duty to disclose to Plaintiffs and the members of the Class the true nature of the scheme that they have implemented to prolong the doctoral process. At all relevant times, and continuing to this day, Capella knowingly, affirmatively, and actively misrepresented and concealed the true character, quality and nature of its scheme.

109.    Based on the foregoing, Capella is estopped from relying on any statutes of limitation in defense of this action.  Capella is also estopped from relying on any statutes of limitation in defense of this action because they failed to disclose the scheme prior to accepting each and every tuition payment in exchange for the provision of educational services.

110.    Pursuant to the doctrines of Equitable Tolling, Equitable Estoppel, Fraudulent Concealment and the Discovery Rule, the period for bringing claims shall not be barred due to any statute of limitations or statute of repose. With respect to each and every cause of action asserted herein, Plaintiffs expressly plead Equitable Tolling, Equitable Estoppel, Fraudulent Concealment and the Discovery Rule and their application thereto.

111.    All conditions precedent to the filing of this Complaint have been satisfied. This action has been filed prior to the expiration of any applicable statute of limitations or statute of repose.

## FIRST CAUSE OF ACTION
### Fraud in the Inducement
### (Nationwide Class)

112.    Plaintiffs bring this cause of action on behalf of a nationwide Class under Minnesota common law.

113.    Plaintiffs reallege and incorporate the preceding allegations by reference as if set forth fully herein.

114.    Capella made actual or implied false representations concerning the timing and cost of a doctoral degree, while concealing the truth from prospective and actual students.

115.    Capella had a duty to disclose that Capella's doctoral programs were designed to take much longer than they represented.

116.    Capella concealed and is still concealing how long Capella's doctoral programs actually take to complete.

117.    Capella intentionally misled Plaintiffs with promises that their programs would take a shorter time than the programs actually took.

118.    Similar, if not identical, false representations and omissions were made to other members of the Class about their degree programs as well either via recruiters, in Capella marketing materials and on Capella webpages.

119.    Capella also concealed the actual percentage of students who graduated with doctoral degrees from Capella.

120.    Further, Capella informed prospective students and current students they would have resources available to them, when Capella knew full well that such resources would not be available.

121.    These representations were material to Plaintiffs and the members of the Class agreeing to attend Capella.

122.    Capella was aware of the falsity of its representations, or at a minimum had an utter disregard for their truthfulness. For example, they purposefully designed Capella's doctoral programs to last a certain, longer time frame, but told students it would take less time.

123.    Capella intended students to rely upon these representations because they were included in marketing materials and on their websites.

124.    Plaintiffs and members of the Class were justified in relying upon these representations.

125.    Plaintiffs and members of the class were injured by relying on these false representations and omissions because had Capella been truthful about the timelines and costs for Capella's doctoral programs, as well as graduation rates and resources actually available, doctoral students would not have enrolled.

## SECOND CAUSE OF ACTION
## Unjust Enrichment
## (Nationwide Class)

126.    Plaintiffs reallege and incorporate the preceding allegations by reference as if set forth fully herein.

127.    Plaintiffs bring this cause of action on behalf of a Nationwide Class under Minnesota common law. Capella has engaged in unjust conduct, to the detriment of Plaintiffs and each member of the Nationwide Class.

128.    Plaintiffs and each member of the Nationwide Class provided significant value to Capella in the form of tuition payments for doctoral courses.

129.    Capella appreciated or had knowledge of the benefit received by retaining the money paid by Plaintiffs and each member of the Nationwide Class.

130.    Although Capella accepted the tuition payments and retained and received benefit therefrom, it did not provide students with the doctoral process that was promised and expected in connection with the payment of the tuition. On the contrary, Capella intentionally and deliberately extracted tuition and generated revenue and on information and belief eventually profit. Capella has intentionally and knowingly created and implemented a doctoral program that is fraught with inefficiencies, meant to ensure that students do not receive the timely responses and attention that

they were promised. All of this is done without any honesty or transparency by Capella regarding the actual time and expense that doctoral students will incur in an effort to complete their degrees.

131.    This unjust conduct on the part of Capella has resulted in its doctoral students enrolling in more terms than would be necessary had Capella not acted unjustly and incurring significant additional tuition and costs (including costs for books, technology fees, and student loans for tuition and fees, room and board charges, costs of books and supplies and other expenses, etc.), and student loans to pay the same. It has also caused certain Nationwide Class members to stop pursuing the process altogether.

132.    Despite their inequitable conduct, Capella has retained the tuition payments (including costs for books, technology fees, etc.) made by Capella doctoral students pursuing coursework and the profits therefrom.

133.    As a result, Capella has been unjustly enriched, to the detriment of Plaintiffs and the members of the Nationwide Class.

### THIRD CAUSE OF ACTION
### Breach of Contract
### (Nationwide Class)

134.    Plaintiffs reallege and incorporate the preceding allegations by reference as if set forth fully herein.

135.    Plaintiffs bring this cause of action on behalf of a nationwide Class under Minnesota common law.  Capella has systematically violated its contracts with Plaintiffs and each member of the Class.

136.    Plaintiffs and each member of the Class contracted with Capella to obtain doctoral educational services. Implied in each and every contract was a covenant of good faith and fair dealing.

137.    As part of the contract, Capella promised, inter alia, that, in connection with providing doctoral educational services: 1) students had control over how long it would take to obtain their doctoral degree and 2) that their degrees would be obtained or obtainable in a set amount of time.

138.    Rather than provide doctoral educational services as per its contractual agreement, Capella knowingly and intentionally directed and implemented a doctoral process fraught with inefficiencies, meant to ensure that students do not receive adequate resources, the timely responses and attention that they were promised. All of this is done without honesty or transparency by Capella regarding the actual time and expense that its doctoral students will incur in an effort to complete their degrees. The policy implemented by Capella breaches its contracts with Plaintiffs and the Class.

139.    Plaintiffs and each member of the Class provided significant value to Capella in the form of tuition payments and fees for doctoral courses as contracted.

140.    Furthermore, Plaintiffs and each member of the Class complied with their obligations under the contract. To the extent that they did not comply with their obligations under the contract, it was solely the result of conduct engaged in by Capella.

141.    The breach of contract on the part of Capella has resulted in Capella's doctoral students enrolling in courses that would not be necessary if Capella had honored its contract and, in many instances, caused Class members to stop pursuing their education altogether.

142.    Despite its knowing and intentional breaching of the contracts, Capella has retained the tuition payments made by the members of the Class.

143.    Capella has breached its contracts for doctoral education services with Plaintiffs and each member of the Class. Capella's breach has caused damage to Plaintiffs and each member

of the Class in the form of additional tuition payments for doctoral courses and, in many instances, to stop pursuing their education altogether, causing them to be damaged in the amount of tuition payments they made and loans incurred before being forced to stop pursuing their education.

144.    Moreover, Capella has breached its contracts for doctoral educational services with Plaintiffs and each member of the Class by engaging in systematic conduct whereby it has failed to honor the covenant of good faith and fair dealing implied in every contract. Capella has engaged in unreasonable conduct that was entirely inconsistent with the reasonable expectations of Plaintiffs and each member of the Class. Capella's breach has caused damage to Plaintiffs and each member of the Class in the form of additional tuition payments for doctoral courses and, in many instances, to stop pursuing their education altogether, causing them to be damaged in the amount of tuition payments they made and loans incurred before being forced to stop pursuing their education.

## FOURTH CAUSE OF ACTION
### Violation of Minnesota Uniform Deceptive Trade Practices Act §325D.44
### (Nationwide Class)

145.    Plaintiffs reallege and incorporate the preceding allegations by reference as if set forth fully herein.

146.    Plaintiffs bring this cause of action on behalf of a Nationwide Class. Capella has engaged in unfair, unlawful, and fraudulent business practices, as set forth above.

147.    Minnesota Stat. §325D.44 specifically prohibits the use of unfair or deceptive trade practices in connection with a consumer transaction.  For example, Minnesota Stat. §325D.44 prohibits deceptive trade practices which occur when a person "(5) represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that

33

the person does not have;" "(7) represents that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;" "(9) advertises goods or services with intent not to sell them as advertised" and "(13) engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding."

148.   Students paying tuition so as to enroll or re-enroll each semester in an institution is a consumer transaction.

149.   By engaging in the acts and practices described in this complaint, Capella has committed one or more acts of unfair and deceptive trade practices. For example, Capella represented that its doctoral services 1) have characteristics that they do not have and 2) are of a particular standard, quality, or grade of which they are not.  Capella also 3) advertised Capella's doctoral services with intent not to sell them as advertised and 4) engaged in conduct which similarly creates a likelihood of confusion or of misunderstanding.

150.   Specifically, Capella misrepresented that: 1) students had control over how long it would take to obtain their doctoral degree and 2) that their degrees would be obtained or obtainable in a set amount of time.

151.   Capella also knowingly concealed, omitted and otherwise failed to state material facts about Capella's doctoral education services that would tend to, and did, in fact, deceive students. Specifically, Capella falsely represented the time and tuition costs of obtaining a doctoral degree, not only knowing that such representations were false, but also with no intent to offer such services to its students. Capella also failed to disclose that it intentionally and deliberately used Capella's doctoral programs as a means of improperly extracting tuition and generating revenue. Capella further failed to disclose that it knowingly created and implemented a doctoral program

that is fraught with inefficiencies, meant to ensure that students do not receive the timely responses and attention that they were promised.

152.    Capella knew that its doctoral programs was and continues to be systematically prolonged by the violations set forth herein.

153.    The misrepresentations and omissions were material to Plaintiffs and the members of the Class.

154.    Capella's unfair and deceptive trade practices and acts occurred and continue to occur repeatedly during the course of its business. These actions constitute unfair and deceptive trade practices.

155.    Plaintiffs and members of the Class relied on these representations and omissions in the course of pursuing their doctoral degrees. Furthermore, Capella intended that Plaintiffs and members of the Class would rely on the representations and omissions.

156.    As a direct and proximate result of Capella's unfair and deceptive practices and acts, Plaintiffs and the Class have suffered and will continue to suffer actual damages.  Had Plaintiffs and the members of the Class been aware of the misrepresentations and omissions, they would not have paid tuition to Capella or incurred additional costs including costs for books, technology fees, and student loans for tuition and fees, room and board charges, costs of books and supplies and other expenses, etc. for the educational services that Capella purported to provide.

**FIFTH CAUSE OF ACTION**
**Breach of Implied Covenant of Good Faith and Fair Dealing**
**(Nationwide Class)**

157.    Plaintiffs reallege and incorporate the preceding allegations by reference as if set forth fully herein.

158.    Plaintiffs bring this cause of action on behalf of a Nationwide Class under Minnesota common law.  Capella has systematically violated its contracts with Plaintiffs and each member of the Nationwide Class.

159.    Plaintiffs and each member of the Nationwide Class contracted with Capella to receive doctoral education services.

160.    Implied in each contract was a covenant of good faith and fair dealing.

161.    Plaintiffs and each member of the Nationwide Class provided value to Capella in the form of tuition payments for doctoral courses as contracted.

162.    By the scheme and conduct detailed herein, Capella has breached the implied duty of good faith and fair dealing implied in its contracts.

163.    This breach on the part of Capella has resulted in Capella doctoral students being damaged because they were required to enroll in doctoral courses that would not have otherwise been necessary, thereby necessitating substantial additional tuition payments and costs , and student loans for tuition and fees, room and board charges, costs of books and supplies and other expenses.  In addition, many students have been forced to stop pursuing their education.

### SIXTH CAUSE OF ACTION
### Fraud in the Inducement
### (Alternative Kansas Sub-Class)

164.    Plaintiff Wright brings this cause of action, in the alternative, on behalf of a Missouri Sub-Class under Kansas common law.

165.    Plaintiff realleges and incorporates the preceding allegations by reference as if set forth fully herein.

166.    Capella made actual or implied false representations concerning the timing and cost of a doctoral degree, while concealing the truth from prospective and actual students.

36

167.    Capella had a duty to disclose that Capella's doctoral programs were designed to take much longer than they represented.

168.    Capella concealed and is still concealing how long Capella's doctoral programs actually take to complete.

169.    Capella also concealed the actual percentage of students who graduated with doctoral degrees from Capella.

170.    Further, Capella informed prospective students and current students they would have resources available to them, when Capella knew full well that such resources would not be available.

171.    These representations were material to Plaintiff Wright and the members of the Class agreeing to attend Capella.

172.    Capella was aware of the falsity of its representations, or at a minimum had an utter disregard for their truthfulness. For example, they purposefully designed Capella's doctoral programs to last a certain, longer time frame, but told students they would take less time.

173.    Capella intended students to rely upon these representations because they were included in marketing materials and on their websites.

174.    Plaintiff and members of the Class was justified in relying upon these representations.

175.    Plaintiff and members of the class were injured by relying on these false representations and omissions because had Capella been truthful about the timelines and costs for Capella's doctoral programs, as well as graduation rate and resources actually available, doctoral students would not have enrolled.

## SEVENTH CAUSE OF ACTION
### Breach of Contract
### (Alternative Kansas Sub-Class)

176.    Plaintiff realleges and incorporates the preceding allegations by reference as if set forth fully herein.

177.    Plaintiff Wright brings this cause of action, in the alternative, on behalf of a Kansas Sub-Class under Kansas common law. Capella has systematically violated its contracts with Plaintiff Wright and each member of the Kansas Sub-Class.

178.    Plaintiff Wright and each member of the Kansas Sub-Class contracted with Capella to obtain doctoral educational services. Implied in each and every contract was a covenant of good faith and fair dealing.

179.    As part of the contract, Capella promised, inter alia, that, in connection with providing doctoral educational services: 1) students had control over how long it would take to obtain their doctoral degree and 2) that their degrees would be obtained or obtainable in a set amount of time.

180.    Rather than provide doctoral educational services as per its contractual agreement, Capella knowingly and intentionally directed and implemented a doctoral program process fraught with inefficiencies, meant to ensure that students do not receive adequate resource, the timely responses and attention that they were promised. All of this is done without honesty or transparency by Capella regarding the actual time and expense that its doctoral students will incur in an effort to complete their degrees. The policy implemented by Capella breaches its contracts with Plaintiff and the Kansas Sub-Class.

181.    Plaintiff and each member of the Kansas Sub-Class provided significant value to Capella in the form of tuition payments and fees for doctoral courses as contracted.

182.    Furthermore, Plaintiff and each member of the Kansas Sub-Class complied with their obligations under the contract. To the extent that they did not comply with their obligations under the contract, it was solely the result of conduct engaged in by Capella.

183.    The breach of contract on the part of Capella has resulted in Capella's doctoral students enrolling in courses that would not be necessary if Capella had honored its contract and, in many instances, caused Kansas Sub-Class members to stop pursuing their education altogether.

184.    Despite its knowing and intentional breaching of the contracts, Capella has retained the tuition payments made by the members of the Kansas Sub-Class.

185.    Capella has breached its contracts for doctoral education services with Plaintiff and each member of the Kansas Sub-Class. Capella's breach has caused damage to Plaintiff and each member of the Kansas Sub-Class in the form of additional tuition payments for doctoral courses and, in many instances, to stop pursuing their education altogether, causing them to be damaged in the amount of tuition payments they made and loans incurred before being forced to stop pursuing their education.

186.    Moreover, Capella has breached its contracts for doctoral educational services with Plaintiff and each member of the Kansas Sub-Class by engaging in systematic conduct whereby it has failed to honor the covenant of good faith and fair dealing implied in every contract. Capella has engaged in unreasonable conduct that was entirely inconsistent with the reasonable expectations of Plaintiff and each member of the Kansas Sub-Class. Capella's breach has caused damage to Plaintiff and each member of the Kansas Sub-Class in the form of additional tuition payments for doctor courses and, in many instances, to stop pursuing their education altogether, causing them to be damaged in the amount of tuition payments they made and loans incurred before being forced to stop pursuing their education.

## EIGHTH CAUSE OF ACTION
### Unjust Enrichment
### (Alternative Kansas Sub-Class)

187.    Plaintiff realleges and incorporate the preceding allegations by reference as if set forth fully herein.

188.    Plaintiff Wright brings this cause of action, in the alternative, on behalf of an Kansas Sub-Class under Kansas common law. Capella have engaged in unjust conduct, to the detriment of Plaintiff Wright and each member of the Kansas Sub-Class.

189.    Plaintiff and each member of the Kansas Sub-Class provided significant value to Capella in the form of tuition payments for doctoral courses.

190.    Capella appreciated or had knowledge of the benefit received by retaining the money paid by Plaintiff and each member of the Kansas Sub-Class.

191.    Although Capella accepted the tuition payments and retained and received benefit therefrom, they did not provide students with a doctoral process that was promised and contemplated in connection with the payment of the tuition. On the contrary, Capella intentionally and deliberately used the doctoral program process as a means of improperly extracting tuition and generating revenue. Capella have intentionally and knowingly directed and implemented a doctoral process that is fraught with inefficiencies, meant to ensure that students do not receive the timely responses and attention that they were promised, and creates inordinate turnover of faculty and supervisory committee chairs and members. All of this is done without any honestly or transparency by Capella regarding the actual time and expense that Capella's doctoral students will incur in an effort to complete their degrees.

192.    This unjust conduct on the part of Capella have resulted in Capella doctoral students enrolling in courses that would not be necessary if Capella had not acted unjustly and in incurring

significant additional tuition costs and students loans. It has also caused certain Kansas Sub-Class members to stop pursuing the process altogether.

193.    Despite their inequitable conduct, Capella have retained the tuition payments made by Capella doctoral students pursuing coursework and the profits therefrom.

194.    As a result, Capella have been unjustly enriched, to the detriment of Plaintiff Wright and the members of the Kansas Sub-Class.

**NINTH CAUSE OF ACTION**
**Violation of Kansas KS Stat. §50-626(a) & (b) (Kansas Unfair Trade and Consumer Protection Act)**
**(Alternative Kansas Sub-Class)**

195.    Plaintiff realleges and incorporate the preceding allegations by reference as if set forth fully herein.

196.    Plaintiff brings this cause of action on behalf of a Kansas Sub-Class. Capella have engaged in unfair, unlawful, and fraudulent business practices, as set forth above.

197.    Through the actions described above, Capella has violated KS Stat. §50-626(a) & (b).

198.    In violation of KS Stat. §50-626(a), Capella is a supplier that engaged in a deceptive act or practice in connection with a consumer transaction with Plaintiff Wright and Class members.

199.    In violation of KS Stat. §50-626(b)(1), Capella's deceptive acts and practices include, but are not limited to, making knowing representations that 1) the services it offers have characteristics that they do not have; 2) the services it offers are of particular standard, quality, grade, style or model, when they are actually of another which differs materially from the representation; 3) the services it offers has characteristics that Capella did not have a reasonable basis for making such representations; and 4) that its services have characteristics allegedly

substantiated by Capella when it has no proof to substantiate such representations. Such representations include, but are not limited to, Capella's representations of an earlier graduation date/faster time to completion than possible.

200.    In violation of KS Stat. §50-626(b)(2) Capella also willfully 1) used oral and written representations that exaggerated, were false and made false innuendos of material fact and 2) failed to failure to state material facts, and willfully concealed, suppressed or omitted material facts. Such representations include, but are not limited to, Capella's representations of an earlier graduation date/faster time to completion than possible, and omissions include, but are not limited to, its longer times to graduate, slower completion times, and low graduation rates.

201.    Capella made false and misleading statements about the nature, quality, style and model of Capella's doctoral education services. Further, the subject of the Capella doctoral transaction had been supplied in accordance with previous representations made by Capella to Plaintiff Wright and members of the Kansas Sub-Class, and those representations were not performed. Specifically, Capella misrepresented that: 1) students had control over how long it would take to obtain their doctoral degree and 2) that their degrees would be obtained or obtainable in a set amount of time.

202.    Capella also knowingly concealed, omitted and otherwise failed to state material facts about Capella's doctoral education services that would tend to, and did, in fact, deceive students. Specifically, Capella failed to disclose that they intentionally and deliberately used Capella's doctoral process as a means of improperly extracting tuition and generating revenue. Capella further failed to disclose that they knowingly directed and implemented a doctoral program process that is fraught with inefficiencies, meant to ensure that students do not receive the timely responses and attention that they were promised, and creates inordinate turnover of faculty and

supervisory committee chairs and members. Capella also knowingly withheld its low graduation rate and actual times to graduation of its doctoral students.

203.    Capella knew that the doctoral coursework was and continues to be systematically prolonged by the violations set forth herein.

204.    The misrepresentations and omissions were material to Plaintiff and the members of the Class.

205.    Capella 's unfair and deceptive trade practices and acts occurred and continue to occur repeatedly during the course of its business. These actions constitute unfair and deceptive trade practices, in violation of KS Stat. §50-626(a) & (b).

206.    Plaintiff and members of the Class relied on these representations and omissions in the course of pursuing their doctoral degrees. Furthermore, Capella intended that Plaintiff and members of the Class would rely on the representations and omissions.

207.    As a direct and proximate result of Capella's unfair and deceptive practices and acts, Plaintiff and the Class have suffered and will continue to suffer actual damages. Had Plaintiff and the members of the Class been aware of the misrepresentations and omissions, they would not have paid tuition to Capella for the educational services that Defendant purported to provide or incurred students to attend Capella (including for room and board).

## TENTH CAUSE OF ACTION
### Fraud in the Inducement
### (Alternative Tennessee Sub-Class)

208.    Plaintiff Kennedy brings this cause of action on behalf of a nationwide Class under Tennessee common law.

209.    Plaintiff realleges and incorporates the preceding allegations by reference as if set forth fully herein.

210.    Capella made actual or implied false representations concerning the timing and cost of a doctoral degree, while concealing the truth from prospective and actual students.

211.    Capella had a duty to disclose that Capella's doctoral programs were designed to take much longer than they represented.

212.    Capella concealed and are still concealing how long Capella's doctoral programs actually take to complete.

213.    Capella also concealed the actual percentage of students who graduated with PhDs from Capella.

214.    Further, Capella informed prospective students and current students they would have resources available to them, when Capella knew full well that such resources would not be available.

215.    These representations were material to Plaintiff Kennedy and the members of the Class agreeing to attend Capella.

216.    Capella was aware of the falsity of its representations, or at a minimum had an utter disregard for their truthfulness. For example, they purposefully designed Capella's doctoral programs to last a certain, longer time frame, but told students they would take less time.

217.    Capella intended students to rely upon these representations because they were included in marketing materials and on their websites.

218.    Plaintiff and members of the Class was justified in relying upon these representations.

219.    Plaintiff and members of the class were injured by relying on these false representations and omissions because had Capella been truthful about the timelines and costs for

Capella's doctoral programs, as well as graduation rate and resources actually available, doctoral students would not have enrolled.

## ELEVENTH CAUSE OF ACTION
### Breach of Contract
### (Alternative Tennessee Sub-Class)

220.    Plaintiff realleges and incorporates the preceding allegations by reference as if set forth fully herein.

221.    Plaintiff Kennedy brings this cause of action, in the alternative, on behalf of a Tennessee Sub-Class under Tennessee common law. Capella has systematically violated its contracts with Plaintiff Kennedy and each member of the Tennessee Sub-Class.

222.    Plaintiff Kennedy and each member of the Tennessee Sub-Class contracted with Capella to obtain doctoral educational services. Implied in each and every contract was a covenant of good faith and fair dealing.

223.    As part of the contract, Capella promised, inter alia, that, in connection with providing doctoral educational services: 1) students had control over how long it would take to obtain their doctoral degree and 2) that their degrees would be obtained or obtainable in a set amount of time.

224.    Rather than provide doctoral educational services as per its contractual agreement, Capella knowingly and intentionally directed and implemented a doctoral process fraught with inefficiencies, meant to ensure that students do not receive adequate resource, the timely responses and attention that they were promised. All of this is done without honesty or transparency by Capella regarding the actual time and expense that its doctoral students will incur in an effort to complete their degrees. The policy implemented by Capella breaches its contracts with Plaintiff and the Tennessee Sub-Class.

225.    Plaintiff and each member of the Tennessee Sub-Class provided significant value to Capella in the form of tuition payments and fees for doctoral courses as contracted.

226.    Furthermore, Plaintiff and each member of the Tennessee Sub-Class complied with their obligations under the contract. To the extent that they did not comply with their obligations under the contract, it was solely the result of conduct engaged in by Capella.

227.    The breach of contract on the part of Capella has resulted in Capella's doctoral students enrolling in doctoral courses that would not be necessary if Capella had honored its contract and, in many instances, caused Tennessee Sub-Class members to stop pursuing their education altogether.

228.    Despite its knowing and intentional breaching of the contracts, Capella has retained the tuition payments made by the members of the Tennessee Sub-Class.

229.    Capella has breached its contracts for doctoral education services with Plaintiff and each member of the Tennessee Sub-Class. Capella's breach has caused damage to Plaintiff and each member of the Tennessee Sub-Class in the form of additional tuition payments for doctoral courses and, in many instances, to stop pursuing their education altogether, causing them to be damaged in the amount of tuition payments they made and loans incurred before being forced to stop pursuing their education.

230.    Moreover, Capella has breached its contracts for doctoral educational services with Plaintiff and each member of the Tennessee Sub-Class by engaging in systematic conduct whereby it has failed to honor the covenant of good faith and fair dealing implied in every contract. Capella has engaged in unreasonable conduct that was entirely inconsistent with the reasonable expectations of Plaintiff and each member of the Tennessee Sub-Class. Capella's breach has caused damage to Plaintiff and each member of the Tennessee Sub-Class in the form of additional

tuition payments for doctoral courses and, in many instances, to stop pursuing their education altogether, causing them to be damaged in the amount of tuition payments they made and loans incurred before being forced to stop pursuing their education.

## TWELFTH CAUSE OF ACTION
### Unjust Enrichment
### (Alternative Tennessee Sub-Class)

231.    Plaintiff realleges and incorporate the preceding allegations by reference as if set forth fully herein.

232.    Plaintiff Kennedy brings this cause of action, in the alternative, on behalf of an Tennessee Sub-Class under Tennessee common law. Capella have engaged in unjust conduct, to the detriment of Plaintiff Kennedy and each member of the Tennessee Sub-Class.

233.    Plaintiff and each member of the Tennessee Sub-Class provided significant value to Capella in the form of tuition payments for doctoral courses.

234.    Capella appreciated or had knowledge of the benefit received by retaining the money paid by Plaintiff and each member of the Tennessee Sub-Class.

235.    Although Capella accepted the tuition payments and retained and received benefit therefrom, they did not provide students with a doctoral process that was promised and contemplated in connection with the payment of the tuition. On the contrary, Capella intentionally and deliberately used the doctoral process as a means of improperly extracting tuition and generating revenue. Capella have intentionally and knowingly directed and implemented a doctoral process that is fraught with inefficiencies, meant to ensure that students do not receive the timely responses and attention that they were promised, and creates inordinate turnover of faculty and supervisory committee chairs and members. All of this is done without any honestly or

transparency by Capella regarding the actual time and expense that Capella's doctoral students will incur in an effort to complete their degrees.

236.    This unjust conduct on the part of Capella have resulted in Capella doctoral students enrolling in courses that would not be necessary if Capella had not acted unjustly and in incurring significant additional tuition costs and student loans. It has also caused certain Tennessee Sub-Class members to stop pursuing the process altogether.

237.    Despite their inequitable conduct, Capella have retained the tuition payments made by Capella doctoral students pursuing doctoral coursework and the profits therefrom.

238.    As a result, Capella have been unjustly enriched, to the detriment of Plaintiff Kennedy and the members of the Tennessee Sub-Class.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and members of the Class request that the Court enter an Order or judgment against Capella as follows:

A.    Certifying this case as a class action and appointing Plaintiffs and their counsel to represent the Class;

B.    Awarding Plaintiffs and other members of the Class damages and all other relief available under the claims alleged;

C.    Awarding Plaintiffs and other members of the Class pre-judgment and post judgment interest as a result of the wrongs complained of herein;

D.    Requiring Capella to disgorge the revenue earned through the excessive doctoral program coursework;

E.    Enjoining Capella from engaging in the conduct described herein;

48

F.  Awarding Plaintiffs and other members of the Class restitution;

G.  Awarding Plaintiffs and other members of the Class their costs and expenses

in this litigation, including reasonable attorneys' fees and other costs of litigation; and

H.  Awarding such other relief as the Court deems just and proper.


## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.


Dated:  April 20, 2018                REINHARDT WENDORF & BLANCHFIELD


By:  _____*s/Roberta A. Yard*_____
Garrett D. Blanchfield (MN#209855)
Roberta A. Yard (MN#322295)
E-1250 First National Bank Building
332 Minnesota Street
St. Paul, MN 55101
Telephone: (651) 287-2100
Facsimile: (651) 287-2103
g.blanchfield@rwblawfirm.com
r.yard@rwblawfirm.com


PEIFFER ROSCA WOLF ABDULLAH
CARR & KANE


By:  _____*s/Paul Lesko*_____
Paul Lesko (*pro hac vice forthcoming*)
818 Lafayette Avenue
Second Floor
St. Louis, MO 63010
Telephone: (314) 833-4826
plesko@prwlegal.com