## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

CAROLYN WRIGHT,                               )
DEBBRA KENNEDY,                               )
SHERRY BAILEY BRANNEN,                        )     Case No.: 0:18-cv-01062-WMW-SER
SHAUNA MATELSKI,                              )
LOIS MASON,                                   )       Judge: Wilhelmina M. Wright
CANDACE NORRIS,                              )
MAURICE JOSE ORNELAS,                        )     ***JURY TRIAL DEMANDED***
JACQUELINE CARTER, and                       )
GEOFFREY GOLDSTEIN,                          )
INDIVIDUALLY AND ON BEHALF OF ALL OTHERS     )
SIMILARLY SITUATED,                          )
                                             )
        *Plaintiffs*,                        )
                                             )
        v.                                   )
                                             )
CAPELLA EDUCATION COMPANY, and              )
CAPELLA UNIVERSITY, INC.,                    )
                                             )
        *Defendant.*                         )
                                             )

## FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiffs Carolyn Wright, Debbra Kennedy, Sherry Bailey Brannen, Shauna Matelski,

Lois Mason, Candace Norris, Maurice Jose Ornelas, Jacqueline Carter and Geoffrey Goldstein

("Plaintiffs"), by and through their undersigned counsel, bring this First Amended Class Action

Complaint ("Complaint") on behalf of themselves and all others similarly situated against

Defendants Capella Education Company and Capella University, Inc. (collectively "Capella").

## NATURE OF THE ACTION

1.      This action seeks redress for Plaintiffs and thousands of similarly situated doctoral

students who were harmed by Capella's misrepresentations about the length and cost of its doctoral

programs—misrepresentations that Plaintiffs and the Class relied upon when enrolling and continuing each term at Capella. Capella misrepresented and withheld the actual length of time and cost of its programs to Plaintiffs and the Class, and by doing so, ensnared doctoral students in doctoral programs that were difficult, if not impossible, for students to complete in the promised time and for the promised cost. In reality, Capella's doctoral programs were not designed for completion within the represented timeframe and cost; to the contrary, they were designed to last considerably longer so Capella could maximize the extraction of tuition payments from Plaintiffs and the Class.

2.      Capella essentially operated a "bait and switch" program. The bait was displayed when Capella's marketing materials and recruiters misled prospective and current students making misleading statements about the time to completion and cost of their mostly student-loan financed doctoral degrees. For example, in 2013 Plaintiff Wright was told her Doctor of Nursing Practice degree would take two years and cost approximately $35,000, and Plaintiff Kennedy was told that PhDs in Education or Doctoral Degrees in Education would cost approximately $45,000-$55,000 and take three to three-and-a-half years to complete.

3.      Relying on these misrepresentations, Capella doctoral students signed up for their doctoral programs, and completed their coursework, the first steps in obtaining a doctoral degree. After having invested significant amounts of time and money in completing their coursework, doctoral students began the dissertation/capstone process, the second and final step in obtaining a doctoral degree. However, this is when serious delays began.

4.      Rather than institute a process that would allow for completion of the doctoral program within the promised timeframe, Capella created and instituted an endless routine of

hurdles and obstacles. As a result, Capella benefitted from additional tuition payments made by Plaintiffs and the Class.

5.      Plaintiffs and the Class, who believed they were getting ever closer to obtaining their doctoral degree were in fact stuck with decreasing resources, faculty turnover, and other obstacles resulting from Defendants' scheme, all of which increased the length of the doctoral students' enrollments at Capella.

6.      Frustrated, Plaintiffs, and upon information and belief thousands of other doctoral students, realized that contrary to Capella's promises, they did not have control over the time it would take to complete their doctoral degree program; they were at the mercy of Capella who can and did ensure that doctoral students would be misled, confused, and ultimately cheated out of their money to the benefit of Capella.

7.      While Plaintiffs and the Class reasonably believed they were taking the necessary and appropriate steps to obtain their doctoral degrees, weeks stretched into months, then into semesters, and then into years of continuing tuition payments and student loans.

8.      Capella's promises of Capella's promises shortened time to complete a doctoral degree and reasonable tuition and costs were replaced by skyrocketing student-loan debt, while the degree programs dragged on far past Capella's promised timelines.

9.      Finally, most students' debt would grow so large, they would have no choice but to un-enroll so they could dedicate themselves to working to pay back their crushing student loans … without degrees to show for their work.

10.     Capella was aware that its representations the Plaintiffs and the Class of the length of time and cost it would take to obtain doctoral degrees was false. In fact, it would later release

data showing its doctoral programs were designed to take much longer than prospective students were promised.

11.     These facts, inconsistent as they may seem, were withheld from Plaintiffs prior to and during their enrollment at Capella.

12.     With these false promises and misleading statements, Capella ensnared thousands of doctoral students, including Plaintiffs.

13.     Universities exist to educate and grant degrees. However, Capella – a for-profit corporation – created a smoke-and-mirrors doctoral degree process to receive ever-increasing amounts of money in the form of tuition payments and fees.

14.     The longer a student was kept in pursuit of their degree, the more tuition payments and fees that student would pay, and, importantly, the more money Capella would make.

15.     Further, having already paid tens of thousands of dollars to get "half way" through the program or potentially further (*i.e.,* completing the classroom work and colloquium), most students would understandably be compelled to continue pursuing their degree despite Capella's hurdles, feeling they have what it takes if they just keep working.

16.     It was nearly a perfect plan. Given that the Capella doctoral program was mostly online, students were isolated from the vast majority of their peers, unable to see whether others faced the same challenges. Instead, the students would assume it was just them, and continue a fight they could not win.

17.     Capella intended to (and did) generate substantial additional profits by way of additional tuition and fees. The practice resulted in the members of the Class and Subclasses (defined below) paying substantially more for Capella's doctoral degree programs than promised by Capella (or reasonably anticipated by the students).

18.     Capella's acts caused substantial damage to Plaintiffs and Class and Subclass members. If Capella had not misrepresented the time – and therefore, the true cost – of its doctoral degree programs, Plaintiffs, and upon information and belief, Class and Subclass members would not have attended Capella, made tuition and fee payments, or borrowed any amount including but not limited to student loans for tuition and fees, room and board charges, costs of books and supplies and other expenses.

19.     Further, had Capella not misrepresented the timelines, real-world costs, and realities of its doctoral degree process, Plaintiffs and Class and Subclass members would not have registered for the program or paid for the educational services offered by Capella.

20.     Instead, Plaintiffs and those similarly situated relied upon Capella's misrepresentations and omissions when enrolling at Capella and when they continue term to term, and are now saddled with crippling debt, bad credit, inability to obtain additional student loans, useless course credits that will not transfer to other institutions, and most times, no doctoral degree.

**THE PARTIES**

21.     Plaintiff Carolyn Wright is, and has been at all relevant times, a resident and citizen of the State of Kansas. She enrolled in Capella's doctoral program in 2013.

22.     Plaintiff Debbra Kennedy is, and has been at all relevant times, a resident and citizen of the State of Tennessee. She enrolled in Capella's doctoral program in 2014.

23.     Plaintiff Sherry Bailey Brannen is, and has been at all relevant times, a resident and citizen of the State of Florida. She enrolled in Capella's EdD program specializing in Educational Leadership and Management in the fall of 2014.

5

24.     Plaintiff Shauna Matelski is, and has been at all relevant times, a resident and citizen of the State of Ohio. She enrolled in Capella's EdD program specializing in Educational Leadership and Management in 2013.

25.     Plaintiff Lois Mason is, and has been at all relevant times, a resident and citizen of the state of Pennsylvania. She enrolled in Capella's Doctor of Information Technology ("DIT") program in 2016.

26.     Plaintiff Candace Norris is, and has been at all relevant times, a resident and citizen of the State of Ohio. She enrolled in Capella's DBA program in 2012.

27.     Plaintiff Maurice Jose Ornelas is, and has been at all relevant times, a resident and citizen of the State of Massachusetts. He enrolled in Capella's PhD in Public Safety program, specializing in Criminal Justice in 2012.

28.     Plaintiff Jacqueline Carter is, and has been at all relevant times, a resident and citizen of the state of Alabama. She enrolled in Capella's DSW program specializing in General Social Work in the fall of 2015.

29.     Plaintiff Geoffrey Goldstein is, and has been at all relevant times, a resident and citizen of the state of New York.  He enrolled in Capella's PhD in Business Management program, specializing in Accounting in the summer of 2015.

30.     Capella Education Company is a corporation organized under the laws of the State of Minnesota. Capella Education Company is publicly traded on the Nasdaq under ticker symbol CPLA. Further, Capella Education Company maintains its principal place of business at Capella Tower, 225 South Sixth Street, 9th Floor, Minneapolis, Minnesota 55402.

31.     Capella University, Inc. is a corporation organized and operating under the laws of the State of Minnesota.

32.     According to public disclosures made by Capella Education Company, Defendant Capella University is a wholly owned subsidiary or Capella Education Company.

33.     Capella University, Inc. shares its Minnesota address with its parent, Capella Education Company. A principal-agent relationship exists between Capella Education Company and Capella University, Inc.

34.     Upon information and belief, Capella University, Inc. also operated and operates a call center for enrollment from Minnesota as well.

35.     Capella Education Company is liable for the wrongful acts of its subsidiary-agent.

36.     Alternatively or additionally, the acts of the Defendants Capella Education Company and Capella University, Inc. were conducted in concert pursuant to an express or implied agreement amongst themselves to act in this collective manner. Defendants Capella Education Company and Capella University, Inc. (collectively referred to herein as "Capella") are therefore jointly and severally liable for the acts complained of herein.

## JURISDICTION AND VENUE

37.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2) because the matter in controversy, upon information and belief, exceeds $5,000,000, exclusive of interest and costs, and this is a class action in which certain members of the Class and Defendant are citizens of different states.

38.     This Court has personal jurisdiction over Defendants because they are headquartered and conduct significant business in Minnesota.

39.     Venue is proper in this district, pursuant to 28 U.S.C. § 1391, because Defendants reside in, transact business in, are found within, and have agents in this District and a substantial part of the events giving rise to Plaintiff's claims arose in this District.

40.     Due to Capella's location in Minneapolis, the state of Minnesota is unique compared to other states where its students reside. Under the National Counsel for State Authorization Reciprocity Agreements ("SARA"),[1] agreements states like Minnesota have with nearly every U.S. state, the District of Columbia, and the U.S. Virgin Islands, out-of-state complaints that arise due to educational institutions that conduct programs via the internet are principally handled in the state where the educational institution resides.[2] Because of this, Minnesota, as the site of the home state portal agency under SARA, has authority to resolve complaints from other SARA member states. For Capella, this means complaints from its students will principally be heard by the Minnesota Office of Higher Education.

## CAPELLA, ITS GROWTH AND FUNDING

41.     Capella was founded in 1991 as a Minnesota corporation.

42.     In 1993, Capella established a wholly-owned university subsidiary, then named The Graduate School of America, to offer doctoral and master's degrees through distance learning programs in management, education, human services and interdisciplinary studies.

43.     In 1995, Capella launched online doctoral and master's degree programs over the Internet.

44.     In 1997, Capella's university subsidiary received accreditation from the North Central Association of Colleges and Schools (later renamed The Higher Learning Commission).

---

[1] "The members of SARA are states, not institutions or students. Therefore, a state "joins" or becomes a "member" of SARA while a college or university "operates under" or "participates in" SARA." See, Basic Questions About SARA, available from: http://nc-sara.org/content/basic-questions-about-sara#who).

[2] SARA "[s]hifts principal oversight responsibilities from the state in which the distance education is being received to the 'home state' of the institution offering the instruction." Key Attributes of Sara, available from: http://nc-sara.org/about/key-attributes-sara.

45.     In 1998, Capella expanded its original portfolio of academic programs by introducing doctoral and master's degrees in psychology and a master of business administration degree.

46.     In 1999, to expand the reach of Capella's brand in anticipation of moving into the bachelor's degree market, Capella changed its name to Capella Education Company and the name of its university to Capella University.

47.     This helped Capella University, a for-profit corporation, seem like a legitimate educational institution.

48.     In 2004, Capella began offering four-year bachelor's degree programs in business and information technology.

49.     In November 2006, Capella completed an initial public offering, making it not only a for-profit company, but now a publicly traded company with stockholders to appease.

50.     Capella has continued to create new programs and specializations, including the launch of doctoral, master's and bachelor's level programs.

51.     Currently, Capella offers approximately 1,840 online courses, 48 academic programs, and 163 specializations.

52.     Capella offers a number of online, doctorate level degrees: Doctor of Philosophy in Human Services, Doctor of Philosophy in Public Safety, Doctor of Public Administration (DPA), Doctor of Social Work (DSW), Doctor of Health Administration (DHA), Doctor of Public Health (DrPH), Doctor of Nursing Practice (DNP), Doctor of Philosophy in Advanced Studies in Human Behavior, Doctor of Philosophy in Counselor Education and Supervision, Doctor of Philosophy in Psychology, Doctor of Psychology (PsyD), Doctor of Psychology (PsyD) in School Psychology, Doctor of Business Administration (DBA), Doctor of Philosophy in Information Technology,

9

Doctor of Philosophy in Business Management, Doctor of Education (EdD), Doctor of Philosophy in Education (PhD),

53.     Given the number of degrees offered and the large sums spent on marketing, enrollment at Capella has increased significantly over the last 15 years. In 2001, Capella had an enrollment of 3,759 students. On the last day of the quarter ended December 31, 2015, Cappella had 36,976 students.

54.     Of the approximately 36,000 students attending Capella on the last day of the quarter ended December 31, 2015, doctoral students made up 26.1%, or a total of 9,645 doctoral students.[3]

55.     Not surprisingly, the increased enrollment has led to a similar trajectory for Capella's profits. In 2007, Capella had profit of approximately $30,000,000.  In 2010, Capella's profit had more than tripled to approximately $95,000,000.

56.     The vast majority of Capella's revenue is derived from federally funded student loans. In 2010, 80.8% ($338,000,000) of Capella's revenue was derived from federal education funds.

57.     As a for-profit college, Capella devotes substantial portions of revenue to both marketing and profit. As of 2009, Capella spent approximately 29.8% of its revenue ($100,000,000) on marketing and recruitment of new students. Likewise, in 2009, Capella allocated approximately 19.1% of its revenue ($64,000,000) to profit. The amount that Capella spends on marketing and recruitment, as well as amounts allocated to profit, is higher than average for other for-profit colleges.[4]

---

[3] *See*, https://www.sec.gov/Archives/edgar/data/1104349/000110434916000042/form10-k2015.htm.
[4] Ex. A, U.S. Senate's report entitled "For Profit Higher Education: The Failure to Safeguard the Federal Investment and Ensure Student Success," Capella's Profile at 329 ("The percentage of revenue Capella allocates to marketing

58.     In just four years between 2006 and 2010, the profit generated by Capella increased by approximately $65,000,000 – from $30,000,000 to $95,000,000.

59.     In 2009, Capella spent only $1,650 per student on instruction compared to $4,538 per student on marketing. Even more striking, Capella realized $2,912 in profits per student. By way of comparison, the University of Minnesota spent $13,247 per student on instruction during the same time period.

60.     Capella appears to have an abysmal graduation rate for doctoral students; less than 10% of its doctoral student population graduates with a doctoral degree. For example, on March 31, 2011, Capella stated it had nearly 40,000 students, with 31% enrolled in doctoral programs. Ex. H, Capella Commencement News Release (2011). This equates to a yearly doctoral population of approximately 12,000. In its previous two graduation ceremonies (Aug. 2010; March 2011), Capella graduated only 1,109 doctoral students.[5] This corresponds to less than 10% of its yearly doctoral student population graduating per year (1,109/12,000 = 9.24%). Capella then is not in the business of graduating doctoral students, it is in the business of taking tuition from doctoral students knowing 90% of them will leave without a degree.

61.     Capella students carry some of the highest student loan debts in the country. A 2015 Brookings Institution study found that by 2014, students had accumulated over $8 billion in debt

exceeds the for-profit sector average by a considerable margin."), available from: https://www.help.senate.gov/imo/media/for_profit_report/PartII/Capella.pdf.

[5] 1,109 was calculated by counting the doctoral students listed in Capella's Aug. 2010 and March 2011 commencement programs. EdS students were not counted as the EdS degree is not a doctoral degree and upon information and belief is used as a consolation for doctoral students that do not complete a PhD in Education or EdD program. Commencement programs for August 2010 and March 2011 are available from: http://www.capella.edu/interactivemedia/Commencement/docs/Aug2010Commencement.pdf and http://www.capella.edu/interactivemedia/Commencement/docs/Mar2011Commencement.pdf. Commencement programs for the last 5-6 years were unavailable.

while at Capella. This was the fifth largest amount of debt out of the more than 3,000 schools in the report.

62.     Capella doctoral students (like all students) are required to pay back their student loan debt regardless as to whether they receive the degree they sought or not… and many do not.

63.     The problem, however, as described in United States Senate Report on For-Profit Universities is:

> [w]hile aggressive recruiting and high cost programs might be less problematic if students were receiving promised educational outcomes, committee staff analysis showed that tremendous numbers of students are leaving for-profit colleges without a degree.

Ex. A, at 324.

64.     According to the Senate's 2012 investigation of For Profit Colleges, in the 2008-2009 timeframe, 5,018 doctoral students enrolled at Capella.[6]

| Degree Level | Enrollment | Percent Completed | Percent Still Enrolled | Percent Withdrawn | Number Withdrawn |
|---|---|---|---|---|---|
| Bachelor's Degree | 5,602 | 1.4% | 38.3% | 60.3% | 3,378 |
| Masters | 11,867 | 3.5% | 52.1% | 44.3% | 5,262 |
| Doctorate | 5,018 | 0% | 58.0% | 42.0% | 2,107 |
| All Students | 22,487 | 2.2% | 50% | 47.8% | 10,747 |

*Id.* Senate Report on For-Profit Universities, Capella at 325.

65.     Furthermore, within two years, 42% of Capella's 2008-2009 enrollees had withdrawn without receiving a doctoral degree, despite committing countless hours and paying large sums of money (most likely via student loans) for tuition.

---

[6] Although unclear from the 2012 Senate Report, in the best light for Capella, it appears this information corresponds to students who newly enrolled in 2008 and 2009, given the 0% completion rate for doctoral students. If, however, this information corresponds to all doctoral students at Capella, then it had a 0% graduation rate for doctoral students.

**CAPELLAS' REPRESENTATIONS OF SHORTER TIMEFRAMES TO COMPLETE
DOCTORAL PROGRAMS HID FROM PLAINTIFFS AND THE CLASS THAT
CAPELLA'S DOCTORAL PROGRAMS WERE NEVER-ENDING**

66.     Through aggressive recruiting and marketing, Capella promises that obtaining a

doctoral degree is not only feasible, it is relatively inexpensive and quick.

67.     For example, in 2011 in what appears to be a form email sent to prospective PhD

students from recruiters, Capella stated:

> Our typical learner will complete their PhD program in 3 years, plus or minus one
> quarter, by averaging 2 courses per quarter.  Their weekly time investment to
> work at this pace is about 18-24 hours per week.

Ex. I, Capella Recruiter Email (April 2011).

68.     Despite this promise to prospective PhD students, there is no evidence that

Capella's "typical learner" completes their degree in three years/36 months with only 18-24 hours

of work per week. To the contrary, in 2015-2017, pursuant to Gainful Employment disclosures

newly required by the Department of Education, Capella admitted that its PhD programs were

"designed" to and did take considerably longer than three years. See, e.g., Group Ex. J (PhD in

Business "designed to take 60 months"); (PhD in Business Management ("designed to take 60

months"); (PhD in Counselor Education and Supervision "designed to take 81 months") (PhD in

Education "designed to take 84 months"); (PhD in Emergency Management is an 81 month

program); (PhD in Human Services "designed to take 84 months"); (PhD in Information

Technology "designed to take 75 months"); (PhD in Psychology "designed to take 84 months").

69.     Further, with an expected graduation rate likely under 10%, the "typical" Capella

student does not complete a PhD program in "three years"; rather, the typical Capella student is

forced to leave without a degree, tens-of-thousands-of-dollars in debt.

70. Capella's doctoral students beyond its PhD programs (e.g., EdD, DBA, DIT, DNP, etc.) were similarly promised relatively inexpensive and quick programs that later evidence shows were designed to take much longer.

71. For example, through recruiting and marketing, Capella uniformly promised prospective and current doctoral students that obtaining a Doctor of Nursing Practice ("DNP") from Capella would take two years.

72. In at least its 2015 and 2016 webpages for the DNP program actively marketed to entice prospective students to enroll, Capella stated the DNP was a two-year degree:

## The Most Direct Path to Your Doctoral Degree

Reach your goals faster. Capella provides three pathways to your DNP degree:

DNP Program: In just two years you can earn your DNP and prepare to manage complex health care challenges in a program that focuses on practical nursing rather than research and theory.

See, Ex. B, Archived Capella DNP Webpage.[7]

73. Further, as described below, recruiters from Capella's call center would tell prospective students that the DNP program was a two-year program.

74. Even after students enrolled, Capella would send materials re-enforcing its two-year promise. For example, Capella's "Doctor of Nursing Practice (DNP) Degree Program" a

---

[7] This DNP webpage for Capella marketed its program as a two-year program for at least 2015 and 2016. Such materials, however, were obtained from archive.org which is not a complete archive of all webpages or timeframes, so the full timespan that Capella made these misrepresentations (on this webpage of others) will need to be determined in discovery.

document sent to students upon enrollment[8] in the DNP program that reiterates the DNP program

is a two-year program, with "Year 1" and "Year 2" mapped out for students.

## Course Sequence

This course sequence assumes learners pursue a full-time course of study. Some learners may elect to take fewer courses per quarter based on workload and the amount of time available for graduate study.

| YEAR 1 | COURSES | | RESIDENCIES |
|--------|---------|---------|-------------|
| Q1 | DNP8000 | Theoretical Foundations and Applications | |
| | DNP8001 | DNP Field Experience 1* | |
| Q2 | DNP8002 | Contemporary Issues in Advanced Nursing Practice | |
| | DNP8003 | DNP Field Experience 2* | |
| Q3 | DNP8004 | Investigation, Discovery, and Integration | |
| | DNP8005 | DNP Field Experience 3* | |
| Q4 | DNP8006 | Policy and Advocacy in Advanced Nursing Practice | |
| | DNP8007 | DNP Field Experience 4* | |
| | DNP8008 | Executive Leadership and Ethics in Health Care | |
| | DNP8009 | DNP Field Experience 5* | |

| YEAR 2 | COURSES | | RESIDENCIES |
|--------|---------|---------|-------------|
| Q5 | DNP8010 | Management in Advanced Contemporary Nursing | |
| | DNP8011 | DNP Field Experience 6* | |
| | DNP8012 | Nursing Technology and Health Care Information Systems | |
| | DNP8013 | DNP Field Experience 7* | |
| Q6 | DNP8014 | Global Population Health | |
| | DNP8015 | DNP Field Experience 8* | |
| Q7 | DNP8016 | DNP Capstone 1 | |
| | DNP8017 | DNP Field Experience 9* | |
| Q8 | DNP8018 | DNP Capstone 2 | DNP-R8016 DNP Residential Colloquium† |
| | DNP8019 | DNP Field Experience 10* | |

Ex. C at 10.[9]

75.     Capella's repeated claims that the DNP program could be completed in "just two

years," are false.

---

[8] It appears this template document was used for marketing purposes and also sent to doctoral students after enrolling. Further, the identical-template-type document was used across multiple doctoral programs showing coordination of uniform promises across all Capella doctoral programs.

[9] The final page of this document confirms it was created and sent from Capella's headquarters in Minnesota.

76.     In December 2014, Capella admitted the DNP program was actually "designed to take 30 months," (Ex. D) although only 13% of the students that completed the program did so in 30 months.



With only 13% of students *that graduated* completed the program in 30 months, the other 87% of students *that graduated* take even longer. And with Capella's focus on *graduating* students, Capella is silent on the number of enrolled students who did not complete the program, meaning even the 13% number is higher than it should be.

77.     Despite the actual "design" of its DNP program, Capella misrepresented that its students could complete the program in "just two years" which according to its own facts would be the exception to the rule.

78.     Further, with a program lasting well over 30 months (again, for *graduates* only), the estimated tuition of $39,945 was also understated. Upon information and belief, the calculated

tuition would only reflect the 13% of students who graduated in 30 months … not the 87% of students that took longer or the students who were forced to unenroll with no degree.

79.     Remarkably, two years later, Capella updated this page to report a suspicious increase to an 84% graduation rate, though within a longer 39-month timespan.



Ex. E. While this jump in graduation rate is suspect, it still confirms that Capella's DNP program is not a two-year program.

80.     Similar false representations were made for Capella's PhD in Education and EdD programs.

81.     Capella's course materials and descriptions led Plaintiffs and members of the Class to believe they could complete a PhD in three years.

## Recommended Course Sequence

This recommended course sequence assumes learners transfer in 48 quarter credits of previous graduate course work and they take two courses per quarter. Some learners elect to take fewer or more based on workload and the amount of time available for graduate study. On-time completion for this specialization is 18 active quarters.

| YEAR 1 | COURSES | | RESIDENCIES |
|---|---|---|---|
| Q1 | ED8002 | Foundations of Theory and Practice in Doctoral Studies | |
| Q2 | ED7311 | Theory and Methods of Educating Adults | ED-R8921  PhD Colloquium Track 1 |
| | ED7314 | International and Multicultural Perspectives in Postsecondary and Adult Education | |
| Q3 | ED8112 | Educational Research Methods | |
| | ED7312 | Teaching Adults | |
| Q4 | ED7712 | Classroom Assessment in Education | ED-R8922  PhD Colloquium Track 2 |
| | ED8117 | Advanced Qualitative Research Methods | |

| YEAR 2 | COURSES | | RESIDENCIES |
|---|---|---|---|
| Q5 | ED7310 | Evaluating the Effectiveness of the Educational Process | |
| | ED7590 | Critical Thinking in Adult Education | |
| Q6 | ED8444 | Higher Education Curriculum Development and Teaching Strategies | |
| | ED7716 | Faculty Leadership | |
| Q7 | ED8122 | Statistics for Educational Research I | ED-R8923  PhD Colloquium Track 3 |
| Q8 | ED9919 | Doctoral Comprehensive Examination | |

| YEAR 3 | COURSES | | RESIDENCIES |
|---|---|---|---|
| Q9 | ED9919 | Doctoral Comprehensive Examination | |
| Q10 | ED9921 | Dissertation Research 1 | |
| | ED9920 | Dissertation Courseroom | |
| Q11 | ED9922 | Dissertation Research 2 | |
| | ED9923 | Dissertation Research 3 | |
| | ED9920 | Dissertation Courseroom | |
| Q12 | ED9924 | Dissertation Research 4 | |
| | ED9920 | Dissertation Courseroom | |

Ex. F, at 8.

82.     However, Capella disclosed in June 2017 that the program was actually designed to take 84 months.

18

**Capella University**
**Doctoral degree in PhD Education Instructional Design for Online Learning**
**Program Length: 84 months**

Print

**Students graduating on time**
**N/A\*** of Title IV students complete the program within 84 months ⓘ
*Fewer than 10 students enrolled in this program. This number has been withheld to preserve the confidentiality of the students.

**Program Costs\***
**$107,455** for tuition and fees
**$4,900** for books and supplies
**$34,350** for off-campus room and board
Other Costs
Visit website for more program cost information
*The amounts shown above include costs for the entire program, assuming normal time to completion.
Note that this information is subject to change.

**Students Borrowing Money**
**84%** of students who attend this program borrow money to pay for it ⓘ
**The typical graduate leaves with**
**N/A\*** in debt ⓘ
*Fewer than 10 students completed this program within normal time. This number has been withheld to preserve the confidentiality of the students.
**The typical monthly loan payment**
**N/A\*** per month in student loans with **N/A\*** interest rate. ⓘ
*Fewer than 10 students completed this program within normal time. This number has been withheld to preserve the confidentiality of the students.
**The typical graduate earns**
**$86,333** per year after leaving this program ⓘ

See, https://www.capellaresults.com/content/dam/vc/capella-results/gainful-employment/education/doctoral/PhD_Ed_IDOL_gedt.html, visited Jan. 11, 2018.

83.     Similarly, the capstone program for the EdD specializing in Adult Education  was also advertised as being able to complete in three years.

**EdD program**

Capella University's online EdD degree provides a structured doctoral program focused on practical knowledge and applied research that contributes to the solution of a recognized problem in the field. The curriculum was designed around the standards of a number of respected P–12 organizations and is aligned with the Competencies for Community College Leaders developed by the American Association of Community Colleges. The program is designed to be completed in less than 3 years, with all courses taken in sequence, allowing you to learn and build professional relationships with the same cohort of students. People likely to be interested in this degree program include higher education and P–12 administrators; higher education faculty and P–12 teachers transitioning to administrative or leadership positions; and government, corporate, and nonprofit leaders whose organization or position is focused on education. This degree program does not satisfy licensure requirements for P–12 public school teachers or administrators.

Ex. G.

84.     However, as with the PhD program, the EdD program was also designed to take much longer than advertised.  Plaintiffs were led to believe they would complete the program and graduate within three years (36 months).  However, Capella recently disclosed that the program was actually designed to take 45 months.  More egregiously, Capella admitted that fewer than 10 students over a period of two years were able to complete it even in this expanded time frame.[10] As of January, 2018, Capella's website stated:

---

[10] Gainful Employment disclosures do not need to disclose graduation timeframes if less than 10 students graduated within a two-year period. Capella sought to take advantage of this exemption by preparing Gainful Employment disclosures not by program, but rather by specialization. Because of this Capella does not disclose a graduation timeframe for many of its programs. Where it does, however, is telling. In its 2015-2016 EdD program with a specialization in Education and Leadership Management, Capella disclose that 0% of its students graduated within a three-year timeframe. Ex. M. In view of this, and upon information and belief, 0% of its students for *all* EdD programs, graduated in three years or less,

## Capella University
## Doctoral degree in Doctor of Education Adult Education
## Program Length: 45 months

Print

**Students graduating on time**
**N/A\*** of Title IV students complete the program within 45 months ⓘ
*Fewer than 10 students enrolled in this program. This number has been withheld to preserve the confidentiality of the students.

**Program Costs\***
**$42,140** for tuition and fees
**$2,940** for books and supplies
**$20,610** for off-campus room and board
Other Costs
Visit website for more program cost information
*The amounts shown above include costs for the entire program, assuming normal time to completion.
Note that this information is subject to change.

**Students Borrowing Money**
**78%** of students who attend this program borrow money to pay for it ⓘ
**The typical graduate leaves with**
**N/A\*** in debt ⓘ
*Fewer than 10 students completed this program within normal time. This number has been withheld to preserve the confidentiality of the students.
**The typical monthly loan payment**
**N/A\*** per month in student loans with **N/A\*** interest rate. ⓘ
*Fewer than 10 students completed this program within normal time. This number has been withheld to preserve the confidentiality of the students.
**The typical graduate earns**
**$75,800** per year after leaving this program ⓘ

**Graduates who got jobs**
**N/A\*** of program graduates got jobs
*We are not currently required to calculate a job placement rate for program completers.
**Program graduates are employed in the following fields:**
Adult Basic and Secondary Education and Literacy Teachers and Instructors
Self-Enrichment Education Teachers

**Licensure Requirements** ⓘ
*Program has no licensure requirements in any state.

Additional Information
Date Created 6/26/2017
These disclosures are required by the U.S. Department of Education

See https://www.capellaresults.com/content/dam/vc/capella-results/gainful-employment/education/doctoral/EdD_Adult_Ed_gedt.html, visited Jan. 11, 2018.

85.     Capella made similar false assertions for its other programs as well to induce students to enroll in their programs including misrepresenting shorter timelines. For example, Capella informed prospective students that its PhD in Business Management with a specialization in accounting would take three years if consecutive classes were taken.  However, Capella's recently published education outcomes for its PhD program for Business Management, with a specialization in Accounting, shows the timeline was *at least* 21 months longer than promised:



**Capella University**
Doctoral degree in PhD in Business Management Accounting
Program Length: 57 months

Print

**Students graduating on time**
N/A* of Title IV students complete the program within 57 months ⓘ
*Fewer than 10 students enrolled in this program. This number has been withheld to preserve the confidentiality of the students.

**Program Costs***
$76,319 for tuition and fees
$0 for books and supplies
Other Costs
Visit website for more program cost information
*The amounts shown above include costs for the entire program, assuming normal time to completion. Note that this information is subject to change.

See https://www.capellaresults.com/content/dam/vc/capella-results/gainful-employment/business/doctoral/PhD_Bs_Mgt_Accounting_gedt.html, last visited Aug. 16, 2018.

86.     As can be seen, false representations of how long each doctoral program would take were made to all Plaintiffs and members of the Class. And as shown in greater detail below, all Plaintiffs (and class members) were promised shorter timeframes to graduate than Capella's programs were designed to and did take.

22

87.     Capella has continued this conduct even into 2018. For example, Capella currently markets the PhD in Psychology with a specialization in Industrial/Organizational Psychology as requiring 15 quarters (3 years, 3 quarters) of work. Ex. K, PhD in Psych Industrial/Org. Psych disclosure at 11. However, in 2016, Capella admitted the program was "designed" to take 84 months…considerably longer than the 45 months it markets the degree as taking.



Ex. L, Gainful Employment disclosure, PhD Psych (Jan. 2016). Notably, Capella's 2016 disclosure (for this and other programs) with the much longer timeline appears to be no longer available on its website,[1] meaning such disclosures were only briefly available.[11]

88.     Upon information and belief, Capella similarly markets all of its PhD in Psych programs (indeed, all of its doctoral programs) in the same misleading manner.

### PLAINTIFF WRIGHT'S EXPERIENCE AT CAPELLA

89.     When Plaintiff Wright began looking at obtaining her DNP, it was imperative that she complete her degree within 2 years. Plaintiff Wright called many different schools that offered

---

[1] Most of the Gainful Employment disclosures provided in this Amended Complaint were found at archive.org and are no longer available from Capella's website.

[11] Most of the Gainful Employment disclosures provided in this Amended Complaint were found at archive.org and are no longer available from Capella's website.

DNP programs, and found Capella's was the quickest to completion at 2 years (the other schools were three years).

90.     On or about Dec. 2013, Plaintiff Wright spoke via telephone with Ben Groff, an enrollment counselor at Capella. Upon information and belief, Mr. Groff was located in a Capella call center in Minnesota. Mr. Groff confirmed the DNP was a  two-year program. After speaking, Mr. Groff and/or Capella emailed Plaintiff Wright materials which included a  two-year timeline for program completion. Upon information and belief, these materials were created in Minnesota.

91.     Plaintiff Wright chose to enroll in Capella's DNP program because of Capella's two-year promise to completion. Plaintiff Wright's father was a sixth-grade graduate, who could not read or write, and had been diagnosed with bone cancer. It was important for Plaintiff Wright when she enrolled to be able to complete her degree within the promised timeframe so her father could see her graduate.

92.     Plaintiff Wright enrolled in the DNP program at Capella and began her classes in the Spring Quarter of 2014.

93.     When enrolling, she relied upon Capella's promises that the DNP program was a two-year program. In fact, this was the reason she chose Capella over other schools that offered DNP programs.

94.     While attending, she took five course classes (receiving an A in each) and five DNP Practice Immersion classes earning a grade of S for satisfactory in each (the highest grade allowed).

95.     For all of the quarters she attended, Plaintiff Wright paid about $53,000.

96.     Well into her DNP project, Capella changed Plaintiff Wright's instructor, and although her DNP project had been approved for over a year, her new instructor informed her she would "have to start over." This was devastating to Plaintiff Wright as 1) her DNP project was

previously approved by her prior instructor (Dr. Bressie) who previously called it a "great project," 2) her DNP project was already researched and 3) her preceptor hours were completed.

97.     After receiving this news, Plaintiff Wright emailed a letter to Capella explaining her situation.

> After many hours of research, meetings, calls, papers, notes and even interviews I am being told the college will not allow me to continue with this topic. Not only have I been told this today, but every term has been changed somehow leaving me with the lack of understanding of what is due, what needs to be done, changes in forms I must now use and even the fact that I might be dropped from the program if I obtain an unsatisfactory in 2 of the classes. Know when I enrolled I had enrolled under other expectations and now they are changing leading me to possible program failure. Why was I not grandfathered in? I have worked extremely hard given the circumstances and now I am faced with starting from square 1 when I should be heading towards the end of the program. Thousands of dollars have been spent on this program and now I am looking at thousands more only if I can start over and find a project to do which may be acceptable, make the extremely hard timeline set up for me, obtain a new preceptor, do extensive research, compile evidence, complete the smart form by the end of the term and be able to go forward next semester.

98.     After Plaintiff Wright expressed concern about this change, Capella falsely alleged that Plaintiff Wright forged her preceptor's signature. Despite Plaintiff Wright providing proof that Capella's accusations were false (including a letter from her preceptor-physician and an actual script from the physician showing her signature), Capella ignored such evidence. Upon information and belief, Capella created these false accusations to retaliate against Plaintiff Wright.

99.     Rather than restart her DNP project and continue at a now-hostile school, Plaintiff Wright unenrolled and transferred to another school. At the time she unenrolled, she was a straight-A student.

100.     Despite being promised it would take two years to complete her degree, at the time she unenrolled from Capella, she was not near completion. Plaintiff Wright estimates it would have taken her at least another year to complete her program.

101.    Unfortunately, Plaintiff Wright's father passed away on February 11, 2018, without seeing his daughter graduate with her doctoral degree. Had Capella complied with its two-year promise (or actually offered a two-year program), Plaintiff Wright would have graduated within the promised time frame, and her father would have seen his daughter obtain a doctoral degree. Capella's falsely representing a significantly-longer, DNP program as a two-year program deprived Plaintiff Wright from this opportunity.

102.    Had Plaintiff Wright been made aware of Capella's abysmally low completion rate, she would not have enrolled in the doctoral program or paid the tuition, supply costs, and other fees charged by Capella, or incurred student loans. Further, had Capella not misrepresented the timeline, costs, hurdles to obtaining a doctoral degree, or had it actually disclosed its true scheme, Plaintiff Wright would not have agreed to pay for the educational services offered by Capella.

103.    Capella has intentionally and unjustly prolonged Plaintiff Wright's work toward her doctoral degree and extracted extra tuition payments and costs from her for coursework that would never have been necessary but for Capella's scheme to generate additional tuition revenue. As a result of the scheme, Plaintiff Wright had to withdraw, knowing that to complete the educational process, at a minimum, would require more time and more tuition payments beyond what she had reasonably anticipated she would have had Capella not engaged in its illegal conduct.

**PLAINTIFF KENNEDY'S EXPERIENCE AT CAPELLA**

104.    In 2013, Plaintiff Kennedy began researching schools that offered advanced degrees in education and was considering pursuing either a PhD or EdD degree.

105.    She spoke with two recruiters or advisors by telephone (Anne Hile and Mary Shustarich) to discuss the programs and the time required to complete her degree. Upon information and belief, Ms. Hile and Ms. Shustarich were located in a Capella call center in

Minnesota. Plaintiff Kennedy was told that the EdD program would approximately take 3 years (for the Capstone which is intended to an accelerated program) and that the total cost would be no more than $50,000 by graduation.

106.    In order to entice her to select Capella, she was told that the cost to obtain the same degree at other Universities would be twice that as Capella.  She was essentially told that she would save money and graduate in much shorter time frame at Capella, and that she could expect to graduate in the summer of 2017.

107.    Plaintiff Kennedy enrolled in her program in late 2013 or early 2014, and began her studies in the winter quarter (February) of 2014.   She successfully completed all required coursework with an A grade point average.

108.    Plaintiff Kennedy began working on her dissertation in the winter quarter of 2016-17, continuing with spring 2017, summer 2017, into fall 2017.  Due to continued delays in her dissertation progress and continually mounting student loan debt, Plaintiff Kennedy withdrew from Capella.

109.    As of now, Plaintiff Kennedy paid well over $100,000.00 for her time at Capella working on her degree. Despite being promised it would take three years, at the time she stopped enrolling at Capella, she was still only 1/5 of the way towards completion of her dissertation.

110.    Had Plaintiff Kennedy been made aware of Capella's low completion rate, she would not have enrolled in the doctoral program or paid the tuition, supply costs and other fees charged by Capella, or incurred student loans. Further, had Capella not misrepresented the timeline, costs, and undisclosed hurdles she would face in obtaining her degree or had it actually disclosed its true scheme, Plaintiff Kennedy would not have agreed to pay for the educational services offered by Capella.

27

111.    Capella has intentionally and unjustly prolonged Plaintiff Kennedy's work toward her doctoral degree and extracted extra tuition payments from her for coursework that would never have been necessary but for Capella's scheme to generate additional tuition revenue. As a result of the scheme, Plaintiff Wright had to withdraw, knowing that to complete the educational process, at a minimum, would require more time and more tuition payments beyond what she had reasonably anticipated she would have had Capella not engaged in its illegal conduct.

## PLAINTIFF BRANNEN'S EXPERIENCE AT CAPELLA

112.    Like Plaintiff Kennedy, Plaintiff Brannen was an EdD student at Capella. Plaintiff Brannen specialized in Educational Leadership and Management.

113.    Plaintiff Brannen began her studies at Capella during the fall quarter of 2014.

114.    While at Capella, Plaintiff Brannen received straight "As" in her coursework, and "S" grades in her dissertation (the highest grade one can receive in the dissertation process).

115.    Plaintiff Brannen participated in the March 2018 commencement (with honors), however has yet to have her degree conferred due to additional delays in final approval of her dissertation as discussed below.

116.    Prior to enrolling at Capella, Plaintiff Brannen was told that if she enrolled in consecutive quarters she would graduate by July 2017 (within three years). Plaintiff Brannen relied upon this representation when enrolling at Capella and while re-enrolling each quarter.

117.    Plaintiff Brannen's faculty repeated this representation throughout her time at Capella, and again, Plaintiff Brannen relied upon these representations while re-enrolling each quarter.

118.    Beyond the above, a three-year representation about the length of the EdD program is commonly made at Capella. See, Ex. G ("The program is designed to be completed in less than 3 years…").

119.    These representations were false. Shockingly in 2015, Capella admitted that while Plaintiff Brannen's EdD program was allegedly designed to take three years, 0% of its students graduated within that timeframe.



Ex. M, EdD/Educational Leadership and Mgmt. Gainful Employment Disclosure (Dec. 2015). Obviously, a statement that its program would take three-years when 0% of its students graduated within that timeframe *over a two-year period* cannot have been made in good faith.

120.    While at Capella, Plaintiff Brannen encountered numerous difficulties, including dissertation committee turnover, repeated delays, and inconsistent feedback and instructions.

121.    Like other Capella doctoral students, Plaintiff Brannen suffered turnover on her dissertation committee. For example, Plaintiff Brannen had concerns with one of her committee members: her mentor Dr. Barron. Her concerns with Dr. Barron were so numerous, she expressed them to Capella, including via email to Dr. Jake Smothers where she stated:

>    Attached is my initial correspondence with Dr. Barron. I tried to pose questions that were as specific as possible, but I feel like I continue to get vague responses. I will assume from the response that the PPT is acceptable, and that I need to add the topics she posed, and I will simply continue to add depth and breadth to the deliverable.

Ex. N, Brannen to Smothers email (July 2017).

122.    Just over two weeks after sending this email, and without warning, Capella informed Plaintiff Brannen that her mentor Dr. Barron was "no longer with the University," and replaced her with another mentor. Ex. O, Kays to Brannen email (Aug. 2017).

123.    Despite the lost time with Dr. Barron (for which Plaintiff Brannen paid tuition) and the time required for her new mentor to get up to speed (again for which Plaintiff Brannen paid tuition), Plaintiff Brannen was not offered a refund for any tuition.

124.    Even after Dr. Barron was replaced, her frustrations with the delays in Capella's dissertation process continued. In May 2018, she again raised her concerns to Capella's attention.

> It appears there are significant delays with feedback from DSC for MS 5 learners – one of my peers reports a delay up to 5 weeks, which is half the quarter. I experienced a delay last quarter, but finally received the information during the break. I am in the queue, and although I am confident that my mentor, Dr. Johnson, is doing everything he can do to expedite the matter, I am concerned that these significant delays will tip us into, yet, another quarter of tuition.

Ex. BB at 1, Brannen to Smothers email (May 2018).

125.    In June 2018, Plaintiff Brannen explained to Capella that she and other doctoral students were the victims of such delays as they continued paying tuition despite the fact Capella created such delays.

> I do understand the requirements. However, as learners continue to accept delays on the part of the program that result in unnecessary registration for courses and charges in tuition, it is only reasonable for the school to meet the learners in-kind in some way to offset the charges.

*Id.* at 3.

126.    Despite the many delays caused by Capella, Plaintiff Brannen was not refunded any tuition.

127.    Plaintiff Brannen completed every assignment in every course without interruption or delay, evidenced by her 4.0 GPA and President's List awards.

128.    Despite timely meeting all her assignments and goals, and only through delays caused by Capella, she spent multiple extra terms at Capella beyond what was represented.

129.    Further, while being allowed to participate in March 2018 commencement, she has yet to receive her degree (recently she received "Approval with Corrections" which has added *yet another* step to her dissertation process requiring additional time and tuition).

130.    Plaintiff Brannen's receipt of only "As" in her coursework and "S" grades in the dissertation process is an admission that she met all of Capella's requirements and that all delays were due to Capella's actions, or lack thereof.

131.    Capella intentionally and unjustly prolonged Plaintiff Brannen's work toward her doctoral degree and extracted extra tuition payments, costs, and student loans from her for coursework that would never have been necessary but for Capella's scheme to generate additional tuition revenue.

132.    Despite being promised she would graduate in the summer of 2017, Plaintiff Brannen was required to enroll in and pay for additional quarters solely due to Capella's actions (or lack thereof) and scheme.

133.    Capella's admission that 0% of its students in Plaintiff Brannen's specialization graduated within three years further confirms this program *is not* a 3-5-quarter doctoral capstone/dissertation or a 3-year degree program. Ex. M.

134.    Further, as described above, despite the promise she would graduate in three years Capella recently disclosed that the EdD program was allegedly "designed" to and does take 45 months (although the 45 months disclosure is dubious as 1) less than 10 students in the previous

31

two years graduated, and 2) it only refers to students *who graduated* which may be less than 10% of the student population).

135.    Had Capella not misrepresented the timeline, costs, hurdles to obtaining a doctoral degree, or had it disclosed its true scheme, Plaintiff Brannen would not have enrolled at Capella or paid for the educational services offered by Capella, including incurring student loans.

136.    Had Plaintiff Brannen been made aware of Capella's abysmally low completion rate, she would not have enrolled in the doctoral program or paid the tuition, supply costs, and other fees charged by Capella, or incurred student loans.

## PLAINTIFF MATELSKI'S TIME AT CAPELLA

137.    Plaintiff Matelski was an EdD student at Capella from 2013-2018 specializing in Educational Leadership and Management.

138.    Prior to her enrollment at Capella, Plaintiff Matelski was told by an advisor (whose name she cannot recall, however Capella should still have records of such discussions) that the doctoral capstone/dissertation process would take only three to five quarters. This would correspond to being able to graduate within three years.

139.    Plaintiff Matelski was also told via email that the doctoral capstone/dissertation process would take four-six classes via email. This also corresponds to a three-year program.

140.    As discussed above, representations the length of the EdD program is three years is commonly made at Capella. See, Ex. G ("The program is designed to be completed in less than 3 years…").

141.    Plaintiff Matelski relied upon these representations when enrolling at Capella, and when re-enrolling each term.

142.    These representations were false. As discussed above for Plaintiff Brannen, in 2015-2016, Capella admitted that while the EdD program was designed to take three years, 0% of its students graduated within that timeframe.

> **How long will it take me to complete this program?**
>
> **The program is designed to take 36 months to complete. Of those that completed the program in 2014-2015, 0% finished in 36 months.**

Ex. M. Again, a statement that its program would take three-years when 0% of its students graduated within that timeframe *over a two-year period* cannot have been made in good faith.

143.    During her coursework at Capella, Plaintiff Matelski only received "As" and "Bs."

144.    Similarly, for her doctoral capstone/dissertation classes she received only grades of "S," which is the highest grade a student can receive during the doctoral capstone/dissertation process.

145.    Despite the promise of 3-5 courses, she is now in her 12th doctoral capstone/dissertation process, all through the fault of Capella.

146.    During her time in the doctoral capstone/dissertation process, Plaintiff Matelski suffered many delays, received inconsistent feedback and instructions, and was guided incorrectly by her doctoral capstone/dissertation committee.

147.    For example, despite multiple submissions of her doctoral capstone/dissertation since 2015 with no objections concerning the format of her doctoral capstone/dissertation, it was not until winter/spring 2017 she was told her document was formatted incorrectly and needed to be overhauled to a "monograph" format. Because of this new requirement, Plaintiff Matelski lost

33

time due to all prior submissions (approving her format by not raising the issue) and additional time in which she revised her doctoral capstone/dissertation to comply with her committee's inconsistent instructions.

148.    This change required multiple additional doctoral capstone/dissertation classes through no fault of her own.

149.    Similarly, inconsistent input was given by her committee members. For example, in 2015 one of her committee members told Plaintiff Matelski that her deliverable should be a called a "handbook." In 2016 another committee member inconsistently required her to change the "handbook" designation to a "process." Then, in 2017, a new committee member required Plaintiff Matelski to once again refer to her deliverable as a "handbook." All these changes required additional time in the program and tuition payments.

150.    Further, Plaintiff Matelski's doctoral capstone/dissertation committee's turnaround time (in particular Dr. Frances Dolley and Dr. Linda Ruhe Marsh) on reviewing materials exceeded the time periods proscribed by Capella, again, resulting in additional time in the doctoral capstone/dissertation process and tuition spent at Capella.

151.    Plaintiff Matelski's doctoral capstone/dissertation committee also continued promising she was on track to graduate earlier than she did (*e.g.,* Dr. Dolley informed Plaintiff Matelski in January 2017 that she was on track to graduate in the Atlanta graduation ceremonies in March 2017), but then required additional inconsistent changes which pushed Plaintiff Matelski into additional semesters.

152.    Plaintiff Matelski raised the numerous delays, inconsistent instruction, and incorrect guidance from her doctoral capstone/dissertation committee to Capella faculty member Linda Ronalds. Ex. Q, Matelski/Ronalds email exchange (May 2018). Plaintiff Matelski also

informed Ronalds that her doctoral capstone/dissertation process was taking longer than the four to five quarters promised. *Id.*

153.    In response, Ronalds confirmed the estimate of time to complete the doctoral capstone/dissertation process was "3-5 quarters." *Id.*

154.    Plaintiff Matelski's time at Capella show there is no support for a 3-5 quarter/3-year doctoral capstone/dissertation process due to inconsistent instruction, delays, and incorrect guidance.

155.    Further, Capella's admission that 0% of its students in Plaintiff Matelski's specialization graduated within three years further confirms this program *is not* a 3-5-quarter doctoral capstone/dissertation or a 3-year degree program. Ex. M.

156.    Additionally, and as also discussed above, Capella's more recent disclosures state the EdD program takes "45 months," which would require multiple additional doctoral capstone/dissertation classes beyond the 3-5 quarter estimated and a timeframe beyond three years.

157.    However, even Capella's 45-month representation is dubious and likely underestimates the EdD programs' actual times to completion as this webpage 1) states "Fewer than 10 students completed this program," over a two-year period, so "45 months" cannot be a good faith representation of the actual length of the EdD program and 2) refers only to students *who graduated* which may be less than 10% of the student population.

158.    Plaintiff Matelski's receipt of only "S" grades in the doctoral capstone/dissertation process is an admission that she met all of Capella's requirements and that all delays in the process were due to Capella's actions.

159.     Had Capella not misrepresented the timeline, costs, hurdles to obtaining a doctoral degree, or had it disclosed its true scheme, Plaintiff Matelski would not have enrolled at Capella or paid for the educational services offered by Capella, including incurring student loans.

160.     Had Plaintiff Matelski been made aware of Capella's abysmally low completion rate or that less than 10 students graduated from this program over a two-year period, she would not have enrolled in the doctoral program or paid the tuition, supply costs, and other fees charged by Capella, or incurred student loans.

## PLAINTIFF MASON'S TIME AT CAPELLA

161.     Plaintiff Lois Mason is a Doctor of Information Technology student at Capella. She enrolled in 2016.

162.     Prior to enrolling at Capella, Anne Hile, admissions counselor at Capella, represented to Plaintiff Mason in what appears to be a form email sent to other prospective doctoral students that the DIT program 1) is a "three year program," 2) the average student graduates in four years,[12] but 3) it would take her just 2.5 years to complete.

 **Time to completion**

· PhD can take anywhere from 3.5 to 5.5 years to complete; 4 is average

· DIT is a structured three year program; 2.5 years with transfer credit for you

Ex. P, Capella Recruiter email (Aug. 2015).

163.     Despite this promise, in January 2016, Capella admitted "Fewer than 10 students completed this program in 2014-2015."

---

[12] Notably, Capella's admissions counselor also represented that the "average" is 4 years to complete a PhD. Considering less than 10% of Capella students graduate,4 years to graduate is the exception to the rule…not the average.



Ex. R, DIT Gainful Employment Disclosure (Jan. 2016).

164.    Capella's representation that the program was "designed to take 39 months" is dubious as this webpage 1) states "Fewer than 10 students completed this program in 2014-2015" over a two-year period so "39 months" cannot be a good faith representation of the actual length of the DIT program and 2) refers only to students who graduated which may be less than 10% of the student population.

165.    During her time at Capella, Plaintiff Mason received all "As" in her coursework, maintaining a 4.0 GPA.

166.    Plaintiff Mason also received only grades of "S" for her dissertation work, the highest grade one can receive in the dissertation process.

167.    Plaintiff Mason's receipt of only "S" grades in the dissertation process is an admission that she met all of Capella's requirements and all delays in the process were due to Capella's actions.

168.     Like with other Capella doctoral students, Plaintiff Mason suffered through numerous delays, inconsistent instructions from her dissertation committee, and incorrect guidance.

169.     For example, during her seventh quarter in the program, Plaintiff Mason's mentor (chair) was not timely responding, resulted in Plaintiff Mason's deliverables not being completed. Apparently, Plaintiff Mason's mentor (chair) was undergoing a medical issue to which Capella either was unaware or ignored. This resulted in wasted time and tuition by Plaintiff Mason, through no fault of her own.

170.     Plaintiff Mason raised this issue with Capella multiple times, stating on March 14, 2016:

> I just spoke to my mentor and he still has not submitted my material to them due to health issues he is having. I am concerned that I am going to be penalized for not completing my milestone when I have submitted everything and have been waiting for another committee member to review it.

Ex. S, Mason to Marshall email (March 2018). Plaintiff Mason again raised the issue on March 16, 2016, highlighting that she was being penalized through no fault of her own.

> Unfortunately, [My mentor Dr. Timothy Shimeall] has been less responsive this term and he indicated to me when I last spoke with him that he is experiencing debilitating medical issues.
>
> …
>
> The DIT advisor, Katie Marshall, is telling me that I will likely be put into a remediation class because my draft has not been approved. This is not an acceptable resolution in my eyes. I am being penalized for an issue that is not within my control.

Ex. T, Mason to Pandya email (March 2018).

38

171.    Finally, on April 3, 2018, Dr. Shimeall confirmed the situation was solely due to Capella's actions.

> I am NOT willing to see you penalized due to my health issue, and am willing to do what I can to fight any such penalization.

Ex. U, Shimeall to Mason email (April 2018). Despite this, Plaintiff Mason was required to work for three weeks during the break between quarters to ensure her work was completed to minimize additional time in the dissertation process.

172.    Due to the delays, inconsistent instructions and feedback, and incorrect instructions, Plaintiff Mason spent extra time and tuition in her doctoral program.

173.    Had Capella not misrepresented the timeline, costs, hurdles to obtaining a doctoral degree, or had it disclosed its true scheme, Plaintiff Mason would not have enrolled at Capella or paid for the educational services offered by Capella, including incurring student loans.

174.    Had Plaintiff Mason been made aware of Capella's abysmally low completion rate or that less than 10 students graduated from this program over a two-year period, she would not have enrolled in the doctoral program or paid the tuition, supply costs, and other fees charged by Capella, or incurred student loans.

**PLAINTIFF NORRIS'S TIME AT CAPELLA**

175.    Plaintiff Candace Norris was a DBA student, specializing in Strategy and Innovation.

176.    Prior to Plaintiff Norris's enrollment at Capella, in Dec. 2012, she spoke with Shelby Molina, recruiter for Capella. Molina assured Plaintiff Norris that she was enrolling in a 3-year program and that it was possible to finish in just 2 ½ years.

39

177.    Plaintiff Norris relied upon these representations when enrolling at Capella and each term when re-enrolling.

178.    Plaintiff Norris's dissertation committee members including her first mentor and Dr. Crystal Neumann also represented to Plaintiff Norris that she could complete her degree within three years.

179.    These statements, however, were false.

180.    Capella recently admitted that Plaintiff Norris's program was "designed to take 45 months," and not the 2 ½-3 years she was promised.



Ex. V, DBA Gainful Employment Disclosure (Dec. 2015). A representation that a program "designed to take 45 months" should be completed in 2 ½-3 years is not a good faith representation.

181.    Capella's "designed to take 45 months" representation is also dubious as this webpage states 48% of the students "that completed the program" did so in 45 months. *Id.* Considering it is likely that less than 10% of the student population graduates (meaning here that

less than 4.8% of the students in this DBA program graduated within 45 months or less), the program is "designed" to take much longer than 45 months.

182.    As can be predicted from such a misrepresentation, during the dissertation process, Plaintiff Norris was subject to numerous delays, inconsistent feedback and instruction, and incorrect guidance.

183.    For example, Dr. Neumann delayed Plaintiff Norris's dissertation process by providing inconsistent feedback and failing to respond in the timely manner required by Capella.

184.    Due to the delays, inconsistent instructions and feedback, and incorrect guidance, Plaintiff Norris spent extra time and tuition in her doctoral program.

185.    Because of these delays, Plaintiff Norris was forced to unenroll from Capella in 2017.

186.    Had Capella not misrepresented the timeline, costs, hurdles to obtaining a doctoral degree, or had it disclosed its true scheme, Plaintiff Norris would not have enrolled at Capella or paid for the educational services offered by Capella, including incurring student loans.

187.    Had Plaintiff Norris been made aware of Capella's abysmally low completion rate she would not have enrolled in the doctoral program or paid the tuition, supply costs, and other fees charged by Capella, or incurred student loans.

### PLAINTIFF MAURICE JOSE ORNELAS'S TIME AT CAPELLA

188.    Plaintiff Ornelas was an PhD in Public Safety student, specializing in Criminal Justice. Plaintiff Ornelas attended Capella from 2012 to 2016.

189.    On April 12, 2011, prior to his enrollment, Plaintiff Ornelas received an email from a Capella recruiter stating:

> Our typical learner will complete their PhD program in 3 years, plus or minus one quarter, by averaging 2 courses per quarter. Their weekly time investment to work at this pace is about 18-24 hours per week.

Ex. I. This email appears to be a form email sent to other prospective Capella students.

190.    Later, a Capella advisor reinforced this timeline to Plaintiff Ornelas.

191.    Plaintiff Ornelas relied upon this representation when enrolling at Capella, and when re-enrolling each term.

192.    Attached to this same email was a Capella document for the Criminal Justice specialization which provided a 4.5-year course sequence. Ex. W, Criminal Justice disclosure at 9.

193.    Both representations were false.

194.    In 2016, Capella admitted that the Criminal Justice specialization for the PhD in Public Safety was a 75-month program—not a 3-year (36 month) or even a 4 ½-year (54 month) program. Ex. X, Criminal Justice Gainful Employment disclosure (Jan. 2016).

195.    During his coursework at Capella, Plaintiff Ornelas only received As.

196.    Despite the promise that the "typical" student completes his or her PhD in three-years, Plaintiff Ornelas was forced to withdraw without receiving his doctoral degree.

197.    During his time in the dissertation process, Plaintiff Ornelas suffered many delays, received inconsistent feedback and instructions, and was guided incorrectly by his doctoral capstone/dissertation committee.

198.    For example, Plaintiff Ornelas had turnover on his dissertation committee.

199.    First his program chair Dr. Steve Bathelmeus left and was replaced by Dr. Michael Kemp. His mentor Dr. M. Lim also left and was replaced by Dr. Jeffrey Fox.

200.    This turnover in his dissertation process led to delays.

201. Further, after he was assigned to Plaintiff Ornelas, Dr. Fox threatened to quit as mentor because Dr. Fox did not support Plaintiff Ornelas's dissertation proposal topic which was previously approved by prior dissertation committee members. This required Plaintiff Ornelas to start the dissertation process over.

202. Plaintiff Ornelas' grades in the doctoral capstone/dissertation process are admissions that he met all of Capella's requirements and that all delays in the process were due to Capella's actions.

203. Had Capella not misrepresented the timeline, costs, hurdles to obtaining a doctoral degree, or had it disclosed its true scheme, Plaintiff Ornelas would not have enrolled at Capella or paid for the educational services offered by Capella, including incurring student loans.

204. Had Plaintiff Ornelas been made aware of Capella's abysmally low completion rate, he would not have enrolled in the doctoral program or paid the tuition, supply costs, and other fees charged by Capella, or incurred student loans.

## PLAINTIFF CARTER'S EXPERIENCE AT CAPELLA

205. Plaintiff Carter was Doctor of Social Work ("DSW") student at Capella specializing in General Social Work.

206. Plaintiff Carter began her studies at Capella during the Fall quarter of 2015.

207. While at Capella, Plaintiff Carter attended 10 quarters, receiving a 3.875 GPA. However, she withdrew on Aug. 3, 2018.

208. Prior to Plaintiff Carter's enrollment at Capella, Lead Enrollment Counselor Kim Finstad explained to Plaintiff Carter that the DSW program was a three-year program:

> This DSW is designed to be completed in three years, with all courses taken in sequence, allowing you to learn and build professional relationships with the same cohort of students.

43

Ex. Y, K.Finstad to K.Carter email (Sept. 2015). The signature block of this email confirms it came from Capella Tower in Minneapolis. Further, this email appears to be a uniform email sent to all prospective DSW students.

209. Beyond this email, Plaintiff Carter received materials about the DSW program from Capella which outlined a "Course Sequence" confirming it would only take 3 years and 1 quarter to complete the DSW program. Ex. Z, Capella DSW-General Social Work disclosure at 7. The final page of this document confirms it was created and sent from Capella Tower in Minneapolis. *Id.* at 10.

210. Plaintiff Carter was also told she would meet all her requirements necessary for graduation by Sept. 2018.

211. Plaintiff Carter relied on these promises when she enrolled at Capella, and when re-enrolling each semester.

212. Months after Plaintiff Carter's enrollment, Capella admitted that its promises about the length of the DSW program were false. Instead of a 3-year program (or even a 3-year, 1-quarter program), Capella admitted that the DSW program was "designed to take 42 months"—a timeframe longer than all materials provided to not only Plaintiff Carter, but other prospective DSW students.



Ex. AA, DSW Gainful Employment Disclosure (Jan. 2016). Worse, of the students that graduated, only 19% finished the program within 42 months, meaning 81% of graduates in the program took considerably longer than 3 years to complete their degree. *Id.* This statistic is even worse considering likely less than 10% of Capella's doctoral student population graduates (in other word, likely only 1.9% of Capella's doctoral students graduated in 42 months or less, leaving open the question if any DSW students graduated within three years).

213.    Prior to beginning the of dissertation process, Plaintiff Carter received all "As" and one B in her coursework.

214.    When Plaintiff Carter began working on her dissertation, she learned that despite timely meeting all her assignments and goals the dissertation process would likely take her an additional three years to complete. This was due to Capella changing how it organized classes, and not through any fault of Plaintiff. As this new timeline did not meet what was promised (indeed, it far exceeded), Plaintiff Carter unenrolled rather than waste additional time and money at Capella.

215.    To attend Capella, Plaintiff Carter had to take student loans, which are now valued at approximately $60,000. In contrast to being told the program would cost her no more than

$52,000 to complete, she left without a degree, and estimates it would have required her three additional years (at over $60,000) to complete her degree.

216.    Capella intentionally and unjustly prolonged Plaintiff Carter's work toward her doctoral degree and extracted extra tuition payments, costs, and student loans from her for coursework that would never have been necessary but for Capella's scheme to generate additional tuition revenue.

217.    Had Capella not misrepresented the timeline, costs, hurdles to obtaining a doctoral degree, or had it disclosed its true scheme, Plaintiff Carter would not have enrolled at Capella or paid for the educational services offered by Capella, including incurring student loans.

218.    Had Plaintiff Carter been made aware of Capella's abysmally low completion rate, she would not have enrolled in the doctoral program or paid the tuition, supply costs, and other fees charged by Capella, or incurred student loans.

## PLAINTIFF GOLDSTEIN'S EXPERIENCE AT CAPELLA

219.    Plaintiff Goldstein was pursing his PhD in Business Management, with a specialization in Accounting.

220.    Prior to enrolling at Capella, Plaintiff Goldstein was told that if he enrolled in consecutive quarters he would graduate by July 2018 (within three years).  Plaintiff Goldstein relied upon this representation when enrolling at Capella and while re-enrolling each quarter.

221.    Plaintiff Goldstein's faculty repeated this representation throughout his time at Capella, and again, Plaintiff Goldstein relied upon these representations while re-enrolling each quarter.

222.    While at Capella, Plaintiff Goldstein maintained a 4.0 GPA for his coursework, and has received "S" grades (the highest grade possible) during the dissertation process.

46

223.    Plaintiff Goldstein completed every assignment in every course without interruption or delay.

224.    On or around August 2, 2017, Plaintiff Goldstein achieved Milestone 6, Institutional Review Board Approval of his dissertation topic, with minimal feedback from his original mentor.

225.    Despite being told numerous times he could complete his dissertation by the summer of 2018, timely meeting all his assignments and goals, and having his research topic and dissertation theme approved by his mentors and dissertation committee, Plaintiff Goldstein was eventually told he would either have to voluntarily withdraw from the program or restart the entire dissertation process from the beginning.

226.    Plaintiff Goldstein has continued to experience numerous difficulties with his dissertation process, including being reassigned mentors twice, dissertation committee turnover, repeated delays, and inconsistent feedback and instructions.

227.    Despite the lost time due to new mentors and committee members (for which Plaintiff Goldstein paid tuition) and the time required for his new mentors to get up to speed (again for which Plaintiff Goldstein paid tuition), Plaintiff Goldstein was not offered a refund for any tuition.

228.    Capella intentionally and unjustly prolonged Plaintiff Goldstein's work toward his doctoral degree and extracted extra tuition payments, costs, and student loans from his for coursework that would never have been necessary but for Capella's scheme to generate additional tuition revenue.

229.    Had Capella not misrepresented the timeline, costs, hurdles to obtaining a doctoral degree, or had it disclosed its true scheme, Plaintiff Goldstein would not have enrolled at Capella or paid for the educational services offered by Capella.

230.    Had Plaintiff Goldstein been made aware of Capella's abysmally low completion rate, he would not have enrolled in the doctoral program or paid the tuition, supply costs, and other fees charged by Capella, or incurred student loans.

## CLASS ACTION ALLEGATIONS

231.    The experiences of Plaintiffs at Capella were substantially similar to those experienced by all members of the Class attempting to navigate the process across Capella's doctoral degree programs.

232.    Plaintiffs request the Court certify this lawsuit as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

233.    Plaintiffs bring this case as a class action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3), on behalf of a nationwide Class under Minnesota law defined as follows:

> All current or former students within the United States who enrolled in and paid tuition for a doctoral degree program at Capella University from 2006 until the present and did not receive full reimbursement for tuition, costs and student loans from Defendants (the "Class").

Excluded from the Class are: (i) Defendants and their officers and directors, agents, employees, affiliates, and subsidiaries; (ii) all Class members that timely and validly request exclusion from the Classes; and (iii) the Judge presiding over this action.

234.    Alternatively, Plaintiffs bring this case as a class action pursuant to Fed. R. Civ. P. 23(b)(3), on behalf of the following subclasses:

a) Kansas Class, by Plaintiff Wright (the "Kansas Class"):

48

All current or former students within the State of Kansas who enrolled in and paid tuition for a doctoral degree program at Capella University from 2006 until the present and did not receive full reimbursement for tuition, costs and student loans from Defendants.

b)  Tennessee Class, by Plaintiff Kennedy (the "Tennessee Class"):

All current or former students within the State of Tennessee who enrolled in and paid tuition for a doctoral degree program at Capella University from 2006 until the present and did not receive full reimbursement for tuition, costs and student loans from Defendants.

c) Florida Class, by Plaintiff Brannen (the "Florida Class"):

All current or former students within the State of Florida who enrolled in and paid tuition for a doctoral degree program at Capella University from 2006 until the present and did not receive full reimbursement for tuition, costs and student loans from Defendants.

d) Ohio Class, by Plaintiffs Matelski and Norris (the "Ohio Class"):

All current or former students within the State of Ohio who enrolled in and paid tuition for a doctoral degree program at Capella University from 2006 until the present and did not receive full reimbursement for tuition, costs and student loans from Defendants.

e) Pennsylvania Class, by Plaintiff Mason (the "Pennsylvania Class"):

All current or former students within the State of Pennsylvania who enrolled in and paid tuition for a doctoral degree program at Capella University from 2006 until the present and did not receive full reimbursement for tuition, costs and student loans from Defendants.

f) Massachusetts Class, by Plaintiff Ornelas (the "Massachusetts Class"):

All current or former students within the State of Massachusetts who enrolled in and paid tuition for a doctoral degree program at Capella University from 2006 until the present and did not receive full reimbursement for tuition, costs and student loans from Defendants.

g) Missouri Class, by Plaintiff Cooper (the "Missouri Class"):

All current or former students within the State of Missouri who enrolled in and paid tuition for a doctoral degree program at Capella University from 2006 until the

present and did not receive full reimbursement for tuition, costs and student loans from Defendants.

h) Texas Class, by Plaintiff Cooper (the "Texas Class"):

All current or former students within the State of Texas who enrolled in and paid tuition for a doctoral degree program at Capella University from 2006 until the present and did not receive full reimbursement for tuition, costs and student loans from Defendants.

i) Alabama Class, by Plaintiff Carter (the "Alabama Class"):

All current or former students within the State of Alabama who enrolled in and paid tuition for a doctoral degree program at Capella University from 2006 until the present and did not receive full reimbursement for tuition, costs and student loans from Defendants.

j) New York Class, by Plaintiff Goldstein (the "New York Class"):

All current or former students within the State of New York who enrolled in and paid tuition for a doctoral degree program at Capella University from 2006 until the present and did not receive full reimbursement for tuition, costs and student loans from Defendants.

Excluded from the Classes are: (i) Defendants and their officers and directors, agents, employees, affiliates, and subsidiaries; (ii) all Class members that timely and validly request exclusion from the Classes; and (iii) the Judge presiding over this action.

235.    Further, as discovery unfolds, additional classes or modified classes might be possible or necessary, perhaps by doctoral program. However, because Capella's fraudulent representations and omissions were made to students of all degree programs (e.g., quicker times to completion that conflicted with actual design times and failure to inform of abysmally low doctoral graduation rate), a single nationwide class is best-suited for this action and places Capella on notice of the broadest possible class that Plaintiffs could move for, as contemplated by the Federal Rules' notice-pleading standard.

236.    **Numerosity:** Upon information and belief, the members of the Class number in at least the thousands. As a result, the Class is so numerous that joinder of all members in a single action is impracticable. The members of the Class should be readily identifiable from academic records and enrollment records of Capella. The disposition of these claims will provide substantial benefits to the Class.

237.    **Commonality and Predominance:** There is a well-defined community of interest and common questions of law and fact which predominate over any questions affecting only individual members of the Class. These common legal and factual questions, which will generate common answers which are apt to drive the resolution of the litigation, do not vary between members of the Class. These common questions may be determined without reference to individual circumstances and will provide common answers. The following represent a non-exhaustive list of common questions:

a. Whether Capella maintains institutional control over its doctoral programs;

b. Whether, with knowledge of its abysmally low doctoral program completion rate, Capella promised potential and current students unrealistic timelines to completion of its doctoral programs;

c. Whether, with knowledge of its abysmally low doctoral program completion rate, Capella made false representations to its students about their actual chances of even completing a doctoral program at Capella;

d. Whether Capella constructed and implemented a system which caused the doctoral program to last longer than represented so that Capella could generate additional revenue though tuition payments;

e. Whether Capella has been unjustly enriched by their conduct at the expense of the Class;

f. Whether Capella breached its contracts with the Class;

g. Whether Capella violated consumer protection statues by virtue of its conduct toward the Class; and

h. Whether, as a result of Capella's conduct, Plaintiffs and the Class are entitled to damages, restitution, equitable relief and/or other relief, and, if so, the amount and nature of such relief.

238. **Typicality:** The representative Plaintiffs' claims are typical of the claims of the Class. Plaintiffs and all members of the Class were injured by the same wrongful practices in which Capella has engaged. Further, the Plaintiffs and members of the Class seek relief based on the same legal theories. There may be differences in the amount of damages sustained by each member of the Class; however, Class-wide and individual damages can be determined readily. Individual damages issues will not bar Class certification.

239. **Adequacy of Representation:** Plaintiffs will fairly and adequately protect and pursue the interests of the Class. Plaintiffs understand the nature of the claims herein, their role in the proceedings, and have and will vigorously represent the Class. Plaintiffs have retained Class counsel who are experienced in and qualified in prosecution of consumer protection class actions and other forms of complex litigation. Neither Plaintiffs, nor their attorneys, have interests which are contrary to or conflict with those of the Class.

240. **Superiority and Manageability:** A class action is superior to all other available methods of adjudication of this lawsuit. Because individual litigation of the claims of Class members is economically infeasible and judicially impracticable, the class action device is the only way to facilitate adjudication of Plaintiffs' and the Class' claims. Although the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each member resulting from Capella's wrongful conduct are not significant enough for experienced counsel to handle on an individual basis. Further, due to the conduct of Capella, Plaintiffs and members of the Class have significant debt burdens from their time at Capella and cannot afford to hire counsel to pursue their claims on an hourly-fee basis. Even assuming individual Class

members could afford it, the likelihood of individual claims being pursued by the Class members is remote. Even then, the burden on the judicial system would be unjustifiable in light of the class action device. Individual members of the Class do not have significant interest in individually controlling the prosecution of separate actions and individualized litigation could result in varying, inconsistent or contradictory judgments. Plaintiffs know of no reason that this litigation should not proceed as a class action.

241.    The nature of notice to the Class is contemplated to be by direct mail upon certification of the Class or, if such notice is not practicable, by best notice possible under the circumstances including, inter alia, email, publication in major newspapers, and maintenance of a website.

## TOLLING AND ESTOPPEL

242.    Plaintiffs' causes of action did not arise until Plaintiffs discovered, or by the exercise of reasonable diligence should have discovered, that they were injured by Capella's intentional and deliberate scheme. Plaintiffs did not and could not have discovered the intentional scheme through reasonable diligence. For example, only Capella was in possession of the length of time its doctoral programs actually lasted. Further, given Capella is an online university, students were unaware that others were having similar experiences (delays in education).

243.    The applicable statutes of limitations have been tolled by Capella's knowing and active concealment of the material facts regarding its scheme to intentionally prolong the doctoral program and theses process. Capella kept Plaintiffs and the members of the Class ignorant of the vital information essential to pursue their claims, without any fault or lack of diligence on the part of Plaintiffs and Class members.

244.    Capella was and is under a continuous duty to disclose to Plaintiffs and the members of the Class the true nature of the scheme that they have implemented to prolong the doctoral process. At all relevant times, and continuing to this day, Capella knowingly, affirmatively, and actively misrepresented and concealed the true character, quality and nature of its scheme.

245.    Based on the foregoing, Capella is estopped from relying on any statutes of limitation in defense of this action.  Capella is also estopped from relying on any statutes of limitation in defense of this action because they failed to disclose the scheme prior to accepting each and every tuition payment in exchange for the provision of educational services.

246.    Pursuant to the doctrines of Equitable Tolling, Equitable Estoppel, Fraudulent Concealment and the Discovery Rule, the period for bringing claims shall not be barred due to any statute of limitations or statute of repose. With respect to each and every cause of action asserted herein, Plaintiffs expressly plead Equitable Tolling, Equitable Estoppel, Fraudulent Concealment and the Discovery Rule and their application thereto.

247.    All conditions precedent to the filing of this Complaint have been satisfied. This action has been filed prior to the expiration of any applicable statute of limitations or statute of repose.

## FIRST CAUSE OF ACTION
### Fraud in the Inducement
### (Nationwide Class)

248.    Plaintiffs bring this cause of action on behalf of a nationwide Class under Minnesota common law.

249.    Plaintiffs reallege and incorporate the preceding allegations by reference as if set forth fully herein.

54

250.     Capella made actual or implied false representations concerning the timing and cost of a doctoral degree, while concealing the truth from prospective and actual students.

251.     Capella had a duty to disclose that Capella's doctoral programs were designed to take much longer than they represented.

252.     Capella concealed and is still concealing how long Capella's doctoral programs actually take to complete.

253.     Capella intentionally misled Plaintiffs with promises that their programs would take a shorter time than the programs actually took.

254.     Similar, if not identical, false representations and omissions were made by Capella to other members of the Class about Capella's degree programs.

255.     Capella also concealed the actual percentage of students who graduated with doctoral degrees from Capella.

256.     Further, Capella informed prospective students and current students they would have resources available to them, when Capella knew full well that such resources would not be available.

257.     These representations were material to Plaintiffs and the members of the Class.

258.     Capella was aware of the falsity of its representations, or at a minimum had an utter disregard for their truthfulness. For example, they purposefully designed Capella's doctoral programs to last a certain, longer time frame, but told students it would take less time.

259.     Capella intended students to rely upon these representations because they were included in marketing materials and on their websites.

260.     Plaintiffs and members of the Class were justified in relying upon these representations.

261.    Plaintiffs and members of the class were injured by relying on these false representations and omissions because had Capella been truthful about the timelines and costs for Capella's doctoral programs, as well as graduation rates and resources actually available, doctoral students would not have enrolled.

## SECOND CAUSE OF ACTION
### Unjust Enrichment
### (Nationwide Class)

262.    Plaintiffs reallege and incorporate the preceding allegations by reference as if set forth fully herein.

263.    Plaintiffs bring this cause of action on behalf of a Nationwide Class under Minnesota common law. Capella has engaged in unjust conduct, to the detriment of Plaintiffs and each member of the Nationwide Class.

264.    Plaintiffs and each member of the Nationwide Class provided significant value to Capella in the form of tuition payments for doctoral courses.

265.    Capella appreciated or had knowledge of the benefit received by retaining the money paid by Plaintiffs and each member of the Nationwide Class.

266.    Although Capella accepted the tuition payments and retained and received benefit therefrom, it did not provide students with the doctoral process that was promised and expected in connection with the payment of the tuition. On the contrary, Capella intentionally and deliberately extracted tuition and generated revenue and on information and belief eventually profit. Capella has intentionally and knowingly created and implemented a doctoral program that is fraught with inefficiencies, meant to ensure that students do not receive the timely responses and attention that they were promised. All of this is done without any honesty or transparency by Capella regarding the actual time and expense that doctoral students will incur in an effort to complete their degrees.

267.   This unjust conduct on the part of Capella has resulted in its doctoral students enrolling in more terms than would be necessary had Capella not acted unjustly and incurring significant additional tuition and costs (including costs for books, technology fees, and student loans for tuition and fees, room and board charges, costs of books and supplies and other expenses, etc.), and student loans to pay the same. It has also caused certain Nationwide Class members to stop pursuing the process altogether.

268.   Despite their inequitable conduct, Capella has retained the tuition payments (including costs for books, technology fees, etc.) made by Capella doctoral students pursuing coursework and the profits therefrom.

269.   As a result, Capella has been unjustly enriched, to the detriment of Plaintiffs and the members of the Nationwide Class.

### THIRD CAUSE OF ACTION
### Breach of Contract
### (Nationwide Class)

270.   Plaintiffs reallege and incorporate the preceding allegations by reference as if set forth fully herein.

271.   Plaintiffs bring this cause of action on behalf of a nationwide Class under Minnesota common law.  Capella has systematically violated its contracts with Plaintiffs and each member of the Class.

272.   Plaintiffs and each member of the Class contracted with Capella to obtain doctoral educational services. Implied in each and every contract was a covenant of good faith and fair dealing.

273.   As part of the contract, Capella promised, inter alia, that, in connection with providing doctoral educational services: 1) students had control over how long it would take to

obtain their doctoral degree and 2) that their degrees would be obtained or obtainable in a set amount of time.

274.   Rather than provide doctoral educational services as per its contractual agreement, Capella knowingly and intentionally directed and implemented a doctoral process fraught with inefficiencies, meant to ensure that students do not receive adequate resources, the timely responses and attention that they were promised. All of this is done without honesty or transparency by Capella regarding the actual time and expense that its doctoral students will incur in an effort to complete their degrees. The policy implemented by Capella breaches its contracts with Plaintiffs and the Class.

275.   Plaintiffs and each member of the Class provided significant value to Capella in the form of tuition payments and fees for doctoral courses as contracted.

276.   Furthermore, Plaintiffs and each member of the Class complied with their obligations under the contract. To the extent that they did not comply with their obligations under the contract, it was solely the result of conduct engaged in by Capella.

277.   The breach of contract on the part of Capella has resulted in Capella's doctoral students enrolling in courses that would not be necessary if Capella had honored its contract and, in many instances, caused Class members to stop pursuing their education altogether.

278.   Despite its knowing and intentional breaching of the contracts, Capella has retained the tuition payments made by the members of the Class.

279.   Capella has breached its contracts for doctoral education services with Plaintiffs and each member of the Class. Capella's breach has caused damage to Plaintiffs and each member of the Class in the form of additional tuition payments for doctoral courses and, in many instances,

to stop pursuing their education altogether, causing them to be damaged in the amount of tuition payments they made and loans incurred before being forced to stop pursuing their education.

280.    Moreover, Capella has breached its contracts for doctoral educational services with Plaintiffs and each member of the Class by engaging in systematic conduct whereby it has failed to honor the covenant of good faith and fair dealing implied in every contract. Capella has engaged in unreasonable conduct that was entirely inconsistent with the reasonable expectations of Plaintiffs and each member of the Class. Capella's breach has caused damage to Plaintiffs and each member of the Class in the form of additional tuition payments for doctoral courses and, in many instances, to stop pursuing their education altogether, causing them to be damaged in the amount of tuition payments they made and loans incurred before being forced to stop pursuing their education.

## FOURTH CAUSE OF ACTION
### Violation of Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. §325D.44
### (Nationwide Class)

281.    Plaintiffs reallege and incorporate the preceding allegations by reference as if set forth fully herein.

282.    Plaintiffs bring this cause of action on behalf of a Nationwide Class. Capella has engaged in unfair, unlawful, and fraudulent business practices, as set forth above.

283.    Minnesota Stat. §325D.44 specifically prohibits the use of unfair or deceptive trade practices in connection with a consumer transaction.  For example, Minnesota Stat. §325D.44 prohibits deceptive trade practices which occur when a person "(5) represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have;" "(7) represents that goods or services are of a particular standard,

quality, or grade, or that goods are of a particular style or model, if they are of another;" "(9) advertises goods or services with intent not to sell them as advertised" and "(13) engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding."

284.     Instruction provided by an educational institution is a service, and students paying tuition for that service is a consumer transaction.

285.     By engaging in the acts and practices described in this complaint, Capella has committed one or more acts of unfair and deceptive trade practices. For example, Capella represented that its doctoral services 1) have characteristics that they do not have and 2) are of a particular standard, quality, or grade of which they are not.  Capella also 3) advertised Capella's doctoral services with intent not to sell them as advertised and 4) engaged in conduct which similarly creates a likelihood of confusion or of misunderstanding.

286.     Specifically, Capella misrepresented that: 1) students had control over how long it would take to obtain their doctoral degree and 2) that their degrees would be obtained or obtainable in a set amount of time.

287.     Capella also knowingly concealed, omitted and otherwise failed to state material facts about Capella's doctoral education services that would tend to, and did, in fact, deceive students. Specifically, Capella falsely represented the time and tuition costs of obtaining a doctoral degree, not only knowing that such representations were false, but also with no intent to offer such services to its students. Capella also failed to disclose that it intentionally and deliberately used Capella's doctoral programs as a means of improperly extracting tuition and generating revenue. Capella further failed to disclose that it knowingly created and implemented a doctoral program that is fraught with inefficiencies, meant to ensure that students do not receive the timely responses and attention that they were promised.

60

288.     Capella knew that its doctoral programs was and continues to be systematically prolonged by the violations set forth herein.

289.     The misrepresentations and omissions were material to Plaintiffs and the members of the Class.

290.     Capella's unfair and deceptive trade practices and acts occurred and continue to occur repeatedly during the course of its business. These actions constitute unfair and deceptive trade practices.

291.     Plaintiffs and members of the Class relied on these representations and omissions in the course of pursuing their doctoral degrees. Furthermore, Capella intended that Plaintiffs and members of the Class would rely on the representations and omissions.

292.     As a direct and proximate result of Capella's unfair and deceptive practices and acts, Plaintiffs and the Class have suffered and will continue to suffer actual damages.  Had Plaintiffs and the members of the Class been aware of the misrepresentations and omissions, they would not have paid tuition to Capella or incurred additional costs including costs for books, technology fees, and student loans for tuition and fees, room and board charges, costs of books and supplies and other expenses, etc. for the educational services that Capella purported to provide.

293.     Plaintiffs and the Class are entitled to injunctive relief, and attorneys' fees, and all other remedies provided by law or equity. (See Minn. Stat. § 325D.45).

294.     As a direct and proximate result of the foregoing, Plaintiffs and the Class have been injured and suffered financial loss for which damages, injunctive, declaratory and/or other relief as may be available at law or equity is warranted.

**FIFTH CAUSE OF ACTION**
**Violation of the Minnesota Prevention of Consumer Fraud Act, Minn. Stat. § 325F.69**
**(Nationwide Class)**

61

295.    Plaintiffs reallege and incorporate the preceding allegations by reference as if set forth fully herein.

296.    Minn. Stat. § 325F.69, subdivision 1 provides:

> The act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby, is enjoinable as provided in section 325F.70.

297.    The term "merchandise" within the meaning of Minn. Stat. § 325F.69 includes services. *See* Minn. Stat. § 325F.68, subd. 2.

298.    Defendants' conduct described above constitutes multiple, separate violations of Minn. Stat. § 325F.69, subd. 1.  Defendants have engaged in deceptive and fraudulent practices, and have made false and misleading statements, with the intent that others rely thereon in connection with the sale of Defendants' education services.  For example, Defendants use high-pressure sales tactics to solicit and enroll students, and promise these prospective and current students that they can obtain their degree within a specified period of time, and for a certain estimated cost of tuition that, through Defendants' actions, are unattainable in violation of Minn. Stat. § 325F.69.  By failing to disclose and omitting material facts which Defendants had a duty to disclose, Defendants have engaged in deceptive and fraudulent practices in violation of the Consumer Fraud Act.

299.    Minn. Stat. §8.31 provides a private right of action for violations of these provisions.

300.    This action will serve a public benefit.  Not only were Capella's misrepresentations made to a large segment of the public, Capella's conduct affects the financial aid industry as well. Defendant's conduct alleged here indicates that Defendant has not been, and will not be deterred,

absent significant consequences. This action should proceed under Minn. Stat. §8.31 to promote the public benefit by increasing the consequences of misleading potential students into enrolling in a doctoral program, with completion times and tuition estimates that are unattainable, and to provide the deterrence necessary to ensure similar events do not occur in the future.

301.    Plaintiffs and the Class are entitled to compensatory damages and attorneys' fees. (See Minn. Stat. §§ 8.31, subd. 3a).

302.    As a direct and proximate result of the foregoing, Plaintiffs and the Classes have been injured and suffered financial loss for which damages, injunctive, declaratory and/or other relief as may be available at law or equity is warranted.

## SIXTH CAUSE OF ACTION
### Breach of Implied Covenant of Good Faith and Fair Dealing
### (Nationwide Class)

303.    Plaintiffs reallege and incorporate the preceding allegations by reference as if set forth fully herein.

304.    Plaintiffs bring this cause of action on behalf of a Nationwide Class under Minnesota common law. Capella has systematically violated its contracts with Plaintiffs and each member of the Nationwide Class.

305.    Plaintiffs and each member of the Nationwide Class contracted with Capella to receive doctoral education services.

306.    Implied in each contract was a covenant of good faith and fair dealing.

307.    Plaintiffs and each member of the Nationwide Class provided value to Capella in the form of tuition payments for doctoral courses as contracted.

308.    By the scheme and conduct detailed herein, Capella has breached the implied duty of good faith and fair dealing implied in its contracts.

309. This breach on the part of Capella has resulted in Capella doctoral students being damaged because they were required to enroll in doctoral courses that would not have otherwise been necessary, thereby necessitating substantial additional tuition payments and costs , and student loans for tuition and fees, room and board charges, costs of books and supplies and other expenses. In addition, many students have been forced to stop pursuing their education.

**SEVENTH CAUSE OF ACTION**
**Fraud in the Inducement**
**(Alternative Kansas Subclass)**

310. Plaintiff Wright brings this cause of action, in the alternative, on behalf of a Kansas Subclass under Kansas common law.

311. Plaintiff realleges and incorporates the preceding allegations by reference as if set forth fully herein.

312. Capella made actual or implied false representations concerning the timing and cost of a doctoral degree, while concealing the truth from prospective and actual students.

313. Capella had a duty to disclose that Capella's doctoral programs were designed to take much longer than they represented.

314. Capella concealed and is still concealing how long Capella's doctoral programs actually take to complete.

315. Capella also concealed the actual percentage of students who graduated with doctoral degrees from Capella.

316. Further, Capella informed prospective students and current students they would have resources available to them, when Capella knew full well that such resources would not be available.

64

317.    These representations were material to Plaintiff Wright and the members of the Class agreeing to attend Capella.

318.    Capella was aware of the falsity of its representations, or at a minimum had an utter disregard for their truthfulness. For example, they purposefully designed Capella's doctoral programs to last a certain, longer time frame, but told students they would take less time.

319.    Capella intended students to rely upon these representations because they were included in marketing materials and on their websites.

320.    Plaintiff and members of the Class was justified in relying upon these representations. Plaintiff and members of the class were injured by relying on these false representations and omissions because had Capella been truthful about the timelines and costs for Capella's doctoral programs, as well as graduation rate and resources actually available, doctoral students would not have enrolled.

**EIGHTH CAUSE OF ACTION**
**Breach of Contract**
**(Alternative Kansas Subclass)**

321.    Plaintiff realleges and incorporates the preceding allegations by reference as if set forth fully herein.

322.    Plaintiff Wright brings this cause of action, in the alternative, on behalf of a Kansas Subclass under Kansas common law. Capella has systematically violated its contracts with Plaintiff Wright and each member of the Kansas Subclass.

323.    Plaintiff Wright and each member of the Kansas Subclass contracted with Capella to obtain doctoral educational services. Implied in each and every contract was a covenant of good faith and fair dealing.

324.    As part of the contract, Capella promised, inter alia, that, in connection with providing doctoral educational services: 1) students had control over how long it would take to obtain their doctoral degree and 2) that their degrees would be obtained or obtainable in a set amount of time.

325.    Rather than provide doctoral educational services as per its contractual agreement, Capella knowingly and intentionally directed and implemented a doctoral program process fraught with inefficiencies, meant to ensure that students do not receive adequate resource, the timely responses and attention that they were promised. All of this is done without honesty or transparency by Capella regarding the actual time and expense that its doctoral students will incur in an effort to complete their degrees. The policy implemented by Capella breaches its contracts with Plaintiff and the Kansas Subclass.

326.    Plaintiff and each member of the Kansas Subclass provided significant value to Capella in the form of tuition payments and fees for doctoral courses as contracted.

327.    Furthermore, Plaintiff and each member of the Kansas Subclass complied with their obligations under the contract. To the extent that they did not comply with their obligations under the contract, it was solely the result of conduct engaged in by Capella.

328.    The breach of contract on the part of Capella has resulted in Capella's doctoral students enrolling in courses that would not be necessary if Capella had honored its contract and, in many instances, caused Kansas Subclass members to stop pursuing their education altogether.

329.    Despite its knowing and intentional breaching of the contracts, Capella has retained the tuition payments made by the members of the Kansas Subclass.

330.    Capella has breached its contracts for doctoral education services with Plaintiff and each member of the Kansas Subclass. Capella's breach has caused damage to Plaintiff and each

member of the Kansas Subclass in the form of additional tuition payments for doctoral courses and, in many instances, to stop pursuing their education altogether, causing them to be damaged in the amount of tuition payments they made and loans incurred before being forced to stop pursuing their education.

331.     Moreover, Capella has breached its contracts for doctoral educational services with Plaintiff and each member of the Kansas Subclass by engaging in systematic conduct whereby it has failed to honor the covenant of good faith and fair dealing implied in every contract. Capella has engaged in unreasonable conduct that was entirely inconsistent with the reasonable expectations of Plaintiff and each member of the Kansas Subclass. Capella's breach has caused damage to Plaintiff and each member of the Kansas Subclass in the form of additional tuition payments for doctorate courses and, in many instances, to stop pursuing their education altogether, causing them to be damaged in the amount of tuition payments they made and loans incurred before being forced to stop pursuing their education.

## NINTH CAUSE OF ACTION
### Unjust Enrichment
### (Alternative Kansas Subclass)

332.     Plaintiff realleges and incorporate the preceding allegations by reference as if set forth fully herein.

333.     Plaintiff Wright brings this cause of action, in the alternative, on behalf of a Kansas Subclass under Kansas common law. Capella has engaged in unjust conduct, to the detriment of Plaintiff Wright and each member of the Kansas Subclass.

334.     Plaintiff and each member of the Kansas Subclass provided significant value to Capella in the form of tuition payments for doctoral courses.

335.    Capella appreciated or had knowledge of the benefit received by retaining the money paid by Plaintiff and each member of the Kansas Subclass.

336.    Although Capella accepted the tuition payments and retained and received benefit therefrom, they did not provide students with a doctoral process that was promised and contemplated in connection with the payment of the tuition. On the contrary, Capella intentionally and deliberately used the doctoral program process as a means of improperly extracting tuition and generating revenue. Capella has intentionally and knowingly directed and implemented a doctoral process that is fraught with inefficiencies, meant to ensure that students do not receive the timely responses and attention that they were promised, and creates inordinate turnover of faculty and supervisory committee chairs and members. All of this is done without any honestly or transparency by Capella regarding the actual time and expense that Capella's doctoral students will incur in an effort to complete their degrees.

337.    This unjust conduct on the part of Capella has resulted in Capella doctoral students enrolling in courses that would not be necessary if Capella had not acted unjustly and in incurring significant additional tuition costs and student loans. It has also caused certain Kansas Subclass members to stop pursuing the process altogether.

338.    Despite their inequitable conduct, Capella has retained the tuition payments made by Capella doctoral students pursuing coursework and the profits therefrom.

339.    As a result, Capella has been unjustly enriched, to the detriment of Plaintiff Wright and the members of the Kansas Subclass.

**TENTH CAUSE OF ACTION**
**Violation of Kansas KS Stat. §50-626(a) & (b) (Kansas Unfair Trade and Consumer Protection Act)**
**(Alternative Kansas Subclass)**

68

340.     Plaintiff realleges and incorporate the preceding allegations by reference as if set forth fully herein.

341.     Plaintiff brings this cause of action on behalf of a Kansas Subclass. Capella has engaged in unfair, unlawful, and fraudulent business practices, as set forth above.

342.     Through the actions described above, Capella has violated KS Stat. §50-626(a) & (b).

343.     In violation of KS Stat. §50-626(a), Capella is a supplier that engaged in a deceptive act or practice in connection with a consumer transaction with Plaintiff Wright and Class members.

344.     In violation of KS Stat. §50-626(b)(1), Capella's deceptive acts and practices include, but are not limited to, making knowing representations that 1) the services it offers have characteristics that they do not have; 2) the services it offers are of particular standard, quality, grade, style or model, when they are actually of another which differs materially from the representation; 3) the services it offers has characteristics that Capella did not have a reasonable basis for making such representations; and 4) that its services have characteristics allegedly substantiated by Capella when it has no proof to substantiate such representations. Such representations include, but are not limited to, Capella's representations of an earlier graduation date/faster time to completion - facts that Capella knows to be untrue when made to Plaintiff and the Class members.

345.     In violation of KS Stat. §50-626(b)(2) Capella also willfully 1) used oral and written representations that exaggerated, were false and made false innuendoes of material fact and 2) failed to failure to state material facts, and willfully concealed, suppressed or omitted material facts. Such representations include, but are not limited to, Capella's representations of an

earlier graduation date/faster time to completion than possible, and omissions include, but are not limited to, its longer times to graduate, slower completion times, and low graduation rates.

346.    Capella made false and misleading statements about the nature, quality, style and model of Capella's doctoral education services. Further, the subject of the Capella doctoral transaction had been supplied in accordance with previous representations made by Capella to Plaintiff Wright and members of the Kansas Subclass, and those representations were not performed. Specifically, Capella misrepresented that: 1) students had control over how long it would take to obtain their doctoral degree and 2) that their degrees would be obtained or obtainable in a set amount of time.

347.    Capella also knowingly concealed, omitted and otherwise failed to state material facts about Capella's doctoral education services that would tend to, and did, in fact, deceive students. Specifically, Capella failed to disclose that they intentionally and deliberately used Capella's doctoral process as a means of improperly extracting tuition and generating revenue. Capella further failed to disclose that they knowingly directed and implemented a doctoral program process that is fraught with inefficiencies, meant to ensure that students do not receive the timely responses and attention that they were promised, and creates inordinate turnover of faculty and supervisory committee chairs and members. Capella also knowingly withheld its low graduation rate and actual times to graduation of its doctoral students.

348.    Capella knew that the doctoral coursework was and continues to be systematically prolonged by the violations set forth herein.

349.    The misrepresentations and omissions were material to Plaintiff and the members of the Class.

350.    Capella's unfair and deceptive trade practices and acts occurred and continue to occur repeatedly during the course of its business. These actions constitute unfair and deceptive trade practices, in violation of KS Stat. §50-626(a) & (b).

351.    Plaintiff and members of the Class relied on these representations and omissions in the course of pursuing their doctoral degrees. Furthermore, Capella intended that Plaintiff and members of the Class would rely on the representations and omissions.

352.    As a direct and proximate result of Capella's unfair and deceptive practices and acts, Plaintiff and the Class have suffered and will continue to suffer actual damages. Had Plaintiff and the members of the Class been aware of the misrepresentations and omissions, they would not have paid tuition to Capella for the educational services that Defendant purported to provide or incurred students to attend Capella (including for room and board).

### ELEVENTH CAUSE OF ACTION
### Fraud in the Inducement
### (Alternative Tennessee Subclass)

353.    Plaintiff Kennedy brings this cause of action on behalf of a nationwide Class under Tennessee common law.

354.    Plaintiff realleges and incorporates the preceding allegations by reference as if set forth fully herein.

355.    Capella made actual or implied false representations concerning the timing and cost of a doctoral degree, while concealing the truth from prospective and actual students.

356.    Capella had a duty to disclose that Capella's doctoral programs were designed to take much longer than they represented.

357.    Capella concealed and are still concealing how long Capella's doctoral programs actually take to complete.

358.    Capella also concealed the actual percentage of students who graduated with PhDs from Capella.

359.    Further, Capella informed prospective students and current students they would have resources available to them, when Capella knew full well that such resources would not be available.

360.    These representations were material to Plaintiff Kennedy and the members of the Class agreeing to attend Capella.

361.    Capella was aware of the falsity of its representations, or at a minimum had an utter disregard for their truthfulness. For example, they purposefully designed Capella's doctoral programs to last a certain, longer time frame, but told students they would take less time.

362.    Capella intended students to rely upon these representations because they were included in marketing materials and on their websites.

363.    Plaintiff and members of the Class was justified in relying upon these representations.

364.    Plaintiff and members of the class were injured by relying on these false representations and omissions because had Capella been truthful about the timelines and costs for Capella's doctoral programs, as well as graduation rate and resources actually available, doctoral students would not have enrolled.

## TWEFLTH CAUSE OF ACTION
### Breach of Contract
### (Alternative Tennessee Subclass)

365.    Plaintiff realleges and incorporates the preceding allegations by reference as if set forth fully herein.

366.   Plaintiff Kennedy brings this cause of action, in the alternative, on behalf of a Tennessee Subclass under Tennessee common law. Capella has systematically violated its contracts with Plaintiff Kennedy and each member of the Tennessee Subclass.

367.   Plaintiff Kennedy and each member of the Tennessee Subclass contracted with Capella to obtain doctoral educational services. Implied in each and every contract was a covenant of good faith and fair dealing.

368.   As part of the contract, Capella promised, inter alia, that, in connection with providing doctoral educational services: 1) students had control over how long it would take to obtain their doctoral degree and 2) that their degrees would be obtained or obtainable in a set amount of time.

369.   Rather than provide doctoral educational services as per its contractual agreement, Capella knowingly and intentionally directed and implemented a doctoral process fraught with inefficiencies, meant to ensure that students do not receive adequate resource, the timely responses and attention that they were promised. All of this is done without honesty or transparency by Capella regarding the actual time and expense that its doctoral students will incur in an effort to complete their degrees. The policy implemented by Capella breaches its contracts with Plaintiff and the Tennessee Subclass.

370.   Plaintiff and each member of the Tennessee Subclass provided significant value to Capella in the form of tuition payments and fees for doctoral courses as contracted.

371.   Furthermore, Plaintiff and each member of the Tennessee Subclass complied with their obligations under the contract. To the extent that they did not comply with their obligations under the contract, it was solely the result of conduct engaged in by Capella.

372.     The breach of contract on the part of Capella has resulted in Capella's doctoral students enrolling in doctoral courses that would not be necessary if Capella had honored its contract and, in many instances, caused Tennessee Subclass members to stop pursuing their education altogether.

373.     Despite its knowing and intentional breaching of the contracts, Capella has retained the tuition payments made by the members of the Tennessee Subclass.

374.     Capella has breached its contracts for doctoral education services with Plaintiff and each member of the Tennessee Subclass. Capella's breach has caused damage to Plaintiff and each member of the Tennessee Subclass in the form of additional tuition payments for doctoral courses and, in many instances, to stop pursuing their education altogether, causing them to be damaged in the amount of tuition payments they made and loans incurred before being forced to stop pursuing their education.

375.     Moreover, Capella has breached its contracts for doctoral educational services with Plaintiff and each member of the Tennessee Subclass by engaging in systematic conduct whereby it has failed to honor the covenant of good faith and fair dealing implied in every contract. Capella has engaged in unreasonable conduct that was entirely inconsistent with the reasonable expectations of Plaintiff and each member of the Tennessee Subclass. Capella's breach has caused damage to Plaintiff and each member of the Tennessee Subclass in the form of additional tuition payments for doctoral courses and, in many instances, to stop pursuing their education altogether, causing them to be damaged in the amount of tuition payments they made and loans incurred before being forced to stop pursuing their education.

### THIRTEENTH CAUSE OF ACTION
### Unjust Enrichment
### (Alternative Tennessee Subclass)

376.     Plaintiff realleges and incorporate the preceding allegations by reference as if set forth fully herein.

377.     Plaintiff Kennedy brings this cause of action, in the alternative, on behalf of an Tennessee Subclass under Tennessee common law. Capella has engaged in unjust conduct, to the detriment of Plaintiff Kennedy and each member of the Tennessee Subclass.

378.     Plaintiff and each member of the Tennessee Subclass provided significant value to Capella in the form of tuition payments for doctoral courses.

379.     Capella appreciated or had knowledge of the benefit received by retaining the money paid by Plaintiff and each member of the Tennessee Subclass.

380.     Although Capella accepted the tuition payments and retained and received benefit therefrom, they did not provide students with a doctoral process that was promised and contemplated in connection with the payment of the tuition. On the contrary, Capella intentionally and deliberately used the doctoral process as a means of improperly extracting tuition and generating revenue. Capella has intentionally and knowingly directed and implemented a doctoral process that is fraught with inefficiencies, meant to ensure that students do not receive the timely responses and attention that they were promised, and creates inordinate turnover of faculty and supervisory committee chairs and members. All of this is done without any honestly or transparency by Capella regarding the actual time and expense that Capella's doctoral students will incur in an effort to complete their degrees.

381.     This unjust conduct on the part of Capella has resulted in Capella doctoral students enrolling in courses that would not be necessary if Capella had not acted unjustly and in incurring

significant additional tuition costs and student loans. It has also caused certain Tennessee Subclass members to stop pursuing the process altogether.

382.    Despite their inequitable conduct, Capella has retained the tuition payments made by Capella doctoral students pursuing doctoral coursework and the profits therefrom.

383.    As a result, Capella has been unjustly enriched, to the detriment of Plaintiff Kennedy and the members of the Tennessee Subclass.

**FOURTEENTH CAUSE OF ACTION**
**Fraud in the Inducement**
**(Alternative Florida Subclass)**

384.    Plaintiff Brannen brings this cause of action, in the alternative, on behalf of a Florida Subclass under Florida common law.

385.    Plaintiff Brannen realleges and incorporates the preceding allegations by reference as if set forth fully herein.

386.    Capella made actual or implied false representations concerning the timing and cost of a doctoral degree, while concealing the truth from prospective and actual students.

387.    Capella had a duty to disclose that Capella's doctoral programs were designed to take much longer than they represented.

388.    Capella concealed and is still concealing how long Capella's doctoral programs actually take to complete.

389.    Capella also concealed the actual percentage of students who graduated with doctoral degrees from Capella.

390.    Further, Capella informed prospective students and current students they would have resources available to them, when Capella knew full well that such resources would not be available.

76

391.    These representations were material to Plaintiff Brannen and the members of the Class agreeing to attend Capella.

392.    Capella was aware of the falsity of its representations, or at a minimum had an utter disregard for their truthfulness. For example, they purposefully designed Capella's doctoral programs to last a certain, longer time frame, but told students they would take less time.

393.    Capella intended students to rely upon these representations because they were included in marketing materials and on their websites.

394.    Plaintiff Brannen and members of the Class was justified in relying upon these representations.

395.    Plaintiff Brannen and members of the class were injured by relying on these false representations and omissions because had Capella been truthful about the timelines and costs for Capella's doctoral programs, as well as graduation rate and resources actually available, doctoral students would not have enrolled.

## FIFTEENTH CAUSE OF ACTION
### Breach of Contract
### (Alternative Florida Subclass)

396.    Plaintiff Brannen realleges and incorporates the preceding allegations by reference as if set forth fully herein.

397.    Plaintiff Brannen brings this cause of action, in the alternative, on behalf of a Florida Subclass under Florida common law. Capella has systematically violated its contracts with Plaintiff Brannen and each member of the Florida Subclass.

398.    Plaintiff Brannen and each member of the Florida Subclass contracted with Capella to obtain doctoral educational services. Implied in each and every contract was a covenant of good faith and fair dealing.

399.   As part of the contract, Capella promised, inter alia, that, in connection with providing doctoral educational services: 1) students had control over how long it would take to obtain their doctoral degree and 2) that their degrees would be obtained or obtainable in a set amount of time.

400.   Rather than provide doctoral educational services as per its contractual agreement, Capella knowingly and intentionally directed and implemented a doctoral program process fraught with inefficiencies, meant to ensure that students do not receive adequate resource, the timely responses and attention that they were promised. All of this is done without honesty or transparency by Capella regarding the actual time and expense that its doctoral students will incur in an effort to complete their degrees. The policy implemented by Capella breaches its contracts with Plaintiff Brannen and the Florida Subclass.

401.   Plaintiff Brannen and each member of the Florida Subclass provided significant value to Capella in the form of tuition payments and fees for doctoral courses as contracted.

402.   Furthermore, Plaintiff Brannen and each member of the Florida Subclass complied with their obligations under the contract. To the extent that they did not comply with their obligations under the contract, it was solely the result of conduct engaged in by Capella.

403.   The breach of contract on the part of Capella has resulted in Capella's doctoral students enrolling in courses that would not be necessary if Capella had honored its contract and, in many instances, caused Florida Subclass members to stop pursuing their education altogether.

404.   Despite its knowing and intentional breaching of the contracts, Capella has retained the tuition payments made by the members of the Florida Subclass.

405.   Capella has breached its contracts for doctoral education services with Plaintiff Brannen and each member of the Florida Subclass. Capella's breach has caused damage to Plaintiff

Brannen and each member of the Florida Subclass in the form of additional tuition payments for doctoral courses and, in many instances, to stop pursuing their education altogether, causing them to be damaged in the amount of tuition payments they made and loans incurred before being forced to stop pursuing their education.

406.    Moreover, Capella has breached its contracts for doctoral educational services with Plaintiff Brannen and each member of the Florida Subclass by engaging in systematic conduct whereby it has failed to honor the covenant of good faith and fair dealing implied in every contract. Capella has engaged in unreasonable conduct that was entirely inconsistent with the reasonable expectations of Plaintiff Brannen and each member of the Florida Subclass. Capella's breach has caused damage to Plaintiff Brannen and each member of the Florida Subclass in the form of additional tuition payments for doctor courses and, in many instances, to stop pursuing their education altogether, causing them to be damaged in the amount of tuition payments they made and loans incurred before being forced to stop pursuing their education.

## SIXTEENTH CAUSE OF ACTION
### Unjust Enrichment
### (Alternative Florida Subclass)

407.    Plaintiff Brannen realleges and incorporate the preceding allegations by reference as if set forth fully herein.

408.    Plaintiff Brannen brings this cause of action, in the alternative, on behalf of a Florida Subclass under Florida common law. Capella has engaged in unjust conduct, to the detriment of Plaintiff Brannen and each member of the Florida Subclass.

409.    Plaintiff Brannen and each member of the Florida Subclass provided significant value to Capella in the form of tuition payments for doctoral courses.

410.    Capella appreciated or had knowledge of the benefit received by retaining the money paid by Plaintiff Brannen and each member of the Florida Subclass.

411.    Although Capella accepted the tuition payments and retained and received benefit therefrom, they did not provide students with a doctoral process that was promised and contemplated in connection with the payment of the tuition. On the contrary, Capella intentionally and deliberately used the doctoral program process as a means of improperly extracting tuition and generating revenue. Capella has intentionally and knowingly directed and implemented a doctoral process that is fraught with inefficiencies, meant to ensure that students do not receive the timely responses and attention that they were promised, and creates inordinate turnover of faculty and supervisory committee chairs and members. All of this is done without any honestly or transparency by Capella regarding the actual time and expense that Capella's doctoral students will incur in an effort to complete their degrees.

412.    This unjust conduct on the part of Capella has resulted in Capella doctoral students enrolling in courses that would not be necessary if Capella had not acted unjustly and in incurring significant additional tuition costs and student loans. It has also caused certain Florida Subclass members to stop pursuing the process altogether.

413.    Despite their inequitable conduct, Capella has retained the tuition payments made by Capella doctoral students pursuing coursework and the profits therefrom.

414.    As a result, Capella has been unjustly enriched, to the detriment of Plaintiff Brannen and the members of the Florida Subclass.

**SEVENTEENTH CAUSE OF ACTION**
**Violation of Florida Statutes, §501.204**
**(Florida Deceptive and Unfair Trade Practices Act)**
**(Alternative Florida Subclass)**

80

415.    Plaintiff Brannen realleges and incorporate the preceding allegations by reference as if set forth fully herein.

416.    Plaintiff Brannen brings this cause of action on behalf of a Florida Subclass. Capella has engaged in unfair, unlawful, and fraudulent business practices, as set forth above.

417.    Capella is a supplier that engaged in a deceptive act or practice in connection with a consumer transaction with Plaintiff Brannen and Class members.

418.    Capella's deceptive acts and practices include, but are not limited to, making knowing representations that 1) the services it offers have characteristics that they do not have; 2) the services it offers are of particular standard, quality, grade, style or model, when they are actually of another which differs materially from the representation; 3) the services it offers has characteristics that Capella did not have a reasonable basis for making such representations; and 4) that its services have characteristics allegedly substantiated by Capella when it has no proof to substantiate such representations. Such representations include, but are not limited to, Capella's representations of an earlier graduation date/faster time to completion than possible.

419.    Capella also willfully 1) used oral and written representations that exaggerated, were false and made false innuendoes of material fact and 2) failed to failure to state material facts, and willfully concealed, suppressed or omitted material facts. Such representations include, but are not limited to, Capella's representations of an earlier graduation date/faster time to completion than possible, and omissions include, but are not limited to, its longer times to graduate, slower completion times, and low graduation rates.

420.    Capella made false and misleading statements about the nature, quality, style and model of Capella's doctoral education services. Further, the subject of the Capella doctoral transaction had been supplied in accordance with previous representations made by Capella to

Plaintiff Brannen and members of the Florida Subclass, and those representations were not performed. Specifically, Capella misrepresented that: 1) students had control over how long it would take to obtain their doctoral degree and 2) that their degrees would be obtained or obtainable in a set amount of time.

421.    Capella also knowingly concealed, omitted and otherwise failed to state material facts about Capella's doctoral education services that would tend to, and did, in fact, deceive students. Specifically, Capella failed to disclose that they intentionally and deliberately used Capella's doctoral process as a means of improperly extracting tuition and generating revenue. Capella further failed to disclose that they knowingly directed and implemented a doctoral program process that is fraught with inefficiencies, meant to ensure that students do not receive the timely responses and attention that they were promised, and creates inordinate turnover of faculty and supervisory committee chairs and members. Capella also knowingly withheld its low graduation rate and actual times to graduation of its doctoral students.

422.    Capella knew that the doctoral coursework was and continues to be systematically prolonged by the violations set forth herein.

423.    The misrepresentations and omissions were material to Plaintiff Brannen and the members of the Class.

424.    Capella 's unfair and deceptive trade practices and acts occurred and continue to occur repeatedly during the course of its business. These actions constitute unfair and deceptive trade practices.

425.    Plaintiff Brannen and members of the Class relied on these representations and omissions in the course of pursuing their doctoral degrees. Furthermore, Capella intended that Plaintiff Brannen and members of the Class would rely on the representations and omissions.

426.    As a direct and proximate result of Capella's unfair and deceptive practices and acts, Plaintiff Brannen and the Class have suffered and will continue to suffer actual damages. Had Plaintiff Brannen and the members of the Class been aware of the misrepresentations and omissions, they would not have paid tuition to Capella for the educational services that Defendant purported to provide or incurred students to attend Capella (including for room and board).

**EIGHTEENTH CAUSE OF ACTION**
**Fraud in the Inducement**
**(Alternative Ohio Subclass)**

427.    Plaintiffs Matelski and Norris bring this cause of action, in the alternative, on behalf of a Ohio Subclass under Ohio common law.

428.    Plaintiffs Matelski and Norris reallege and incorporates the preceding allegations by reference as if set forth fully herein.

429.    Capella made actual or implied false representations concerning the timing and cost of a doctoral degree, while concealing the truth from prospective and actual students.

430.    Capella had a duty to disclose that Capella's doctoral programs were designed to take much longer than they represented.

431.    Capella concealed and is still concealing how long Capella's doctoral programs actually take to complete.

432.    Capella also concealed the actual percentage of students who graduated with doctoral degrees from Capella.

433.    Further, Capella informed prospective students and current students they would have resources available to them, when Capella knew full well that such resources would not be available.

434.    These representations were material to Plaintiffs Matelski, Norris and the members of the Class agreeing to attend Capella.

435.    Capella was aware of the falsity of its representations, or at a minimum had an utter disregard for their truthfulness. For example, they purposefully designed Capella's doctoral programs to last a certain, longer time frame, but told students they would take less time.

436.    Capella intended students to rely upon these representations because they were included in marketing materials and on their websites.

437.    Plaintiffs Matelski, Norris and members of the Class was justified in relying upon these representations.

438.    Plaintiffs Matelski, Norris and members of the class were injured by relying on these false representations and omissions because had Capella been truthful about the timelines and costs for Capella's doctoral programs, as well as graduation rate and resources actually available, doctoral students would not have enrolled.

## NINETEENTH CAUSE OF ACTION
### Breach of Contract
### (Alternative Ohio Subclass)

439.    Plaintiffs Matelski and Norris reallege and incorporates the preceding allegations by reference as if set forth fully herein.

440.    Plaintiffs Matelski and Norris bring this cause of action, in the alternative, on behalf of an Ohio Subclass under Ohio common law. Capella has systematically violated its contracts with Plaintiffs and each member of the Ohio Subclass.

441.    Plaintiff and each member of the Ohio Subclass contracted with Capella to obtain doctoral educational services. Implied in each and every contract was a covenant of good faith and fair dealing.

442.    As part of the contract, Capella promised, inter alia, that, in connection with providing doctoral educational services: 1) students had control over how long it would take to obtain their doctoral degree and 2) that their degrees would be obtained or obtainable in a set amount of time.

443.    Rather than provide doctoral educational services as per its contractual agreement, Capella knowingly and intentionally directed and implemented a doctoral program process fraught with inefficiencies, meant to ensure that students do not receive adequate resource, the timely responses and attention that they were promised. All of this is done without honesty or transparency by Capella regarding the actual time and expense that its doctoral students will incur in an effort to complete their degrees. The policy implemented by Capella breaches its contracts with Plaintiffs Matelski, Norris and the Ohio Subclass.

444.    Plaintiffs Matelski, Norris and each member of the Ohio Subclass provided significant value to Capella in the form of tuition payments and fees for doctoral courses as contracted.

445.    Furthermore, Plaintiffs Matelski, Norris and each member of the Ohio Subclass complied with their obligations under the contract. To the extent that they did not comply with their obligations under the contract, it was solely the result of conduct engaged in by Capella.

446.    The breach of contract on the part of Capella has resulted in Capella's doctoral students enrolling in courses that would not be necessary if Capella had honored its contract and, in many instances, caused Ohio Subclass members to stop pursuing their education altogether.

447.    Despite its knowing and intentional breaching of the contracts, Capella has retained the tuition payments made by the members of the Ohio Subclass.

448. Capella has breached its contracts for doctoral education services with Plaintiffs Matelski, Norris and each member of the Ohio Subclass. Capella's breach has caused damage to Plaintiffs Matelski, Norris and each member of the Ohio Subclass in the form of additional tuition payments for doctoral courses and, in many instances, to stop pursuing their education altogether, causing them to be damaged in the amount of tuition payments they made and loans incurred before being forced to stop pursuing their education.

449. Moreover, Capella has breached its contracts for doctoral educational services with Plaintiffs Matelski, Norris and each member of the Ohio Subclass by engaging in systematic conduct whereby it has failed to honor the covenant of good faith and fair dealing implied in every contract. Capella has engaged in unreasonable conduct that was entirely inconsistent with the reasonable expectations of Plaintiffs Matelski, Norris and each member of the Ohio Subclass. Capella's breach has caused damage to Plaintiffs Matelski, Norris and each member of the Ohio Subclass in the form of additional tuition payments for doctor courses and, in many instances, to stop pursuing their education altogether, causing them to be damaged in the amount of tuition payments they made and loans incurred before being forced to stop pursuing their education.

### TWENTIETH CAUSE OF ACTION
### Unjust Enrichment
### (Alternative Ohio Subclass)

450. Plaintiffs Matelski and Norris reallege and incorporate the preceding allegations by reference as if set forth fully herein.

451. Plaintiffs Matelski and Norris bring this cause of action, in the alternative, on behalf of an Ohio Subclass under Ohio common law. Capella has engaged in unjust conduct, to the detriment of Plaintiffs Matelski, Norris and each member of the Ohio Subclass.

452.    Plaintiffs Matelski, Norris and each member of the Ohio Subclass provided significant value to Capella in the form of tuition payments for doctoral courses.

453.    Capella appreciated or had knowledge of the benefit received by retaining the money paid by Plaintiffs Matelski, Norris and each member of the Ohio Subclass.

454.    Although Capella accepted the tuition payments and retained and received benefit therefrom, they did not provide students with a doctoral process that was promised and contemplated in connection with the payment of the tuition. On the contrary, Capella intentionally and deliberately used the doctoral program process as a means of improperly extracting tuition and generating revenue. Capella has intentionally and knowingly directed and implemented a doctoral process that is fraught with inefficiencies, meant to ensure that students do not receive the timely responses and attention that they were promised, and creates inordinate turnover of faculty and supervisory committee chairs and members. All of this is done without any honestly or transparency by Capella regarding the actual time and expense that Capella's doctoral students will incur in an effort to complete their degrees.

455.    This unjust conduct on the part of Capella has resulted in Capella doctoral students enrolling in courses that would not be necessary if Capella had not acted unjustly and in incurring significant additional tuition costs and student loans. It has also caused certain Ohio Subclass members to stop pursuing the process altogether.

456.    Despite their inequitable conduct, Capella has retained the tuition payments made by Capella doctoral students pursuing coursework and the profits therefrom.

457.    As a result, Capella has been unjustly enriched, to the detriment of Plaintiffs Matelski, Norris and the members of the Ohio Subclass.

## TWENTY-FIRST CAUSE OF ACTION
### Violation of Ohio Revised Code §1345.02 (Ohio Consumer Protection Act)
### (Alternative Ohio Subclass)

458.    Plaintiffs Matelski and Norris reallege and incorporates the preceding allegations by reference as if set forth fully herein.

459.    Plaintiffs Matelski and Norris bring this cause of action on behalf of an Ohio Subclass. Capella has engaged in unfair, unlawful, and fraudulent business practices, as set forth above.

460.    Ohio Rev. Code Ann. 1345.02(B)(2) provides "That the subject of a consumer transaction is of a particular standard, quality, grade, style, prescription, or model, if it is not." Ohio Rev. Code Ann. § 1345.02(B)(2).

461.    As described above, Capella represented to prospective and current students that its doctoral programs were of a particular standard and quality, when they were not.

462.    Further, the Appeals Court of Ohio found in *Malone v. Acad. of Court Reporting*, 582 N.E.2d 54, 58 (Ohio Ct. App. Dec. 31, 1990), that the OCSPA applied to professional schools. Defendants' contention that the Consumer Sales Practices Act is not applicable because the legislature never intended it to apply to regulated professional schools is not well taken. The statute is applicable by its own terms. The school supplied services to consumers in a consumer transaction and plaintiffs have alleged facts of unfair or deceptive acts or practices under R.C. 1345.02. See *Drexel v. Columbus Technical Institute* (Jan. 18, 1990), Franklin App. No. 88AP-271, unreported, 1990 WL 2925. Plaintiffs may also claim that defendants committed unconscionable acts or practices under R.C. 1345.03. In essence, plaintiffs are entitled to show that defendants abused the privilege of contract. Plaintiffs have stated claims for violations of both R.C. 1345.01 and 1345.23(B). *Malone*, 582 N.E.2d at 59.

463.     Ohio Revised Code ("ORC") §1345.02 specifically prohibits the use of unfair or deceptive trade practices in connection with a consumer transaction.

464.     ORC §1345.03(6) prohibits suppliers from making misleading statements of opinion on which a consumer is likely to rely to the consumer's detriment.

465.     By engaging in the above-described acts and practices, Capella has committed one or more acts of unfair and deceptive trade practices as those terms are defined in at least §§1345.02(B)(2) and 1345.03(6).

466.     Capella made false and misleading statements about the nature, quality, style and model of Capella's doctoral education services. Further, the subject of the Capella doctoral programs had been supplied in accordance with previous representations made by Capella to Plaintiffs and members of the Ohio Subclass, and those representations were not performed. Specifically, Capella misrepresented the length of time it would take to receive a doctoral degree.

467.     Capella also knowingly concealed, omitted and otherwise failed to state material facts about Capella's doctoral education services that would tend to, and did, in fact, deceive students. Specifically, Capella failed to disclose that they intentionally and deliberately misused its doctoral programs to extract tuition and generating revenue. Capella further failed to disclose that it knowingly directed and implemented doctoral programs that are fraught with inefficiencies, meant to ensure that students do not receive the timely responses and attention that they were promised.

468.     Capella further violate the OCPA because 1) the services it offers have characteristics that they do not have; 2) the services it offers are of particular standard, quality, grade, style or model, when they are actually of another which differs materially from the representation; 3) the services it offers has characteristics that Capella did not have a reasonable

89

basis for making such representations; and 4) that its services have characteristics allegedly substantiated by Capella when it has no proof to substantiate such representations. Such representations include, but are not limited to, Capella's representations of an earlier graduation date/faster time to completion than possible.

469.    The misrepresentations and omissions were material to Plaintiffs Matelski, Norris and the members of the Class.

470.    Capella's unfair and deceptive trade practices and acts occurred and continue to occur repeatedly during the course of its business. These actions constitute unfair and deceptive trade practices, in violation of ORC §1345.02.

471.    Plaintiffs Matelski, Norris and members of the Class relied on these representations and omissions in the course of pursuing their doctoral degrees. Furthermore, Capella intended that Plaintiffs Matelski, Norris and members of the Class would rely on the representations and omissions.

472.    As a direct and proximate result of Capella's unfair and deceptive practices and acts, Plaintiffs Matelski, Norris and the Class have suffered and will continue to suffer actual damages. Had Plaintiffs Matelski, Norris and the members of the Class been aware of the misrepresentations and omissions, they would not have paid tuition to Capella for the educational services that Capella purported to provide or incurred costs for books, residency, technology fees, and student loans for tuition and fees, room and board charges, costs of books and supplies and other expenses, etc.

**TWENTY-SECOND CAUSE OF ACTION**
**Fraud in the Inducement**
**(Alternative Pennsylvania Subclass)**

473.     Plaintiff Mason brings this cause of action, in the alternative, on behalf of a Pennsylvania Subclass under Pennsylvania common law.

474.     Plaintiff Mason realleges and incorporates the preceding allegations by reference as if set forth fully herein.

475.     Capella made actual or implied false representations concerning the timing and cost of a doctoral degree, while concealing the truth from prospective and actual students.

476.     Capella had a duty to disclose that Capella's doctoral programs were designed to take much longer than they represented.

477.     Capella concealed and is still concealing how long Capella's doctoral programs actually take to complete.

478.     Capella also concealed the actual percentage of students who graduated with doctoral degrees from Capella.

479.     Further, Capella informed prospective students and current students they would have resources available to them, when Capella knew full well that such resources would not be available.

480.     These representations were material to Plaintiff Mason and the members of the Class agreeing to attend Capella.

481.     Capella was aware of the falsity of its representations, or at a minimum had an utter disregard for their truthfulness. For example, they purposefully designed Capella's doctoral programs to last a certain, longer time frame, but told students they would take less time.

482.     Capella intended students to rely upon these representations because they were included in marketing materials and on their websites.

483.    Plaintiff Mason and members of the Class was justified in relying upon these representations.

484.    Plaintiff Mason and members of the class were injured by relying on these false representations and omissions because had Capella been truthful about the timelines and costs for Capella's doctoral programs, as well as graduation rate and resources actually available, doctoral students would not have enrolled.

**TWENTY-THIRD CAUSE OF ACTION**
**Breach of Contract**
**(Alternative Pennsylvania Subclass)**

485.    Plaintiff Mason realleges and incorporates the preceding allegations by reference as if set forth fully herein.

486.    Plaintiff Mason brings this cause of action, in the alternative, on behalf of a Pennsylvania Subclass under Pennsylvania common law. Capella has systematically violated its contracts with Plaintiff Mason and each member of the Pennsylvania Subclass.

487.    Plaintiff Mason and each member of the Pennsylvania Subclass contracted with Capella to obtain doctoral educational services. Implied in each and every contract was a covenant of good faith and fair dealing.

488.    As part of the contract, Capella promised, inter alia, that, in connection with providing doctoral educational services: 1) students had control over how long it would take to obtain their doctoral degree and 2) that their degrees would be obtained or obtainable in a set amount of time.

489.    Rather than provide doctoral educational services as per its contractual agreement, Capella knowingly and intentionally directed and implemented a doctoral program process fraught with inefficiencies, meant to ensure that students do not receive adequate resource, the timely

responses and attention that they were promised. All of this is done without honesty or transparency by Capella regarding the actual time and expense that its doctoral students will incur in an effort to complete their degrees. The policy implemented by Capella breaches its contracts with Plaintiff Mason and the Pennsylvania Subclass.

490.    Plaintiff Mason and each member of the Pennsylvania Subclass provided significant value to Capella in the form of tuition payments and fees for doctoral courses as contracted.

491.    Furthermore, Plaintiff Mason and each member of the Pennsylvania Subclass complied with their obligations under the contract. To the extent that they did not comply with their obligations under the contract, it was solely the result of conduct engaged in by Capella.

492.    The breach of contract on the part of Capella has resulted in Capella's doctoral students enrolling in courses that would not be necessary if Capella had honored its contract and, in many instances, caused Pennsylvania Subclass members to stop pursuing their education altogether.

493.    Despite its knowing and intentional breaching of the contracts, Capella has retained the tuition payments made by the members of the Pennsylvania Subclass.

494.    Capella has breached its contracts for doctoral education services with Plaintiff Mason and each member of the Pennsylvania Subclass. Capella's breach has caused damage to Plaintiff Mason and each member of the Pennsylvania Subclass in the form of additional tuition payments for doctoral courses and, in many instances, to stop pursuing their education altogether, causing them to be damaged in the amount of tuition payments they made and loans incurred before being forced to stop pursuing their education.

495.     Moreover, Capella has breached its contracts for doctoral educational services with Plaintiff Mason and each member of the Pennsylvania Subclass by engaging in systematic conduct whereby it has failed to honor the covenant of good faith and fair dealing implied in every contract. Capella has engaged in unreasonable conduct that was entirely inconsistent with the reasonable expectations of Plaintiff Mason and each member of the Pennsylvania Subclass. Capella's breach has caused damage to Plaintiff Mason and each member of the Pennsylvania Subclass in the form of additional tuition payments for doctor courses and, in many instances, to stop pursuing their education altogether, causing them to be damaged in the amount of tuition payments they made and loans incurred before being forced to stop pursuing their education.

## TWENTY-FOURTH CAUSE OF ACTION
### Unjust Enrichment
### (Alternative Pennsylvania Subclass)

496.     Plaintiff Mason realleges and incorporate the preceding allegations by reference as if set forth fully herein.

497.     Plaintiff Mason brings this cause of action, in the alternative, on behalf of a Pennsylvania Subclass under Pennsylvania common law. Capella has engaged in unjust conduct, to the detriment of Plaintiff Mason and each member of the Pennsylvania Subclass.

498.     Plaintiff Mason and each member of the Pennsylvania Subclass provided significant value to Capella in the form of tuition payments for doctoral courses.

499.     Capella appreciated or had knowledge of the benefit received by retaining the money paid by Plaintiff Mason and each member of the Pennsylvania Subclass.

500.     Although Capella accepted the tuition payments and retained and received benefit therefrom, they did not provide students with a doctoral process that was promised and contemplated in connection with the payment of the tuition. On the contrary, Capella intentionally

94

and deliberately used the doctoral program process as a means of improperly extracting tuition and generating revenue. Capella has intentionally and knowingly directed and implemented a doctoral process that is fraught with inefficiencies, meant to ensure that students do not receive the timely responses and attention that they were promised, and creates inordinate turnover of faculty and supervisory committee chairs and members. All of this is done without any honestly or transparency by Capella regarding the actual time and expense that Capella's doctoral students will incur in an effort to complete their degrees.

501.    This unjust conduct on the part of Capella has resulted in Capella doctoral students enrolling in courses that would not be necessary if Capella had not acted unjustly and in incurring significant additional tuition costs and student loans. It has also caused certain Pennsylvania Subclass members to stop pursuing the process altogether.

502.    Despite their inequitable conduct, Capella has retained the tuition payments made by Capella doctoral students pursuing coursework and the profits therefrom.

503.    As a result, Capella has been unjustly enriched, to the detriment of Plaintiff Mason and the members of the Pennsylvania Subclass.

**TWENTY-FIFTH CAUSE OF ACTION**
**Violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Act**
**(Alternative Pennsylvania Subclass)**

504.    Plaintiff Mason realleges and incorporate the preceding allegations by reference as if set forth fully herein.

505.    Plaintiff Mason brings this cause of action on behalf of a Pennsylvania Subclass. Capella has engaged in unfair, unlawful, and fraudulent business practices, as set forth above.

506.    Section 201-2(3) of the Pennsylvania UTPCPL defines "trade" and "commerce" to mean the "advertising, offering for sale, sale or distribution of any services and any property,

95

tangible or intangible, real, person or mixed, and any other article, commodity, or thing of value wherever situate, and includes trade or commerce directly or indirectly affecting the people of this Commonwealth."

507.   Defendants have engaged in trade and commerce in the Commonwealth of Pennsylvania by marketing, offering for sale, and selling computer security or technical support services directly to consumers of the Commonwealth.

508.   Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce as defined by subclauses (i) through (xxi) of Section 201-2(4) of the UTPCPL are declared unlawful, and whenever the Attorney General has reason to believe that any person is using or is about to use any method, act, or practice declared unlawful, Section 201-4 of the UTPCPL authorizes the Attorney General to bring an action against such person to restrain these methods, acts, or practices.

509.   The acts and practices described below constitute unfair methods of competition or unfair or deceptive acts or practices, as prohibited by at least Section 201-3 of the UTPCPL as defined by subclause (v) of Section 201-2(4) by representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has sponsorship, approval, status, affiliation or connection that he does not have, 73 Pa. Cons. Stat.§ 201-2(4)(v).

510.   Through the actions described above, Capella has violated at least Sections 201-3 of the UTPCPL as defined by subclause (v) of Section 201-2(4).

511.   Capella engaged in a deceptive act or practice in connection with a consumer transaction with Plaintiff Mason and Class members.

96

512.    Capella's deceptive acts and practices include, but are not limited to, making knowing representations that 1) the services it offers have characteristics that they do not have; 2) the services it offers are of particular standard, quality, grade, style or model, when they are actually of another which differs materially from the representation; 3) the services it offers has characteristics that Capella did not have a reasonable basis for making such representations; and 4) that its services have characteristics allegedly substantiated by Capella when it has no proof to substantiate such representations. Such representations include, but are not limited to, Capella's representations of an earlier graduation date/faster time to completion than possible.

513.    Capella also willfully 1) used oral and written representations that exaggerated, were false and made false innuendoes of material fact and 2) failed to failure to state material facts, and willfully concealed, suppressed or omitted material facts. Such representations include, but are not limited to, Capella's representations of an earlier graduation date/faster time to completion than possible, and omissions include, but are not limited to, its longer times to graduate, slower completion times, and low graduation rates.

514.    Capella made false and misleading statements about the nature, quality, style and model of Capella's doctoral education services. Further, the subject of the Capella doctoral transaction had been supplied in accordance with previous representations made by Capella to Plaintiff Mason and members of the Pennsylvania Subclass, and those representations were not performed. Specifically, Capella misrepresented that: 1) students had control over how long it would take to obtain their doctoral degree and 2) that their degrees would be obtained or obtainable in a set amount of time.

515.    Capella also knowingly concealed, omitted and otherwise failed to state material facts about Capella's doctoral education services that would tend to, and did, in fact, deceive

97

students. Specifically, Capella failed to disclose that they intentionally and deliberately used Capella's doctoral process as a means of improperly extracting tuition and generating revenue. Capella further failed to disclose that they knowingly directed and implemented a doctoral program process that is fraught with inefficiencies, meant to ensure that students do not receive the timely responses and attention that they were promised, and creates inordinate turnover of faculty and supervisory committee chairs and members. Capella also knowingly withheld its low graduation rate and actual times to graduation of its doctoral students.

516.    Capella knew that the doctoral coursework was and continues to be systematically prolonged by the violations set forth herein.

517.    The misrepresentations and omissions were material to Plaintiff Mason and the members of the Class.

518.    Capella 's unfair and deceptive trade practices and acts occurred and continue to occur repeatedly during the course of its business. These actions constitute unfair and deceptive trade practices.

519.    Plaintiff Mason and members of the Class relied on these representations and omissions in the course of pursuing their doctoral degrees. Furthermore, Capella intended that Plaintiff Mason and members of the Class would rely on the representations and omissions.

520.    As a direct and proximate result of Capella's unfair and deceptive practices and acts, Plaintiff Mason and the Class have suffered and will continue to suffer actual damages. Had Plaintiff Mason and the members of the Class been aware of the misrepresentations and omissions, they would not have paid tuition to Capella for the educational services that Defendant purported to provide or incurred students to attend Capella (including for room and board).

## TWENTY-SIXTH CAUSE OF ACTION
### Fraud in the Inducement
### (Alternative Massachusetts Subclass)

521.    Plaintiff Ornelas brings this cause of action, in the alternative, on behalf of a Massachusetts Subclass under Massachusetts common law.

522.    Plaintiff Ornelas realleges and incorporates the preceding allegations by reference as if set forth fully herein.

523.    Capella made actual or implied false representations concerning the timing and cost of a doctoral degree, while concealing the truth from prospective and actual students.

524.    Capella had a duty to disclose that Capella's doctoral programs were designed to take much longer than they represented.

525.    Capella concealed and is still concealing how long Capella's doctoral programs actually take to complete.

526.    Capella also concealed the actual percentage of students who graduated with doctoral degrees from Capella.

527.    Further, Capella informed prospective students and current students they would have resources available to them, when Capella knew full well that such resources would not be available.

528.    These representations were material to Plaintiff Ornelas and the members of the Class agreeing to attend Capella.

529.    Capella was aware of the falsity of its representations, or at a minimum had an utter disregard for their truthfulness. For example, they purposefully designed Capella's doctoral programs to last a certain, longer time frame, but told students they would take less time.

530.    Capella intended students to rely upon these representations because they were included in marketing materials and on their websites.

531.    Plaintiff Ornelas and members of the Class was justified in relying upon these representations.

532.    Plaintiff Ornelas and members of the class were injured by relying on these false representations and omissions because had Capella been truthful about the timelines and costs for Capella's doctoral programs, as well as graduation rate and resources actually available, doctoral students would not have enrolled.

## TWENTY-SEVENTH CAUSE OF ACTION
### Breach of Contract
### (Alternative Massachusetts Subclass)

533.    Plaintiff Ornelas realleges and incorporates the preceding allegations by reference as if set forth fully herein.

534.    Plaintiff Ornelas brings this cause of action, in the alternative, on behalf of a Massachusetts Subclass under Massachusetts common law. Capella has systematically violated its contracts with Plaintiff Ornelas and each member of the Massachusetts Subclass.

535.    Plaintiff Ornelas and each member of the Massachusetts Subclass contracted with Capella to obtain doctoral educational services. Implied in each and every contract was a covenant of good faith and fair dealing.

536.    As part of the contract, Capella promised, inter alia, that, in connection with providing doctoral educational services: 1) students had control over how long it would take to obtain their doctoral degree and 2) that their degrees would be obtained or obtainable in a set amount of time.

537.    Rather than provide doctoral educational services as per its contractual agreement, Capella knowingly and intentionally directed and implemented a doctoral program process fraught with inefficiencies, meant to ensure that students do not receive adequate resource, the timely responses and attention that they were promised. All of this is done without honesty or transparency by Capella regarding the actual time and expense that its doctoral students will incur in an effort to complete their degrees. The policy implemented by Capella breaches its contracts with Plaintiff Ornelas and the Massachusetts Subclass.

538.    Plaintiff Ornelas and each member of the Massachusetts Subclass provided significant value to Capella in the form of tuition payments and fees for doctoral courses as contracted.

539.    Furthermore, Plaintiff Ornelas and each member of the Massachusetts Subclass complied with their obligations under the contract. To the extent that they did not comply with their obligations under the contract, it was solely the result of conduct engaged in by Capella.

540.    The breach of contract on the part of Capella has resulted in Capella's doctoral students enrolling in courses that would not be necessary if Capella had honored its contract and, in many instances, caused Massachusetts Subclass members to stop pursuing their education altogether.

541.    Despite its knowing and intentional breaching of the contracts, Capella has retained the tuition payments made by the members of the Massachusetts Subclass.

542.    Capella has breached its contracts for doctoral education services with Plaintiff Ornelas and each member of the Massachusetts Subclass. Capella's breach has caused damage to Plaintiff Ornelas and each member of the Massachusetts Subclass in the form of additional tuition payments for doctoral courses and, in many instances, to stop pursuing their education altogether,

causing them to be damaged in the amount of tuition payments they made and loans incurred before being forced to stop pursuing their education.

543.     Moreover, Capella has breached its contracts for doctoral educational services with Plaintiff Ornelas and each member of the Massachusetts Subclass by engaging in systematic conduct whereby it has failed to honor the covenant of good faith and fair dealing implied in every contract. Capella has engaged in unreasonable conduct that was entirely inconsistent with the reasonable expectations of Plaintiff Ornelas and each member of the Massachusetts Subclass. Capella's breach has caused damage to Plaintiff Ornelas and each member of the Massachusetts Subclass in the form of additional tuition payments for doctor courses and, in many instances, to stop pursuing their education altogether, causing them to be damaged in the amount of tuition payments they made and loans incurred before being forced to stop pursuing their education.

## TWENTY-EIGHTH CAUSE OF ACTION
### Unjust Enrichment
### (Alternative Massachusetts Subclass)

544.     Plaintiff Ornelas realleges and incorporate the preceding allegations by reference as if set forth fully herein.

545.     Plaintiff Ornelas brings this cause of action, in the alternative, on behalf of a Massachusetts Subclass under Massachusetts common law. Capella has engaged in unjust conduct, to the detriment of Plaintiff Ornelas and each member of the Massachusetts Subclass.

546.     Plaintiff Ornelas and each member of the Massachusetts Subclass provided significant value to Capella in the form of tuition payments for doctoral courses.

547.     Capella appreciated or had knowledge of the benefit received by retaining the money paid by Plaintiff Ornelas and each member of the Massachusetts Subclass.

548.     Although Capella accepted the tuition payments and retained and received benefit therefrom, they did not provide students with a doctoral process that was promised and contemplated in connection with the payment of the tuition. On the contrary, Capella intentionally and deliberately used the doctoral program process as a means of improperly extracting tuition and generating revenue. Capella has intentionally and knowingly directed and implemented a doctoral process that is fraught with inefficiencies, meant to ensure that students do not receive the timely responses and attention that they were promised, and creates inordinate turnover of faculty and supervisory committee chairs and members. All of this is done without any honestly or transparency by Capella regarding the actual time and expense that Capella's doctoral students will incur in an effort to complete their degrees.

549.     This unjust conduct on the part of Capella has resulted in Capella doctoral students enrolling in courses that would not be necessary if Capella had not acted unjustly and in incurring significant additional tuition costs and student loans. It has also caused certain Massachusetts Subclass members to stop pursuing the process altogether.

550.     Despite their inequitable conduct, Capella has retained the tuition payments made by Capella doctoral students pursuing coursework and the profits therefrom.

551.     As a result, Capella has been unjustly enriched, to the detriment of Plaintiff Ornelas and the members of the Massachusetts Subclass.

**TWENTY-NINTH CAUSE OF ACTION**
**Violation of Mass. Gen. Laws. Ch. 93A**
**(Massachusetts Consumer Protection Act)**
**(Alternative Massachusetts Subclass)**

552.     Plaintiff Ornelas realleges and incorporate the preceding allegations by reference as if set forth fully herein.

553.     Massachusetts's Consumer Protection Act, Mass. Gen. Laws ch. 93A makes it unlawful to engage in any unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.

554.     Plaintiff Ornelas brings this cause of action on behalf of a Massachusetts Subclass. Capella has engaged in unfair, unlawful, and fraudulent business practices, as set forth above.

555.     Through the actions described above, Capella has violated Mass. Gen. Laws ch. 93A.

556.     Capella's deceptive acts and practices include, but are not limited to, making knowing representations that 1) the services it offers have characteristics that they do not have; 2) the services it offers are of particular standard, quality, grade, style or model, when they are actually of another which differs materially from the representation; 3) the services it offers has characteristics that Capella did not have a reasonable basis for making such representations; and 4) that its services have characteristics allegedly substantiated by Capella when it has no proof to substantiate such representations. Such representations include, but are not limited to, Capella's representations of an earlier graduation date/faster time to completion than possible.

557.     Capella also willfully 1) used oral and written representations that exaggerated, were false and made false innuendoes of material fact and 2) failed to failure to state material facts, and willfully concealed, suppressed or omitted material facts. Such representations include, but are not limited to, Capella's representations of an earlier graduation date/faster time to completion than possible, and omissions include, but are not limited to, its longer times to graduate, slower completion times, and low graduation rates.

558.     Capella made false and misleading statements about the nature, quality, style and model of Capella's doctoral education services. Further, the subject of the Capella doctoral

transaction had been supplied in accordance with previous representations made by Capella to Plaintiff Ornelas and members of the Massachusetts Subclass, and those representations were not performed. Specifically, Capella misrepresented that: 1) students had control over how long it would take to obtain their doctoral degree and 2) that their degrees would be obtained or obtainable in a set amount of time.

559.    Capella also knowingly concealed, omitted and otherwise failed to state material facts about Capella's doctoral education services that would tend to, and did, in fact, deceive students. Specifically, Capella failed to disclose that they intentionally and deliberately used Capella's doctoral process as a means of improperly extracting tuition and generating revenue. Capella further failed to disclose that they knowingly directed and implemented a doctoral program process that is fraught with inefficiencies, meant to ensure that students do not receive the timely responses and attention that they were promised, and creates inordinate turnover of faculty and supervisory committee chairs and members. Capella also knowingly withheld its low graduation rate and actual times to graduation of its doctoral students.

560.    Capella knew that the doctoral coursework was and continues to be systematically prolonged by the violations set forth herein.

561.    The misrepresentations and omissions were material to Plaintiff Ornelas and the members of the Class.

562.    Capella 's unfair and deceptive trade practices and acts occurred and continue to occur repeatedly during the course of its business. These actions constitute unfair and deceptive trade practices, in violation of Mass. Gen. Laws ch. 93A.

563.     Plaintiff Ornelas and members of the Class relied on these representations and omissions in the course of pursuing their doctoral degrees. Furthermore, Capella intended that Plaintiff Ornelas and members of the Class would rely on the representations and omissions.

564.     As a direct and proximate result of Capella's unfair and deceptive practices and acts, Plaintiff Ornelas and the Class have suffered and will continue to suffer actual damages. Had Plaintiff Ornelas and the members of the Class been aware of the misrepresentations and omissions, they would not have paid tuition to Capella for the educational services that Defendant purported to provide or incurred students to attend Capella (including for room and board).

### THIRTIETH CAUSE OF ACTION
### Fraud in the Inducement
### (Alternative Missouri Subclass)

565.     Plaintiff Cooper brings this cause of action, in the alternative, on behalf of a Missouri Subclass under Missouri common law.

566.     Plaintiff Cooper realleges and incorporates the preceding allegations by reference as if set forth fully herein.

567.     Capella made actual or implied false representations concerning the timing and cost of a doctoral degree, while concealing the truth from prospective and actual students.

568.     Capella had a duty to disclose that Capella's doctoral programs were designed to take much longer than they represented.

569.     Capella concealed and is still concealing how long Capella's doctoral programs actually take to complete.

570.     Capella also concealed the actual percentage of students who graduated with doctoral degrees from Capella.

106

571.    Further, Capella informed prospective students and current students they would have resources available to them, when Capella knew full well that such resources would not be available.

572.    These representations were material to Plaintiff Cooper and the members of the Class agreeing to attend Capella.

573.    Capella was aware of the falsity of its representations, or at a minimum had an utter disregard for their truthfulness. For example, they purposefully designed Capella's doctoral programs to last a certain, longer time frame, but told students they would take less time.

574.    Capella intended students to rely upon these representations because they were included in marketing materials and on their websites.

575.    Plaintiff Cooper and members of the Class was justified in relying upon these representations.

576.    Plaintiff Cooper and members of the class were injured by relying on these false representations and omissions because had Capella been truthful about the timelines and costs for Capella's doctoral programs, as well as graduation rate and resources actually available, doctoral students would not have enrolled.

## THIRTY-FIRST CAUSE OF ACTION
### Breach of Contract
### (Alternative Missouri Subclass)

577.    Plaintiff Cooper realleges and incorporates the preceding allegations by reference as if set forth fully herein.

578.    Plaintiff Cooper brings this cause of action, in the alternative, on behalf of a Missouri Subclass under Missouri common law. Capella has systematically violated its contracts with Plaintiff Cooper and each member of the Missouri Subclass.

579.    Plaintiff Cooper and each member of the Missouri Subclass contracted with Capella to obtain doctoral educational services. Implied in each and every contract was a covenant of good faith and fair dealing.

580.    As part of the contract, Capella promised, inter alia, that, in connection with providing doctoral educational services: 1) students had control over how long it would take to obtain their doctoral degree and 2) that their degrees would be obtained or obtainable in a set amount of time.

581.    Rather than provide doctoral educational services as per its contractual agreement, Capella knowingly and intentionally directed and implemented a doctoral program process fraught with inefficiencies, meant to ensure that students do not receive adequate resource, the timely responses and attention that they were promised. All of this is done without honesty or transparency by Capella regarding the actual time and expense that its doctoral students will incur in an effort to complete their degrees. The policy implemented by Capella breaches its contracts with Plaintiff Cooper and the Missouri Subclass.

582.    Plaintiff Cooper and each member of the Missouri Subclass provided significant value to Capella in the form of tuition payments and fees for doctoral courses as contracted.

583.    Furthermore, Plaintiff Cooper and each member of the Missouri Subclass complied with their obligations under the contract. To the extent that they did not comply with their obligations under the contract, it was solely the result of conduct engaged in by Capella.

584.    The breach of contract on the part of Capella has resulted in Capella's doctoral students enrolling in courses that would not be necessary if Capella had honored its contract and, in many instances, caused Missouri Subclass members to stop pursuing their education altogether.

585.     Despite its knowing and intentional breaching of the contracts, Capella has retained the tuition payments made by the members of the Missouri Subclass.

586.     Capella has breached its contracts for doctoral education services with Plaintiff Cooper and each member of the Missouri Subclass. Capella's breach has caused damage to Plaintiff Cooper and each member of the Missouri Subclass in the form of additional tuition payments for doctoral courses and, in many instances, to stop pursuing their education altogether, causing them to be damaged in the amount of tuition payments they made and loans incurred before being forced to stop pursuing their education.

587.     Moreover, Capella has breached its contracts for doctoral educational services with Plaintiff Cooper and each member of the Missouri Subclass by engaging in systematic conduct whereby it has failed to honor the covenant of good faith and fair dealing implied in every contract. Capella has engaged in unreasonable conduct that was entirely inconsistent with the reasonable expectations of Plaintiff Cooper and each member of the Missouri Subclass. Capella's breach has caused damage to Plaintiff Cooper and each member of the Missouri Subclass in the form of additional tuition payments for doctor courses and, in many instances, to stop pursuing their education altogether, causing them to be damaged in the amount of tuition payments they made and loans incurred before being forced to stop pursuing their education.

### THIRTY-SECOND CAUSE OF ACTION
**Unjust Enrichment**
**(Alternative Missouri Subclass)**

588.     Plaintiff Cooper realleges and incorporate the preceding allegations by reference as if set forth fully herein.

589.    Plaintiff Cooper brings this cause of action, in the alternative, on behalf of a Missouri Subclass under Missouri common law. Capella has engaged in unjust conduct, to the detriment of Plaintiff Cooper and each member of the Missouri Subclass.

590.    Plaintiff Cooper and each member of the Missouri Subclass provided significant value to Capella in the form of tuition payments for doctoral courses.

591.    Capella appreciated or had knowledge of the benefit received by retaining the money paid by Plaintiff Cooper and each member of the Missouri Subclass.

592.    Although Capella accepted the tuition payments and retained and received benefit therefrom, they did not provide students with a doctoral process that was promised and contemplated in connection with the payment of the tuition. On the contrary, Capella intentionally and deliberately used the doctoral program process as a means of improperly extracting tuition and generating revenue. Capella has intentionally and knowingly directed and implemented a doctoral process that is fraught with inefficiencies, meant to ensure that students do not receive the timely responses and attention that they were promised, and creates inordinate turnover of faculty and supervisory committee chairs and members. All of this is done without any honestly or transparency by Capella regarding the actual time and expense that Capella's doctoral students will incur in an effort to complete their degrees.

593.    This unjust conduct on the part of Capella has resulted in Capella doctoral students enrolling in courses that would not be necessary if Capella had not acted unjustly and in incurring significant additional tuition costs and student loans. It has also caused certain Missouri Subclass members to stop pursuing the process altogether.

594.    Despite their inequitable conduct, Capella has retained the tuition payments made by Capella doctoral students pursuing coursework and the profits therefrom.

595.     As a result, Capella has been unjustly enriched, to the detriment of Plaintiff Cooper and the members of the Missouri Subclass.

**THIRTY-THIRD CAUSE OF ACTION**
**Violation of Mo. Rev. Stat. § 407.010 *et seq*.**
**(Missouri Merchandising Practices Act)**
**(Alternative Missouri Subclass)**

596.     Plaintiff Cooper realleges and incorporate the preceding allegations by reference as if set forth fully herein.

597.     Plaintiff Cooper brings this claim under the Missouri Merchandising Practices Act ("MMPA"), Mo. Rev. Stat. § 407.010 et seq. on behalf of himself and the Missouri Class.

598.     Plaintiff Cooper brings this cause of action on behalf of a Missouri Subclass. Capella has engaged in unfair, unlawful, and fraudulent business practices, as set forth above.

599.     Capella is engaged in a deceptive act or practice in connection with a consumer transaction with Plaintiff Cooper and Class members.

600.     Capella's deceptive acts and practices include, but are not limited to, making knowing representations that 1) the services it offers have characteristics that they do not have; 2) the services it offers are of particular standard, quality, grade, style or model, when they are actually of another which differs materially from the representation; 3) the services it offers has characteristics that Capella did not have a reasonable basis for making such representations; and 4) that its services have characteristics allegedly substantiated by Capella when it has no proof to substantiate such representations. Such representations include, but are not limited to, Capella's representations of an earlier graduation date/faster time to completion than possible.

601.     Capella also willfully 1) used oral and written representations that exaggerated, were false and made false innuendoes of material fact and 2) failed to failure to state material facts,

and willfully concealed, suppressed or omitted material facts. Such representations include, but are not limited to, Capella's representations of an earlier graduation date/faster time to completion than possible, and omissions include, but are not limited to, its longer times to graduate, slower completion times, and low graduation rates.

602.    Capella made false and misleading statements about the nature, quality, style and model of Capella's doctoral education services. Further, the subject of the Capella doctoral transaction had been supplied in accordance with previous representations made by Capella to Plaintiff Cooper and members of the Missouri Subclass, and those representations were not performed. Specifically, Capella misrepresented that: 1) students had control over how long it would take to obtain their doctoral degree and 2) that their degrees would be obtained or obtainable in a set amount of time.

603.    Capella also knowingly concealed, omitted and otherwise failed to state material facts about Capella's doctoral education services that would tend to, and did, in fact, deceive students. Specifically, Capella failed to disclose that they intentionally and deliberately used Capella's doctoral process as a means of improperly extracting tuition and generating revenue. Capella further failed to disclose that they knowingly directed and implemented a doctoral program process that is fraught with inefficiencies, meant to ensure that students do not receive the timely responses and attention that they were promised, and creates inordinate turnover of faculty and supervisory committee chairs and members. Capella also knowingly withheld its low graduation rate and actual times to graduation of its doctoral students.

604.    Capella knew that the doctoral coursework was and continues to be systematically prolonged by the violations set forth herein.

605.   The misrepresentations and omissions were material to Plaintiff Cooper and the members of the Class.

606.   Capella 's unfair and deceptive trade practices and acts occurred and continue to occur repeatedly during the course of its business.

607.   Capella's actions and concealment constitute a "deception, fraud . . . false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact," in violation of the MMPA. See Mo. Rev. Stat. § 407.020.

608.    Capella conduct constitutes an "unfair practice" under the MMPA because it: (a) was unethical, (b) caused substantial injury to consumers, and (c) violated Capella's duty of good faith by soliciting consumers (i.e., students) in a dishonest manner without observing reasonable commercial standards of fair dealing. See 15 C.S.R. § 60-8.

609.   As a direct and proximate result of Capella wrongful conduct, Plaintiff Cooper and the Missouri Class suffered loss by not receiving the doctoral programs they were promised, programs they would not have enrolled in but for Capella's engaging in deception, fraud, false promise, misrepresentation, and unfair practice or had not concealed, suppressed, or omitted material facts concerning the product despite having a duty to disclose such information.

610.   Plaintiff Cooper and members of the Class relied on these representations and omissions in the course of pursuing their doctoral degrees. Furthermore, Capella intended that Plaintiff Cooper and members of the Class would rely on the representations and omissions.

611.   As a direct and proximate result of Capella's unfair and deceptive practices and acts, Plaintiff Cooper and the Class have suffered and will continue to suffer actual damages. Had Plaintiff Cooper and the members of the Class been aware of the misrepresentations and omissions,

they would not have paid tuition to Capella for the educational services that Defendant purported to provide or incurred students to attend Capella (including for room and board).

### THIRTY-FOURTH CAUSE OF ACTION
### Fraud in the Inducement
### (Alternative Texas Subclass)

612.    Plaintiff Cooper brings this cause of action, in the alternative, on behalf of a Missouri Subclass under Texas common law.

613.    Plaintiff Cooper realleges and incorporates the preceding allegations by reference as if set forth fully herein.

614.    Capella made actual or implied false representations concerning the timing and cost of a doctoral degree, while concealing the truth from prospective and actual students.

615.    Capella had a duty to disclose that Capella's doctoral programs were designed to take much longer than they represented.

616.    Capella concealed and is still concealing how long Capella's doctoral programs actually take to complete.

617.    Capella also concealed the actual percentage of students who graduated with doctoral degrees from Capella.

618.    Further, Capella informed prospective students and current students they would have resources available to them, when Capella knew full well that such resources would not be available.

619.    These representations were material to Plaintiff Cooper and the members of the Class agreeing to attend Capella.

620.     Capella was aware of the falsity of its representations, or at a minimum had an utter disregard for their truthfulness. For example, they purposefully designed Capella's doctoral programs to last a certain, longer time frame, but told students they would take less time.

621.     Capella intended students to rely upon these representations because they were included in marketing materials and on their websites.

622.     Plaintiff Cooper and members of the Class was justified in relying upon these representations.

623.     Plaintiff Cooper and members of the class were injured by relying on these false representations and omissions because had Capella been truthful about the timelines and costs for Capella's doctoral programs, as well as graduation rate and resources actually available, doctoral students would not have enrolled.

**THIRTY-FIFTH CAUSE OF ACTION**
**Breach of Contract**
**(Alternative Texas Subclass)**

624.     Plaintiff Cooper realleges and incorporates the preceding allegations by reference as if set forth fully herein.

625.     Plaintiff Cooper brings this cause of action, in the alternative, on behalf of a Texas Subclass under Texas common law. Capella has systematically violated its contracts with Plaintiff Cooper and each member of the Texas Subclass.

626.     Plaintiff Cooper and each member of the Texas Subclass contracted with Capella to obtain doctoral educational services. Implied in each and every contract was a covenant of good faith and fair dealing.

627.     As part of the contract, Capella promised, inter alia, that, in connection with providing doctoral educational services: 1) students had control over how long it would take to

115

obtain their doctoral degree and 2) that their degrees would be obtained or obtainable in a set amount of time.

628.     Rather than provide doctoral educational services as per its contractual agreement, Capella knowingly and intentionally directed and implemented a doctoral program process fraught with inefficiencies, meant to ensure that students do not receive adequate resource, the timely responses and attention that they were promised. All of this is done without honesty or transparency by Capella regarding the actual time and expense that its doctoral students will incur in an effort to complete their degrees. The policy implemented by Capella breaches its contracts with Plaintiff Cooper and the Texas Subclass.

629.     Plaintiff Cooper and each member of the Texas Subclass provided significant value to Capella in the form of tuition payments and fees for doctoral courses as contracted.

630.     Furthermore, Plaintiff Cooper and each member of the Texas Subclass complied with their obligations under the contract. To the extent that they did not comply with their obligations under the contract, it was solely the result of conduct engaged in by Capella.

631.     The breach of contract on the part of Capella has resulted in Capella's doctoral students enrolling in courses that would not be necessary if Capella had honored its contract and, in many instances, caused Texas Subclass members to stop pursuing their education altogether.

632.     Despite its knowing and intentional breaching of the contracts, Capella has retained the tuition payments made by the members of the Texas Subclass.

633.     Capella has breached its contracts for doctoral education services with Plaintiff Cooper and each member of the Texas Subclass. Capella's breach has caused damage to Plaintiff Cooper and each member of the Texas Subclass in the form of additional tuition payments for doctoral courses and, in many instances, to stop pursuing their education altogether, causing them

to be damaged in the amount of tuition payments they made and loans incurred before being forced to stop pursuing their education.

634.    Moreover, Capella has breached its contracts for doctoral educational services with Plaintiff Cooper and each member of the Texas Subclass by engaging in systematic conduct whereby it has failed to honor the covenant of good faith and fair dealing implied in every contract. Capella has engaged in unreasonable conduct that was entirely inconsistent with the reasonable expectations of Plaintiff Cooper and each member of the Texas Subclass. Capella's breach has caused damage to Plaintiff Cooper and each member of the Texas Subclass in the form of additional tuition payments for doctor courses and, in many instances, to stop pursuing their education altogether, causing them to be damaged in the amount of tuition payments they made and loans incurred before being forced to stop pursuing their education.

## THIRTY-SIXTH CAUSE OF ACTION
### Unjust Enrichment
### (Alternative Texas Subclass)

635.    Plaintiff Cooper realleges and incorporate the preceding allegations by reference as if set forth fully herein.

636.    Plaintiff Cooper brings this cause of action, in the alternative, on behalf of a Texas Subclass under Texas common law. Capella has engaged in unjust conduct, to the detriment of Plaintiff Cooper and each member of the Texas Subclass.

637.    Plaintiff Cooper and each member of the Texas Subclass provided significant value to Capella in the form of tuition payments for doctoral courses.

638.    Capella appreciated or had knowledge of the benefit received by retaining the money paid by Plaintiff Cooper and each member of the Texas Subclass.

639.     Although Capella accepted the tuition payments and retained and received benefit therefrom, they did not provide students with a doctoral process that was promised and contemplated in connection with the payment of the tuition. On the contrary, Capella intentionally and deliberately used the doctoral program process as a means of improperly extracting tuition and generating revenue. Capella has intentionally and knowingly directed and implemented a doctoral process that is fraught with inefficiencies, meant to ensure that students do not receive the timely responses and attention that they were promised, and creates inordinate turnover of faculty and supervisory committee chairs and members. All of this is done without any honestly or transparency by Capella regarding the actual time and expense that Capella's doctoral students will incur in an effort to complete their degrees.

640.     This unjust conduct on the part of Capella has resulted in Capella doctoral students enrolling in courses that would not be necessary if Capella had not acted unjustly and in incurring significant additional tuition costs and student loans. It has also caused certain Texas Subclass members to stop pursuing the process altogether.

641.     Despite their inequitable conduct, Capella has retained the tuition payments made by Capella doctoral students pursuing coursework and the profits therefrom.

642.     As a result, Capella has been unjustly enriched, to the detriment of Plaintiff Cooper and the members of the Texas Subclass.

**THIRTY-SEVENTH CAUSE OF ACTION**
**Violation of Tex. Bus. & Com. Code Ann. §17.47(a) and (b)**
**(Texas Deceptive Trade Practices-Consumer Protection Act)**
**(Alternative Texas Subclass)**

643.     Plaintiff Cooper realleges and incorporate the preceding allegations by reference as if set forth fully herein.

118

644.     Plaintiff Cooper brings this cause of action on behalf of a Texas Subclass. Capella has engaged in unfair, unlawful, and fraudulent business practices, as set forth above.

645.     Through the actions described above, Capella has in the course of trade and commerce engaged in false, misleading and deceptive acts and practices declared unlawful in §§ 17.46(a) and (b) of the DTPA. Such acts include:

   a. False, misleading, or deceptive acts or practices in the conduct of any trade or commerce, in violation of DTPA §l 7.46(a);

   b. Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which the person does not, in violation ·of DTPA § 17.46(b)5); and

   c. Failing to disclose information concerning goods or services which was known at the time of the transaction with the intent to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed in violation of§ 17.46(b)(24).

646.     Capella engaged in a deceptive act or practice in connection with a consumer transaction with Plaintiff Cooper and Class members.

647.     Capella's deceptive acts and practices include, but are not limited to, making knowing representations that 1) the services it offers have characteristics that they do not have; 2) the services it offers are of particular standard, quality, grade, style or model, when they are actually of another which differs materially from the representation; 3) the services it offers has characteristics that Capella did not have a reasonable basis for making such representations; and 4) that its services have characteristics allegedly substantiated by Capella when it has no proof to substantiate such representations. Such representations include, but are not limited to, Capella's representations of an earlier graduation date/faster time to completion than possible.

119

648. Capella also willfully 1) used oral and written representations that exaggerated, were false and made false innuendoes of material fact and 2) failed to failure to state material facts, and willfully concealed, suppressed or omitted material facts. Such representations include, but are not limited to, Capella's representations of an earlier graduation date/faster time to completion than possible, and omissions include, but are not limited to, its longer times to graduate, slower completion times, and low graduation rates.

649. Capella made false and misleading statements about the nature, quality, style and model of Capella's doctoral education services. Further, the subject of the Capella doctoral transaction had been supplied in accordance with previous representations made by Capella to Plaintiff Cooper and members of the Texas Subclass, and those representations were not performed. Specifically, Capella misrepresented that: 1) students had control over how long it would take to obtain their doctoral degree and 2) that their degrees would be obtained or obtainable in a set amount of time.

650. Capella also knowingly concealed, omitted and otherwise failed to state material facts about Capella's doctoral education services that would tend to, and did, in fact, deceive students. Specifically, Capella failed to disclose that they intentionally and deliberately used Capella's doctoral process as a means of improperly extracting tuition and generating revenue. Capella further failed to disclose that they knowingly directed and implemented a doctoral program process that is fraught with inefficiencies, meant to ensure that students do not receive the timely responses and attention that they were promised, and creates inordinate turnover of faculty and supervisory committee chairs and members. Capella also knowingly withheld its low graduation rate and actual times to graduation of its doctoral students.

651.    Capella knew that the doctoral coursework was and continues to be systematically prolonged by the violations set forth herein.

652.    The misrepresentations and omissions were material to Plaintiff Cooper and the members of the Class.

653.    Capella 's unfair and deceptive trade practices and acts occurred and continue to occur repeatedly during the course of its business. These actions constitute unfair and deceptive trade practices.

654.    Plaintiff Cooper and members of the Class relied on these representations and omissions in the course of pursuing their doctoral degrees. Furthermore, Capella intended that Plaintiff Cooper and members of the Class would rely on the representations and omissions.

655.    As a direct and proximate result of Capella's unfair and deceptive practices and acts, Plaintiff Cooper and the Class have suffered and will continue to suffer actual damages. Had Plaintiff Cooper and the members of the Class been aware of the misrepresentations and omissions, they would not have paid tuition to Capella for the educational services that Defendant purported to provide or incurred students to attend Capella (including for room and board).

### THIRTY-EIGHTH CAUSE OF ACTION
### Fraud in the Inducement
### (Alternative Alabama Subclass)

656.    Plaintiff Carter brings this cause of action, in the alternative, on behalf of a Missouri Subclass under Alabama common law.

657.    Plaintiff Carter realleges and incorporates the preceding allegations by reference as if set forth fully herein.

658.    Capella made actual or implied false representations concerning the timing and cost of a doctoral degree, while concealing the truth from prospective and actual students.

121

659.    Capella had a duty to disclose that Capella's doctoral programs were designed to take much longer than they represented.

660.    Capella concealed and is still concealing how long Capella's doctoral programs actually take to complete.

661.    Capella also concealed the actual percentage of students who graduated with doctoral degrees from Capella.

662.    Further, Capella informed prospective students and current students they would have resources available to them, when Capella knew full well that such resources would not be available.

663.    These representations were material to Plaintiff Carter and the members of the Class agreeing to attend Capella.

664.    Capella was aware of the falsity of its representations, or at a minimum had an utter disregard for their truthfulness. For example, they purposefully designed Capella's doctoral programs to last a certain, longer time frame, but told students they would take less time.

665.    Capella intended students to rely upon these representations because they were included in marketing materials and on their websites.

666.    Plaintiff Carter and members of the Class was justified in relying upon these representations.

667.    Plaintiff Carter and members of the class were injured by relying on these false representations and omissions because had Capella been truthful about the timelines and costs for Capella's doctoral programs, as well as graduation rate and resources actually available, doctoral students would not have enrolled.

122

## THIRTY-NINTH CAUSE OF ACTION
### Breach of Contract
### (Alternative Alabama Subclass)

668.     Plaintiff Carter realleges and incorporates the preceding allegations by reference as if set forth fully herein.

669.     Plaintiff Carter brings this cause of action, in the alternative, on behalf of an Alabama Subclass under Alabama common law. Capella has systematically violated its contracts with Plaintiff Carter and each member of the Alabama Subclass.

670.     Plaintiff Carter and each member of the Alabama Subclass contracted with Capella to obtain doctoral educational services. Implied in each and every contract was a covenant of good faith and fair dealing.

671.     As part of the contract, Capella promised, inter alia, that, in connection with providing doctoral educational services: 1) students had control over how long it would take to obtain their doctoral degree and 2) that their degrees would be obtained or obtainable in a set amount of time.

672.     Rather than provide doctoral educational services as per its contractual agreement, Capella knowingly and intentionally directed and implemented a doctoral program process fraught with inefficiencies, meant to ensure that students do not receive adequate resource, the timely responses and attention that they were promised. All of this is done without honesty or transparency by Capella regarding the actual time and expense that its doctoral students will incur in an effort to complete their degrees. The policy implemented by Capella breaches its contracts with Plaintiff Carter and the Alabama Subclass.

673.     Plaintiff Carter and each member of the Alabama Subclass provided significant value to Capella in the form of tuition payments and fees for doctoral courses as contracted.

674.   Furthermore, Plaintiff Carter and each member of the Alabama Subclass complied with their obligations under the contract. To the extent that they did not comply with their obligations under the contract, it was solely the result of conduct engaged in by Capella.

675.   The breach of contract on the part of Capella has resulted in Capella's doctoral students enrolling in courses that would not be necessary if Capella had honored its contract and, in many instances, caused Alabama Subclass members to stop pursuing their education altogether.

676.   Despite its knowing and intentional breaching of the contracts, Capella has retained the tuition payments made by the members of the Alabama Subclass.

677.   Capella has breached its contracts for doctoral education services with Plaintiff Carter and each member of the Alabama Subclass. Capella's breach has caused damage to Plaintiff Carter and each member of the Alabama Subclass in the form of additional tuition payments for doctoral courses and, in many instances, to stop pursuing their education altogether, causing them to be damaged in the amount of tuition payments they made and loans incurred before being forced to stop pursuing their education.

678.   Moreover, Capella has breached its contracts for doctoral educational services with Plaintiff Carter and each member of the Alabama Subclass by engaging in systematic conduct whereby it has failed to honor the covenant of good faith and fair dealing implied in every contract. Capella has engaged in unreasonable conduct that was entirely inconsistent with the reasonable expectations of Plaintiff Carter and each member of the Alabama Subclass. Capella's breach has caused damage to Plaintiff Carter and each member of the Alabama Subclass in the form of additional tuition payments for doctor courses and, in many instances, to stop pursuing their education altogether, causing them to be damaged in the amount of tuition payments they made and loans incurred before being forced to stop pursuing their education.

## FORTIETH CAUSE OF ACTION
### Unjust Enrichment
### (Alternative Alabama Subclass)

679.     Plaintiff Carter realleges and incorporate the preceding allegations by reference as if set forth fully herein.

680.     Plaintiff Carter brings this cause of action, in the alternative, on behalf of an Alabama Subclass under Alabama common law. Capella has engaged in unjust conduct, to the detriment of Plaintiff Carter and each member of the Alabama Subclass.

681.     Plaintiff Carter and each member of the Alabama Subclass provided significant value to Capella in the form of tuition payments for doctoral courses.

682.     Capella appreciated or had knowledge of the benefit received by retaining the money paid by Plaintiff Carter and each member of the Alabama Subclass.

683.     Although Capella accepted the tuition payments and retained and received benefit therefrom, they did not provide students with a doctoral process that was promised and contemplated in connection with the payment of the tuition. On the contrary, Capella intentionally and deliberately used the doctoral program process as a means of improperly extracting tuition and generating revenue. Capella has intentionally and knowingly directed and implemented a doctoral process that is fraught with inefficiencies, meant to ensure that students do not receive the timely responses and attention that they were promised, and creates inordinate turnover of faculty and supervisory committee chairs and members. All of this is done without any honestly or transparency by Capella regarding the actual time and expense that Capella's doctoral students will incur in an effort to complete their degrees.

684.     This unjust conduct on the part of Capella has resulted in Capella doctoral students enrolling in courses that would not be necessary if Capella had not acted unjustly and in incurring

significant additional tuition costs and student loans. It has also caused certain Alabama Subclass members to stop pursuing the process altogether.

685.    Despite their inequitable conduct, Capella has retained the tuition payments made by Capella doctoral students pursuing coursework and the profits therefrom.

686.    As a result, Capella has been unjustly enriched, to the detriment of Plaintiff Carter and the members of the Alabama Subclass.

**FORTY-FIRST CAUSE OF ACTION**
**Violation of Ala. Code § 8-19-5(27)**
**(Alabama Deceptive Trade Practices Act)**
**(Alternative Alabama Subclass)**

687.    Plaintiff Carter realleges and incorporate the preceding allegations by reference as if set forth fully herein.

688.    Plaintiff Carter brings this cause of action on behalf of an Alabama Subclass. Capella has engaged in unfair, unlawful, and fraudulent business practices, as set forth above.

689.    Through the actions described above, Capella has engaged in "false, misleading, or deceptive act[s] or practice[s] in the conduct of trade or commerce" in violation of the Deceptive Trade Practices Act. See Ala. Code § 8-19-5(27).

690.    Capella engaged in a deceptive act or practice in connection with a consumer transaction with Plaintiff Carter and Class members.

691.    Capella's deceptive acts and practices include, but are not limited to, making knowing representations that 1) the services it offers have characteristics that they do not have; 2) the services it offers are of particular standard, quality, grade, style or model, when they are actually of another which differs materially from the representation; 3) the services it offers has characteristics that Capella did not have a reasonable basis for making such representations; and

126

4) that its services have characteristics allegedly substantiated by Capella when it has no proof to substantiate such representations. Such representations include, but are not limited to, Capella's representations of an earlier graduation date/faster time to completion than possible.

692.    Capella also willfully 1) used oral and written representations that exaggerated, were false and made false innuendoes of material fact and 2) failed to failure to state material facts, and willfully concealed, suppressed or omitted material facts. Such representations include, but are not limited to, Capella's representations of an earlier graduation date/faster time to completion than possible, and omissions include, but are not limited to, its longer times to graduate, slower completion times, and low graduation rates.

693.    Capella made false and misleading statements about the nature, quality, style and model of Capella's doctoral education services. Further, the subject of the Capella doctoral transaction had been supplied in accordance with previous representations made by Capella to Plaintiff Carter and members of the Alabama Subclass, and those representations were not performed. Specifically, Capella misrepresented that: 1) students had control over how long it would take to obtain their doctoral degree and 2) that their degrees would be obtained or obtainable in a set amount of time.

694.    Capella also knowingly concealed, omitted and otherwise failed to state material facts about Capella's doctoral education services that would tend to, and did, in fact, deceive students. Specifically, Capella failed to disclose that they intentionally and deliberately used Capella's doctoral process as a means of improperly extracting tuition and generating revenue. Capella further failed to disclose that they knowingly directed and implemented a doctoral program process that is fraught with inefficiencies, meant to ensure that students do not receive the timely responses and attention that they were promised, and creates inordinate turnover of faculty and

supervisory committee chairs and members. Capella also knowingly withheld its low graduation rate and actual times to graduation of its doctoral students.

695.   Capella knew that the doctoral coursework was and continues to be systematically prolonged by the violations set forth herein.

696.   The misrepresentations and omissions were material to Plaintiff Carter and the members of the Class.

697.   Capella 's unfair and deceptive trade practices and acts occurred and continue to occur repeatedly during the course of its business. These actions constitute unfair and deceptive trade practices.

698.   Plaintiff Carter and members of the Class relied on these representations and omissions in the course of pursuing their doctoral degrees. Furthermore, Capella intended that Plaintiff Carter and members of the Class would rely on the representations and omissions.

699.   As a direct and proximate result of Capella's unfair and deceptive practices and acts, Plaintiff Carter and the Class have suffered and will continue to suffer actual damages. Had Plaintiff Carter and the members of the Class been aware of the misrepresentations and omissions, they would not have paid tuition to Capella for the educational services that Defendant purported to provide or incurred students to attend Capella (including for room and board).

**FORTY-SECOND CAUSE OF ACTION**
**Violation of N.Y. Gen. Business Law § 349**
**(New York Deceptive Trade Practices Act)**
**(Alternative New York Subclass)**

700.   Plaintiff Goldstein realleges and incorporate the preceding allegations by reference as if set forth fully herein.

701.     Plaintiff Goldstein brings this cause of action on behalf of a New York Subclass. Capella has engaged in unfair, unlawful, and fraudulent business practices, as set forth above.

702.     New York General Business Law § 349, subd. (a) provides that "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful."

703.     Capella engaged in a deceptive act or practice in connection with the furnishing of educational services to Plaintiff Goldstein and Class members.

704.     Capella's deceptive acts and practices include, but are not limited to, making knowing representations that 1) the services it offers have characteristics that they do not have; 2) the services it offers are of particular standard, quality, grade, style or model, when they are actually of another which differs materially from the representation; 3) the services it offers has characteristics that Capella did not have a reasonable basis for making such representations; and 4) that its services have characteristics allegedly substantiated by Capella when it has no proof to substantiate such representations. Such representations include, but are not limited to, Capella's representations of an earlier graduation date/faster time to completion than possible.

705.     Capella also willfully 1) used oral and written representations that exaggerated, were false and made false innuendoes of material fact and 2) failed to state material facts, and willfully concealed, suppressed or omitted material facts. Such representations include, but are not limited to, Capella's representations of an earlier graduation date/faster time to completion than possible, and omissions include, but are not limited to, its longer times to graduate, slower completion times, higher tuition costs than advertised, and low graduation rates.

706.     Capella made false and misleading statements about the nature, quality, style and model of Capella's doctoral education services. Further, the subject of the Capella doctoral

transaction had been supplied in accordance with previous representations made by Capella to Plaintiff Goldstein and members of the New York Subclass, and those representations were not performed. Specifically, Capella misrepresented that: 1) students had control over how long it would take to obtain their doctoral degree, 2) that their degrees would be obtained or obtainable in a set amount of time, and 3) the true cost of tuition to obtain their degrees.

707.    Capella also knowingly concealed, omitted and otherwise failed to state material facts about Capella's doctoral education services that would tend to, and did, in fact, deceive students. Specifically, Capella failed to disclose that they intentionally and deliberately used Capella's doctoral process as a means of improperly extracting tuition and generating revenue. Capella further failed to disclose that they knowingly directed and implemented a doctoral program process that is fraught with inefficiencies, meant to ensure that students do not receive the timely responses and attention that they were promised, and creates inordinate turnover of faculty and supervisory committee chairs and members. Capella also knowingly withheld its low graduation rate and actual times to graduation of its doctoral students.

708.    Capella knew that the doctoral coursework was and continues to be systematically prolonged by the violations set forth herein.

709.    The misrepresentations and omissions were material to Plaintiff Goldstein and the members of the Class.

710.    Capella 's unfair and deceptive trade practices and acts occurred and continue to occur repeatedly during the course of its business. These actions constitute unfair and deceptive trade practices.

711.     Plaintiff Goldstein and members of the Class relied on these representations and omissions in the course of pursuing their doctoral degrees. Furthermore, Capella intended that Plaintiff Goldstein and members of the Class would rely on the representations and omissions.

712.     As a direct and proximate result of Capella's unfair and deceptive practices and acts, Plaintiff Goldstein and the Class have suffered and will continue to suffer actual damages. Had Plaintiff Goldstein and the members of the Class been aware of the misrepresentations and omissions, they would not have paid tuition to Capella for the educational services that Defendant purported to provide.

**FORTY-THIRD CAUSE OF ACTION**
**Unjust Enrichment**
**(Alternative New York Subclass)**

713.     Plaintiff Goldstein realleges and incorporate the preceding allegations by reference as if set forth fully herein.

714.     Plaintiff Goldstein brings this cause of action, in the alternative, on behalf of an New York Subclass under New York common law. Capella has engaged in unjust conduct, to the detriment of Plaintiff Goldstein and each member of the New York Subclass.

715.     Plaintiff Goldstein and each member of the New York Subclass provided significant value to Capella in the form of tuition payments for doctoral courses.

716.     Capella appreciated or had knowledge of the benefit received by retaining the money paid by Plaintiff Goldstein and each member of the New York Subclass.

717.     Although Capella accepted the tuition payments and retained and received benefit therefrom, they did not provide students with a doctoral process that was promised and contemplated in connection with the payment of the tuition. On the contrary, Capella intentionally and deliberately used the doctoral program process as a means of improperly extracting tuition and

generating revenue. Capella has intentionally and knowingly directed and implemented a doctoral process that is fraught with inefficiencies, meant to ensure that students do not receive the timely responses and attention that they were promised, and creates inordinate turnover of faculty and supervisory committee chairs and members. All of this is done without any honestly or transparency by Capella regarding the actual time and expense that Capella's doctoral students will incur in an effort to complete their degrees.

718.   This unjust conduct on the part of Capella has resulted in Capella doctoral students enrolling in courses that would not be necessary if Capella had not acted unjustly and in incurring significant additional tuition costs and student loans. It has also caused certain New York Subclass members to stop pursuing the process altogether.

719.   Despite their inequitable conduct, Capella has retained the tuition payments made by Capella doctoral students pursuing coursework and the profits therefrom.

720.   As a result, Capella has been unjustly enriched, to the detriment of Plaintiff Goldstein and the members of the New York Subclass.

## FORTY--FOURTH CAUSE OF ACTION
### Fraud in the Inducement
### (Alternative New York Subclass)

721.   Plaintiff Goldstein brings this cause of action, in the alternative, on behalf of a New York Subclass under New York common law.

722.   Plaintiff realleges and incorporates the preceding allegations by reference as if set forth fully herein.

723.   Capella made actual or implied false representations concerning the timing and cost of a doctoral degree, while concealing the truth from prospective and actual students.

724.     Capella had a duty to disclose that Capella's doctoral programs were designed to take much longer than they represented.

725.     Capella concealed and is still concealing how long Capella's doctoral programs actually take to complete.

726.     Capella also concealed the actual percentage of students who graduated with doctoral degrees from Capella.

727.     Further, Capella informed prospective students and current students they would have resources available to them, when Capella knew full well that such resources would not be available.

728.     These representations were material to Plaintiff Wright and the members of the Class agreeing to attend Capella.

729.     Capella was aware of the falsity of its representations, or at a minimum had an utter disregard for their truthfulness. For example, they purposefully designed Capella's doctoral programs to last a certain, longer time frame, but told students they would take less time.

730.     Capella intended students to rely upon these representations because they were included in marketing materials and on their websites.

731.     Plaintiff and members of the Class was justified in relying upon these representations. Plaintiff and members of the class were injured by relying on these false representations and omissions because had Capella been truthful about the timelines and costs for Capella's doctoral programs, as well as graduation rate and resources actually available, doctoral students would not have enrolled.

**FORTY-FIFTH CAUSE OF ACTION**
**Breach of Contract**
**(Alternative New York Subclass)**

133

732.    Plaintiff realleges and incorporates the preceding allegations by reference as if set forth fully herein.

733.    Plaintiff Goldstein brings this cause of action, in the alternative, on behalf of a New York Subclass under New York common law. Capella has systematically violated its contracts with Plaintiff Goldstein and each member of the New York Subclass.

734.    Plaintiff Goldstein and each member of the New York Subclass contracted with Capella to obtain doctoral educational services. Implied in each and every contract was a covenant of good faith and fair dealing.

735.    As part of the contract, Capella promised, inter alia, that, in connection with providing doctoral educational services: 1) students had control over how long it would take to obtain their doctoral degree and 2) that their degrees would be obtained or obtainable in a set amount of time.

736.    Rather than provide doctoral educational services as per its contractual agreement, Capella knowingly and intentionally directed and implemented a doctoral program process fraught with inefficiencies, meant to ensure that students do not receive adequate resource, the timely responses and attention that they were promised. All of this is done without honesty or transparency by Capella regarding the actual time and expense that its doctoral students will incur in an effort to complete their degrees. The policy implemented by Capella breaches its contracts with Plaintiff and the New York Subclass.

737.    Plaintiff and each member of the New York Subclass provided significant value to Capella in the form of tuition payments and fees for doctoral courses as contracted.

738.     Furthermore, Plaintiff and each member of the New York Subclass complied with their obligations under the contract. To the extent that they did not comply with their obligations under the contract, it was solely the result of conduct engaged in by Capella.

739.     The breach of contract on the part of Capella has resulted in Capella's doctoral students enrolling in courses that would not be necessary if Capella had honored its contract and, in many instances, caused New York Subclass members to stop pursuing their education altogether.

740.     Despite its knowing and intentional breaching of the contracts, Capella has retained the tuition payments made by the members of the New York Subclass.

741.     Capella has breached its contracts for doctoral education services with Plaintiff and each member of the New York Subclass. Capella's breach has caused damage to Plaintiff and each member of the New York Subclass in the form of additional tuition payments for doctoral courses and, in many instances, to stop pursuing their education altogether, causing them to be damaged in the amount of tuition payments they made and loans incurred before being forced to stop pursuing their education.

742.     Moreover, Capella has breached its contracts for doctoral educational services with Plaintiff and each member of the New York Subclass by engaging in systematic conduct whereby it has failed to honor the covenant of good faith and fair dealing implied in every contract. Capella has engaged in unreasonable conduct that was entirely inconsistent with the reasonable expectations of Plaintiff and each member of the New York Subclass. Capella's breach has caused damage to Plaintiff and each member of the New York Subclass in the form of additional tuition payments for doctor courses and, in many instances, to stop pursuing their education altogether,

causing them to be damaged in the amount of tuition payments they made and loans incurred before being forced to stop pursuing their education.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and members of the Class request that the Court enter an Order or judgment against Capella as follows:

A.      Certifying this case as a class action and appointing Plaintiffs and their counsel to represent the Class;

B.      Awarding Plaintiffs and other members of the Class damages and all other relief available under the claims alleged;

C.      Awarding Plaintiffs and other members of the Class pre-judgment and post judgment interest as a result of the wrongs complained of herein;

D.      Requiring Capella to disgorge the revenue earned through the excessive doctoral program coursework;

E.      Enjoining Capella from engaging in the conduct described herein;

F.      Awarding Plaintiffs and other members of the Class restitution;

G.      Awarding Plaintiffs and other members of the Class their costs and expenses in this litigation, including reasonable attorneys' fees and other costs of litigation; and

H.      Awarding such other relief as the Court deems just and proper.


## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

Dated:  August 20, 2018                REINHARDT WENDORF & BLANCHFIELD


By:      *s/Roberta A. Yard*_____
         Garrett D. Blanchfield (MN#209855)
         Roberta A. Yard (MN#322295)
         W-1050 First National Bank Building
         332 Minnesota Street
         St. Paul, MN 55101
         Telephone: (651) 287-2100
         Facsimile: (651) 287-2103
         g.blanchfield@rwblawfirm.com
         r.yard@rwblawfirm.com


PEIFFER WOLF CARR & KANE

By:      *s/Paul Lesko*_____
         Paul Lesko (*pro hac vice granted*)
         818 Lafayette Avenue
         Second Floor
         St. Louis, MO 63010
         Telephone: (314) 833-4826
         plesko@prwlegal.com