# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Carolyn Wright et al., | Case No. 18-cv-1062 (WMW/SER) |
| Plaintiffs, | |
| v. | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS** |
| Capella University, Inc., and Capella Education Company, | |
| Defendants. | |

This matter is before the Court on Defendants' motion to dismiss Plaintiffs' amended complaint for failure to state a claim on which relief can be granted. (Dkt. 38.) For the reasons addressed below, the motion is granted in part and denied in part.

## BACKGROUND

Plaintiffs are current and former doctoral students of Capella University that hail from Alabama, Florida, Kansas, Massachusetts, New York, Ohio, Pennsylvania, and Tennessee. Defendants are Capella Education Company and its wholly-owned subsidiary, Capella University, Inc. (collectively, "Capella"), both of which are Minnesota corporations.

Capella offers multiple online doctoral degree programs. Before enrolling in Capella's doctoral programs, Plaintiffs received information from Capella via emails, website content, or conversations with Capella recruiters. Through each of these sources, Plaintiffs contend, Capella represented its doctoral programs as shorter and less expensive than the programs actually were. Plaintiffs purportedly relied on Capella's representations

of the time and cost to complete the programs when deciding to enroll. Plaintiffs allege that, after enrolling in Capella's doctoral programs, Capella created obstacles so as to prolong the programs and collect more tuition. These alleged obstacles include high faculty turnover rates and inconsistent and delayed feedback to students from professors.

Plaintiffs initiated this putative class action lawsuit on April 20, 2018, and filed an amended complaint on August 20, 2018.[1] Plaintiffs assert claims of common-law and statutory fraud, breach of contract, and unjust enrichment.

## ANALYSIS

Capella moves to dismiss Plaintiffs' amended complaint for failure to state a claim on which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). In part, Capella argues that Plaintiff Lois Mason's claims are "premature" and that Plaintiff Jacqueline Carter has not suffered an injury. Although Capella makes these arguments in the context of a Rule 12(b)(6) motion, the question of whether Mason or Carter has been injured implicates their standing to bring this lawsuit. As a jurisdictional prerequisite, standing must be resolved before reaching the merits of a lawsuit. *City of Clarkson Valley v. Mineta*, 495 F.3d 567, 569 (8th Cir. 2007). For this reason, the Court addresses Capella's standing arguments first and then addresses Capella's remaining arguments as to the merits of Plaintiffs' amended complaint.

---

[1] Plaintiffs bring their amended complaint on behalf of themselves and all others similarly situated, either as a national class or, alternatively, as state sub-classes.

## I.      Standing

Capella argues that Mason and Carter cannot bring claims because neither Mason nor Carter had suffered an injury when Plaintiffs filed the amended complaint.  Mason enrolled in Capella's Doctor of Information Technology (DIT) program in 2016.  The 2.5-year timeline that Capella allegedly promised her had not yet elapsed when Plaintiffs filed the amended complaint.  Carter enrolled in Capella's Doctor of Social Work (DSW) program in 2015, but she withdrew before her projected graduation date.

Article III of the United States Constitution limits federal jurisdiction to actual cases or controversies.  U.S. Const., art. III, § 2, cl. 1; *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *Hargis v. Access Capital Funding, LLC*, 674 F.3d 783, 790 (8th Cir. 2012).  If a federal district court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.  Fed. R. Civ. P. 12(h)(3).  When the district court or a party challenges standing, the party invoking federal jurisdiction must establish that the requirements of standing have been satisfied.  *Mineta*, 495 F.3d at 569.  Standing is determined based on the facts as they existed when the complaint was filed.  *Lujan*, 504 U.S. at 569 n.4.

To have constitutional standing, a plaintiff must (1) have suffered an injury in fact, (2) establish a causal relationship between the defendant's conduct and the alleged injury, and (3) show that the injury would be redressed by a favorable decision.  *Id.* at 560-61; *Mineta*, 495 F.3d at 569.  Only the injury-in-fact element is at issue here.  Such injury in fact must be "concrete, particularized, and either actual or imminent."  *United States v.*

*Metro. St. Louis Sewer Dist.*, 569 F.3d 829, 833-34 (8th Cir. 2009) (internal quotation marks omitted).

Mason and Carter, like the other Plaintiffs, allege that Capella induced them to enroll in doctoral programs based on false promises and representations of the programs. They lost time and money, Plaintiffs contend, by enrolling and participating in a program in which they otherwise would not have enrolled. The alleged time and money that was lost began to accrue when Mason and Carter enrolled in their programs and paid tuition for them. As alleged, the injury is particularized and actual. Accordingly, the Court rejects Capella's argument that Mason and Carter need to wait until their projected graduation dates in order to bring claims against Capella.

For this reason, Mason and Carter have standing to bring this lawsuit.

## II. Failure to State a Claim

Capella next contends that Plaintiffs have failed to state a claim on which relief can be granted. A complaint must allege sufficient facts such that, when accepted as true, a facially plausible claim to relief is stated. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If a complaint fails to state a claim on which relief can be granted, dismissal is warranted. *See* Fed. R. Civ. P. 12(b)(6). When determining whether a complaint states a facially plausible claim, a district court accepts the factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *Blankenship v. USA Truck, Inc.*, 601 F.3d 852, 853 (8th Cir. 2010). Factual allegations must be sufficient to "raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). Mere "labels and

conclusions" are insufficient, as is a "formulaic recitation of the elements of a cause of action." *Id.* at 555. And legal conclusions couched as factual allegations may be disregarded. *See Iqbal*, 556 U.S. at 678. Each of Plaintiffs' causes of action is addressed in turn.[2]

### A.    Common-Law Fraud (Counts 1, 7, 11, 14, 18, 22, 26, 30, 34, 38 and 44)

Capella contends that Plaintiffs have neither alleged a misstatement of fact nor pleaded their fraud claims with particularity. Alternatively, Capella argues that the educational-malpractice doctrine bars Plaintiffs' claims. Each argument is addressed in turn.

### 1.    Misstatement of Fact

Capella argues that Plaintiffs' common-law fraud claims do not sufficiently allege an actionable misstatement of fact. To state a claim for common-law fraudulent misrepresentation under Minnesota law, a plaintiff must allege that (1) a party falsely represented a past or existing material fact that is susceptible of knowledge, (2) the party made the representation either knowing that it was false or without knowing if the representation was true or false, (3) the party intended to induce another to act in reliance on the representation, (4) the plaintiff acted in reliance on the representation, and (5) the

---

[2]     Plaintiffs bring their claims as a national class or, alternatively, as state sub-classes. The parties contend, and the Court agrees, that a choice of law inquiry is not appropriate at this early stage of litigation, prior to discovery. *Cf. Frazier v. Bickford*, No. 14-cv-3843, 2015 WL 8779872, at *3 (D. Minn. Dec. 15, 2015) ("[T]he choice of law determination is a fact driven question . . . ."). For the purpose of this analysis, the Court applies Minnesota law without determining that Minnesota law controls. The laws of the state sub-classes are analyzed throughout this Order when relevant.

plaintiff consequently suffered pecuniary damages.[3] *Angeles v. Medtronic, Inc.*, 863 N.W.2d 404, 422 (Minn. Ct. App. 2015). Capella challenges the first element.

### a. Plaintiff Wright

Plaintiff Carolyn Wright, who enrolled in Capella's Doctor of Nursing Practice (DNP) program, alleges that she relied on a statement on Capella's website that claims, "[i]n just two years you can earn your DNP." Wright also alleges that she relied on a 2-year recommended timeline contained within materials that Capella sent to her. According to Wright, the DNP program is not, in fact, a 2-year program. Rather, Capella's Gainful Employment report[4] states that only 13 percent of Capella students who graduated with a DNP degree between 2013 and 2014 were able to finish in 30 months or fewer. And, between 2014 and 2015, 84 percent of students who graduated with a DNP degree from Capella did so within 39 months.

---

[3]     In addition to alleging fraudulent misrepresentation, Plaintiffs allege that Capella fraudulently *omitted* its low graduation rates and slow completion times. A plaintiff may bring a common-law fraudulent omission claim only when the defendant had a duty to disclose the contested information. *See Driscoll v. Standard Hardware, Inc.*, 785 N.W.2d 805, 812-13 (Minn. Ct. App. 2010). Plaintiffs cite no authority—nor has the Court's research produced any authority—holding that a university has a duty to disclose graduation rates or completion times. As such, Plaintiffs have not stated a claim for fraudulent omission.

[4]     In a Rule 12(b)(6) motion to dismiss, a district court "may consider some materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings." *Ashford v. Douglas Cty.*, 880 F.3d 990, 992 (8th Cir. 2018) (quoting *Smithrud v. City of St. Paul*, 746 F.3d 391, 395 (8th Cir. 2014)). Because Capella submitted Gainful Employment reports to the United States Department of Education, which are public documents and are embraced by the amended complaint, the Court considers the Gainful Employment reports for the purpose of Defendants' motion.

Wright fails to allege a false statement of material fact. Although Capella's website and course catalogue suggest that it is possible for a student to complete a DNP degree within 2 years, neither source represents that the average student completion rate is within that time period. Nor do these sources guarantee that Wright will complete the DNP degree within 2 years. For this reason, Wright's experience at Capella and the statistics presented in the Gainful Employment report are not incompatible with the representations on Capella's website and course catalogue. Nothing in Wright's allegations suggests that it would be *impossible* to complete a DNP degree in 2 years. Consequently, there is no allegation of a false representation of material fact.

Accordingly, Count 1 is dismissed as asserted by Wright. [5]

### b.  Plaintiffs Kennedy, Brannen, and Matelski

Plaintiffs Debbra Kennedy, Sherry Bailey Brannen, and Shauna Matelski enrolled in Capella's Doctor of Education (Ed.D.) program. Each of these Plaintiffs alleges that she was induced to enroll in this program based on Capella's website, which represented that the Ed.D. program is "designed to be completed in less than 3 years." In contrast to this representation, Capella's Gainful Employment Report states that no student who graduated with an Ed.D. degree between 2014 and 2015 completed the program within 3 years.

---

[5]  Under the laws of Kansas, the state of Wright's respective sub-class, a claim of fraudulent inducement similarly requires that "the defendant made false representations as a statement of existing and material fact." *Stechschulte v. Jennings*, 298 P.3d 1083, 1096 (Kan. 2013). Because Wright has not alleged facts that would support an inference of a false representation, her claims also fail under Kansas law. Accordingly, Count 7 is dismissed.

These three Plaintiffs do not sufficiently allege a false representation. Accepting Plaintiffs' allegations as true for the purpose of this motion, Capella represents that the Ed.D. program is "designed" to take less than 3 years. Capella does not represent that an *average* student would complete the degree in 3 years, nor did Capella guarantee that Kennedy, Brannen, or Matelski would complete the Ed.D. program in fewer than 3 years. Neither the statistics contained in the Gainful Employment report nor the experiences of the Plaintiffs contradict the representation of a 3-year "design" time.[6]

For these reasons, Kennedy, Brannen, and Matelski have not stated a claim for common-law fraud. Count 1 is dismissed as asserted by these Plaintiffs.[7]

### c.    Plaintiffs Mason and Norris

Mason enrolled in Capella's DIT program, allegedly relying on a recruiting email, which stated that "DIT is a structured three year program; 2.5 years with transfer credit for you." Mason maintains that the DIT program was longer than Capella represented, as indicated by Capella's Gainful Employment report, which discloses a program length of 39 months. Similarly, Plaintiff Candace Norris enrolled in Capella's Doctor of Business

---

[6]    Although the Gainful Employment report states how long a program is "designed to take," the statistic Capella reports in that category is based on the *average* time to completion, not the *design* time of the program.

[7]    Kennedy, Brannen, and Matelski fare no better under the laws of the state subclasses, Tennessee, Florida, and Ohio, respectively. The common-law fraud doctrine for each of these states requires a misstatement of fact. *See Siegel v. Ringer*, 94 N.E.3d 1178, 1185 (Ohio 2017); *Baugh v. Novak*, 340 S.W.3d 372, 388 (Tenn. 2011); *Johnson v. Davis*, 480 So.2d 625, 627 (Fla. 1985). Because Kennedy, Brannen, and Matelski have not sufficiently alleged this element, they do not state a claim under Tennessee, Florida, or Ohio law, and Counts 11, 14 and 18 are dismissed.

Administration (DBA) program after a recruiter informed her that it was a 3-year program and that it would be "possible" to finish the program in 2.5 years. Norris contends that the DBA program was longer than Capella represented, as evidenced by the Gainful Employment report, which discloses a program length of 45 months.

Mason and Norris fail to sufficiently allege a false representation of a material fact, however. The recruiter's email to Mason states that the DIT program is a structured 3-year program. A program's structure is distinct from its average length, however. The email's reference to "2.5 years with transfer credit for you" also misses the mark as a false representation of a material fact. Although this statement is tailored to Mason, it represents only the structured length of the program as it applies to Mason. It does not represent how long it will actually take Mason to complete the program. Likewise, the recruiter's purported statements to Norris do not indicate what the *average* length of the DBA program is. Although the recruiter told Norris that completing a degree in 2.5 years was "possible," that statement does not convey that a 2.5-year timeline was guaranteed or common for DBA students. For these reasons, Mason and Norris do not sufficiently allege that Capella misrepresented the *average* length of the DIT or DBA programs, nor do they allege that the programs were not, in fact, *structured* as 3-year programs.

Accordingly, as asserted by Mason and Norris, Count 1 is dismissed.[8]

---

[8] Mason's state sub-class is Pennsylvania. Pennsylvania's common-law fraud doctrine also requires a false, material misrepresentation by the defendant. *Kit v. Mitchell*, 771 A.2d 814, 819 (Pa. 2001). Because Mason has not alleged facts that support an inference of a false, material misrepresentation, Mason's claim is also deficient under Pennsylvania law such that Count 22 is dismissed. Norris's sub-class is Ohio, which also requires a false, material misrepresentation by the defendant in order to state a claim for

### d. Plaintiff Ornelas

Plaintiff Maurice Jose Ornelas enrolled in Capella's PhD in Public Safety program, with a specialty in Criminal Justice. He alleges that he enrolled in this program in reliance on an email from a Capella recruiter that stated, "[o]ur typical learner will complete their PhD program in 3 years, plus or minus one quarter, by averaging 2 courses per quarter." This statement, Ornelas contends, falsely represents the average time—and, because tuition is tied to the number of semesters, the average cost—of the PhD in Public Safety program. Capella discloses in its Gainful Employment report that the length of the PhD in Public Safety program is 75 months.[9] The report also states that only 68 percent of students who completed a PhD in Public Safety between 2014 and 2015 were able to do so within 75 months.

Unlike Capella's representations of design times or program structures, here, Capella represents how long it takes a "typical learner" to complete the PhD in Public Safety program. The typical learner's 3-year length is contradicted by Capella's disclosure in the Gainful Employment report, which states that the program is, on average, 6 years and 3 months. This reported length is more than twice as long as the length that Capella represents in its recruiting email. Ornelas has adequately alleged that Capella made a false representation of material fact.

---

common-law fraud. *Jack Turturici Family Tr. v. Carey*, 962 N.E.2d 347, 351 (Ohio Ct. App. 2011).

[9] As addressed in footnote 6, Capella is reporting an average time to completion, even though the Gainful Employment report uses the standard language "designed to take."

The other elements of a common-law fraud claim also are sufficiently alleged. Ornelas alleges that Capella knew its representation was false, as Capella could make the necessary calculations for the Gainful Employment report. And, Ornelas alleges, Capella made the false representation with the intention to induce Ornelas's reliance, because the information was provided in a *recruiting* email. Ornelas relied on this representation, he alleges, and would not have enrolled in the program had he known its true length and cost. Finally, Ornelas's alleged damages are the time and tuition he lost by enrolling in a program that he otherwise would not have.

Because Ornelas has stated a claim for common-law fraud, Capella's motion to dismiss is denied as to Count 1 as asserted by Ornelas.[10]

### e.    Plaintiff Carter

Carter enrolled in Capella's DSW program purportedly in reliance on an email from a Capella recruiter. The email stated that the DSW program is "designed to be completed in three years," and Capella's course catalogue included a 3-year and 1-quarter recommended course schedule. In contrast to this information, Capella reports that only

---

[10]     Massachusetts law, which governs Ornelas's respective sub-class, includes the same elements of common-law fraud as Minnesota. *See Balles v. Babcock Power Inc.*, 70 N.E.3d 905, 913 (Mass. 2017) ("The elements of fraud consist of [1] a false representation [2] of a matter of material fact [3] with knowledge of its falsity [4] for the purpose of inducing action thereon, and [5] that the plaintiff relied upon the representation as true and acted upon it to his or her damage." (internal quotation marks omitted)). As such, the Court's conclusion as to Ornelas's common-law fraud claim is the same under Massachusetts law. Accordingly, Capella's motion to dismiss is denied as to Count 26.

19 percent of students who graduated with a DSW degree between 2014 and 2015 were able to do so within 42 months.

Like Kennedy, Brannen, and Matelski, Carter does not sufficiently allege a false representation of material fact. That a program is "designed" to be completed in a certain amount of time is not false merely because the average student takes longer to complete that program. And the course catalogue displays only a *possible* schedule; it does not represent the actual or guaranteed length of the program. Moreover, the course catalogue expressly disclaims that the "completion time for the dissertation courses varies." This disclaimer also undermines Carter's allegations that the course catalogue was a false representation of the time to complete the DSW degree.

For these reasons, Count 1 is dismissed as asserted by Carter.[11]

### f.    Plaintiff Goldstein

Plaintiff Geoffrey Goldstein enrolled in the PhD in Business Management program after a recruiter allegedly informed him that he would graduate within 3 years "if he enrolled in consecutive quarters." Although Goldstein enrolled in consecutive quarters and received top grades during those quarters, two years into the program Capella told Goldstein that he must either "voluntarily withdraw from the program or restart the entire dissertation process from the beginning." Whether these allegations amount to

---

[11]    Even if Carter were proceeding under the Alabama sub-class, the Court's conclusion would remain unchanged. *See Deng v. Scroggins*, 169 So.3d 1015, 1024 (Ala. 2014) (including a false representation of a material existing fact as a required element of common-law fraud). Accordingly, Count 38 is dismissed.

misstatements of fact is a close call. But assuming without deciding that Goldstein sufficiently alleges a misstatement of fact, Goldstein's fraud claim nonetheless fails because he does not plead his claim with particularity, as addressed below.

### 2. Particularity Requirement

When pleading any fraud claim, "a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). A party bringing a fraud claim must "identify specifically the who, what, where, when, and how of the alleged fraud." *United States ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 556 (8th Cir. 2006) (internal quotation marks omitted). And the allegations must present "facts that give rise to a strong inference of fraudulent intent." *Dunnigan v. Fed. Home Loan Mortg. Corp.*, 184 F. Supp. 3d 726, 741 (D. Minn. 2016) (internal quotation marks omitted). The primary purpose of this particularity requirement is to "facilitate a defendant's ability to respond and to prepare a defense to charges of fraud." *Commercial Prop. Invs., Inc. v. Quality Inns Int'l, Inc.*, 61 F.3d 639, 644 (8th Cir. 1995). Rule 9(b) does not require a plaintiff to allege the precise details of every instance of fraud, but Rule 9(b) *does* require enough detail to inform the defendant of "the core factual basis for the fraud claims." *Ransom v. VFS, Inc.*, 918 F. Supp. 2d 888, 898 (D. Minn. 2013) (internal quotation marks omitted).

Capella contends that Plaintiffs have not pleaded their fraud claims with particularity. In particular, Capella argues that Goldstein has failed to allege the "who" of the fraud, and that both Goldstein and Ornelas have failed to allege the "why" of the fraud—namely, facts that give rise to an inference of fraudulent intent. Goldstein alleges that a Capella recruiter told him that he would graduate from the PhD in Business

Management program in 3 years if he enrolled in consecutive quarters. But the amended complaint does not identify the Capella recruiter with whom Goldstein spoke or indicate when the conversations occurred. These generalized allegations do not sufficiently enable Capella to respond and prepare a defense to charges of fraud. *Commercial Prop. Invs.*, 61 F.3d at 644.

As to the remaining Plaintiff, Ornelas, Capella contends that although he did not complete his program within 3 years as he had hoped, this fact alone does not give rise to an inference of fraud. But Ornelas's allegations go beyond a mere desire to have progressed through his PhD program more quickly. Ornelas alleges that Capella misrepresented the average time and cost of a Capella degree so as to induce Ornelas to enroll in the program. Such allegations, accepted as true for the purposes of this motion, support an inference that Capella acted with a fraudulent intent. Moreover, Ornelas pleads his claims with sufficient details for Capella to be able to adequately respond to and prepare a defense against Ornelas's allegations. *Id.* For these reasons, Ornelas has pleaded his fraud claim with sufficient particularity.

Accordingly, only Goldstein's common-law fraud claim, Count 44, is dismissed for failure to plead the fraud claim with particularity. And Count 1 is dismissed as asserted by Goldstein.

### 3. Educational-Malpractice Doctrine

Defendants contend that Plaintiffs' common-law fraud claims are barred by the educational malpractice doctrine.

The educational-malpractice doctrine bars courts from "inquir[ing] into the nuances of educational processes and theories." *Alsides v. Brown Inst., Ltd.*, 592 N.W.2d 468, 473 (Minn. Ct. App. 1999) (quoting *Ross v. Creighton Univ.*, 957 F.2d 410, 417 (7th Cir. 1992)).[12] This doctrine does not bar allegations that "the institution failed to perform on specific promises," but the doctrine does bar challenges to "the general quality of the instructors and the education [the students] received." *Id.* (dismissing claims in which "the essence of the complaint is that the school failed to provide an 'effective education' "). Courts justify the educational malpractice doctrine based on "(1) the lack of a satisfactory standard of care by which to evaluate an educator; (2) the inherent uncertainties about causation and the nature of damages in light of such intervening factors as a student's attitude, motivation, temperament, past experiences, and home environment; (3) the potential for a flood of litigation against schools; and (4) the possibility that such claims will embroil the courts into overseeing the day-to-day operations of schools." *Id.* at 472 (internal quotation marks omitted).

---

[12]    Each of the state laws potentially implicated by the alternative sub-classes recognizes the educational-malpractice doctrine. *See Gillis v. Principia Corp.*, 832 F.3d 865, 872 (8th Cir. 2016) (applying Missouri law); *Adams v. Antonelli Coll.*, 304 F. Supp. 3d 656, 664-65 (S.D. Ohio 2018) (applying Ohio law); *Thomas v. Meharry Med. Coll.*, 1 F. Supp. 3d 816, 828 (M.D. Tenn. 2014) (applying Tennessee law); *Jamieson v. Vatterott Educ. Ctr., Inc.*, 473 F. Supp. 2d 1153, 1159-60 (D. Kan. 2007) (applying Kansas law); *Gally v. Columbia Univ.*, 22 F. Supp. 2d 199, 207 (S.D.N.Y. 1998) (applying New York law); *Doe v. Town of Framingham*, 965 F. Supp. 226, 230 (D. Mass. 1997) (applying Massachusetts law); *Christensen v. S. Normal Sch.*, 790 So. 2d 252, 254-56 (Ala. 2001) (per curiam); *Armstrong v. Data Processing Inst., Inc.*, 509 So. 2d 1298, 1299 (Fla. Dist. Ct. App. 1987); *Cavaliere v. Duff's Bus. Inst.*, 605 A.2d 397, 400-04 (Pa. Super. Ct. 1992).

Here, Ornelas is the only Plaintiff with surviving common-law fraud claims. Ornelas alleges that Capella misrepresented the average time and cost of its PhD in Public Safety program. To assess this claim, the Court need not assess the general quality of Ornelas's instructors nor the effectiveness of Capella's programs. Instead, the relevant inquiry would be tied to objective enrollment statistics. For this reason, Ornelas's common-law fraud claims are not barred by the educational-malpractice doctrine.

### B. Statutory Fraud (Counts 4, 5, 10, 21, 25, 29, 33, 37, 41 and 42)

In addition to alleging common-law fraud, Plaintiffs also allege statutory fraud. Capella again argues that Plaintiffs have not pleaded these fraud claims with sufficient particularity, that Plaintiffs have failed to allege an actionable misstatement of fact, and that these claims are barred by the educational-malpractice doctrine.

The Minnesota Uniform Deceptive Trade Practices Act prohibits the misrepresentation of goods or services being sold. *See* Minn. Stat. § 325D.44, subd. 1(5) (prohibiting a person from representing that "goods or services have . . . characteristics . . . that they do not have"); Minn. Stat. § 325D.44, subd. 1(13) (prohibiting a person from engaging "in any other conduct which similarly creates a likelihood of confusion or misunderstanding"). Similarly, the Minnesota Prevention of Consumer Fraud Act prohibits misrepresentations and misleading statements in conjunction with goods sold. *See* Minn. Stat. § 325F.69, subd. 1 ("The act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon . . . is enjoinable . . . .").

Plaintiffs' statutory fraud claims are based on the same allegations as their common-law fraud claims. As such, the analysis in Part I.A. applies with equal force here. As explained, only Ornelas sufficiently alleges that Capella made a false representation concerning the time and cost of its doctoral programs. And, consistent with the educational-malpractice doctrine analysis in Part I.A.3, Ornelas's statutory fraud claims do not require an inquiry into Capella's educational decisions or pedagogy. Accordingly, Ornelas states a claim for statutory fraud.

For these reasons, Capella's motion to dismiss is denied as to Counts 4 and 5 only to the extent that these nationwide claims are asserted by Ornelas.[13]

## C. Breach of Contract (Counts 3, 8, 12, 15, 19, 23, 27, 31, 35, 39 and 45)

Plaintiffs contend that Capella breached its promises that students would have control over the length of their degree programs and that the degrees could be obtained in a set amount of time. Capella moves to dismiss Plaintiffs' breach-of-contract claims for failure to state a claim.

Under Minnesota law, contract formation requires communication of a specific and definite offer, acceptance of that offer, and consideration. *See Pine River State Bank v. Mettille*, 333 N.W.2d 622, 626-27 (Minn. 1983). Vague language or subjective intentions

---

[13]   The laws of the alternative sub-classes proscribe similar acts as compared to the Minnesota statutes. *See* Ala. Code § 8-19-5(27); Fla. Stat. § 501.204; Kan. Stat. Ann. § 50-626; Mass. Gen. Laws ch. 93A; Mo. Rev. Stat. § 407.010 *et seq.*; N.Y. Gen. Bus. Law § 349; Ohio Rev. Code Ann. § 1345.02; Pa. Stat. and Cons. Stat. Ann. § 201-2. Plaintiffs do not bring a statutory fraud claim for the Tennessee sub-class. Accordingly, Capella's motion to dismiss Ornelas's Massachusetts statutory fraud claim, Count 29, is denied. The remaining statutory fraud claims, Counts 10, 21, 25, 33, 37, 41 and 42, are dismissed.

do not form the basis of a specific and definite offer. *See Hunt v. IBM Mid Am. Emps. Fed. Credit Union*, 384 N.W.2d 853, 857-58 (Minn. 1986) (finding that general policy statements in employee manual did not create enforceable contract, and explaining that "[t]o decide whether a contract has been breached, a fact-finder needs reasonably definite terms to interpret and apply"); *see id.* at 857 ("Whether a proposal is meant to be an offer for a unilateral contract is determined by the outward manifestations of the parties, not by their subjective intentions.").

Plaintiffs claim that Capella promised that its students would control the length of their degree programs, and Capella promised that each degree program could be completed in a set amount of time. But the allegations in the amended complaint do not support the existence of any such promises. Capella's representations on which Plaintiffs rely include statements of how long the degree programs are "designed" to take, how the program is "structured," what a recommended sequence of courses is, or the length of time it takes a "typical learner" to complete the program. None of these allegations supports the assertion that Capella made a specific and definite offer to any of the Plaintiffs that students would be in control of the length of the program or that degrees would be obtainable within a set timeframe.

For these reasons, Plaintiffs' nationwide breach-of-contract claim, Count 3, is dismissed.[14]

---

[14]    Consistent with Minnesota law, the laws of the state sub-classes require that a contract have specific and definite terms. *See, e.g.*, *G v. Fay Sch., Inc.*, 282 F. Supp. 3d 381, 399-400 (D. Mass. 2017); *Swan Media Grp., Inc. v. Staub*, 841 F. Supp. 2d 804, 808 (S.D.N.Y. 2012); *Deghand v. Wal-Mart Stores, Inc.*, 926 F. Supp. 1002, 1020 (D. Kan.

## D.    Breach of the Covenant of Good Faith and Fair Dealing (Count 6)

Capella moves to dismiss Plaintiffs' breach of the covenant of good faith and fair dealing claim.  Every contract under Minnesota law includes an implied covenant of good faith and fair dealing, "requiring that one party not unjustifiably hinder the other party's performance of the contract."  *In re Hennepin County 1986 Recycling Bond Litig.*, 540 N.W.2d 494, 502 (Minn. 1995).

As explained above, Plaintiffs have not adequately alleged the existence of a contract under Minnesota law between Capella and Plaintiffs in which Capella promised that students had control over the length of the programs or that a degree was obtainable in a certain amount of time.  Because there is no underlying contract, Plaintiffs' claim for breach of the covenant of good faith and fair dealing cannot stand.

Count 6 is dismissed for this reason.[15]

---

1996); *White Sands Grp., L.L.C. v. PRS II, LLC*, 998 So. 2d 1042, 1051 (Ala. 2008); *Glosser v. Vasquez*, 898 So. 2d 1179, 1181 (Fla. Dist. Ct. App. 2005); *Olathe Millwork Co. v. Dulin*, 189 S.W.3d 199, 204 (Mo. Ct. App. 2006); *Huntington Nat'l Bank v. Antrobius*, 983 N.E.2d 932, 938-39 (Ohio Ct. App. 2012); *Lackner v. Glosser*, 892 A.2d 21, 30 (Pa. Super. Ct. 2006); *Doe v. HCA Health Servs. of Tenn., Inc.*, 46 S.W.3d 191, 196 (Tenn. 2001).  Because Plaintiffs have failed to sufficiently allege facts that would indicate a contract with specific and definite terms, their breach-of-contract claims likewise fall short under the laws of the state sub-classes.  Accordingly, Counts 8, 12, 15, 19, 23, 27, 31, 35, 39 and 45 are dismissed.

[15]    Capella also argues that the economic-loss doctrine prevents Plaintiffs from bringing both fraud and contract claims.  But, as addressed above in Part II.C., the Court dismisses all of Plaintiffs' contract-based claims.  Because only fraud claims remain, Capella's economic-loss doctrine argument is moot.

**E.      Unjust Enrichment (Counts 2, 9, 13, 16, 20, 24, 28, 32, 36, 40 and 43)**

Finally, Plaintiffs allege that Capella was unjustly enriched when it retained Plaintiffs' tuition money.  Plaintiffs allege that Capella "did not provide students with the doctoral process that was promised and expected in connection with the payment of the tuition."  Capella moves to dismiss the unjust-enrichment claims because Plaintiffs have an adequate remedy at law, as demonstrated by their fraud and contract claims.  Alternatively, Capella moves to dismiss these claims because they fail to state a claim on which relief can be granted.

Because a claim for unjust enrichment is brought in equity, a plaintiff can obtain relief for this claim only if there is no adequate remedy at law available.  *See ServiceMaster of St. Cloud v. GAB Bus. Servs., Inc.*, 544 N.W.2d 302, 305 (Minn. 1996).  A plaintiff may plead inconsistent claims in the alternative, however.  *See* Fed. R. Civ. P. 8(d).  For this reason, courts routinely decline to dismiss unjust-enrichment claims when pled in the alternative.  *See, e.g.*, *Mono Advert., LLC v. Vera Bradley Designs, Inc.*, 285 F. Supp. 3d 1087, 1091 (D. Minn. 2018) (citing Federal Rule of Civil Procedure 8 and allowing unjust-enrichment claim to be pleaded in the alternative); *Cummins Law Office, P.A. v. Norman Graphic Printing Co.*, 826 F. Supp. 2d 1127, 1130 (D. Minn. 2011) (observing that courts "routinely permit the assertion of contract and quasi-contract claims together").  Drawing "all reasonable inferences" in favor of Plaintiffs for the purpose of this motion to dismiss, the Court treats Plaintiffs' unjust-enrichment claims as alternative claims.  *Martin v. Iowa*, 752 F.3d 725, 727 (8th Cir. 2014).

To state an unjust-enrichment claim under Minnesota law, a plaintiff must allege "(1) a benefit conferred; (2) the defendant's appreciation and knowing acceptance of the benefit; and (3) the defendant's acceptance and retention of the benefit under such circumstances that it would be inequitable for him to retain it without paying for it." *Dahl v. R.J. Reynolds Tobacco Co.*, 742 N.W.2d 186, 195 (Minn. Ct. App. 2007). When parties dispute the third element of this claim, it is not sufficient that one party merely benefits from the efforts of another. "[I]nstead it must be shown that a party was unjustly enriched in the sense that the term 'unjustly' could mean illegally or unlawfully." *Id.* at 196 (internal quotation marks omitted).

In *Zinter v. University of Minnesota*, a graduate student claimed that the university was unjustly enriched when it retained her tuition payments without awarding her a graduate degree. 799 N.W.2d 243, 247 (Minn. Ct. App. 2011). While pursuing her master's degree, the student had failed one of the required courses. *Id.* at 244-45. The court held that the university was not unjustly enriched because it provided courses in exchange for each installment of tuition payment. *Id.* at 247. Moreover, the court observed that the "bargain" between the university and the student was that the university would provide the student with instruction in exchange for tuition, *not* that the university would necessarily provide her with a degree. *Id.*

Capella argues that Plaintiffs fail to allege how the retention of tuition payments is inequitable. This Court agrees. Plaintiffs received educational services in exchange for each semester for which Plaintiffs paid tuition. There is no plausible allegation that Capella guaranteed a degree, or a degree in a certain period of time, in exchange for tuition. The

allegations do not support an inference that it is illegal or unlawful for Capella to retain the tuition payments. *See id.*

Accordingly, Plaintiffs fail to state a claim for unjust enrichment. Count 2 is dismissed.[16]

## ORDER

Based on the foregoing analysis and all the files, records and proceedings herein, **IT IS HEREBY ORDERED**:

1. Capella's motion to dismiss, (Dkt. 38), is **DENIED IN PART** as to Plaintiff Ornelas's common-law and statutory fraud claims and **GRANTED IN PART** as to Plaintiffs' remaining claims.

2. Counts 2 through 25, 27, 28, and 30 through 45 of Plaintiffs' amended complaint, (Dkt. 24), are dismissed without prejudice. Count 1 is dismissed without prejudice only to the extent that it is asserted by Plaintiffs Wright, Kennedy, Brannen, Norris, Matelski, Goldstein, Mason, and Carter.

---

[16] The unjust-enrichment doctrines of the alternative state sub-classes warrant the same conclusion because each of the state laws requires that the defendant's retention of a benefit be inequitable. *See Matador Holdings, Inc. v. HoPo Realty Invs., L.L.C.*, 77 So.3d 139, 145-46 (Ala. 2011); *Fla. Power Corp. v. City of Winter Park*, 887 So.2d 1237, 1241 n.4 (Fla. 2004); *J.W. Thompson Co. v. Welles Prods. Corp.*, 758 P.2d 738, 745 (Kan. 1988); *Metro. Life Ins. Co. v. Cotter*, 984 N.E.2d 835, 850 (Mass. 2013); *AIG Agency, Inc. v. Mo. Gen. Ins. Agency, Inc.*, 474 S.W.3d 222, 228 (Mo. Ct. App. 2015); *E.J. Brooks Co. v. Cambridge Sec. Seals*, 105 N.E.3d 301, 312 (N.Y. 2018); *Camp St. Mary's Ass'n v. Otterbein Homes*, 889 N.E.2d 1066, 1078 (Ohio Ct. App. 2008); *Mitchell v. Moore*, 729 A.2d 1200, 1203 (Pa. Super. Ct. 1999); *Potter's Shopping Ctr., Inc. v. Szekely*, 461 S.W.3d 68, 72 n.5 (Tenn. Ct. App. 2014). Accordingly, Counts 9, 13, 16, 20, 24, 28, 32, 36, 40 and 43 are dismissed.

Dated:  May 6, 2019                          s/Wilhelmina M. Wright
                                             Wilhelmina M. Wright
                                             United States District Judge