## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

CAROLYN WRIGHT,
*individually and on behalf of*
*all others similarly situated*,

Case No. 18-cv-1062 (WMW/ECW)

Plaintiff,

v.

**ORDER**

CAPELLA EDUCATION COMPANY
and CAPELLA UNIVERSITY, INC.,

Defendants.

This case is before the Court on Defendants' Motion for Entry of a Protective Order (Dkt. 120) ("Motion for Protective Order"), Plaintiff Maurice Ornelas's Motion to Compel Documents from Defendants Capella Education Company and Capella University, Inc. (Dkt. 132) ("Motion to Compel"), and Plaintiff Maurice Ornelas's Motion to De-Designate Initial Emails from Defendants Capella Education Company and Capella University, Inc. (Dkt. 141) ("Motion to De-Designate") (collectively, "Motions"). The Court held a hearing on the Motions on May 21, 2020 (Dkt. 189), and the parties filed status updates with respect to the Motions on May 29, 2020 (Dkt. 193), June 24, 2020 (Dkt. 197), and July 10, 2020 (Dkt. 204). For the reasons stated below, the Motion for Protective Order is granted in part and denied in part, the Motion to Compel is granted in part and denied in part, and the Motion to De-Designate is granted in part and denied in part.

# I.     PROCEDURAL BACKGROUND

Plaintiffs Carolyn Wright and Debbra Kennedy filed a 49-page "Class Action Complaint" initiating this action on April 20, 2018 alleging claims against Capella Education Company and Capella University, Inc. (collectively, "Capella") on behalf of themselves and all other similarly situated doctoral students.  (Dkt. 1 at 1.)[1]  The Complaint alleged that "Capella essentially operated a 'bait and switch' program," where "[t]he bait was displayed when Capella's marketing materials and recruiters misled prospective and current students making [sic] misleading statements about the time to completion and cost of their mostly student-loan financed doctoral degrees" and that "[i]nstead of completing the promised doctoral degree program requirements and being awarded a doctoral degree in the advertised time, Capella employed the 'switch,'" whereby "Capella created an endless routine of hurdles and benefitted from additional tuition payments."  (*Id.* ¶¶ 1-2, 5.)  The Complaint included allegations relating to Capella's profits, the student loan debt carried by Capella's students, and the length of time Capella said it would take to complete certain degree programs compared to the length of time it actually takes to complete the degree programs.  (*Id.* ¶¶ 35-71.)  The Complaint further included class action allegations and sought class certification.  (*Id.* ¶¶ 95-105.)  Plaintiffs Wright and Kennedy asserted claims for fraud in the inducement, unjust enrichment, breach of contract, violation of the Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.44, and breach of the implied covenant of good

---

[1]     Unless otherwise indicated, pages numbers refer to the CM/ECF pagination.

faith and fair dealing for nationwide classes and various alternative subclasses.  (*Id.* ¶¶ 112-238.)

Capella moved to dismiss the Complaint on July 9, 2018.  (Dkt. 14.)  On August 20, 2018, Plaintiffs Wright and Kennedy, along with several new named Plaintiffs (including Plaintiff Maurice Jose Ornelas), filed a "First Amended Class Action Complaint."  (Dkt. 24.)  Among other things, the First Amended Class Action Complaint identified additional alternative subclasses and asserted new claims under Minnesota and other state statutes.  (*See generally id.* ¶¶ 234, 248-742.)

Capella filed a Motion to Dismiss the First Amended Complaint ("Motion to Dismiss") on September 24, 2018.  (Dkt. 38.)  On May 6, 2019, U.S. District Judge Wilhelmina M. Wright granted in part and denied in part the Motion to Dismiss.  (Dkt. 57.)  In particular, District Judge Wright denied the Motion to Dismiss as to Plaintiff Ornelas's common-law and statutory fraud claims, which were based on "an email from a Capella recruiter that stated, '[o]ur typical learner will complete their PhD program in 3 years, plus or minus one quarter, by averaging 2 courses per quarter,'" where Capella's disclosure in a "Gainful Employment" report stated that the PhD in Public Safety sought by Plaintiff Ornelas took, on average, 6 years and 3 months to complete.  (*Id.* at 10-11.)  District Judge Wright granted the Motion to Dismiss as to Plaintiffs' remaining claims.  (*Id.* at 22.)  Capella asserts, and Plaintiff Ornelas does not appear to dispute, that Plaintiff Ornelas (hereinafter, "Plaintiff") is currently the only named putative class representative.  (*See* Dkt. 123-12 at 8.)

The Court will address the factual background specific to each pending Motion below.

## II.   <u>MOTION FOR PROTECTIVE ORDER</u>

**A.   Factual Background**

Capella filed its Motion for Protective Order on May 8, 2020 seeking an order

> directing putative class counsel, Peiffer Wolf Carr Kane & Conway, to remove from its website and the public domain certain misleading statements, including, but not limited to, (1) the April 30, 2020 press release titled "Peiffer Wolf: Capella University Claims 'Good Guy' Status On Stimulus Funds But Rakes In Hundreds Of Millions Of Dollars In US Education Funds From Victimized Vets, Other Students," (2) the audio recording of a telephone conference plaintiff's counsel hosted on April 30, 2020, (3) social media advertisements, including those on Facebook, LinkedIn, and Twitter, that quote and link to the press release, and (4) search engine advertisements, including paid Google advertisements, that suggest, repeat, or restate the misleading statements, and enjoining counsel from releasing additional publications that include similar false, misleading, or incomplete statements.

(Dkt. 120 at 1.)  With its Motion for Protective Order, Capella filed seven exhibits constituting the April 30, 2020 press release by Plaintiff's counsel Peiffer Wolf Carr Kane & Conway ("Peiffer Wolf"), which the parties later referred to as the "Lawsuit Page"; a webpage containing the April 30, 2020 audio recording; and the social media and Google advertisements at issue.  (Dkts. 123-3, 123-4, 123-6, 123-7, 123-8, 123-9, 123-10 (respectively, Exs. 3, 4, 6, 7, 8, 9, 10 to Dkt. 123); *see also* Dkt. 193 at 10 (referring to Dkt. 123-3, Ex. 3, as the "Lawsuit Page").)

Capella claimed that certain statements on the Lawsuit Page and in the audio recording and advertisements constituted false and misleading statements about this litigation because they would cause "absent class members and the public [to] believe

that the putative class has been certified, Capella's liability established, and plaintiff's allegations have already been proven true." (Dkt. 122 at 6.) Plaintiff responded that the statements at issue were correct and supported by evidence; that Capella has not controverted the statements regarding Capella's financial gain, doctoral programs' graduation rates and enrollment statistics, and business practices; that the statements are not false or misleading; and that any relief must be narrowly tailored to avoid overly restricting Plaintiff's First Amendment rights. (*See generally* Dkt. 157.)

At the May 21, 2020 hearing, the Court encouraged Peiffer Wolf to review the identified statements and consider whether it was sufficiently clear that the challenged statements were allegations, not established facts, and that the claims were disputed by Capella. (Dkt. 191 at 77:12-22.) In their May 29, 2020 status update, the parties stated they had reached agreement as to several of the statements at issue, including by Peiffer Wolf's addition of a disclaimer below the audio recording at issue, certain changes made to the challenged Google advertisement, and the removal of the challenged Tweets. (Dkt. 193 at 9.) The Court therefore denies the Motion for Protective Order as moot as to those statements.

However, disputes remain as to a "General Disclaimer" added to each Peiffer Wolf webpage that describes content related to this action and as to certain statements on the Lawsuit Page, the April 30, 2020 Facebook post, and the May 1, 2020 LinkedIn Post. (*Id.* at 10-14.) The Court addresses the remaining disputes below.

**B.    Legal Standard**

Capella originally sought an order requiring Peiffer Wolf to modify certain statements on its website and on social media and refrain from making certain statements in the future.  (Dkt. 122 at 5.)  In *Gulf Oil Co. v. Bernard*, the U.S. Supreme Court "consider[ed] the authority of district courts under the Federal Rules[, specifically, Rule 23(d),] to impose sweeping limitations on communications by named plaintiffs and their counsel to prospective class members."  452 U.S. 89, 99 (1981).  The Supreme Court explained:

> Class actions serve an important function in our system of civil justice.  They present, however, opportunities for abuse as well as problems for courts and counsel in the management of cases.  Because of the potential for abuse, a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties.  But this discretion is not unlimited, and indeed is bounded by the relevant provisions of the Federal Rules.

*Id.* at 99-100 (footnotes and citation omitted).

Indeed, the order restricting communications at issue in *Gulf Oil* "interfered with [the plaintiffs'] efforts to inform potential class members of the existence of [that] lawsuit" and "made it more difficult for respondents, as the class representatives, to obtain information about the merits of the case from the persons they sought to represent."  *Id.* at 101.  Due to these concerns, "an order limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties."  *Id.* (footnote omitted).  "In addition, such a weighing—identifying the potential abuses being addressed—should result in a carefully

6

drawn order that limits speech as little as possible, consistent with the rights of the parties under the circumstances." *Id.* at 102.  Accordingly, "[i]n a class-action lawsuit, a district court may not order restraints on speech under Fed. R. Civ. P. 23(d) except when justified by actual or threatened misconduct of a serious nature." *Great Rivers Co-op. of Se. Iowa v. Farmland Indus., Inc.*, 59 F.3d 764, 766 (8th Cir. 1995).

## C.   Remaining Disputes

### 1.   General Disclaimer

The first remaining dispute relates to Peiffer Wolf's use of a "General Disclaimer" on its webpages relating to this lawsuit.  Capella argues in the May 29 status update:

> Plaintiff proposed adding a general disclaimer to each webpage that describes content related to the above-captioned matter.  Capella is amenable to this approach, but requested that the proposed disclaimer be reasonably prominent and visible on each page in order to clarify that the statements made are allegations that have been contested, and for which no liability has been established.  As currently displayed, plaintiff's proposed disclaimer falls at the bottom of each webpage, is difficult to locate, is unlikely to be seen by those visiting the website, and is thus unlikely to correct the implication in plaintiff's advertising material that liability has been established.  As a result, this proposal does not meaningfully address the issues raised in Capella's motion, nor does it correct the misleading implication in plaintiff's website materials that these statements are uncontested facts.

(Dkt. 193 at 10.)

Plaintiff responds:

> The general disclaimer language is sufficient as-is on general web pages, and, at Defendant's request, the disclaimer is already featured more prominently on the webpage containing audio statements.  While Capella may wish that the disclaimer was the first item a website visitor may see, Capella does not dictate Plaintiff's First Amendment rights.  The disclaimer here is located where most people would look for [a] disclaimer, near the bottom of the web page.  As such, the disclaimer is sufficient.

(*Id.* at 13-14.)

Neither party provided the Court with the wording of the General Disclaimer on the webpages or any exhibit showing its current size or location on the webpages. Based on the parties' arguments, the Court understands that there is a General Disclaimer on Peiffer Wolf's webpages containing content relating to this lawsuit, near the bottom of the webpage, and that the wording of the General Disclaimer is not in dispute. Nevertheless, Capella argues that the General Disclaimer is not displayed prominently enough to make clear that liability has not been established and that Capella contests the allegations on the various webpages. However, Capella did not provide the Court with an alternative proposal for the General Disclaimer or explain what would be necessary to make it "reasonably prominent and visible" (e.g., font size, location, font color, etc.). "[A]n order limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Gulf Oil*, 452 U.S. at 101 (footnote omitted). Further, as previously stated, "[i]n a class-action lawsuit, a district court may not order restraints on speech under Fed. R. Civ. P. 23(d) except when justified by actual or threatened misconduct of a serious nature." *Great Rivers Co-op. of Se. Iowa*, 59 F.3d at 766. In the absence of any evidence that the current General Disclaimer is being overlooked by visitors to the webpages or otherwise suggesting "misconduct of a serious nature" by Peiffer Wolf (rather than a general disagreement about the location and visibility of the General Disclaimer), and in view of the fact that

Capella did not articulate what changes it seeks, the Court denies the Motion for Protective Order insofar as it seeks relief with respect to the General Disclaimer. However, Peiffer Wolf should take care to ensure that it continues to appropriately display the General Disclaimer on webpages relating to this action.

### 2.    Statements on Peiffer Wolf's Lawsuit Page

The Court turns to the dispute over two statements on Peiffer Wolf's Lawsuit Page.  The competing proposals in the May 29 status update follow, with each party's proposed addition shown in **bold**.

| Plaintiff's Proposal | Capella's Proposal |
|---|---|
| "**I believe that** [f]or Capella and its owners to make a big show out of declining federal stimulus dollars is the height of hypocrisy when they are raking in hundreds of millions of federal student loan dollars every year is [sic] a bait-and-switch program that victimizes vets and other students." | "**I believe that** [f]or Capella and its owners to make a big show out of declining federal stimulus dollars is the height of hypocrisy when they are raking in hundreds of millions of federal student loan dollars every year **in what the lawsuit alleges** is a bait-and-switch program that victimizes vets and other students." |
| "**Peiffer believes that** Capella is not in the business of graduating doctoral students; it's in the business of taking tuition from doctoral students. 90 percent of them will leave without a degree and buried in student loan debt." | "**"Peiffer believes that** Capella is not in the business of graduating doctoral students; it's in the business of taking tuition from doctoral students. **Peiffer believes** 90 percent of them will leave without a degree and buried in student loan debt." |

(Dkt. 193 at 11.)

However, there are slight differences between Plaintiff's proposal in the May 29 status update and the current Lawsuit Page, which contains the following versions of the challenged statements:

- "Joseph Peiffer, managing shareholder and attorney, Peiffer Wolf, said: '**I believe that for Capella and its owners to make a big show out of declining federal stimulus dollars is the height of hypocrisy when**

> **they are raking in hundreds of millions of federal student loan dollars every year in a bait-and-switch program that victimizes vets and other students.[']"**

- "Peiffer believes: '**What people need to understand is that Capella is not in the business of graduating doctoral students; it's in the business of taking tuition from doctoral students, knowing 90 percent of them will leave without a degree and buried in student loan debt.**'"

*See* https://capellauniversitylawsuit.com/blog/peiffer-wolf-capella-university-claims-good-guy-status-on-stimulus-funds-but-rakes-in-hundreds-of-millions-of-dollars-in-us-education-funds-from-victimized-vets-other-students/ (last visited October 27, 2020) (emphases original).  The Court concludes that the current Lawsuit Page does not suggest that it has been proven or is uncontested by Capella that (1) 90 percent of Capella's doctoral students leave without a degree and buried in student loan debt or (2) Capella engages in a bait-and-switch program that victimizes vets and other students.  Rather, it is clear that the statements are Joseph Peiffer's beliefs, and, consequently, the Court will not order Plaintiff to adopt Capella's proposals for these statements.

    **3.**    **Statements on Social Media**

    Finally, the Court considers Peiffer Wolf's April 30, 2020 Facebook post and May 1, 2020 LinkedIn post.  The parties' competing proposals as of May 29, 2020 are reproduced below, with each party's proposed addition shown in **bold**.

| | **Plaintiff's Proposal** | **Capella's Proposal** |
|---|---|---|
| **Facebook** | "With false promises and misleading statements, Capella has already ensnared, misled, and ultimately cheated thousands of doctoral students out of their money, **as alleged in a class action filed by Peiffer Wolf**" *Id.* (emphasis omitted). | "**The lawsuit alleges that** [w]ith false promises and misleading statements, Capella has already ensnared, misled, and ultimately cheated thousands of doctoral students out of their money." *Id.* (emphasis omitted). |
| **LinkedIn** | "Capella's promises of approximately $35,000 and two years and $50,000 and three years to complete a doctoral degree hide the reality of skyrocketing student-loan debt, while the degree programs drag on far beyond Capella's promised timelines, **according to allegations of the class action lawsuit filed by Peiffer Wolf.** In the end, most students' debt would grow so large, they have no choice but to un-enroll so they could dedicate themselves to working to pay back their crushing student loans ... and, to add insult to injury, they must do so without degrees to show for their work." | "**According to allegations in a lawsuit filed by Peiffer Wolf,** Capella's promises of approximately $35,000 and two years and $50,000 and three years to complete a doctoral degree hide the reality of skyrocketing student-loan debt, while the degree programs drag on far beyond Capella's promised timelines. **The lawsuit also alleges that**, in the end, most students' debt would grow so large, they have no choice but to un-enroll so they could dedicate themselves to working to pay back their crushing student loans ... and, to add insult to injury, they must do so without degrees to show for their work." |

(Dkt. 193 at 12-13 (emphases original).)

Capella argues that Plaintiff's proposals do not correct a misimpression in the statements that liability has been established or that the allegations are uncontested, fail to remedy each portion of the statement, and fail to provide necessary context at the outset of the statement. (*Id.* at 12.) Having carefully considered the proposals and weighed the parties' competing interests, the Court will order the following change to the LinkedIn post: Peiffer Wolf must include the clause "The lawsuit also alleges" before the phrase,

"In the end, most students' debt would grow so large, they have no choice but to un-enroll so they could dedicate themselves to working to pay back their crushing student loans ... and, to add insult to injury, they must do so without degrees to show for their work."[2]  With this revision, the Court concludes that the LinkedIn post does not create a misleading impression that liability has been established or that Capella does not dispute the allegations.  *See Ferry v. SGS Control Servs. Inc.*, No. 06 CIV.7111 RMB RLE, 2007 WL 2005549, at *3 (S.D.N.Y. July 10, 2007) (finding challenged "statements are clearly phrased as the opinions of the Getman firm, and not as statements of fact," and did not constitute "material misrepresentations or omit any necessary facts" in violation of Texas State Bar Rule 7.02(a)).  Rather, the statements make clear that Peiffer Wolf has made those allegations in this action.  The Court finds that Plaintiff's proposal for the Facebook post adequately makes clear that the assertions regarding Capella are allegations, not proven facts.

To the extent Capella takes issue with the use of the phrase "class action filed by Peiffer Wolf" instead of the more generic term "lawsuit," in the absence of any statement by Peiffer Wolf that a class has been certified, the Court concludes that describing this lawsuit as a "class action [lawsuit] filed by Peiffer Wolf" is not misleading.[3]  Capella has

---

[2]     In ordering this change, the Court does not suggest that every statement regarding a lawsuit must include an "allegations" clause at its beginning or an "allegations" clause at all.  Rather, the Court finds that the specific wording of the LinkedIn post at issue requires this modification based on its language and context.

[3]     In a footnote, Capella argues that a third party's response to an April 29, 2020 Facebook advertisement by Capella for a "$20K Doctoral Scholarship" shows that a "potential class member" has already been misled by the advertisements "to believe that

12

cited no case prohibiting counsel from describing a case filed as a class action as a class action until the class has been certified.  Further, Capella agreed to describe this action in the Rule 26(f) report as "a class action in which certain members of the Class and Defendants are citizens of different states" (Dkt. 66 at 2) and repeatedly referred to "absent class members" (rather than, for example, "absent putative class members") in its brief (*e.g.*, Dkt. 122 at 5, 6, 9, 10).  In view of these facts, and given the context of the challenged statements and the First Amendment concerns implicated by the Motion for Protective Order, the Court declines to order Peiffer Wolf to change the phrase "class action [lawsuit] filed by Peiffer Wolf" to "lawsuit."

---

there is a certified class and that Capella's liability with respect to that class has been proven."  (Dkt. 122 at 16 n.8.)  The third party responded to the April 29, 2020 Facebook advertisement with three comments, first, "Where's my $$$ Capella?"; second, "How's that CLASS ACTION LAWSUIT going for you, Capella LIARS???"; and third, "Where's my settlement check from the CLASS ACTION LAWSUIT, Capella???!!!". (Dkt. 123-11, Ex. 11.)  The Court rejects this argument, as Capella has not shown that Peiffer Wolf's advertisements or website prompted the third party's comments or reflect anything other than the third party's belief that Capella is responsible for financial losses apparently suffered by the third party and that the third party apparently is pleased about the lawsuit.  Further undermining Capella's attempts to link those comments to Peiffer Wolf's advertisements is the fact that two Pioneer Press articles describing the filing of this lawsuit and District Judge Wright's order allowing the lawsuit to proceed—both of which predate these comments—describe this lawsuit as a "class-action lawsuit."  *See* Josh Verges, *Judge makes room for class-action lawsuit accusing Capella University of lying to students*, Pioneer Press (May 8, 2019, 5:53 PM), https://www.twincities.com/2019/05/08/judge-makes-room-for-class-action-lawsuit-accusing-capella-university-of-lying-to-students/; Josh Verges, *Class-action lawsuit alleges Capella University lied about time, cost of advanced degrees*, Pioneer Press (April 23, 2018, 8:15 PM), https://www.twincities.com/2018/04/23/class-action-lawsuit-alleges-capella-university-lied-about-time-cost-of-advanced-degrees/.

The Court briefly addresses the primary cases relied on by Capella in its brief. (*See* Dkt. 122 at 11-12, 15-16.)  In *Jones v. Casey's General Stores*, the website statements at issue incorrectly described a collective action as a class action and described the lawsuit's allegations relating to unpaid overtime off-the-clock as including, among other activities, working without breaks, being required to travel to competing gas stations on a daily basis to compare prices, and working past scheduled shifts—none of which were alleged in the complaint.  517 F. Supp. 2d 1080, 1087 (S.D. Iowa 2007). Capella has not identified any similar discrepancies here.[4]  Also at issue in *Jones* were certain "goals" of the lawsuit, namely "to 'prohibit [Casey's General Stores] from failing or refusing to pay overtime wages to Assistant Managers'; to recover lost overtime wages for Assistant Mangers who were denied overtime; to require Casey's to change its time-keeping methods to accurately record actual time worked by Assistant Mangers; and to 'prevent [Casey's General Stores] from denying overtime wages in the future.'"  *Id.* at 1087-88.  At the May 21 hearing, Capella conceded that it had not identified any statement of Peiffer Wolf analogous to those "goals" statements.  (Dkt. 191 at 19:11-25.) To the extent Capella compares certain of Peiffer Wolf's statements to the statements in *Jones* that "Since Casey's has cheated its employees in the past, our job is to make sure that any such payments are CORRECTLY calculated" and "Of the 1400 responses,

---

[4]    *Jones* also involved specific evidence demonstrating "ex parte communications with the putative collective members," 517 F. Supp. 2d at 1086, which has not been alleged here.  Moreover, that aspect of the decision in *Jones* rested on Iowa Rule of Professional Conduct 32:7.8(c), *id.* at 1086-87, which does not apply in this case.

OVER 85% of [Assistant Managers] indicated they did so, without pay, for as long as 10-15 hours per week," 517 F. Supp. 2d at 1088, the Court finds that Peiffer Wolf's post-hearing inclusion of the "allegations" clauses and other modifications made to its webpages and advertisements, along with the single modification required by this Order, sufficiently alleviate any concern that the statements at issue suggest liability or certain facts are established or undisputed. Consequently, *Jones* is readily distinguishable.

Similarly, the statements at issue here bear no resemblance to those at issue in the *In re Lutheran Brotherhood Variable Insurance Products Co.* case relied on by Capella. (*See* Dkt. 122 at 12, 15.) The *In re Lutheran Brotherhood* court explained:

> First, the advertisement states that this Court has made a ruling on the merits of the case. Second, the advertisement states that the Court has found Lutheran Brotherhood in violation of the Consumer Fraud Act, and has ruled that Lutheran Brotherhood was "deceitful." Third, the advertisement states that Flexible Premium Variable Life policyholders are members of the class although they are undisputedly not members of the class.

No. 99-MD-1309PAMJGL, 2002 WL 1205695, at *2 (D. Minn. May 31, 2002). Those three statements were "egregious misrepresentations." *Id.* Capella has not identified any such egregious misrepresentation by Peiffer Wolf; rather, Capella argues that possible class members will make certain inferences as to liability and class certification based on the statements at issue. As explained above, the Court is not persuaded by this argument in view of the post-hearing revisions.

In sum, after the May 21 hearing, Peiffer Wolf took steps to address the bulk of Capella's concerns, and as to the remaining disputes, with the exception of the single change ordered herein, Capella has failed to show the required "actual or threatened

misconduct of a serious nature" that would warrant granting the relief Capella seeks, including the requested prospective injunctive relief with respect to Peiffer Wolf's future publications.[5]  *See Great Rivers Co-op. of Se. Iowa*, 59 F.3d at 766.  Consequently, the Motion for Protective Order is denied except insofar as Peiffer Wolf must include the clause "The lawsuit also alleges" before the phrase, "In the end, most students' debt would grow so large, they have no choice but to un-enroll so they could dedicate themselves to working to pay back their crushing student loans ... and, to add insult to injury, they must do so without degrees to show for their work" on the Peiffer Wolf LinkedIn post at issue.

### III.    MOTION TO COMPEL

### A.    Background

This is not Plaintiff's first motion to compel the production of documents from Capella.  On December 5, 2019, the Court granted in part an earlier motion to compel in which, among other things, Plaintiff sought production of documents responsive to certain ESI search terms.  (Dkt. 97 (granting Plaintiff's motion to compel with respect to proposed ESI search terms).)  One of those terms was **"time to completion" w/17**

---

[5]      In view of this decision, the Court does not decide whether, as Plaintiff asserts, sufficient evidence supports the challenged statements to preclude entry of a protective order.  The Court notes, however, that no factfinder has found in Plaintiff's favor as to these statements and that Capella has denied the allegations in its Answer to the Amended Complaint.  (*See generally* Dkt. 61.)

**(average or typical)**.[6]  (*See id.*; Dkt. 84 at 22-23 (listing Plaintiff's proposed search terms).)

During the December 5 hearing on the earlier motion to compel, the Court expressed its concern that Capella had indicated in a letter dated October 17, 2019 that Capella could not even begin reviewing documents responsive to Plaintiff's September 6, 2019 requests for production (and in fact had not yet begun collecting documents) until the parties agreed on the scope of production and further indicated that the scope of discovery needed to be established before Capella would begin to review documents. (Dkt. 105 at 59:5-21; *see* Dkt. 85-1, Ex. F at 89 ("You asked for Capella to immediately produce documents that we agree are responsive.  I responded that Capella not could even begin reviewing documents until the parties agreed on the scope of production. Capella needs to collect a large number of documents, review those documents for responsiveness, and then make a production.  To require Capella to begin that process now before the parties have finalized the scope of discovery would unnecessarily waste Capella's time and resources because it likely would require Capella to review some documents multiple times.").)  While Capella later had a change of heart, Capella did not state it would begin reviewing documents and make its production until after Plaintiff filed the earlier motion.  (Dkt. 105 at 59:19-24.)  The Court stated: "I would say that if Capella didn't agree with the scope of the requests, under Rule 34(b)(2) it did need to do

---

[6]        The Court identifies search terms using **bold underlined** font.

17

more than withhold or delay all discovery.  We shouldn't have to have a motion to compel brought to spur discovery participation by a litigant."  (*Id.* at 60:2-6.)

Plaintiff served his Second Requests for Production on December 11, 2019 ("Second Requests") and his Third Requests for Production on January 10, 2020 ("Third Requests").  (Dkt. 136-1, Ex. A at 6, Ex. B at 11.)  On May 12, 2020, Plaintiff filed the instant Motion to Compel.  (Dkt. 132.)  Plaintiff sought the production of documents in response to Request Nos. 1 and 3 of his Second Requests and Request Nos. 1-10 of his Third Requests.  (Dkt. 134 at 5.)  Plaintiff described the requests on which he has moved as "limited to a new search term and 11 newly identified custodians who recruit doctoral students for Capella's various doctoral programs."  (Dkt. 134 at 5.)

Request No. 1 of the Second Requests sought "[a]ll communications from 2009 to present" between a specific enrollment counselor at Capella "and prospective Capella doctoral students."  (Dkt. 136-1, Ex. A at 3.)  Request No. 3 of the Second Requests sought "[a]ll communications between Capella enrollment counselors and prospective doctoral students from 2009 to present with the terms 'normally' or 'usually' w/17 of 'time to completion.'"  (*Id.* at 4.)  The new search term substituted "normally" and "usually" for "average" and "typical" in the previously ordered **"time to completion" w/17 (average or typical)** term.  In other words, it requested that Capella search documents using **"time to completion" w/17 (normally or usually)**.  This new search term was based on the production of emails using the following language regarding the time to complete doctoral programs:

**Key Takeaways for the PhD in Education:**

- Time to completion:  usually between 3.5 - 4.5 years (full-time)
- Cost:  about $55,000 - $65,000

(Dkt. 134 at 7; *see* Dkt. 136-1, Ex. C at 14.)

On January 10, 2020, Capella objected to Request Nos. 1 and 3 in the Second Requests as disproportionate and duplicative.  (Dkt. 136-2, Ex. F, at 2-3, 4.)  As to what Capella agreed to produce, Capella stated, respectively: "Capella will produce communications sent from [the counselor] to prospective doctoral learners that contain statements regarding the length of time a typical learner takes to complete a doctoral program, to the extent any are found after the search directed by the Court," and, "Capella will produce communications responsive to this Request that contain statements regarding the length of time a typical learner takes to complete a doctoral program, to the extent any are found after the search directed by the Court."  (*Id.* at 3, 5.)

As to Plaintiff's Third Requests, Plaintiff sought "[a]ll communications from 2009 to present between [ten additional enrollment counselors] and prospective Capella doctoral students."  (Dkt. 136-1, Ex. B at 9-11.)  Again, Capella objected to the requests as disproportionate and duplicative and stated: "Capella will produce communications sent from [the ten additional enrollment counselors] to prospective doctoral learners that contain statements regarding the length of time a typical learner takes to complete a doctoral program, to the extent any are found after the search directed by the Court." (Dkt. 136-2, Ex. H at 20-28.)

On May 4, 2020, Plaintiff's counsel articulated their understanding of what Capella would produce in an email to Capella's lawyers in advance of a scheduled meet-and-confer:

> I understand it is Capella's position that it believes it is only required to produce documents pursuant to the order on the motion to compel and that it will not provide any additional documents due to alleged time and expense. In other words, it is Capella's position it does not need to produce a single additional document in response to our second and third document requests unless that document also falls within the scope of the order on the motion to compel. This is an untenable position that conflicts with general practices in discovery. Parties are entitled to multiple requests for production, and as discovery continues are allowed to explore other issues as they arise. A party cannot unilaterally shutdown discovery especially when the materials sought are highly relevant to the case.

(Dkt. 186-8, Ex. I at 19.) Capella responded on May 6, 2020, as follows:

> We are willing to meet and confer with you on this issue to attempt to reach a compromise, but as you are aware, the parties have already expended significant resources in discussing search terms and custodians attempting [sic] to reach reasonable agreement. And following the Court's 12/5/19 Order, Capella further expended significant time and expense in reviewing documents and communications that hit on search terms as ordered by the Court. Capella produced over 80,000 documents from over 600 custodians, and spent over $1 million in the process.
>
> Given this history, we continue to find your most recent—and belated search term requests unreasonable. As noted in our Responses and Objections to Plaintiff's Second and Third Requests for Production, these requests were largely, if not wholly, duplicative of plaintiff's prior requests. Moreover, plaintiff has failed to articulate any need for this additional information, nor has plaintiff articulated how this information could be relevant to supporting plaintiff's claims at the class discovery phase of this litigation. That said, we are willing to discuss search terms and custodians with you during today's meet and confer to see if a compromise can be reached.

(*Id.* at 17.)

The parties met and conferred on May 6, 2020, but that meet-and-confer seems to have focused on Capella's Motion for Protective Order, with the meet-and-confer as to the discovery requests at issue taking place on May 11, 2020.  (*See id.* at 2-16.)  Capella's summary of the May 11 meet-and-confer does not identify any proposals made by Capella with regard to the requests at issue here; rather, it simply states in relevant part: "We have not yet received a revised proposal narrowing the number of additional search terms and custodians you are asking for.  Assuming we are still at an impasse on this issue, we will proceed to motions practice."  (*Id.* at 2.)

In its opposition to the Motion to Compel, Capella contends that the search terms contained in the Second Requests are irrelevant and unnecessary to the class certification inquiry and unduly burdensome.[7]  (Dkt. 184 at 16, 20.)  Specific to Request No. 3, Capella argued that the **"time to completion" w/17 (normally or usually)** term "would still impose disproportionate burdens on Capella given that Mr. Ornelas could not represent a class of individuals who received such representations."  (*Id.* at 11; *see also id.* at 17.)

---

[7]     Capella also asserts that Plaintiff sought documents hitting on "five additional phrases" in the May 4, 2020 email sent by Plaintiff's counsel.  (Dkt. 184 at 11 & n.6.)  The Court has carefully reviewed the record, including the May 4 email cited by Capella, and finds that Capella has not accurately characterized that correspondence.  At the May 21 hearing, the Court noted Capella had not accurately described some of the Peiffer Wolf statements that Capella complained of in its Motion for Protective Order.  (Dkt. 191 at 11:4-20, 13:22-24.)  In view of the fact that the Court is ordering sanctions against Capella under Rule 37(a)(5)(A) in connection with the Motion to Compel, the Court will not delve into every instance where Capella appears to have overstated the facts, but Capella should take care to accurately represent the facts to the Court in the future.

In its opposition, Capella also contends that it had "assured plaintiff that it would produce all responsive communications containing 'statements regarding the length of time a typical learner takes to complete a doctoral program' that fell within the scope of the Court's [December 5, 2019] order, since such communications at least bore some connection to the communication received by Mr. Ornelas." (*Id.* at 10-11.)  However, Capella did not contend that it had agreed to produce documents that hit on the **"time to completion" w/17 (normally or usually)** term, and in fact Capella did not agree to do so prior to the filing of the Motion to Compel.  Further, while Capella claims in its opposition brief that it had "proposed compromise solutions" during the meet-and-confer efforts, Capella did not identify any solution it had actually proposed or cite any evidence supporting this claim.  (*See id.* at 13.)

At the conclusion of the May 21 hearing, the Court directed the parties to further meet and confer regarding the Motion to Compel in view of counsel's arguments.  (Dkt. 191 at 78:2-12.)  As of the July 10, 2020 status update, the parties had reached agreement as to the issues raised in the Motion to Compel except as to Plaintiff's request for sanctions.  (Dkt. 204.)  The Court addresses the question of sanctions below.

**B.    Legal Standard**

Rule 37(a)(5) provides:

If [a motion compelling discovery] is granted—**or if the disclosure or requested discovery is provided after the motion was filed**—the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees.

Fed. R. Civ. P. 37(a)(5)(A) (emphasis added).  However, a court must not order this payment if, among other things, "the opposing party's nondisclosure, response, or objection was substantially justified."[8]  Fed. R. Civ. P. 37(a)(5)(A)(ii).

## C.    Remaining Disputes

The remaining dispute between the parties is whether Capella's objections to Request Nos. 1 and 3 in the Second Requests and Request Nos. 1-10 in the Third Requests were substantially justified so as to preclude the imposition of sanctions.[9]  (*See* Dkt. 204 at 3-10.)  Here, even though the parties eventually reached agreement as to the discovery at issue, Capella did not agree to produce documents responsive to the requests until after Plaintiff filed its Motion to Compel, bringing Plaintiff's request for sanctions within the scope of Rule 37(a)(5)(A).  For the following reasons, the Court concludes that Capella's objections and refusal to produce documents responsive to Request No. 3 of the Second Requests and certain of Capella's objections to all of the discovery that was the

---

[8]    Capella has not argued that Plaintiff did not attempt in good faith to meet and confer or that other circumstances would make an award of expenses unjust.  *See* Fed. R. Civ. P. 37(a)(5)(A)(i), (iii).  In any event, the record is clear that Plaintiff did attempt in good faith to meet and confer before filing his motion, and there are no circumstances here that would make an award of expenses unjust.

[9]    Capella had an opportunity to address sanctions at the May 21 hearing, and the parties made additional sanctions arguments in status updates filed with the Court.  (*See* Dkt. 191 at 37:9-62:21 (argument on Motion to Compel, which included request for sanctions); Dkt. 193 at 2-3, 5, 7 (parties' arguments in May 29 status update); Dkt. 204 at 3-10.)

subject of the Motion to Compel were not substantially justified, and that an award of sanctions is appropriate.

As to Request No. 3, Capella agreed to produce documents responsive to this request after the May 21 hearing.  (*See* Dkt. 193 at 2 ("Plaintiff's motion, ECF No. 132, seeks to compel Capella to: (1) run an additional search term for documents that hit on (usually OR normally) w/17 "time to completion[]" . . . Capella has agreed to run plaintiff's proposed search term.").)  Capella argues in its July 10 status update that its earlier refusal to run that term was justified because "Plaintiff was originally requesting a much broader range of additional search terms—terms that went beyond even the scope of his actual requests—and never offered to compromise by limiting his request to only the 'usually' or 'normally' search string."  (Dkt. 204 at 8.)  As noted in footnote 7 of this Order, Capella does not appear to have accurately characterized the May 4 email it cites in support of this argument.[10]

Moreover, even if Capella's claim that Plaintiff sought additional "terms that went beyond even the scope of his actual requests" in the May 4 email were accurate, an email

_____

[10]     Capella cites the phrase "additional search terms" from the May 4 email to support this contention (Dkt. 204 at 8 (citing Dkt. 186-8, Ex. I at 19; Dkt. 184 at 7)), but the "additional search terms" Plaintiff's counsel was referring to were those "identified in our second and third production" (Dkt. 186-8, Ex. I at 19 ("Third, we asked that Capella produce additional materials pursuant to additional search terms and custodians identified in our second and third productions.")).  While Plaintiff's counsel identified certain phrases in form emails as the basis for the Second and Third Requests (*see id.* ("We've produced emails to Capella with our mediation material showing additional f[or]m misrepresentations . . . .")), Plaintiff's counsel did not demand the addition of those phrases as search terms in the May 4 email.

24

sent by Plaintiff's counsel on May 4, 2020 plainly cannot justify the objections Capella made to this request almost four months earlier, on January 10, 2020, when Capella responded to Request No. 3 with several objections and stated: "Capella will produce communications responsive to this Request that contain statements regarding the length of time a typical learner takes to complete a doctoral program, to the extent any are found after the search directed by the Court." (Dkt. 136-2, Ex. F at 5, 14.) Plaintiff understood Capella's response to mean that Capella was refusing to produce documents that hit on the search term propounded in Request No. 3 (Dkt. 186-8, Ex. I at 19), and the Court has the same understanding. Capella did not agree to run the **"time to completion" w/17 (normally or usually)** term until after the May 21 hearing on the Motion to Compel. Any argument Capella makes regarding the May 4 email does not render Capella's January 2020 objections and refusal to run the term substantially justified.

The Court also finds that Capella's objections to Request No. 3 on grounds of proportionality, burden, and duplicativeness were not substantially justified. Capella's argument on this point was based on the fact that Plaintiff himself had not received an email from Capella that used "normally" or "usually" (*see* Dkt. 184 at 11, 17) and that Capella believed "within 17 words" as too broad of a limiter—notwithstanding the fact that the Court had already ordered a "within 17 words" limiter for the corresponding **"time to completion" w/17 (typically or average)** term (*see* Dkt. 191 at 59:7-15). Given that Capella is reserving the right to argue that persons who received an email using the word "usually" (instead of the word "typically" or "average") are not members of the proposed class and to argue that Plaintiff cannot represent a class of individuals

25

who received "usually" or "normally" emails (Dkt. 191 at 61:7-21; Dkt. 184 at 11, 17), the Court finds that Capella's objections to the term proposed in Request No. 3 on the ground that it was duplicative of the previously ordered **"time to completion" w/17 (typically or average)** were not substantially justified.  Capella also could not substantiate its proportionality and burden arguments as to this term at the May 21 hearing.  (*See* Dkt. 191 at 60:3-8 ("at least let me go run the term, generate a hit report, see how many documents it's going to review").)  The Court finds those objections were not substantially justified.

Further, the Court rejects any argument that the parties' compromise as to Request No. 1 of the Second Requests and Request Nos. 1-10 of the Third Requests renders Capella's objections to Request No. 3 of the Second Requests substantially justified.  While Capella said it was "willing" to compromise with respect to search terms and custodians (Dkt. 186-8, Ex. I at 17), the record does not contain a single proposal made by Capella before Plaintiff filed his Motion to Compel.  Capella's assertion that it "proposed compromise solutions" is unsupported by any evidence.  (*See* Dkt. 184 at 13.) In fact, Capella appears to have placed all the burden of reaching compromise on Plaintiff.  The Court has already cautioned Capella about withholding responsive documents until Capella was satisfied as to the entire scope of discovery.  (Dkt. 105 at 59:13-60:6.)  Capella engaged in similar conduct in connection with the Second and Third Requests at its peril.  Capella's decision to withhold a production responsive to Request No. 3 until agreement was reached as to other discovery sought by the Second and Third Requests was not substantially justified.

Finally, the Court considers Capella's objections to Request No. 1 of the Second Requests and Request Nos. 1-10 of the Third Requests.  As to burden and proportionality, those requests were broad as drafted, and Capella substantiated (to some extent) the costs associated with responding to those requests at the May 21 hearing.  However, the sticking point with respect to those requests was Capella's position that it was not obligated to produce any documents beyond those required by the December 5 Order and argument that Plaintiff's propounding of discovery containing additional terms and custodians was "belated."  (*See* Dkt. 186-8, Ex. I at 17.)  Plaintiff clearly stated its understanding in the May 4 email that Capella was refusing to produce documents that fell outside of the scope of the December 5 Order.  (*Id.* at 19.)  If Plaintiff misunderstood, Capella could have and should have clarified its position.  It did not.  Indeed, Capella stated that it had taken this position in its opposition brief.  (*See, e.g.*, Dkt. 184 at 10 ("Nonetheless, Capella assured plaintiff that it would produce all responsive communications containing 'statements regarding the length of time a typical learner takes to complete a doctoral program' **that fell within the scope of the Court's [December 5] order**, since such communications at least bore some connection to the communication received by Mr. Ornelas.") (emphasis added); *id.* at 12 ("Capella responded that it would produce communications sent by each individual **that fell within the scope of the Court-ordered discovery** and that 'contain statements regarding the length of time a typical learner takes to complete a doctoral program.'") (emphasis added).)  The record is devoid of any instance where Capella agreed to produce documents outside of the scope of the December 5 Order before Plaintiff filed the Motion

27

to Compel.  Capella has cited no authority for its position that it was not required to produce documents that fell outside of the scope of the December 5 Order.[11]

In sum, Capella never agreed to produce documents in response to Request No. 1 in the Second Requests and Request Nos. 1-10 in the Third Requests—except to the extent the documents fell within the scope of the December 5 Order—until after the May 21 hearing.  Capella's objection to that effect was not substantially justified and stood in the way of the parties reaching an agreement that would address Capella's concerns about burden.[12]  Consequently, the Court grants the Motion to Compel insofar as it seeks

---

[11]    If that was not Capella's position, Capella should have been clear—before Plaintiff filed the Motion to Compel—about what it was actually willing to produce, not just state that it was willing to meet and confer or compromise.

[12]    Capella claims that "[t]he only time plaintiff ever *asked* for initial emails was in relation to sanctions, not his requests for production" and that Plaintiff "never" offered to "narrow his requests."  (Dkt. 204 at 7-8.)  On the contrary, the May 4 email from Plaintiff's counsel states:

> As you may recall, **our initial position with our first requests for production was that we wanted all initial emails sent from Capella to prospective doctoral students**.  Capella refused.  In order to expedite this litigation, we sought a compromise focusing on search terms which were the subject of our motion to compel.  However, [we] later received emails from third parties that now show these search terms were too limiting.  **Rather than seek all initial emails from Capella to prospective doctoral students, we are again seeking a more limited subset of such documents**.  If Capella does not agree to these search terms and custodians, **we will need to move the court to produce all initial emails from Capella to prospective students** to ensure we receive all Capella's form documents.

(Dkt. 186-8, Ex. I at 19 (emphases added).)  The Court rejects Capella's argument that Plaintiff was not willing to seek anything less than "all communications" except as a sanction.  Plainly, Plaintiff was seeking something even less than "all initial emails," which, just as plainly, would be less than "all communications."

sanctions against Capella in the form of Plaintiff's reasonable expenses incurred in making the Motion to Compel, including attorneys' fees. *See* Fed. R. Civ. P. 37(a)(5)(A). Plaintiff shall serve the amount of fees and costs he seeks on Capella within fourteen (14) days of the date of this Order. If Capella does not agree to the amount of the fees and costs, it may submit its dispute to the Court within seven (7) days after receiving the amount from Plaintiff, and Plaintiff may respond to Capella's filing within seven (7) days after the filing. The Motion to Compel is otherwise denied as moot.

## IV.   MOTION TO DE-DESIGNATE

### A.   Background

Plaintiff's Motion to De-Designate asks the Court to de-designate emails that Capella has designated CONFIDENTIAL on the grounds that they do not contain confidential information. (Dkt. 141.) Specifically, Plaintiff seeks de-designation of "initial, mostly-form emails Capella recruiters sent to prospective doctoral students explaining Capella's doctoral programs." (Dkt. 143 at 1.) Plaintiff argues that the initial emails were sent in response to prospective doctoral students contacting Capella either through its webpage, via email, or via phone to learn more about Capella programs, and that these "initial emails" informed prospective students generally about Capella's doctoral programs. (*Id.* at 2.) According to Plaintiff, the initial emails are form emails containing misrepresentations about the graduation rate at Capella and the time it takes to complete doctoral degrees, and Capella has not identified any specific confidential Capella information contained within these initial emails. (*Id.*)

Plaintiff further contends that some of the initial emails are in response to a "Refer a Friend" function (rather than a request from an individual on her own behalf), and the fact that Capella would send an initial email based on the referral confirms the lack of confidential Capella material in the initial emails. (*Id.* at 5.) Plaintiff argues that the fact that the emails were sent without restrictions on redistribution underscores the absence of confidential Capella material. (*Id.* at 6.) In addition, according to Plaintiff, the Federal Education Rights and Privacy Act ("FERPA") does not apply to the initial emails because the emails only contain names and email addresses, and the emails do not qualify as CONFIDENTIAL under the Protective Order because the names and email addresses of prospective doctoral students are not "personal, intimate, or otherwise sensitive." (*Id.* at 8.) Plaintiff seeks de-designation of all such initial emails from CONFIDENTIAL to public.

Capella responds that the initial emails contain personal identifying information about prospective Capella students who are not present in this action and therefore lack the ability to defend their privacy interests. (Dkt. 163 at 12-13.) Capella also argues that FERPA precludes Capella from de-designating all initial emails. (*Id.* at 14-17.) Finally, Capella argues that "the 'initial emails,' in the aggregate, constitute confidential 'commercial information which is not publicly known,' the disclosure of which would pose a commercial harm to Capella." (*Id.* at 17-18 (citing Dkt. 174 ¶ 7 (Affidavit of Anthony Martin)).)

At the May 21 hearing, Plaintiff's counsel explained that he was concerned about his ability to use the initial emails at issue in open court, for filing in this case, and at

depositions.  (Dkt. 191 at 63:24-65:3.)  Plaintiff had proposed that counsel would be permitted to file the initial emails in open court and use them as Plaintiff wished, but would redact out the names and email addresses.  (*Id.* at 65:21-66:1.)  Capella responded that it would agree to the concept of redactions, but wanted five business days' notice to review the proposed redactions before the emails were used, and assurances from Plaintiff's counsel that the emails would only be used in this litigation.  (Dkt. 191 at 70:9-71:18.)  At the conclusion of the hearing, the Court directed counsel to review Local Rule 5.6, which governs the filing of documents under seal in civil cases, and to see if they could reach agreement as to this issue.  (Dkt. 191 at 78:13-19.)

## B.    Legal Standard

Federal Rule of Civil Procedure 26(c) permits a Court to "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" upon a showing of good cause.  Fed. R. Civ. P. 26(c)(1).  The burden is on the party seeking protection to show the "good cause" required for issuance of the protective order.  *Gen. Dynamics Corp. v. Selb Mfg. Co.*, 481 F.2d 1204, 1212 (8th Cir. 1973).

The Protective Order in this case provides:

> The "Confidential Information" designation shall mean that the document is comprised of trade secrets or commercial information which is not publicly known and is of technical or commercial advantage to its possessor, in accordance with Federal Rule of Civil Procedure 26(c)(1)(G), other information required by law or agreement to be kept confidential, or any personal, intimate or otherwise sensitive information regarding any individual.

(Dkt. 77 ¶ 2(a) (stipulation for protective order); Dkt. 81 (order granting stipulation).)

The Protective Order permits a party to challenge a designation and, if the parties cannot

reach agreement as to the designation, to seek relief from the Court.  (Dkt. 77 ¶ 5; Dkt.

81.)

## C.    Remaining Disputes

The parties did not reach agreement as to the Motion to De-Designate after the

hearing.  (Dkt. 193 at 7-9.)  Capella's proposal as of May 29, 2020 was:

> [A]ll initial emails would remain designated CONFIDENTIAL, and to the
> extent plaintiff wishes to attach any of them to court filings, the parties would
> follow the procedure described in Local Rule 5.6.  Plaintiff would file the
> document under seal, and after 21 days, the parties would file a joint motion
> to unseal the documents, provided that all personal identifying information
> remain redacted.  *See* Local Rule 5.6(d)(1), (2).  Capella agreed not to oppose
> any such motion as to "initial emails" to the extent plaintiff agreed to redact
> confidential information within the document.  Further, Capella agreed that
> plaintiffs were free to use the unsealed, redacted versions of the emails filed
> on the public docket for any purpose.

(*Id.* at 7.)

Plaintiff maintained his position that Capella should not have designated all emails

in this case, including the initial emails, as CONFIDENTIAL in the first instance.  (*Id.* at

8.)  Plaintiff argued that FERPA was not a concern as Capella's default position for

Capella doctoral students is that they waived any rights under FERPA to the

confidentiality of email addresses and names.  (*Id.* at 8.)  Finally, Plaintiff argued that

"the unreasonableness of Capella's position is highlighted by Capella's concession above

that the contents of all initial emails can be freely available to the public after 21 days

(following Local Rule 5.6), once the email address and name of students are redacted."

(*Id.* at 9.)

The Court first addresses whether Capella can properly designate emails between prospective doctoral students and Capella as CONFIDENTIAL under the Protective Order.  The Protective Order permits the designation of documents as CONFIDENTIAL if "the document is comprised of . . . any personal, intimate or otherwise sensitive information regarding any individual."  (Dkt. 77 ¶ 2(a) (stipulation for protective order); Dkt. 81 (order granting stipulation).)  The Court finds that the name and email addresses of prospective doctoral students who received emails from Capella about doctoral programs constitute personal information regarding an individual and that Capella has met its burden, for purposes of discovery, to designate the initial emails as CONFIDENTIAL under the Protective Order.

However, the Court shares Plaintiff's concerns about the minimal amount of confidential information in these emails, as well as how the CONFIDENTIAL designation affects the parties' ability to litigate this matter.  The Court also notes that Capella does not appear to have significant concerns about the use of versions of the email from which all personal identifying information has been redacted, but seeks to limit Plaintiff's ability to use such redacted emails to those filed on the public docket. (*See* Dkt. 193 at 7.)  For the reasons stated below, the Court finds that Capella has not justified limiting Plaintiff's ability to use redacted emails to those filed on the public docket.

First, the Court has considered Capella's FERPA argument (*see id.* at 14-17) and whether FERPA justifies limiting Plaintiff's ability to use redacted email to those filed on the public docket.  While, as Plaintiff asserts, Capella may have a default position that

33

doctoral students "opt-out" of their FERPA rights, it is unclear that all of the emails at issue relate to individuals who opted-out of FERPA or are not otherwise subject to FERPA's protections.  However, the redaction of the personal identifying information from the emails at issue would eliminate Capella's FERPA concerns.  *See R.S. ex rel. S.S v. Minnewaska Area Sch. Dist. No. 2149*, No. CV 12-588 (MJD/LIB), 2013 WL 12149246, at *7 (D. Minn. Mar. 20, 2013) ("Because the Court has already determined that all personally identifiable information should be redacted, as agreed by the parties, FERPA is not implicated.") (citing *Ragusa v. Malverne Union Free Sch. Dist.*, 549 F. Supp. 2d 288, 293 (E.D.N.Y. Feb. 19, 2008) (explaining that "there is nothing in FERPA that would prohibit Defendants from releasing education records that had all 'personally identifiable information' redacted" because "once a record is redacted, it no longer contains 'information relating directly to a student' and is therefore not an educational record under FERPA" (internal quotation marks and citations omitted)).  Consequently, FERPA does not require limiting Plaintiff's use of redacted emails to those filed on the public docket.

Second, the Court has considered Capella's argument that that "the 'initial emails,' in the aggregate, constitute confidential 'commercial information which is not publicly known,' the disclosure of which would pose a commercial harm to Capella."  (Dkt. 163 at 17-18.)  The Court is not particularly persuaded by the Affidavit of Anthony Martin submitted in support of this position, which asserts that "Enrollment Counselors' private communications with prospective students are reflections of Capella's confidential recruiting strategies and techniques."  (Dkt. 174 ¶ 6.)  This assertion is undermined by

34

Capella's lack of concern about public filing of those communications from which only the prospective student's personal identifiers is redacted. Capella also suggests that the public disclosure of large volumes of the emails—apparently even if redacted—would disclose Capella's "broader marketing strategy and approaches" and result in the disclosure of a "*de facto* list of Capella's prospective students or enrollment counselors." (Dkt. 163 at 17-18.) This argument could carry more weight, except: there would be no list of Capella's prospective students since their names and personal identifiers would be redacted; Capella has already publicly filed documents naming several of their enrollment counselors (Dkt. 186-6, Ex. G at 2 (Capella's Responses and Objections to Plaintiff's Second Requests (naming one enrollment counselor)); Dkt. 186-9, Ex. J at 3-5 (Plaintiff's Third Requests (naming ten more enrollment counselors))); and Capella has not identified (even under seal) the marketing strategy and approaches or recruiting strategies and techniques with any specificity, much less shown that making those emails public would disclose those strategies, approaches, and techniques. Based on the record, Capella has not shown that the public disclosure of emails from which the prospective students' personal identifiers is redacted, even in the aggregate, would pose a significant competitive harm to Capella.

Further, the Court has concerns that restricting Plaintiff's ability to use redacted versions of the emails, unless they were publicly filed on the docket, would result in future disputes about whether Plaintiff's filing of initial emails as exhibits was in good faith or an attempt to make public large numbers of emails. Consequently, the Court grants the Motion to De-Designate insofar as Capella shall produce versions of the initial

emails from which personal identifying information, such as names, email addresses, phone numbers, and mailing addresses, of the prospective students is redacted within twenty-one (21) days of the date of this Order.  This will permit Capella to redact the emails as it believes necessary in view of any obligations it may have under FERPA or with respect to the personal information of the prospective students.  If Plaintiff disputes the scope of Capella's redactions, he shall do so pursuant to the procedure set forth in paragraph 5 of the Protective Order.  The redacted initial emails shall be designated public.

## V.   ORDER

Based on the files, records, and proceedings herein, **IT IS ORDERED THAT:**

1.     Defendants' Motion for Entry of a Protective Order (Dkt. 120) is **GRANTED IN PART** and **DENIED IN PART**.

2.     Peiffer Wolf must include the clause "The lawsuit also alleges" before the phrase, "In the end, most students' debt would grow so large, they have no choice but to un-enroll so they could dedicate themselves to working to pay back their crushing student loans ... and, to add insult to injury, they must do so without degrees to show for their work" on the April 30, 2020 Peiffer Wolf LinkedIn post.

3.     Plaintiff Maurice Ornelas's Motion to Compel Documents from Defendants Capella Education Company and Capella University, Inc. (Dkt. 132) is **GRANTED** insofar as the Court awards sanctions under Federal Rule of Civil Procedure 37(a)(5)(A) in the form of Plaintiff's reasonable attorneys' fees and costs incurred in bringing the Motion to Compel, and is otherwise **DENIED** as moot.

4.     Plaintiff Maurice Ornelas shall serve a declaration of his legal counsel setting forth the amount of reasonable attorneys' fees and costs he seeks in connection with the award of sanctions in paragraph 3 on Capella within fourteen (14) days of the date of this Order.  If Capella does not agree to the amount of the attorneys' fees and costs, it may submit its dispute to the Court within seven (7) days after receiving the amount, and Plaintiff may respond to Capella's filing within seven (7) days after the filing.

5.     Plaintiff Maurice Ornelas's Motion to De-Designate Initial Emails from Defendants Capella Education Company and Capella University, Inc. (Dkt. 141) is **GRANTED IN PART** and **DENIED IN PART** as set forth in Section IV.C of this Order.

6.     Defendants Capella Education Company and Capella University, Inc. shall produce versions of the initial emails from them to prospective doctoral students from which personal identifying information, such as names, email addresses, phone numbers, and mailing addresses, of the prospective students is redacted within twenty-one (21) days of the date of this Order.

Dated:  October 27, 2020                    *s/Elizabeth Cowan Wright*
                                            ELIZABETH COWAN WRIGHT
                                            United States Magistrate Judge