**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MINNESOTA**

| | |
|---|---|
| MAURICE JOSE ORNELAS, APRIL POWERS, STEPHEN SEPPA, DANIELLE MILLER, DANNIE GORE, ERICA CARTY, and JENNIFER PROFFITT, <br><br> INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED <br><br>     *Plaintiffs*, <br><br>     v. <br><br> CAPELLA EDUCATION COMPANY, and CAPELLA UNIVERSITY, INC., <br><br>     *Defendants*. | Case No.: 0:18-cv-01062-WMW-ECW <br><br> Judge: Wilhelmina M. Wright |

**CAPELLA'S ANSWER TO PLAINTIFFS' CORRECTED**
**SECOND AMENDED CLASS ACTION COMPLAINT**

Defendants Capella Education Company and Capella University, LLC (formerly Capella University, Inc.) (collectively "Capella") submit this Answer to Plaintiffs' Corrected Second Amended Class Action Complaint. Unless otherwise admitted, Capella denies the allegations contained in any of the footnotes or headers in the Second Amended Complaint, and hereby responds to plaintiffs' allegations as follows.

**NATURE OF THE ACTION**

1.      This action seeks redress for Plaintiffs and thousands of similarly situated doctoral students who were harmed by Capella's misrepresentations about the graduation rate, length, and cost of its doctoral programs—misrepresentations that Plaintiffs and the Classes relied upon when enrolling and continuing each term at Capella. Capella misrepresented and withheld the actual graduation rate, length of time, and cost of its programs to Plaintiffs and the Classes, and by doing so, ensnared doctoral students in doctoral programs that were difficult, if not impossible, for

students to complete, especially in the promised time and for the promised cost. In reality, Capella's doctoral programs were not designed for completion within the represented timeframe and cost; to the contrary, they were designed to last considerably longer so Capella could maximize the extraction of tuition payments from Plaintiffs and the Classes.

**ANSWER:**  Capella denies the allegations in paragraph 1.

2.      Capella operated a "bait and switch" program. The bait was displayed when Capella's marketing materials and recruiters misled prospective and current students by making misleading statements about graduation rate, the time to completion, and cost of their mostly student-loan financed doctoral degrees. For example, in both 2011 and 2012, Plaintiff Ornelas was told that at Capella, the "typical learner will complete their PhD program in 3 years, plus or minus one quarter, by averaging 2 courses per quarter." Plaintiff Proffitt was told, "The average time to completion for the Comprehensive/Dissertation phase is approximately two years." Plaintiff Seppa was told for a PhD in Education, "Three years is the average." Plaintiff Carty was told for her program that "Average: 3 years." And Plaintiffs Gore and Powers were told the "[t]ypical time to completion is anywhere from 3.5 to 5.5 years in length" and "4 to 4.5 years is average."

**ANSWER:**  Capella states that paragraph 2 purports to quote, describe, or characterize written documents, the terms of which speak for themselves, and therefore no response is required. To the extent a response is required, Capella states that Plaintiffs Ornelas and Proffitt received emails that included the quoted language in the third and fourth sentences of paragraph 2, respectively.  Capella further states that Plaintiff Seppa received an email that included the quoted language in the fifth sentence of paragraph 2, and that Plaintiff Carty received an email that included the quoted language in the sixth sentence of paragraph 2.  Capella states that Plaintiff Gore received an email that included the language "Typical time to completion is anywhere from

3.5 to 5.5 years in length; 4 to 4.5 years is pretty average." Capella states that Plaintiff Powers received a representation that included the language "Typical time to completion after transfer credit is anywhere from 3.5 to 5.5 years in length; 4 to 4.5 is average." Capella denies the remaining allegations in paragraph 2.

3.     Relying on these and similar misrepresentations, Capella doctoral students enrolled in their doctoral programs, and completed their coursework, the first steps in obtaining a doctoral degree. After having invested significant amounts of time and money in completing their coursework, doctoral students began the dissertation/capstone process, the second and final step in obtaining a doctoral degree. However, this is when serious delays began.

**ANSWER:** Capella denies the allegations in paragraph 3.

4.     Rather than institute a process that would allow for completion of the doctoral program within the promised timeframes, Capella created and instituted an endless routine of hurdles and obstacles. As a result, Capella benefitted from additional tuition payments made by Plaintiffs and the Class.

**ANSWER:** Capella denies the allegations in paragraph 4.

5.     Plaintiffs and the Class—who believed they were getting ever closer to obtaining their doctoral degree—were in fact stuck with decreasing resources, faculty turnover, and other obstacles resulting from Defendants' scheme, all of which increased the length of the doctoral students' enrollments at Capella.

**ANSWER:** Capella denies the allegations in paragraph 5.

6.     While Plaintiffs and the Class reasonably believed they were taking the necessary and appropriate steps to obtain their doctoral degrees, weeks stretched into months, then into semesters, and then into years of continuing tuition payments and student loans.

**ANSWER:** Capella denies the allegations in paragraph 6.

7.     Plaintiffs and thousands of other doctoral students did not realize they did not have control over the time it would take to complete their doctoral degree program; they were at the mercy of Capella, who ensured that doctoral students would be misled, confused, and ultimately cheated out of their money to the benefit of Capella.

**ANSWER:** Capella denies the allegations in paragraph 7.

8.     Capella's promises of the typical/average student graduating and shortened times to complete doctoral degrees (e.g., reasonable tuition and costs) were replaced by skyrocketing student-loan debt, while the degree programs dragged on far past Capella's promised timelines.

**ANSWER:** Capella denies the allegations in paragraph 8.

9.     Finally, most students' debt would grow so large that they had no choice but to un-enroll so they could dedicate themselves to working to pay back their crushing student loans ... without degrees to show for their work.

**ANSWER:** Capella denies the allegations in paragraph 9.

10.     Capella knew its representations to the Plaintiffs and the Classes concerning graduation rate, length of time, and cost it would take to obtain doctoral degrees were false. In fact, it would later release data showing its doctoral programs were "designed" to take much longer than prospective students were promised and its graduation rates were embarrassingly low.

**ANSWER:** Capella denies the allegations in paragraph 10.

11.     These facts, inconsistent as they may seem, were withheld from Plaintiffs prior to and during their enrollment at Capella.

**ANSWER:** Capella denies the allegations in paragraph 11.

12.     With these false promises and misleading statements, Capella ensnared and enrolled thousands of doctoral students, including Plaintiffs.

**ANSWER:**  Capella denies the allegations in paragraph 12.

13.     Universities exist to educate and grant degrees. However, Capella—a for-profit corporation-created a smoke-and-mirrors doctoral degree process to receive ever-increasing amounts of money in the form of tuition payments and fees.

**ANSWER:**  Capella admits that Capella University, LLC is not a 501(c)(3) and that Capella has provided education to students and has awarded thousands of doctoral degrees to students who successfully completed their academic programs.  Capella denies any remaining allegations in paragraph 13.

14.     The longer students were kept in pursuit of their degrees, the more tuition payments and fees they would pay, and, importantly, the more money Capella would make.

**ANSWER:**  Capella admits that students must pay tuition to enroll in Capella's doctoral programs.  Capella denies any remaining allegations in paragraph 14.

15.     Further, having already paid tens of thousands of dollars to get "half way" through the program or potentially further *(i.e.,* completing the classroom work), most students would understandably be compelled to continue pursuing their degree (e.g., attempting to complete the capstone/dissertation) despite Capella's hurdles, feeling they have what it takes if they just keep working.

**ANSWER:**  Capella lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 15, and therefore denies them.

16.     Given that the Capella doctoral programs were mostly online, students were isolated from their peers, unable to see whether others faced the same challenges. Instead, the students would assume it was just them, and continue a fight they could not win.

**ANSWER:**  Capella admits that it offers online courses for its doctoral programs.  Capella denies the remaining allegations in paragraph 16.

17.     Capella intended to (and did) generate substantial additional profits by way of additional tuition and fees. The practice resulted in the members of the Class and Subclasses (defined below) paying substantially more for Capella's doctoral degree programs than promised by Capella (or reasonably anticipated by the students).

**ANSWER:**  Capella denies the allegations in paragraph 17.

18.     Capella's acts caused substantial damage to Plaintiffs and Class and Subclass members. If Capella had not misrepresented the time — and therefore, the true cost — of its doctoral degree programs, Plaintiffs and the Class and Subclass members would not have attended Capella, made tuition and fee payments, or borrowed any amount including but not limited to student loans for tuition and fees, room and board charges, costs of books and supplies and other expenses.

**ANSWER:**  Capella denies the allegations in paragraph 18.

19.     Further, had Capella not misrepresented the graduation rates, timelines, real-world costs, and realities of its doctoral degree process, Plaintiffs and Class and Subclass members would not have registered for the program or paid for the educational services offered by Capella.

**ANSWER**:  Capella denies the allegations in paragraph 19.

20.     Instead, Plaintiffs and those similarly situated relied upon Capella's misrepresentations and omissions when enrolling at Capella and when they continued term to term,

and are now saddled with crippling debt, bad credit, inability to obtain additional student loans, useless course credits that will not transfer to other institutions, and most times, no doctoral degree.

**ANSWER**:  Capella denies the allegations in paragraph 20.

## THE PARTIES

21.     Plaintiff Maurice Jose Ornelas is, and has been at all relevant times, a resident and citizen of the State of Massachusetts. He enrolled in Capella's PhD in Public Safety program, specializing in Criminal Justice in 2012.

**ANSWER:**  Capella admits that Plaintiff Ornelas enrolled in Capella's Ph.D. in Public Safety program in 2012.  Capella admits that Plaintiff Ornelas testified during his deposition that he resided in Massachusetts and Nebraska between 2012 and 2016, but Capella itself lacks knowledge sufficient to form a belief about the truth or falsity of these allegations in paragraph 21, and therefore denies them.

22.     Plaintiff April Powers is, and has been at all relevant times, a resident and citizen of the State of Idaho in 2015 and Utah from 2015-2019. She enrolled at Capella in 2015 seeking a PhD in Information Technology ("PhD in IT"), specializing in Information Assurance and Cybersecurity.

**ANSWER**:   Capella admits that Plaintiff Powers enrolled in Capella's Ph.D. in Information Technology program in 2015.  Capella admits that Plaintiff Powers testified during her deposition that she resided in Idaho in 2015 and Utah from 2015-2019, when she was enrolled at Capella, but Capella itself lacks knowledge sufficient to form a belief about the truth or falsity of these allegations in paragraph 22, and therefore denies them.

23.     Plaintiff Stephen Seppa is, and has been at all relevant times, a resident and citizen of the State of Florida. He enrolled in Capella's PhD in Education program specializing in Industrial Design for Online Learning in 2015.

7

**ANSWER:** Capella admits that Plaintiff Seppa enrolled in Capella's Ph.D. in Education program in 2007. Capella admits that Plaintiff Seppa testified during his deposition that he resided in Florida when he was enrolled at Capella between 2007 and 2010, but Capella itself lacks knowledge sufficient to form a belief about the truth or falsity of these allegations in paragraph 23, and therefore denies them.

24.     Plaintiff Danielle Miller is, and has been at all relevant times, a resident and citizen of the state of Illinois. She enrolled in Capella's PhD in Nursing Education program in 2012.

**ANSWER:** Capella admits that Plaintiff Miller enrolled in Capella's Ph.D. in Nursing Education program in 2012. Capella admits that Plaintiff Miller testified during her deposition that she resided in Illinois when she was enrolled at Capella between 2012 and 2019, but Capella itself lacks knowledge sufficient to form a belief about the truth or falsity of these allegations in paragraph 24, and therefore denies them.

25.     Plaintiff Dannie Gore, Jr. is, and has been at all relevant times, a resident and citizen of the States of Minnesota and Arizona. He enrolled in Capella's PhD in Business Management program in 2017.

**ANSWER:** Capella also states that Plaintiff Gore enrolled in a PhD in Business Management program in 2015, and re-enrolled in 2017. Capella admits that Plaintiff Gore testified during his deposition that he resided in Minnesota and Arizona when he was enrolled at Capella between 2015 and 2018, but Capella itself lacks knowledge sufficient to form a belief about the truth or falsity of these allegations in paragraph 25, and therefore denies them.

26.     Plaintiff Erica Carty is, and has been at all relevant times, a resident and citizen of the state of Florida. She enrolled in Capella's BSN to DNP program in January 2017.

**ANSWER**:  Capella admits that Plaintiff Carty enrolled in Capella's BSN to DNP program in 2017.  Capella admits that Plaintiff Carty testified during her deposition that she resided in Florida when she was enrolled at Capella between 2017 and 2020, but Capella itself lacks knowledge sufficient to form a belief about the truth or falsity of these allegations in paragraph 26, and therefore denies them. Capella also states that Ms. Carty testified during her deposition that she has resided in various locations since 2020, including Washington, Massachusetts, and New Mexico.

27.     Plaintiff Jennifer Proffitt is, and has been at all relevant times, a resident and citizen of the state of Michigan. She enrolled in Capella's PhD in Business Management program in the summer of 2013.

**ANSWER**:  Capella admits that Plaintiff Proffitt enrolled in Capella's Ph.D. in Business Management program in 2013.  Capella admits that Plaintiff Proffitt testified during her deposition that she resided in Michigan when she was enrolled at Capella between 2013 and 2018, but Capella itself lacks knowledge sufficient to form a belief about the truth or falsity of these allegations in paragraph 27, and therefore denies them.

28.     Defendant Capella Education Company is a corporation organized under the laws of the State of Minnesota. Capella Education Company was publicly traded on the Nasdaq under ticker symbol CPLA until it was acquired by Strayer Education ("Strayer"). Further, Capella Education Company maintains its principal place of business at Capella Tower, 225 South Sixth Street, 9th Floor, Minneapolis, Minnesota 55402.

**ANSWER**:  Capella admits that Capella Education Company is a Minnesota corporation with a principal place of business at Capella Tower, 9th Floor, 225 South Sixth Street, Minneapolis, MN 55402.  Capella further admits that until August 1, 2018, the stock of Capella

Education Company was traded on NASDAQ under the symbol CPLA. Capella denies any remaining allegations in paragraph 28.

29.     Defendant Capella University, Inc. is a corporation organized and operating under the laws of the State of Minnesota.

**ANSWER:**  Capella admits that Capella University, LLC (formerly Capella University, Inc.) is a Minnesota corporation.

30.     According to public disclosures made by Capella Education Company, Defendant Capella University was a wholly owned subsidiary or Capella Education Company. Capella University is now owned by Strayer.

**ANSWER**:  Capella admits that Capella University, LLC (formerly Capella University, Inc.) is a wholly-owned subsidiary of Capella Education Company.

31.     Capella University, Inc. shared its Minnesota address with its parent, Capella Education Company. A principal-agent relationship exists between Capella Education Company and Capella University, Inc.

**ANSWER**:  Capella admits that Capella University, LLC (formerly Capella University, Inc.) has its principal place of business at Capella Tower, 9th Floor, 225 South Sixth Street, Minneapolis, MN 55402.  The remaining allegations in paragraph 31 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 31.

32.     Capella University, Inc. also operated and operates a call center for enrollment from Minnesota.

**ANSWER**:  Capella admits that it has enrollment staff located in its principal place of business in Minnesota.  Capella denies any remaining allegations in paragraph 32.

33.     Capella Education Company is liable for the wrongful acts of its subsidiary-agent.

**ANSWER:**  Capella states that the allegations in paragraph 33 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 33.

34.     Alternatively, or additionally, the acts of the Defendants Capella Education Company and Capella University, Inc. were conducted in concert pursuant to an express or implied agreement amongst themselves to act in this collective manner. Defendants Capella Education Company and Capella University, Inc. (collectively referred to herein as "Capella") are therefore jointly and severally liable for the acts complained of herein.

**ANSWER:**  Capella states that the allegations in paragraph 34 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 34.

## JURISDICTION AND VENUE

35.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2) because the matter in controversy, upon information and belief, exceeds $5,000,000, exclusive of interest and costs, and this is a class action in which certain members of the Class and Defendant are citizens of different states.

**ANSWER**:  Capella states that the allegations in paragraph 35 contain legal conclusions, and therefore no response is required.

36.     This Court has personal jurisdiction over Defendants because they are headquartered and conduct significant business in Minnesota.

**ANSWER**:  Capella states that the allegations in paragraph 36 contain legal conclusions, and therefore no response is required.

37.     Venue is proper in this district, pursuant to 28 U.S.C. § 1391, because Defendants reside in, transact business in, are found within, and have agents in this District and a substantial part of the events giving rise to Plaintiff's claims arose in this District.

**ANSWER**:  Capella states that the allegations in paragraph 37 contain legal conclusions, and therefore no response is required.

38.     Due to Capella's location in Minneapolis, the state of Minnesota is unique compared to other states where its students reside. Under the National Counsel for State Authorization Reciprocity Agreements ("SARA"),[1] states like Minnesota have agreements with nearly every U.S. state, the District of Columbia, and the U.S. Virgin Islands, that out-of-state complaints which arise due to educational institutions' conduct via the internet are principally handled in the state where the educational institution resides.[2] Because of this, Minnesota, as the site of the home state portal agency under SARA, has authority to resolve complaints from other SARA member states. For Capella, this means complaints from its students will principally be heard in Minnesota by the Minnesota Office of Higher Education.

**ANSWER:**  Capella states that the allegations in paragraph 38, footnote 1, and footnote 2 contain legal conclusions, and therefore no response is required.  Capella further states that paragraph 38, footnote 1, and footnote 2 purport to quote, describe, or characterize written documents, the terms of which speak for themselves.  To the extent a response is required, Capella admits that Capella University is a participant in the State Authorization Reciprocity Agreement

---

[1]     "The members of SARA are states, not institutions or students. Therefore, a state "joins" or becomes a "member" of SARA while a college or university "operates under" or "participates in" SARA." See, Basic Questions About SARA, available from: http://nc-sara.org/content/basic-questions-about-sara#who).

[2]     SARA "[s]hifts principal oversight responsibilities from the state in which the distance education is being received to the 'home state' of the institution offering the instruction." Key Attributes of Sara, available from: http://nc-sara.org/about/key-attributes-sara.

("SARA"), that the Minnesota Office of Higher Education ("MOHE") is Capella University's home state portal agency, and that in that capacity MOHE considers complaints by students originating both within and beyond Minnesota.  Capella denies any remaining allegations in paragraph 38, footnote 1, and footnote 2.

## CAPELLA, ITS GROWTH AND FUNDING

39.     Capella was founded in 1991 as a Minnesota corporation.

**ANSWER**:  Capella admits that Capella Education Company was founded as a Minnesota corporation in 1991.

40.     In 1993, Capella established a wholly-owned university subsidiary, then named The Graduate School of America, to offer doctoral and master's degrees through distance learning programs in management, education, human services, and interdisciplinary studies.

**ANSWER**:  Capella admits that Capella University, Inc. was founded in 1993 under the name The Graduate School of America, which offered master's and doctoral degrees in human services, education, management, and interdisciplinary studies.

41.     In 1995, Capella launched online doctoral and master's degree programs over the Internet.

**ANSWER**:  Capella admits that The Graduate School of America began offering courses and degree programs through online platforms beginning in 1995.

42.     In 1997, Capella's university subsidiary received accreditation from the North Central Association of Colleges and Schools (later renamed The Higher Learning Commission).

**ANSWER**:  Capella admits that The Graduate School of America earned accreditation from The Higher Learning Commission ("HLC") of the North Central Association in 1997.

43.     In 1998, Capella expanded its original portfolio of academic programs by introducing doctoral and master's degrees in psychology and a master of business administration degree.

**ANSWER**:  Capella admits that The Graduate School of America was approved by HLC to offer master's and doctoral degree programs in psychology in 1998, and that The Graduate School of America was approved by the Minnesota Higher Education Services Office to grant an MBA in 1998.

44.     In 1999, to expand the reach of Capella's brand in anticipation of moving into the bachelor's degree market, Capella changed its name to Capella Education Company and the name of its university to Capella University.

**ANSWER**:  Capella admits that The Graduate School of America was renamed Capella University in 1999.  Capella denies any remaining allegations in paragraph 44.

45.     This helped Capella University, a for-profit corporation, seem like a legitimate educational institution.

**ANSWER**:  Capella admits that Capella University, LLC (formerly Capella University, Inc.) is not a 501(c)(3) corporation.  Capella denies any remaining allegations in paragraph 45.

46.     In 2004, Capella began offering four-year bachelor's degree programs in business and information technology.

**ANSWER**:  Capella admits that it was approved by HLC to offer bachelor's degree programs in business and information technology in 2003, and that such programs were offered in 2004.

47.     In November 2006, Capella completed an initial public offering, making it not only a for-profit company, but now a publicly traded company with stockholders to appease.

**ANSWER**:  Capella admits that Capella Education Company completed its initial public offering of common stock in 2006 and began trading on the NASDAQ under the symbol CPLA. Capella denies any remaining allegations in paragraph 47.

48.    Capella has continued to create new programs and specializations, including the launch of doctoral, master's and bachelor's level programs.

**ANSWER:**   Capella admits that since 2006 it has created new programs and specializations, including doctoral, master's, and bachelor programs.

49.    Currently, Capella offers approximately 1,840 online courses, 48 academic programs, and 163 specializations.

**ANSWER**:  Capella admits that as of October 7, 2021, it offered approximately 2,093 online courses, 52 degree programs, and 142 graduate and undergraduate specializations.  Capella denies any remaining allegations in paragraph 49.

50.    Capella offers a number of online, doctorate level degrees: Doctor of Philosophy in Human Services, Doctor of Philosophy in Public Safety, Doctor of Public Administration (DPA), Doctor of Social Work (DSW), Doctor of Health Administration (DHA), Doctor of Public Health (DrPH), Doctor of Nursing Practice (DNP), Doctor of Philosophy in Advanced Studies in Human Behavior, Doctor of Philosophy in Counselor Education and Supervision, Doctor of Philosophy in Psychology, Doctor of Psychology (PsyD), Doctor of Psychology (PsyD) in School Psychology, Doctor of Business Administration (DBA), Doctor of Philosophy in Information Technology, Doctor of Philosophy in Business Management, Doctor of Education (EdD), Doctor of Philosophy in Education (PhD),

**ANSWER:**  Capella admits that it offers a number of online doctoral level degrees, which include the Doctor of Philosophy in Human Services, Doctor of Public Administration, Doctor of

Social Work, Doctor of Health Administration, Doctor of Public Health, Doctor of Nursing Practice, Doctor of Philosophy in Advanced Studies in Human Behavior, Doctor of Philosophy in Counselor Education and Supervision, Doctor of Philosophy in Psychology, Doctor of Psychology, Doctor of Psychology in School Psychology, Doctor of Business Administration, Doctor of Philosophy in Information Technology, Doctor of Philosophy in Business Management, Doctor of Education, Doctor of Philosophy in Education.

51.     Given the number of degrees offered and the large sums spent on marketing, enrollment at Capella has increased significantly over the last 15 years. In 2001, Capella had an enrollment of 3,759 students. On the last day of the quarter ended December 31, 2015, Cappella had 36,976 students.

**ANSWER:**  Capella admits that it reported enrollment of 3,759 students as of 2001, and reported enrollment of 36,976 students as of December 31, 2015.  Capella denies any remaining allegations in paragraph 51.

52.     Of the approximately 36,000 students attending Capella on the last day of the quarter ended December 31, 2015, doctoral students made up 26.1%, or a total of 9,645 doctoral students.[3]

**ANSWER:**  Capella admits that it had 9,645 doctoral and post-master's students, and 36,976 total students, enrolled as of December 31, 2015.  Capella denies any remaining allegations in paragraph 52.

53.     Not surprisingly, the increased enrollment has led to a similar trajectory for Capella's profits. In 2007, Capella had profit of approximately $30,000,000. In 2010, Capella's profit had more than tripled to approximately $95,000,000.

---

[3]     See, https://www.sec.gov/Archives/edgar/data/1104349/000110434916000042/form10-k2015.htm.

**ANSWER:**  Capella admits that Capella Education Company's operating income in 2007 was approximately $29.950 million.  Capella further admits that Capella Education Company's operating income in 2010 was approximately $95.001 million.  Capella denies any remaining allegations in paragraph 53.

54.     The vast majority of Capella's revenue is derived from federally funded student loans. In 2010, 80.8% ($338,000,000) of Capella's revenue was derived from federal education funds.

**ANSWER:**  Capella understands that paragraph 54 purports to quote, describe, or characterize a written document referenced in footnote 4, the terms of which speak for itself, and therefore no response is required.  To the extent a response is required, Capella states that, in 2010, approximately 78% of the revenues of Capella Education Company (calculated on a cash basis) were derived from Title IV program funds.  Capella denies any remaining allegations in paragraph 54.

55.     As a for-profit college, Capella devotes substantial portions of revenue to both marketing and profit. As of 2009, Capella spent approximately 29.8% of its revenue ($100,000,000) on marketing and recruitment of new students. Likewise, in 2009, Capella allocated approximately 19.1% of its revenue ($64,000,000) to profit. The amount that Capella spends on marketing and recruitment, as well as amounts allocated to profit, is higher than average for other for-profit colleges.[4]

---

[4]     Ex. A, U.S. Senate's report entitled "For Profit Higher Education: The Failure to Safeguard the Federal Investment and Ensure Student Success," Capella's Profile at 329 ("The percentage of revenue Capella allocates to marketing exceeds the for-profit sector average by a considerable margin."), available from: https://www.help.senate.gov/imo/media/for_profit_report/PartII/Capella.pdf.

**ANSWER:**  Capella understands that paragraph 55 purports to quote, describe, or characterize a written document referenced in footnote 4, the terms of which speak for itself, and therefore no response is required.  To the extent a response is required, Capella states that Capella Education Company earned $334.643 million in revenue, incurred $99.632 million in marketing and promotional expenses, and reported $63.922 million in operating income in 2009.  Capella denies any remaining allegations in paragraph 55 or footnote 4.

56.     In just four years between 2006 and 2010, the profit generated by Capella increased by approximately $65,000,000 — from $30,000,000 to $95,000,000.

**ANSWER:**  Capella admits that Capella Education Company's operating income in 2007 was approximately $29.950 million.  Capella further admits that Capella Education Company's operating income in 2010 was approximately $95.001 million.  Capella denies any remaining allegations in paragraph 56.

57.     In 2009, Capella spent only $1,650 per student on instruction compared to $4,538 per student on marketing. Even more striking, Capella realized $2,912 in profits per student. By way of comparison, the University of Minnesota spent $13,247 per student on instruction during the same time period.

**ANSWER:**  Capella understands that paragraph 57 purports to quote, describe, or characterize a written document referenced in footnote 4, the terms of which speak for itself, and therefore no response is required.  To the extent a response is required, Capella states that, in 2009, it reported expenses of $135.286 million for instructional costs and services, $99.632 million for marketing and promotional costs, and operating income of $63.922 million.  As of December 31, 2009, Capella reported enrollment of 33,982 students.   Capella disputes the remaining

characterizations in paragraph 57, and therefore denies the remaining allegations in paragraph 57 on that basis.

58.     Capella appears to have an abysmal graduation rate for doctoral students; less than 10% of its doctoral student population graduates with a doctoral degree. For example, on March 31, 2011, Capella stated it had nearly 40,000 students, with 31% enrolled in doctoral programs. Ex. 1, Capella Commencement News Release (2011). This equates to a yearly doctoral population of approximately 12,000. In its previous two graduation ceremonies (Aug. 2010; March 2011), Capella graduated only 1,109 doctoral students.[5] This corresponds to less than 10% of its yearly doctoral student population graduating per year $(1,109/12,000 = 9.24\%)$. Capella then is not in the business of graduating doctoral students, it is in the business of taking tuition from doctoral students knowing 90% of them will leave without a degree.

**ANSWER:**  Capella states that paragraph 58 and footnote 5 purport to quote, describe, or characterize written documents, the terms of which speak for themselves, and therefore no response is required.  To the extent a response is required, Capella disputes the characterizations in paragraph 58 and footnote 5, and therefore denies paragraph 58 and footnote 5 on that basis.

59.     Internal documents confirm the same. A March 2015 presentation entitled, "PHD FINANCIAL RISK" confirmed that 80% of Capella's PhD learners "will most likely run out of Stafford loan eligibility before completion."

---

[5]   1,109 was calculated by counting the doctoral students listed in Capella's Aug. 2010 and March 2011 commencement programs. EdS students were not counted as the EdS degree is not a doctoral degree and upon information and belief is used as a consolation for doctoral students that do not complete a PhD in Education or EdD program. Commencement programs for August 2010 and March 2011 are available from: http://www.capella.edu/interactivemedia/Commencement/docs/Aug2010Commencement.pdf      and http://www.capella.edu/interactivemedia/Commencement/docs/Mar2011Commencement.pdf.   Commencement programs for the last 5-6 years were unavailable.

**CONCLUSION SUMMARY**      7

- **80% of 2014 PhD learners are financially at-risk**
  - These learners will most likely run out of Stafford loan eligibility before completion and will have to find other sources of funding.
- **Learner debt at enrollment is rising**
  - 2014 average Stafford Loan debt is $74,527 at enrollment. With average program costs of $70-$100,000 learners will graduate with a high debt load.
- **Strong correlation between debt level and persistence**
  - Risk Tier 5 learners re-registration rates are 17% lower than Risk Tier 1 learners at LQ5.
- **Risk Tier 5 learners progress at a slower pace**
  - Time is money for Flat Rate and Tiered Tuition programs and the learners who can least afford their academic programs are progressing at the slowest rate.

© 2013 CAPELLA UNIVERSITY           CAPELLA UNIVERSITY

Ex. 2 at 7. This document shows from the start of enrollment, Capella recognizes it is likely to lose 80% of its PhD students solely because the length of Capella's programs means those students have insufficient resources to complete their degree. Id. In fact, by the end of year three (the 12th quarter)—the timeframe by which Capella promised Ornelas and Seppa that the "typical learner" and "average" student graduated—only 9.4% of its PhD students remained to re-enroll...meaning over 90% of its students did not graduate.[6]

---

[6]     580 remaining students at the 12th quarter divided by total enrollment of PhD students at 6160. Ex. 2 at 5.

## RE-REGISTRATION RATES BY RISK TIER – Q3 2011 TO Q4 2014

| Row Labels | Count of EMPUD | LQ2_REREG | LQ3_REREG | LQ4_REREG | LQ5_REREG | LQ6_REREG | LQ7_REREG | LQ8_REREG | LQ9_REREG | LQ10_REREG | LQ11_REREG | LQ12_REREG |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 616 | 465 | 426 | 372 | 322 | 301 | 253 | 220 | 196 | 162 | 135 | 104 |
| 2 | 645 | 493 | 413 | 364 | 341 | 296 | 247 | 216 | 183 | 152 | 126 | 102 |
| 3 | 839 | 630 | 542 | 459 | 408 | 369 | 304 | 254 | 212 | 179 | 134 | 102 |
| 4 | 1236 | 908 | 775 | 637 | 557 | 521 | 427 | 362 | 323 | 237 | 181 | 125 |
| 5 | 2824 | 1951 | 1547 | 1220 | 994 | 820 | 657 | 496 | 384 | 301 | 222 | 147 |
| Grand Total | 6160 | 4447 | 3703 | 3052 | 2622 | 2307 | 1888 | 1548 | 1298 | 1031 | 798 | 580 |

| Risk Tier | | | LQ2 | LQ3 | LQ4 | LQ5 | LQ6 | LQ7 | LQ8 | LQ9 | LQ10 | LQ11 | LQ12 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Tier 1 | | | 75% | 69% | 60% | 52% | 49% | 41% | 36% | 32% | 26% | 22% | 17% |
| Tier 2 | | | 76% | 64% | 56% | 53% | 46% | 38% | 33% | 28% | 24% | 20% | 16% |
| Tier 3 | | | 75% | 65% | 55% | 49% | 44% | 36% | 30% | 25% | 21% | 16% | 12% |
| Tier 4 | | | 73% | 63% | 52% | 45% | 42% | 35% | 29% | 26% | 19% | 15% | 10% |
| Tier 5 | | | 69% | 55% | 43% | 35% | 29% | 23% | 18% | 14% | 11% | 8% | 5% |
| Total | | | 72% | 60% | 50% | 43% | 37% | 31% | 25% | 21% | 17% | 13% | 9% |

- Looking at all new start cohorts, Tier 5 (the riskiest population) has a 17 percentage point lower re-registration rate at LQ5 than Tier 1
- Note: Denominator is static in calculations (ex. Calculation for LQ12 registration rate is 580 learners who registered divided by 6160 learners who started)

**Conclusion: Strong correlation between debt level and persistence**

© 2013 CAPELLA UNIVERSITY   Capella University

The "typical" and "average" student at Capella then does not graduate; to the contrary, they leave Capella only with indebtedness.

**ANSWER:** Capella states that paragraph 59 and footnote 6 purport to quote, describe, or characterize a written document, the terms of which speak for itself, and therefore no response is required. To the extent a response is required, Capella disputes the characterizations in paragraph 59 and footnote 6, and therefore denies paragraph 59 and footnote 6 on that basis.

60.   Capella students carry some of the highest student loan debts in the country. A 2015 Brookings Institution study found that by 2014, students had accumulated over $8 billion in debt while at Capella. This was the fifth largest amount of debt out of the more than 3,000 schools in the report.

**ANSWER:**  Capella states that paragraph 60 purports to quote, describe, or characterize a written document, the terms of which speak for itself, and therefore no response is required.  To the extent a response is required, Capella disputes the characterizations in paragraph 60, and therefore denies paragraph 60 on that basis.

61.    Capella recognizes this high level of indebtedness. The same PHD FINANCIAL RISK presentation states that its learners will have "a high debt load." *Id.* at 7. Capella further recognized that, "the learners *who can least afford their academic programs* are progressing at the slowest rate." *Id.* (emphasis added). Still, recognizing its abysmal graduation rate and the high debt load it left with its students, it welcomed Capella doctoral students by the thousands...because it meant hundreds of millions of dollars for Capella.

**ANSWER:**  Capella states that paragraph 61 purports to quote, describe, or characterize a written document, the terms of which speak for itself, and therefore no response is required.  To the extent a response is required, Capella disputes the characterizations in paragraph 61, and therefore denies paragraph 61 on that basis.

62.    Capella doctoral students (like all students) are required to pay back their student loan debt regardless as to whether they receive the degree they sought or not... and most do not.

**ANSWER:**  Capella admits that its students are required to repay their student loans. Capella denies the remaining allegations in paragraph 62.

63.    The problem, however, as described in United States Senate Report on For-Profit Universities is:

> [w]hile aggressive recruiting and high cost programs might be less problematic if students were receiving promised educational outcomes, committee staff analysis showed that tremendous numbers of students are leaving for-profit colleges without a degree.

Ex. 3, at 324.

| Degree Level | Enrollment | Percent Completed | Percent Still Enrolled | Percent Withdrawn | Number Withdrawn |
|---|---|---|---|---|---|
| Bachelor's Degree | 5,602 | 1.4% | 38.3% | 60.3% | 3,378 |
| Masters | 11,867 | 3.5% | 52.1% | 44.3% | 5,262 |
| Doctorate | 5,018 | 0% | 58.0% | 42.0% | 2,107 |
| All Students | 22,487 | 2.2% | 50% | 47.8% | 10,747 |

Id. Senate Report on For-Profit Universities, Capella at 325.

> [w]hile aggressive recruiting and high cost programs might be less problematic if students were receiving promised educational outcomes, committee staff analysis showed that tremendous numbers of students are leaving for-profit colleges without a degree.

Ex. 3, at 324.

**ANSWER:** Capella states that paragraph 63 purports to quote, describe, or characterize a written document, the terms of which speak for itself, and therefore no response is required. To the extent a response is required, Capella disputes the characterizations in paragraph 63, and therefore denies paragraph 63 on that basis.

64. According to the Senate's 2012 investigation of For-Profit Colleges, in the 2008-2009 timeframe, 5,018 doctoral students enrolled at Capella.[7]

| Degree Level | Enrollment | Percent Completed | Percent Still Enrolled | Percent Withdrawn | Number Withdrawn |
|---|---|---|---|---|---|
| Bachelor's Degree | 5,602 | 1.4% | 38.3% | 60.3% | 3,378 |
| Masters | 11,867 | 3.5% | 52.1% | 44.3% | 5,262 |
| Doctorate | 5,018 | 0% | 58.0% | 42.0% | 2,107 |
| All Students | 22,487 | 2.2% | 50% | 47.8% | 10,747 |

Id. Senate Report on For-Profit Universities, Capella at 325.

---

[7]  Although unclear from the 2012 Senate Report, in the best light for Capella, it appears this information corresponds to students who newly enrolled in 2008 and 2009, given the 0% completion rate for doctoral students. If, however, this information corresponds to all doctoral students at Capella, then it had a 0% graduation rate for doctoral students.

**ANSWER:**  Capella states that paragraph 64 and footnote 7 purport to quote, describe, or characterize a written document, the terms of which speak for itself, and therefore no response is required.  To the extent a response is required, Capella disputes the characterizations in paragraph 64 and footnote 7, and therefore denies paragraph 64 and footnote 7 on that basis.

65.     Furthermore, within two years, 42% of Capella's 2008-2009 enrollees had withdrawn without receiving a doctoral degree, despite committing countless hours and paying large sums of money (most likely via student loans) for tuition.

**ANSWER:**  Capella understands that paragraph 65 purports to quote, describe, or characterize a written document, the terms of which speak for itself, and therefore no response is required.  To the extent a response is required, Capella disputes the characterizations in paragraph 65, and therefore denies paragraph 65 on that basis.

**CAPELLA'S REPRESENTATIONS OF SHORTER TIMEFRAMES TO COMPLETE DOCTORAL PROGRAMS HID FROM PLAINTIFFS AND THE CLASS THAT CAPELLA'S DOCTORAL PROGRAMS WERE NEVER-ENDING**

66.     Through aggressive recruiting and marketing, Capella promised that obtaining a doctoral degree was not only typical, it was relatively inexpensive and quick. This was accomplished through multiple form email misrepresentations, as well as form misrepresentations made telephonically and via CHAT options with prospective students.

**ANSWER:**  Capella admits that it communicates with prospective students via email, telephonically, and via CHAT options to provide information regarding potential enrollment at Capella University.  Capella denies the remaining allegations in paragraph 66.

67.     These form misrepresentations all delivered the same message: 1) that the average or typical doctoral student graduated from Capella (i.e., more than 50% of its students graduated) and 2) that the timeline for graduating was relatively fast, most times under three to four-and-a-half years.

**ANSWER:** Capella denies the allegations in paragraph 67.

**The "Typical Learner" Form Emails (Schools of Public Safety, Psychology, Public Service Leadership, Human Services)**

68.     For example, in 2011 and 2012 in what is a form email sent to prospective PhD students from recruiters, Capella stated:

> Our typical learner will complete their PhD program in 3 years, plus or minus one quarter, by averaging 2 courses per quarter. Their weekly time investment to work at this pace is about 18-24 hours per week.

Group Ex. 4, "Typical Learner" Capella Recruiter Emails. This "typical learner" email was referred to internally at Capella as s a "good 'all purpose' template.'" Ex. 5, CAP00067133. It was used for many Capella programs beyond Plaintiff Ornelas's PhD in Public Safety program such as Capella's School of Psychology and a "follow up email" for *all* programs in the School of Public Service Leadership and the School of Human Services. See, e.g., Group Ex. 6, CAP00058558 ("Psych follow up email"), CAP00064625 ("Subject: Follow up email for the PSL programs – (health care, etc.)"), CAP00054019 ("HS follow up email"), respectively. The "typical learner" email was used even without a designation of a specific doctoral program implying the "typical learner" statement applied to *any* doctoral program offered by Capella. See, e.g., Ex. 7, CAP00054148. It was also used for non-PhD doctoral programs. See, e.g., Ex. 8, CAP00053899 at 53900 ("typical learner…will complete their DPA in 3 1/2 years").

**ANSWER:** Capella states that the allegations in paragraph 68 appear to quote, describe, or characterize written documents, the terms of which speak for themselves, and therefore no response is required. To the extent a response is required, Capella disputes the characterizations in paragraph 68, and therefore denies paragraph 68 on that basis.

69.     The "typical learner" email misrepresented both that the "typical" Capella student would graduate, and that the "typical" student would graduate within a relatively quick time.

25

**ANSWER:**  Capella denies the allegations in paragraph 69.

70.     Despite these promises to prospective PhD students, Capella's "typical learner" would not obtain a degree, let alone obtain a degree in three years. Again, Capella internal documentation recognized that over 90% of its students would be unenrolled by the end of the third year. Ex. 2, PhD Financial Risk. Further, in 2015-2017, pursuant to Gainful Employment disclosures newly required by the Department of Education, Capella admitted that its PhD programs were "designed" to and did take considerably longer than three years. See, e.g., Group Ex. 9 (PhD in Business "designed to take 60 months"); (PhD in Business Management ("designed to take 60 months"); (PhD in Counselor Education and Supervision "designed to take 81 months") (PhD in Education "designed to take 84 months"); (PhD in Emergency Management is an 81 month program); (PhD in Human Services "designed to take 84 months"); (PhD in Information Technology "designed to take 75 months"); (PhD in Psychology "designed to take 84 months").

**ANSWER:**  Capella states that paragraph 70 purports to quote, describe, or characterize written documents, the terms of which speak for themselves, and therefore no response is required. To the extent a response is required, Capella disputes the characterizations in paragraph 70, and therefore denies paragraph 70 on that basis.

71.     The "typical" Capella student does not complete their PhD program in "three years"; rather, the "typical" Capella student is forced to leave without a degree, tens-of-thousands-of-dollars in debt.

**ANSWER:**  Capella denies the allegations in paragraph 71.

72.     In this action, Capella has produced over 1,300 emails containing the "typical learner" language; however, this production does not fully document the sheer number of these emails sent to prospective doctoral students. For example, Plaintiff Ornelas received two such

emails from Capella. Ex. 4. Despite this, Capella was only able to locate and produce one such email during discovery—meaning one of the two emails sent to Ornelas was deleted by Capella. This is not an isolated occurrence as nearly every named Plaintiff in this action has an email from Capella with misrepresentations that Capella was unable to find and produce during discovery. The reason for Capella's inability to locate so many of these misrepresentation emails was provided in Plaintiff Ornelas's enrollment counselor's deposition: she confirmed that she regularly deleted work emails. Ex. 10, Mathews Dep. Tr., 180:20-182:23. As can be seen then, Capella's production of "typical learner" emails (indeed, all its misrepresentation emails) underestimates the universe of emails sent to its doctoral prospects.

**ANSWER:**  Capella states that paragraph 72 purports to quote, describe, or characterize written documents, the terms of which speak for themselves, and therefore no response is required. To the extent a response is required, Capella admits that it has produced documents that contain the phrase "typical learner" quoted in paragraph 72.  Capella admits that Plaintiff Ornelas received two emails containing this "typical learner" language.  Capella admits that it did not produce the second email to Plaintiff Ornelas that contains the language quoted in paragraph 72 because it could not locate such an email in its internal files after conducting a reasonable search.  Capella disputes the remaining characterizations in paragraph 72, and therefore denies the remaining allegations in paragraph 72 on that basis.

**The "Typical Time to Completion" Emails (Schools of Business and IT)**

73.      Another form misrepresentation about graduation rate and the time it takes to obtain a doctoral degree is contained within Capella's "Typical time to completion" emails, such as emails stating the "Typical time to completion is anywhere from 3.5 to 5.5 years to complete; 4 to 4.5 is average." Ex. 11, CAP44742. There are over 6,600 emails with the phrase "typical time to completion" contained within them produced in this action, mostly from multiple recruiters in

Capella's Schools of Business and Information Technology. All misrepresentations made within the "typical time to completion" emails are false. See Ex. 9 (both the PhD in Business and Business Management, Accounting Specializations were "designed to take 60 months to complete" however "[f]ewer than 10 students completed this program"; PhD in IT was "designed to take 75 months to complete" with only 67% (of the fortunate 10% that graduated) doing so "75 months.").

**ANSWER**:  Capella states that paragraph 73 purports to quote, describe, or characterize written documents, the terms of which speak for themselves, and therefore no response is required. To the extent a response is required, Capella admits that it produced documents that contain the phrase "typical time to completion" quoted in paragraph 73.  Capella disputes the remaining characterizations in paragraph 73, and therefore denies the remaining allegations in paragraph 73 on that basis.

74.    The importance of the "typical time to completion" misrepresentation is that internal emails confirm it was used by recruiters not just in their emails with prospective doctoral students, but also as a "Canned Response" used by "chat reps" when communicating via "chat/phones." Ex. 11 ("…baseline statement that the chat reps can use to talk about PHD pricing…"). Capella CHAT reps used this "canned response" with prospective doctoral students. Ex. 12, CHAT Rep. Transcript, CAP00044594. Even in 2018, Capella used these CHAT templates to tell Business School prospects that the DBA takes "on average…3-3.5 years" and the PhD takes "on average…about 4 years." Ex. 13, CAP378335-6 ("CHAT Template for DBA and PhD Calls"). While it is commonsense (not just for these misrepresentations, but for *all* of Capella's misrepresentations), it should be emphasized: misrepresentations made by Capella recruiters in one form (e.g., email) were also made in other forms (e.g., via CHAT/phones). In fact, Capella

documents show recruiters were instructed there was "stuff that we can tell prospects over the phone, but cannot email or put in writing." Group Ex. 14, CAP00241050, 241187.

**ANSWER:**   Capella states that paragraph 74 purports to quote, describe, or characterize written documents, the terms of which speak for themselves, and therefore no response is required. To the extent a response is required, Capella disputes the characterizations in paragraph 74, and therefore denies paragraph 74 on that basis.

### "Average Degree Completion" Emails (School of Nursing)

75.   Beyond the PhD programs, Capella utilized misrepresentations with other doctoral programs. For example, a commonly used form email for Capella's Nursing School states the "average degree completion" time for Capella was from 2-4 years. Like with both "typical" misrepresentations above, this misrepresentation focused on both completion rate of students and time to completion. These representations were similarly false. For example, it appears only 1.3%[8] "finished in 30 months". Group Ex. 15.

**ANSWER:**   Capella states that paragraph 75 and footnote 8 purports to quote, describe, or characterize a written document, and therefore no response is required.  To the extent a response is required, Capella disputes the characterizations in paragraph 75 and footnote 8, and therefore denies paragraph 75 and footnote 8 on that basis.

76.   The "average degree completion" misrepresentations were rampantly used across Capella's nursing programs—at least 1,126 emails with this language were produced. Capella made these identical misrepresentations in all three of its non-PhD doctoral degrees in nursing: the DNP program, the DNP Preparatory program, and the Bachelors-of-Science in Nursing to DNP program ("BSN to DNP"—where students with bachelors' degrees can obtain a doctoral degree).

---

[8]   1.3% = 13% of the believed 10% that graduated from the Doctor of Nurse Practitioner ("DNP")

Regardless of nursing program, Capella made these same misrepresentations for at least eight years. *See,* Group Ex. N.

**ANSWER:**  Capella states that paragraph 76 purports to quote, describe, or characterize a written document, and therefore no response is required.  To the extent a response is required, Capella admits that it produced documents that contain the phrase "average degree completion" quoted in paragraph 76.  Capella disputes the remaining characterizations in paragraph 76, and therefore denies the remaining allegations in paragraph 76 on that basis.

**Form Misrepresentations About Length of Dissertation**

77.    As stated above, Capella's doctoral programs consist of two parts: coursework and the capstone/dissertation. Only after completing both the coursework and the capstone/dissertation would a Capella student graduate. So, necessarily, if a doctoral student graduates, they would have had to complete the capstone/dissertation phase.

**ANSWER:**    Capella admits that its Ph.D. programs consist of coursework, a comprehensive examination, and a dissertation.  Capella further admits that its professional doctorate programs consist of coursework, a comprehensive examination, and a capstone project. Capella denies the remaining allegations in paragraph 77.

78.    Most Capella doctoral students receive high grades, if not straight-As, during coursework. As discussed above, the difficulties began during the dissertation process.

**ANSWER:**  Capella admits that its doctoral students receive grades in accordance with their performance in a particular course, as evaluated by their individual instructors.  Capella denies the remaining allegations in paragraph 78.

79.    Capella, however, had form documents, which misrepresented that the average student would complete the dissertation and do so in two years or less.

**ANSWER:**  Capella states that paragraph 79 purports to quote, describe, or characterize a written document, and therefore no response is required.  To the extent a response is required, Capella disputes the characterizations in paragraph 79, and therefore denies paragraph 79 on that basis.

80.    For example, attached to Capella recruiter emails (which contained misrepresentations themselves) were Capella brochures for Business and IT Programs. See, e.g., Ex 16, PhD in Bus. Mgmt. Brochure; Ex. 17 PhD in IT Brochure. These brochures for years misrepresented that "Dissertation Courseroom milestones take, on average, four to eight quarters to complete." Ex. 16.at 9; Ex. 17 at 9. Capella therefore represented that the dissertation was completed on average between one to two years. *Id.* Discovery shows at least 4,972 such brochures were emailed to prospective doctoral students. Again, however, this does not tell the complete story as one of the named plaintiffs, Plaintiff Gore, received such a brochure from his enrollment counselors yet Capella has been unable to locate or produce the email communications with Plaintiff Gore that contained this attachment. Again, this shows Capella's production underestimates the number of misrepresentations it made to prospective doctoral students.

**ANSWER:**  Capella states that paragraph 80 purports to quote, describe, or characterize written documents, and therefore no response is required.  To the extent a response is required, Capella admits that it emailed documents that contain the quoted language ("Dissertation Courseroom milestones take, on average, four to eight quarters to complete") to prospective doctoral students.  Capella further admits that Plaintiff Gore received a document containing the quoted language, and that the email sent to Plaintiff Gore was not in Capella's production because Capella could not locate such an email in its internal files after conducting a reasonable search.

Capella disputes the remaining characterizations in paragraph 80, and therefore denies the remaining allegations in paragraph 80 on that basis.

81.     Further, many Capella doctoral students were provided "Roadmaps" that provided a "summary statement" as "an estimate to assist you with your enrollment decision." Ex. 18, Roadmap Summary. These documents—which expressly state they were to be relied upon— misrepresented that, "The average time to completion for the Comprehensive/Dissertation phase is approximately two years." *Id.* Capella's production contains 3,108 of these "roadmaps," meaning likely more than 3,108 were emailed to prospective Capella doctoral students.

**ANSWER:** Capella states that paragraph 81 purports to quote, describe, or characterize a written document, and therefore no response is required. To the extent a response is required, Capella admits that it produced Roadmaps that include the language "[t]he average time to completion for the Comprehensive/Dissertation phase is approximately two years." Capella further admits that it provided students with Roadmaps. Capella disputes the remaining characterizations in paragraph 81, and therefore denies the remaining allegations in paragraph 81 on that basis.

82.     Considering 90% of Capella doctoral students did not graduate, the "average" Capella student could not have completed the dissertation, and therefore certainly did not so do in two years.

**ANSWER:**     Capella denies the allegations in paragraph 82.

**"Average Time to Completion Range"[9] (School of Education) and Other Examples Emphasize All Doctoral Students Received Common Misrepresentations**

83.     Capella misrepresented its School of Education programs took three years to complete. Such representations are false as Capella confirms 1) "0% finished" the Doctor of Education ("EdD") program within 36 months, and 2) it appears less than 5.8%[10] did so within 84 months. Group Ex. 9.

**ANSWER:**     Capella states that paragraph 83, footnote 9, and footnote 10 purport to quote, describe, or characterize written documents, the terms of which speak for themselves, and therefore no response is required.  To the extent a response is required, Capella disputes the characterizations in paragraph 83, footnote 9, and footnote 10, and therefore denies paragraph 83, footnote 9, and footnote 10 on that basis.

84.     The most common School of Education misrepresentation (~2,200) appears to be Capella's "average time to completion range" emails. *See*, Group Ex. 19, *e.g.,* CAP00352549 ("Average time to completion range is 2.75 to 3.5 years depending on your capstone project research"). Another form email is "Generally the PhD is about a 3 year program" (with 248 emails). *Id.* Capella also used the same timeframe with modified language for other prospective doctoral students in the School of Education. *Id.,* April 2014, EdD James Anderson CAP 40844 ("The EdD program, on average, takes 3 - 3.5 years to complete."); February 29, 2016 ("The average learner completed our EdD dissertation in 6-8 quarters so that's what I'm using below."); May 31, 2013, PhD in Education, CAP39941 ("Most doctoral learners complete the program in 3 years"); Ex. 20 Seppa email ("How long does it take? Three years is the average."). And beyond

---

[9]    The shorter phrase "average time to completion" actually appears in 8,595 for multiple Capella schools beyond its School of Education, highlighting the widespread use of misrepresentations by recruiters.

[10]   5.8% = 58% of the believed 10% that graduated with a PhD in Education.

the form emails discussed above, Capella utilized additional templates/form emails that were shared among enrollment counselors through Capella's ONE NOTE system. See, Ex. 21, e.g., CAP00219722 (Recruiter classifying an email stating "On average…it will take 3.5-4 years," and "usually between 3-4 years" as "PROPOSAL TO UPDATE THE ONE NOTE EMAIL FOR THE EDD OR PHD PROGRAM INFO…This is what I usually send out."). Script responses were also provided for enrollment counselors ("ECs") for "top objections" they may face from prospective students, including objections having to do with "average time." See Ex. 22 at CAP00486512 ("ECs have also been equipped with new ways to respond to top objections. These responses were crafted by the market teams...") and 486527 ("Key Message for Top Objections" attached to this email instructing enrollment counselors to tell prospects "On average we find that learners can finish their programs in a 3.5-4 yr timeframe").

**ANSWER:** Capella states that paragraph 84 purports to quote, describe, or characterize written documents, the terms of which speak for themselves, and therefore no response is required. To the extent a response is required, Capella admits that it produced documents that contain the phrase "average time to completion range" quoted in paragraph 84.  Capella disputes the remaining characterizations in paragraph 84, and therefore denies the remaining allegations in paragraph 84 on that basis.

85.     The take home is Capella's common misrepresentations about completion rate and time were rampant, made to doctoral students through all communication methodologies available to Capella enrollment counselors, and Capella's production vastly underestimates the actual number of misrepresentations as it does not take into account deleted emails or phone communications. Common sense confirms, however, that misrepresentations were made to all Capella doctoral students, whether by email, CHAT, or via phone.

**ANSWER:**  Capella denies the allegations in paragraph 85.

## CAPELLA KNEW ITS ENROLLMENT DEPARTMENT WAS MAKING FALSE REPRESENTATIONS TO DOCTORAL STUDENTS

86.     Capella knew its misrepresentations were false.

**ANSWER:**  Capella denies the allegations in paragraph 86.

87.     For example, an enrollment counselor testified at his deposition that enrollment counselors were not provided average degree completion times by Capella (even though it was a phrase he used over 800 times in emails with prospective doctoral students). Ex. 23, Koski Dep. Tr. at 78:16-80:14. In fact, in his decade plus career at Capella, Mr. Koski could not remember *ever* being provided such information.

> Q (BY MR. LESKO) As you sit here, can you recall ever receiving a single document from Capella telling you what the average degree completion time was for any program whatsoever --
> Q (BY MR. LESKO) -- in the more than a decade that you worked at Capella? A No, I cannot recall a time when a document was provided to me about specifically related to time to completion, no.
> Q (BY MR. LESKO) And -- I mean, Capella does not tell enrollment counselors what the average degree completion time is, do they? For any program?
> A Can you repeat the question?
> Q (BY MR. LESKO) Yeah. Capella does not provide average degree completion times to enrollment counselors. They just don't provide that information to you guys, do they?
> A Again -- no, not that I can recall. All -- no, not that I can recall.

*Id.,* 79:16-80:14 (objections omitted). In fact, during this action no employee of Capella has been able to explain the origin of the alleged typical or average completion times quoted to prospective students. The reason is clear: all such times provided to prospective doctoral students were fabricated.

**ANSWER:**  Capella states that paragraph 87 purports to quote, describe, or characterize deposition testimony, and therefore no response is required.  To the extent a response is required,

Capella disputes the characterizations in paragraph 87, and therefore denies paragraph 87 on that basis.

88.     Although merits discovery has not yet begun, Capella has already produced materials confirming Capella knew these specific misrepresentations described/listed above, were false. For example, enrollment counselors recognized the "typical learner" statement misrepresented Capella's timeframe, but still used these form misrepresentations for years. Ex. 24, CAP00065044 ("I do not think that the total time estimate of 3 years is correct anymore."[11]).

**ANSWER:**  Capella states that paragraph 88 and footnote 11 purport to quote, describe, or characterize written documents, the terms of which speak for themselves, and therefore no response is required.  To the extent a response is required, Capella disputes the characterizations in paragraph 88 and footnote 11, and therefore denies paragraph 88 and footnote 11 on that basis.

89.     Additionally, an enrollment counselor conceded the actual "average" cost for the PhD in IT was not only "way higher" than what Capella told prospective doctoral students, it was "actually even higher than the highest end of the spectrum that we typically would quote for total cost."

> I just received this email from a prospect that I have been working with, and the link that he provided does in fact state that our "average" cost for the PhD in Information Technology is $103,242. **This is way higher than the average quotes that the team is providing to prospects** (typically we quote around $75K as being the average), **and is actually even higher than the highest end of the spectrum that we typically would quote for total cost.**

Ex. 25, CAP191192 (emphasis added). Despite knowing the $75,000 estimate was incorrect at least as early as 2013, Capella nonetheless continued using a $75,000 estimate as the average cost

---

[11]   To the contrary, "3 years" was never accurate as a "typical" graduation rate; instead, Capella internal documents confirm 90% of students unenroll in "3 years." Ex. Ex. 2, CAP106407.

to complete its degrees as the "canned response" and "baseline statement" for "chat reps" to "use to talk about PHD pricing" in 2014 and beyond. Ex. 26.

**ANSWER:**  Capella states that paragraph 89 purports to quote, describe, or characterize written documents, the terms of which speak for themselves, and therefore no response is required. To the extent a response is required, Capella disputes the characterizations in paragraph 89, and therefore denies paragraph 89 on that basis.

90.    Capella also recognized that its dissertation process was the leading cause of doctoral students not graduating. Ex. 27, CAP65136 ("This call contained the typical "I made straight As in my courses, and can't get a topic approved."). Despite this, Capella falsely represented the average student completed the dissertation in 1-2 years.

**ANSWER:**  Capella states that paragraph 90 purports to quote, describe, or characterize a written document, the terms of which speak for itself, and therefore no response is required.  To the extent a response is required, Capella disputes the characterizations in paragraph 90, and therefore denies paragraph 90 on that basis.

91.    So few doctoral students graduated from Capella, that when a prospect asked to speak with a BSN to DNP graduate, the Capella recruiter could not identify one. Ex. 28, CAP00052487 ("I can absolutely try to get you in contact with someone! Unfortunately, we do not have any BSN-DNP alum in our Ambassador Program right now," and attempting to get a "BSN-DNP current learner" to speak with prospective student).

**ANSWER:**  Capella states that paragraph 91 purports to quote, describe, or characterize a written document, the terms of which speak for itself, and therefore no response is required.  To the extent a response is required, Capella disputes the characterizations in paragraph 91, and therefore denies paragraph 91 on that basis.

92.     Similarly, for Capella's DBA program, when a prospective doctoral student asked, "4. What percent of those who start go on to complete the degree," Capella recruiters struggled to craft a response to this inquiry (and others like it) because, "And 4 is tough as we don't have any grads..." Ex. 29, CAP00251648.

**ANSWER:**  Capella states that paragraph 92 purports to quote, describe, or characterize a written document, the terms of which speak for itself, and therefore no response is required.  To the extent a response is required, Capella disputes the characterizations in paragraph 92, and therefore denies paragraph 92 on that basis.

93.     Further, despite many pronouncements that the average EdD student graduated in three years, Capella admitted "0% finished" that program in 36 months. Group Ex. 9.

**ANSWER:**  Capella states that paragraph 93 purports to quote, describe, or characterize a written document, the terms of which speak for itself, and therefore no response is required.  To the extent a response is required, Capella disputes the characterizations in paragraph 93, and therefore denies paragraph 93 on that basis.

94.     Worse, internal communications confirm Capella's knowledge that some of its programs took seven years *on average* to complete, and that this information should be withheld from prospective students.

> To be clear, we do not tell learners that are [sic] previous Capella degree holders with the same previous major that their dissertation will take 7 years, if they clearly have transfer credits coming in. This was information provided to me by ES that the Learner did not make very clear to me (only that she thought she had some TC's, not 48 for sure). However, **for new learners coming into the program, the traditional Psych PhD DOES take, on average, seven years to complete with dissertation**, depending upon the speed of the learner. If they are only taking one course per quarter, it would be likely that they would hit their 7 year max time roof before completing everything.

Ex. 30, CAP35919 (emphasis added). A seven-year average graduation rate is ridiculous not only because of its obscene length, but because Capella's maximum time for enrollment is seven years

after which it un-enrolls students. *Id.* To state another way…the "average" student would be unable to obtain a degree prior to being un-enrolled by Capella. This internally-kept knowledge is especially shocking in that at the same time of this internal communication, Capella was informing prospective students stated that the average PhD in Psychology would complete their degree in three years plus or minus a quarter—less than half the time Capella knew it would take. Group Ex. 6, CAP00058558.

**ANSWER:**  Capella states that paragraph 94 purports to quote, describe, or characterize written documents, the terms of which speak for themselves, and therefore no response is required. To the extent a response is required, Capella disputes the characterizations in paragraph 94, and therefore denies paragraph 94 on that basis.

95.    Also, and as stated above, Capella documented that 80% of its PhD students are "financially at-risk" from enrollment and "will most likely run out of Stafford loan eligibility before completion." Ex. 2, CAP106407. It also recognized that it would lose 90% of its PhD enrollment within three years. *Id.* Despite this, Capella continued to falsely represent that the "typical" or "average" student at Capella would graduate and do so relatively quickly.

**ANSWER:**  Capella states that paragraph 95 purports to quote, describe, or characterize a written document, the terms of which speak for itself, and therefore no response is required.  To the extent a response is required, Capella disputes the characterizations in paragraph 95, and therefore denies paragraph 95 on that basis.

96.    Capella was also aware that it was reasonable for prospective doctoral students to rely upon its "time to completion" misrepresentations. Ex. 31, CAP205357 ("Cost, time to completion, how many classes you take per quarter are some big factors."). In fact, Capella

recognized the length of time a program takes—which directly affects cost—is the "#1 decision making factor for PhD prospects." Ex. 25, CAP191192.

**ANSWER:** Capella states that paragraph 96 purports to quote, describe, or characterize written documents, the terms of which speak for themselves, and therefore no response is required. To the extent a response is required, Capella disputes the characterizations in paragraph 96, and therefore denies paragraph 96 on that basis.

97.     Finally, Capella refuses to take responsibility for its misrepresentations. Plaintiff deposed the head of Capella's enrollment department as a Capella 30(b)(6) witness. When faced with the "typical learner" email—the email Plaintiff Ornelas and hundreds of doctoral students received—the head of Capella's enrollment department was asked whether he had, or would, investigate whether the representations contained in this email were false. His answers ring false as he allegedly required specific "context" to understand a form email sent to hundreds of prospects, and he admitted even if the statements were false, he would do nothing.

> Q. Let's say it's false. Let's say the typical Capella PhD learner actually doesn't graduate, if that's the case, what would you do as the head of the enrollment department?
> THE WITNESS: So the challenge I have with this particular email is I don't have the other context. So I don't know what other emails, what other phone conversations that Ann may have had with whoever this individual is leading up to their pursuit to understand whether or not Capella University is the program that they want to pursue or not. So I can't speculate as to what that conversation or the context of those conversations are. So I don't know if this information is true or not true.
> …
> Q. Okay. Let's try this a different way. So, well, we'll just leave at this. You're fine with not doing anything else concerning this email?
> THE WITNESS: It's not my responsibility to dig into this particular learner situation. BY MR. LESKO: Q. Whose responsibility is it?
> THE WITNESS: I don't know the answer to that.
> ….
> Q. Well, if the typical learner -- this is a true statement. Let's take this as a true statement. If the typical learner at Capella does not complete their PhD, does not

get a degree, leaves tens of thousands of dollars in debt and that's the only fact you have, are you still good with this statement going out?

THE WITNESS: I don't know what –

THE WITNESS: I don't know what a typical learner is, so I don't know.

…

Q. And does that concern you that you have an email in front of you that you have admitted has a statement in there that doesn't fall under how enrollment counselor were trained in 2015?

THE WITNESS: Like I communicated, I don't have all the other context, so I don't know all the other information that pertains to this particular prospective learner situation.

BY MR. LESKO: Q. Are you going to try and figure out all the other context now that this has been brought to your attention?

THE WITNESS: That's not my responsibility.

Ex. 32, Capella 30(b)(6) Dep. Tr. at 173:17-174:11, 177:21-178:10, 180:17-181:6, 198:20-199:14 (objections omitted). It is no surprise that when the head of Capella's enrollment department would not investigate misrepresentations, neither would enrollment counselors. When one was questioned about the internal Capella emails from 2013 discussed above which showed the $75,000 average cost that Capella provided to PhD in IT students was false, a Capella enrollment counselor nonetheless testified she would not need conduct any investigation into this issue, and would continue misrepresenting the average cost to prospective doctoral students.

Q (BY MR. LESKO) So before, however, before -- before you send off any additional emails, as an enrollment counselor, saying that the average is $75,000, do you at least have a question about maybe that number is wrong?

A No.

Q (BY MR. LESKO) Okay, well, let's --let's -- let's do it this way. Okay. You're an enrollment counselor. Somebody has raised a question that perhaps it costs $103,000, on average, to get a degree. You note that the emails that you send out say $75,000. Are you going to continue sending out your $75,000 email without obtaining clarification from somebody else as to whether $75,000 is still correct?

A I can't answer that question because, again, I don't know where that $103,000 came from.

Q (BY MR. LESKO) Okay. So you, as an enrollment counselor, even despite seeing this, would have no problem sending out emails to – to prospective learners, stating that it still costs $75,000 without any further investigation on your part? You feel comfortable doing that?

A I do, because time to completion and cost can vary from person to person. Again, it's just part of a bigger picture. Conversations could be had, other emails could have been had, could have talked over chat. Yes, I do.

Ex. 33, Hile Dep. Tr. 192:14-193:24 (objections omitted).

**ANSWER:**  Capella states that paragraph 97 purports to quote, describe, or characterize deposition testimony, and therefore no response is required.  To the extent a response is required, Capella disputes the characterizations in paragraph 97, and therefore denies paragraph 97 on that basis.

98.    Capella is therefore aware of its many years of misrepresentations, and yet will do nothing about them.

**ANSWER:**  Capella denies the allegations in paragraph 98.

99.    Knowing it had a graduation rate of 10% or less, Capella was less like a university and more akin a casino. However, players at casinos know the actual odds, and have better odds than Capella doctoral students. The odds of winning roulette by betting on red on each spin is 48.7%. The odds of winning two consecutive red spins is .237 (23.7%); three in a row is .115 (11.5%). Given over 90% of Capella's doctoral students do not graduate, they are actually better off betting their tuition money on three consecutive spins of a roulette wheel. Unlike casinos, however, Capella misrepresented the odds to its students.

**ANSWER:**  Capella denies the allegations in paragraph 99.

### PLAINTIFF MAURICE JOSE ORNELAS'S TIME AT CAPELLA

100.    Plaintiff Ornelas was a PhD in Public Safety student, specializing in Criminal Justice. Plaintiff Ornelas attended Capella from 2012 to 2016.

**ANSWER:**  Capella admits that Plaintiff Ornelas was a Ph.D. in Public Safety student, specializing in Criminal Justice, who attended Capella from the third quarter of 2012 through the first quarter of 2016.

101.    On April 12, 2011, prior to his enrollment, Plaintiff Ornelas received an email from a Capella recruiter located at Capella's headquarters in Minneapolis stating:

> Our typical learner will complete their PhD program in 3 years, plus or minus one quarter, by averaging 2 courses per quarter. Their weekly time investment to work at this pace is about 18-24 hours per week.

Ex. 4. This is form/template language sent to many prospective Capella students.

**ANSWER:** Capella states that paragraph 101 purports to quote, describe, or characterize a written document, the terms of which speak for itself, and therefore no response is required. To the extent a response is required, Capella admits that Plaintiff Ornelas received an email on April 12, 2011 that included the language quoted in paragraph 101. *See* CAP00000435. Capella disputes the remaining characterizations in paragraph 101, and therefore denies the remaining allegations in paragraph 101 on that basis.

102.     This representation was reiterated to Plaintiff Ornelas by a second email from Mathews on Feb. 23, 2012 with the identical representation.

> Our typical learner will complete their PhD program in 3 years, plus or minus one quarter, by averaging 2 courses per quarter. Their weekly time investment to work at this pace is about 18-24 hours per week.

*Id.*

**ANSWER:** Capella states that paragraph 102 purports to quote, describe, or characterize a written document, the terms of which speak for itself, and therefore no response is required. To the extent a response is required, Capella admits that Plaintiff Ornelas received an email on February 23, 2012 that included the language quoted in paragraph 102. Capella disputes the remaining characterizations in paragraph 102, and therefore denies the remaining allegations in paragraph 102 on that basis.

103.     Plaintiff Ornelas relied upon these representations when enrolling at Capella, and when re-enrolling each term.

**ANSWER:** Capella denies the allegations in paragraph 103.

104.     These representations were false.

**ANSWER:**  Capella denies the allegations in paragraph 104.

105.    In 2016, Capella admitted that the Criminal Justice specialization for the PhD in Public Safety was a 75-month program—not a 3-year (36 month) or even a 4 ½-year (54 month) program. Ex. 34, Criminal Justice Gainful Employment disclosure (Jan. 2016).

**ANSWER:**  Capella states that paragraph 105 purports to quote, describe, or characterize a written document, the terms of which speak for itself, and therefore no response is required.  To the extent a response is required, Capella admits that it disclosed to Plaintiff Ornelas a course sequence that, if successfully completed in sequence, could enable completion of its Ph.D. program in Criminal Justice in 4.5 years.  Capella disputes the remaining characterizations in paragraph 105, and therefore denies the remaining allegations in paragraph 105 on that basis.

106.    During his coursework at Capella, Plaintiff Ornelas only received As.

**ANSWER:**  Capella admits that Plaintiff Ornelas received As in his coursework.  Capella also states that Plaintiff Ornelas received an S ("Satisfactory") in certain doctoral coursework. Capella denies any remaining allegations in paragraph 106.

107.    Despite the promise that the "typical" student completes his or her PhD in three-years, Plaintiff Ornelas was forced to withdraw without receiving his doctoral degree.

**ANSWER:**  Capella admits that Plaintiff Ornelas withdrew without receiving his doctoral degree.  Capella denies the remaining allegations in paragraph 107.

108.    During his time in the dissertation process, Plaintiff Ornelas suffered many delays, received inconsistent feedback and instructions, and was guided incorrectly by his doctoral capstone/dissertation committee.

**ANSWER:**  Capella denies the allegations in paragraph 108.

109.    For example, Plaintiff Ornelas had turnover on his dissertation committee.

**ANSWER:**  Capella admits Mr. Ornelas testified that there were changes in membership on his dissertation committee during his enrollment at Capella.  Capella denies any remaining allegations in paragraph 109.

110.   First his program chair Dr. Steve Bathelmeus left and was replaced by Dr. Michael Kemp. His mentor Dr. M. Lim also left and was replaced by Dr. Jeffrey Fox.

**ANSWER:**  Capella admits that Dr. Jeffrey Fox served as Mr. Ornelas's mentor during Mr. Ornelas's enrollment at Capella.  Capella also admits that Dr. Michael Kemp served as Mr. Ornelas's program chair during Mr. Ornelas's enrollment at Capella.  Capella also admits that Mr. Ornelas testified that there was turnover in his dissertation committee during his enrollment at Capella.  Capella denies any remaining allegations in paragraph 110.

111.   This turnover in his dissertation process led to delays.

**ANSWER:**  Capella denies the allegations in paragraph 111.

112.   Further, after he was assigned to Plaintiff Ornelas, Dr. Fox threatened to quit as mentor because Dr. Fox did not support Plaintiff Ornelas's dissertation proposal topic which was previously approved by prior dissertation committee members. This required Plaintiff Ornelas to start the dissertation process over.

**ANSWER:**  Capella denies the allegations in paragraph 112.

113.   Plaintiff Ornelas' grades in the doctoral capstone/dissertation process are admissions that he met all of Capella's requirements and that all delays in the process were due to Capella's actions.

**ANSWER:**  Capella admits that its doctoral students receive grades in accordance with their performance in a particular course, as evaluated by their individual instructors.  Capella denies the remaining allegations in paragraph 113.

114.    Had Capella not misrepresented the timeline, costs, hurdles to obtaining a doctoral degree, or had it disclosed its true scheme, Plaintiff Ornelas would not have enrolled at Capella or paid for the educational services offered by Capella, including incurring student loans.

**ANSWER:**  Capella denies the allegations in paragraph 114.

115.    Had Plaintiff Ornelas not been misinformed about Capella's completion rate or been made aware of Capella's abysmally low completion rate, he would not have enrolled in the doctoral program or paid the tuition, supply costs, and other fees charged by Capella, or incurred student loans.

**ANSWER:**   Capella denies the allegations in paragraph 115.

### PLAINTIFF APRIL POWERS' TIME AT CAPELLA

116.    At Capella, Plaintiff Powers sought a PhD in IT, specializing in Information Assurance and Cybersecurity. Plaintiff Powers attended Capella from 2015 to 2019.

**ANSWER:**  Capella admits that Plaintiff Powers sought a PhD in Information Technology, specializing in Information Assurance and Cybersecurity.  Capella also admits that Plaintiff Powers enrolled in Capella's doctoral program between 2015 and 2019.

117.    While attending Capella, Plaintiff resided in Idaho in 2015 and in Utah from 2015-2019.

**ANSWER:**  Capella admits that Plaintiff Powers testified in her deposition that she resided in Idaho in 2015 and in Utah from 2015-2019, but Capella itself lacks knowledge sufficient to form a belief about the truth or falsity of the allegations in paragraph 117, and therefore denies them.

118.    On March 13, 2014, prior to her enrollment, Plaintiff Powers received an email from Capella enrollment counselor Andy Covert (a Capella recruiter located at Capella's

headquarters in Minneapolis) stating that the "Typical time to completion after transfer credit is anywhere from 3.5 to 5.5 years in length." Ex. 35.

**ANSWER:**  Capella states that paragraph 118 purports to quote, describe, or characterize a written document, the terms of which speak for itself, and therefore no response is required.  To the extent a response is required, Capella admits that Plaintiff Powers received the described email that includes the language "Typical time to completion after transfer credit is anywhere from 3.5 to 5.5 years in length" quoted in paragraph 118.  Capella denies any remaining allegations in paragraph 118.

119.    This March 13, 2014 email contained form language (e.g., "Typical time to completion after transfer credit is anywhere") which Capella enrollment recruiters sent to other prospective Capella doctoral students.  In fact, Capella's production from this action contains 4,075 emails which contain the phrase "typical time to completion after transfer credit is anywhere."[12]

**ANSWER:**  Capella states that paragraph 119 and footnote 12 purport to quote, describe, or characterize written documents, the terms of which speak for themselves, and therefore no response is required.  To the extent a response is required, Capella admits that it has produced documents that contain the language "typical time to completion after transfer credit is anywhere" quoted in paragraph 119.  Capella disputes the remaining characterizations in paragraph 119 and footnote 12, and therefore denies the remaining allegations in paragraph 119 and footnote 12 on that basis.

---

[12]    Despite Capella producing 4,075 emails with this form language, only 39 contained the term "Covert." This means 4,036 of the emails containing the form language "Typical time to completion after transfer credit is anywhere" were sent by enrollment counselors other than Covert.

120.    Covert's form email also estimated the costs of a PhD in IT degree at below $4,665 a quarter for coursework, and a decreased charge of $4,175 during the dissertation process.

> • **Tuition and Financial Aid:** (A flat rate of $4,665 per quarter. This cost decreases once you are in your Comps/Dissertation phase: $4,175 per quarter. You can take 1 to 3 courses for this amount. Each residency is $1,495 (does not include travel/hotel) and books are approximately $100-150 per course): Click here for tuition and how to finance your degree

*Id.* The "average" PhD in IT degree would therefore cost approximately $75,000 should a student attend Capella for 4-4.5 years.

**ANSWER:**  Capella states that paragraph 120 purports to quote, describe, or characterize a written document, the terms of which speak for itself, and therefore no response is required.  To the extent a response is required, Capella disputes the characterizations in paragraph 120, and therefore denies paragraph 120 on that basis.

121.    The message of a short time to graduation was reinforced on March 4, 2015, when Recruiter Covert sent another form email to Plaintiff Powers with the following statement:

> Typical time to completion after transfer of credit is anywhere from 3.5 to 5.5 years in length; 4 to 4.5 is average.

Ex. 36.[13]

**ANSWER:**  Capella states that paragraph 121 and footnote 13 purport to quote, describe, or characterize a written document, the terms of which speak for itself, and therefore no response is required.  To the extent a response is required, Capella admits that Plaintiff Powers received a document that contains the language "Typical time to completion after transfer credit is anywhere from 3.5 to 5.5 years in length; 4 to 4.5 is average" quoted in paragraph 121.  Capella admits that the email sent to Plaintiff Powers was not in Capella's production because Capella could not locate

---

[13]    During the course of this action, neither of the Covert/Powers emails were produced to Plaintiff, again highlighting Capella's production underestimates the number of misrepresentations made to prospective doctoral students.

such an email in its internal files after conducting a reasonable search. Capella disputes the remaining characterizations in paragraph 121 and footnote 13, and therefore denies the remaining allegations in paragraph 121 and footnote 13 on that basis.

122.   Plaintiff Powers relied upon these representations when enrolling at Capella, and when re-enrolling each term.

**ANSWER:** Capella denies the allegations in paragraph 122.

123.   These representations were false.

**ANSWER:** Plaintiff denies the allegations in paragraph 123.

124.   Rather than being a program the "typical" student completed in 3.5 years (42 months) and the "average" student graduated within 4 to 4.5 years (48 to 54 months), Capella admitted in December 2015 that the program was actually "designed to take 75 months," with only 67% of the lucky few (believed to be 10% or less) that graduated (meaning only 6.7% of students that enrolled) doing so in under 6 years and 3 months (75 months).



Ex. 37. This is a far worse success rate (less than 10% graduation as compared to the "typical" or "average" student graduating) and time to completion (6 years, 3 months compared to 4-4.5 years) then represented to Plaintiff Powers.

**ANSWER:** Capella states that paragraph 124 purports to quote, describe, or characterize a written document, the terms of which speak for itself, and therefore no response is required. To the extent a response is required, Capella disputes the characterizations in paragraph 124, and therefore denies paragraph 124 on that basis.

125.     Despite making these misrepresentations to Plaintiff Powers and other prospective doctoral students, Capella's enrollment department was aware these representations were false. In 2011—two years prior to contacting Plaintiff Powers—Capella internally acknowledged that despite "typically" quoting $75,000 to recruits as the average cost of a PhD in IT degree, the program costs were actually "way higher."

> I just received this email from a prospect that I have been working with, and the link that he provided does in fact state that our "average" cost for the PhD in Information Technology is $103,242. **This is way higher than the average quotes that the team is providing to prospects** (typically we quote around $75K as being the average), **and is actually even higher than the highest end of the spectrum that we typically would quote for total cost.**

Ex. 25, CAP191192 (emphasis added). As the Capella recruiter admitted, this "is actually even higher than the highest end of the spectrum that we typically would quote for total cost." *Id.*

**ANSWER:**  Capella states that paragraph 125 purports to quote, describe, or characterize a written document, the terms of which speak for itself, and therefore no response is required.  To the extent a response is required, Capella disputes the characterizations in paragraph 125, and therefore denies paragraph 125 on that basis.

126.     Capella then knew the representations it made to Plaintiff Powers and other prospective doctoral students were false at the time they were made.

**ANSWER:**  Capella denies the allegations in paragraph 126.

127.     During her coursework at Capella, Plaintiff Powers received high enough grades to proceed to the dissertation process.

**ANSWER:**  Capella states that Plaintiff Powers received As, Bs, Cs, and Fs during her coursework at Capella.  Capella also states that Plaintiff Powers received an NS ("Not Satisfactory") in her Dissertation Research Seminar Track 2, and an S ("Satisfactory") in her PhD

Dissertation Research Seminar Track 1.  Capella denies any remaining allegations in paragraph 127.

128.    During her second residency, however, Capella failed to approve Plaintiff Powers' topic for her dissertation. Later, Capella admitted wrongdoing (e.g., that it guided Plaintiff Powers incorrectly during the dissertation process), by allowing Plaintiff Powers to attend a second residency free-of-charge to help her select a topic for her dissertation. Because of this and other actions, Plaintiff Powers suffered delays.

**ANSWER:**  Capella admits that Plaintiff Powers did not receive topic approval for her dissertation.  Capella also admits that Plaintiff Powers attended a second residency at no cost. Capella denies the remaining allegations in paragraph 128.

129.    Plaintiff Powers' grades in the doctoral capstone/dissertation process are admissions that she met all of Capella's requirements and that all delays in the process were due to Capella's actions.

**ANSWER:**  Capella admits that its doctoral students receive grades in accordance with their performance in a particular course, as evaluated by their individual instructors.  Capella denies the remaining allegations in paragraph 129.

130.    Despite the promise that the "typical" and "average" student completes his or her PhD, Plaintiff Powers was forced to withdraw without receiving her doctoral degree.

**ANSWER:**  Capella admits that Plaintiff Powers withdrew without receiving her doctoral degree.  Capella denies the remaining allegations in paragraph 130.

131.    Had Capella not misrepresented the success rate, timeline, costs, hurdles to obtaining a doctoral degree, or had it disclosed its true scheme, Plaintiff Powers would not have

enrolled at Capella or paid for the educational services offered by Capella, including incurring student loans.

**ANSWER:**  Capella denies the allegations in paragraph 131.

132.    Had Plaintiff Powers not been misinformed about Capella's completion rate or been made aware of Capella's abysmally low completion rate, she would not have enrolled in the doctoral program or paid the tuition, supply costs, and other fees charged by Capella, or incurred student loans.

**ANSWER:**  Capella denies the allegations in paragraph 132.

### PLAINTIFF STEPHEN SEPPA'S TIME AT CAPELLA

133.    Plaintiff Seppa was a Doctoral Candidate (PhD in Education) at Capella, specializing in Instructional Design for Online Learning.

**ANSWER:**  Capella admits that Stephen Seppa was a Doctoral Candidate at Capella, seeking a PhD in Education.  Capella also admits Mr. Seppa was specializing in Industrial Design for Online Learning.

134.    Plaintiff Seppa attended Capella from 2007-2010. Plaintiff resided in Florida while he attended Capella.

**ANSWER:**    Capella admits that Plaintiff Seppa attended Capella from 2007-2010. Capella also admits that Plaintiff Seppa testified in his deposition that he resided in Florida while attending Capella, but Capella itself lacks knowledge sufficient to form a belief about the truth of the allegations in the second sentence of paragraph 134, and therefore denies them.

135.    On June 22, 2007, prior to his enrollment, Plaintiff Seppa received a form email from Capella recruiter Jules Nyquist (an enrollment counselor located at Capella headquarters in Minneapolis) stating that "*Most* doctoral learners complete the program in 3-4 years" and "How long does it take? Three years *is the average*." Ex. 20 (emphasis added). There are 568 emails

produced to Plaintiff in this action that contain the phrase "most doctoral learners complete the program in 3." There are also 1,915 emails that contain the phrase "How long does it take," with 1,079 of those emails lacking the term "Nyquist" meaning this identical phrase was sent to prospective doctoral students from other enrollment counselors.

**ANSWER:** Capella states that paragraph 135 purports to quote, describe, or characterize written documents, the terms of which speak for themselves, and therefore no response is required. To the extent a response is required, Capella admits that it produced documents that contain the phrases "most doctoral learners complete the program in 3" and "how long does it take" quoted in paragraph 135. Capella further admits that Plaintiff Seppa received an email from Jules Nyquist on June 22, 2007 that contained the language quoted in the first sentence of paragraph 135. Capella disputes the remaining characterizations in paragraph 135, and therefore denies the remaining allegations in paragraph 135 on that basis.

136. Recruiter Nyquist's form email also stated the "total cost is *usually* between $46,000-$53,000." *Id.* (emphasis added). As the "average" Capella student graduates in 3-4 years, this would mean the "average" student would pay between $12,500 to $15,333 a year. There are 1,964 Capella emails which contain the statement "total cost is usually"

**ANSWER:** Capella states that paragraph 136 purports to quote, describe, or characterize written documents, the terms of which speak for themselves, and therefore no response is required. To the extent a response is required, Capella admits that it produced documents that contain the phrase "total cost is usually" quoted in paragraph 136. Capella disputes the remaining characterizations in paragraph 136, and therefore denies the remaining allegations in paragraph 136 on that basis.

137.    Plaintiff Seppa is not the only student to receive this form email; this email and the language contained within it was sent to other prospective Capella students.

**ANSWER:**  Capella states that paragraph 137 purports to quote, describe, or characterize written documents, the terms of which speak for themselves, and therefore no response is required. To the extent a response is required, Capella admits that it sent emails containing the phrase "total cost is usually" quoted in paragraph 137.  Capella disputes the remaining characterizations in paragraph 137, and therefore denies the remaining allegations in paragraph 137 on that basis.

138.    Plaintiff Seppa relied upon these representations when enrolling at Capella, and when re-enrolling each term.

**ANSWER:**  Capella denies the allegations in paragraph 138.

139.    These representations were false.

**ANSWER:**  Capella denies the allegations in paragraph 139.

140.    Rather than being a program in which "most" students could complete in 3-4 years or the "average" student being able to complete in 3 years, Capella admitted in January 2016 that the program was "designed to take 84 months," with only 58% of the lucky few (believed to be 10% or less) that graduated (i.e., 5.8% of students that enrolled) doing so in under seven years.



Ex. 38. This is a far worse success rate (less than 10% graduation as compared to "most" or the "average" student graduating) and time to completion (seven years compared to 3-4 years).

**ANSWER:**  Capella states that paragraph 140 purports to quote, describe, or characterize a written document, the terms of which speak for itself, and therefore no response is required.  To

the extent a response is required, Capella disputes the characterizations in paragraph 140, and therefore denies paragraph 140 on that basis.

141.    Further, given the program was "designed" to take 84 months, the "average" cost would not be $46,000-$53,000, but rather $87,500-$107,333.

**ANSWER:**  Capella states that paragraph 141 purports to quote, describe, or characterize written documents, the terms of which speak for themselves, and therefore no response is required. To the extent a response is required, Capella disputes the characterizations in paragraph 141, and therefore denies paragraph 141 on that basis.

142.    Plaintiff Seppa completed his Doctoral coursework with a 4.0 GPA and passed his Comprehensive Exams in preparation for starting the dissertation process.

**ANSWER:**  Capella admits that Plaintiff Seppa had a 4.0 cumulative GPA and passed his Comprehensive Exams.

143.    During the dissertation process, however, Plaintiff Seppa suffered many delays, received inconsistent feedback and instructions, and received significantly less guidance from his doctoral capstone/dissertation committee.

**ANSWER:**  Capella denies the allegations in paragraph 143.

144.    For example, two of his dissertation committee members announced they were going to retire, forcing Plaintiff Seppa to spend months trying to find new replacements.

**ANSWER:**   Capella admits that certain of Plaintiff Seppa's dissertation committee members retired.  Capella denies the remaining allegations in paragraph 144.

145.    This turnover in the dissertation process led to delays.

**ANSWER:**  Capella denies the allegations in paragraph 145.

146.    Despite the promise that "most" and "average" student completes his or her PhD, Plaintiff Seppa was forced to withdraw without receiving his doctoral degree.

**ANSWER:**  Capella admits that Plaintiff Seppa withdrew without receiving his doctoral degree.  Capella denies the remaining allegations in paragraph 146.

147.    Plaintiff Seppa's grades in the doctoral capstone/dissertation process are admissions that he met all of Capella's requirements and that all delays in the process were due to Capella's actions.

**ANSWER:**  Capella admits that its doctoral students receive grades in accordance with their performance in a particular course, as evaluated by their individual instructors.  Capella denies the remaining allegations in paragraph 147.

148.    Had Capella not misrepresented the success rate, timeline, costs, hurdles to obtaining a doctoral degree, or had it disclosed its true scheme, Plaintiff Seppa would not have enrolled at Capella or paid for the educational services offered by Capella, including incurring student loans.

**ANSWER:**  Capella denies the allegations in paragraph 148.

149.    Had Plaintiff Seppa not been misinformed about Capella's completion rate or been made aware of Capella's abysmally low completion rate, he would not have enrolled in the doctoral program or paid the tuition, supply costs, and other fees charged by Capella, or incurred student loans.

**ANSWER:**  Capella denies the allegations in paragraph 149.

## PLAINTIFF DANIELLE MILLER TIME AT CAPELLA

150.    Plaintiff Miller was a PhD in Nursing Education student.

**ANSWER:**  Capella admits that Danielle Miller was a PhD student in Nursing Education.

151.    Plaintiff Miller attended Capella from 2012-2019. Plaintiff Miller resided in the State of Illinois while she attended Capella.

**ANSWER:** Capella admits that Plaintiff Miller attended Capella from 2012-2019.  Capella also admits that Plaintiff Miller testified in her deposition that she resided in Illinois while attending Capella, but Capella itself lacks knowledge sufficient to form a belief about the truth of the allegations in the second sentence of paragraph 151, and therefore denies them.

152.    On Dec. 29, 2011, prior to her enrollment, Plaintiff Miller received an email from Capella recruiter James Anderson (an enrollment counselor located at Capella headquarters in Minneapolis) stating that "On average, with full transfer credits and taking 2 courses per quarter (you can take quarters off) it will take 3-3.5 years." Ex. 39.[14]

**ANSWER:**  Capella states that paragraph 152 and footnote 14 purport to quote, describe, or characterize written documents, the terms of which speak for themselves, and therefore no response is required.  To the extent a response is required, Capella admits that Plaintiff Miller received an email on December 29, 2011 that contained the language quoted in paragraph 152: "On average, with full transfer credits and taking 2 courses per quarter (you can take quarters off) it will take 3-3.5 years.").  Capella admits that the email sent to Plaintiff Miller was not in Capella's production because Capella could not locate such an email in its internal files after conducting a reasonable search.  Capella disputes the remaining characterizations in paragraph 152 and footnote 14, and therefore denies the remaining allegations in paragraph 152 and footnote 14 on that basis.

153.    This recruiter email is a form email and the language contained therein was sent to many other prospective Capella students.

---

[14]    This is yet another email Capella did not produce to Plaintiff during discovery, again highlighting that because Capella's enrollment counselors delete their emails, Capella's production underestimates the number of misrepresentations sent to prospective doctoral students.

**ANSWER:**  Capella states that paragraph 153 purports to quote, describe, or characterize written documents, the terms of which speak for themselves, and therefore no response is required. To the extent a response is required, Capella disputes the characterizations in paragraph 153, and therefore denies paragraph 153 on that basis.

154.     Plaintiff Miller relied upon this representation when enrolling at Capella, and when re-enrolling each term.

**ANSWER:**  Capella denies the allegations in paragraph 154.

155.     This representation was false.

**ANSWER:**  Capella denies the allegations in paragraph 155.

156.     Rather than being a program in which the "average" student would complete the degree and do so within 3-3.5 years was false. Capella admitted in January 2016 that the program was "designed to take 84 months," through which it is believed to be only 10% or less of those enrolled would graduate.



Ex. 40. This is a far worse success rate (less than 10% graduation as compared to the "average" student graduating) and time to completion (seven years compared to 3-3.5).

**ANSWER:**  Capella states that paragraph 156 purports to quote, describe, or characterize written documents, the terms of which speak for themselves, and therefore no response is required. To the extent a response is required, Capella disputes the characterizations in paragraph 156, and therefore denies paragraph 156 on that basis.

157.    During her coursework at Capella, Plaintiff Miller received high enough grades during to proceed to the dissertation process.

**ANSWER:**  Capella states that Plaintiff Miller received As, Bs, and a C in her coursework. Capella also states that Plaintiff Miller received an S ("Satisfactory") in certain Dissertation Courserooms, and she received a NS ("Not Satisfactory") in her Dissertation Courseroom in Summer Quarter 2019.  Capella denies any remaining allegations in paragraph 157.

158.    During the dissertation process, however, Plaintiff Miller suffered many delays, received inconsistent feedback and instructions, and was guided incorrectly by her doctoral capstone/dissertation committee.

**ANSWER:**  Capella denies the allegations in paragraph 158.

159.    For example, after Plaintiff Miller's topic had been approved for an entire year, a member of her dissertation committee required her to change the topic, requiring Plaintiff Miller to start the dissertation over.

**ANSWER:**  Capella states that Plaintiff Miller did not receive topic approval for purposes of meeting the milestone requirement.  Capella denies the remaining allegations in paragraph 159.

160.    Inconsistent decision making like this from her dissertation committee led to delays.

**ANSWER:**  Capella denies the allegations in paragraph 160.

161.    Despite the promise that the "average" student completes his or her PhD, Plaintiff Miller was forced to withdraw without receiving her doctoral degree.

**ANSWER:**  Capella admits that Plaintiff Miller withdrew without receiving her doctoral degree.  Capella denies the remaining allegations in paragraph 161.

162.    Plaintiff Miller's grades in the doctoral capstone/dissertation process are admissions that she met all of Capella's requirements and that all delays in the process were due to Capella's actions.

**ANSWER:**  Capella admits that its doctoral students receive grades in accordance with their performance in a particular course, as evaluated by their individual instructors.  Capella denies the remaining allegations in paragraph 162.

163.    Had Capella not misrepresented the success rate, timeline, costs, hurdles to obtaining a doctoral degree, or had it disclosed its true scheme, Plaintiff Miller would not have enrolled at Capella or paid for the educational services offered by Capella, including incurring student loans.

**ANSWER:**  Capella denies the allegations in paragraph 163.

164.    Had Plaintiff Miller not been misinformed about Capella's completion rate or been made aware of Capella's abysmally low completion rate, she would not have enrolled in the doctoral program or paid the tuition, supply costs, and other fees charged by Capella, or incurred student loans.

**ANSWER:**  Capella denies the allegations in paragraph 164.

## PLAINTIFF DANNIE GORE JR.'S TIME AT CAPELLA

165.    At Capella, Plaintiff Gore sought a PhD in Business Management.

**ANSWER:**  Capella admits that Plaintiff Gore was enrolled in Capella's PhD in Business Management program.

166.    Plaintiff Gore attended Capella from 2017 until 2018. While attending Capella, Plaintiff resided in Bloomington, Minnesota and Mesa, Arizona.

**ANSWER:**  Capella states that Plaintiff Gore first enrolled in Capella's PhD in Business Management program in Fall Quarter 2015.  He withdrew from those courses and re-enrolled in

Summer Quarter 2017. Capella admits that Plaintiff Gore testified during his deposition that he resided in Minnesota and Arizona while attending Capella, but Capella itself lacks knowledge sufficient to form a belief about the truth of the allegations in the second sentence of paragraph 166, and therefore denies them.

167.    On July 10, 2017, prior to his enrollment, Plaintiff Gore received an email from Capella enrollment counselor Jessica Jacobson (an enrollment counselor located at Capella headquarters in Minneapolis) stating that the "Typical time to completion is anywhere from 3.5 to 5.5 years in length; 4 to 4.5 years is pretty average." Ex. 41.

**ANSWER:** Capella states that paragraph 167 purports to quote, describe, or characterize written documents, the terms of which speak for themselves, and therefore no response is required. To the extent a response is required, Capella admits that Plaintiff Gore received an email with the language quoted in paragraph 167: "Typical time to completion is anywhere from 3.5 to 5.5 years in length; 4 to 4.5 years is pretty average." Capella denies the remaining allegations in paragraph 167.

168.    This July 2017 email contained form language (e.g., "Typical time to completion is anywhere from") which Capella enrollment recruiters sent to other prospective Capella doctoral students. In fact, Capella's production from this action contains 2,422 emails which contain the phrase "Typical time to completion is anywhere from."

**ANSWER:** Capella states that paragraph 168 purports to quote, describe, or characterize written documents, the terms of which speak for themselves, and therefore no response is required. To the extent a response is required, Capella admits that it has produced documents that contain the phrase "typical time to completion is anywhere from" quoted in paragraph 168. Capella

disputes the remaining characterizations in paragraph 168, and therefore denies the remaining allegations in paragraph 168 on that basis.

169.    Despite producing 2,422 emails which contained this language, Capella did not produce the email sent by Jacobson to Plaintiff Gore.

**ANSWER:**  Capella states that paragraph 169 purports to quote, describe, or characterize written documents, the terms of which speak for themselves, and therefore no response is required. To the extent a response is required, Capella admits that it did not produce an email to Plaintiff Gore that contains the language quoted in paragraph 169 ("typical time to completion is anywhere from") because it could not locate such an email in its internal files after conducting a reasonable search.  Capella also admits that it has produced documents that contain the phrase "typical time to completion is anywhere from."  Capella denies the remaining allegations in paragraph 169.

170.    Attached to Plaintiff Gore's email was a PhD in General Business Management brochure which stated "Dissertation Courseroom milestones take, on average, four to eight quarters to complete." Ex. 16. In other words, this brochure informed prospective doctoral students that the average PhD these would be completed in 1-2 years. Despite being from a different program, this is the identical language that appeared in PhD in IT brochures as well. Ex. 17. [15]

**ANSWER:**  Capella states that paragraph 170 and footnote 15 purport to describe written documents, the terms of which speak for themselves, and therefore no response is required.  To the extent a response is required, Capella admits that it did not produce the email and attachment to Plaintiff Gore that contains the language quoted in paragraph 170 ("Dissertation Courseroom milestones take, on average, four to eight quarters to complete.") because it could not locate such

---

[15]    Since Capella did not produce Plaintiff Gore's email, it also did not produce this attachment. This again shows that Capella's production of 4,972 such brochures being sent to prospective doctoral students is again an underestimate.

an email and attachment in its internal files after conducting a reasonable search.  Capella disputes

the remaining characterizations in paragraph 170 and footnote 15, and therefore denies paragraph

170 and footnote 15 on that basis.

171.   Plaintiff Gore relied upon these representations when enrolling at Capella, and

when re-enrolling each term.

**ANSWER:**  Capella denies the allegations in paragraph 171.

172.   These representations were false.

**ANSWER:**  Capella denies the allegations in paragraph 172.

173.   Rather than being a program the "typical" student completed in 3.5 years (42

months) and the "average" student graduated within 4 to 4.5 years (48 to 54 months), Capella

admitted in December 2014 that the program was actually "designed to take 57 months," with

"fewer than 10 students" actually completing the program in 2013-2014—a far cry from the

"typical" or "average" student actually completing the program, or doing so in 3.5, 4 or 4.5 years.



Ex. 42.

**ANSWER:**  Capella states that paragraph 173 purports to quote, describe, or characterize

a written document, the terms of which speak for itself, and therefore no response is required.  To

the extent a response is required, Capella disputes the characterizations in paragraph 173, and

therefore denies paragraph 173 on that basis.

174.   Capella then knew the representations it made to Plaintiff Gore and other prospective doctoral students were false at the time they were made.

**ANSWER:**  Capella denies the allegations in paragraph 174.

175.   Despite the promise that the "typical" and "average" student completed his or her PhD, Plaintiff Gore was forced to withdraw without receiving his doctoral degree.

**ANSWER:**  Capella admits that Plaintiff Gore withdrew without receiving his doctoral degree.  Capella denies the remaining allegations in paragraph 175.

176.   Had Capella not misrepresented the success rate, timeline, costs, hurdles to obtaining a doctoral degree, or had it disclosed its true scheme, Plaintiff Gore would not have enrolled at Capella or paid for the educational services offered by Capella, including incurring student loans.

**ANSWER:**  Capella denies the allegations in paragraph 176.

177.   Had Plaintiff Gore not been misinformed about Capella's completion rate or been made aware of Capella's abysmally low completion rate, he would not have enrolled in the doctoral program or paid the tuition, supply costs, and other fees charged by Capella, or incurred student loans.

**ANSWER:**  Capella denies the allegations in paragraph 177.

**PLAINTIFF ERICA CARTY'S TIME AT CAPELLA**

178.   Plaintiff Carty was a BSN to DNP student at Capella.

**ANSWER:**   Capella admits that Plaintiff Carty was a BSN (Bachelor of Science in Nursing) to DNP (Doctor of Nursing Practice) student at Capella.

179.   Plaintiff Carty attended Capella from Jan. 2016 until Jan. 2019. Plaintiff resided in Florida while she attended Capella.

**ANSWER:**  Capella admits that Plaintiff Carty attended Capella from January 2016 until January 2019.  Capella further states that Plaintiff Carty was enrolled in courses at Capella in Winter Quarter 2020.  Capella admits that Plaintiff Carty testified during her deposition that she resided in Florida while attending Capella.  Capella also states that Ms. Carty testified that she resided in various other locations since 2020, including Washington, Massachusetts, and New Mexico.  Capella itself lacks knowledge sufficient to form a belief about the truth or falsity of the allegations in the second sentence of paragraph 179, and therefore denies them.

180.    On July 25, 2016, prior to her enrollment, Plaintiff Carty received a form email from Capella recruiter Bridget Rewitzer (an enrollment counselor located at Capella headquarters in Minneapolis) stating the "average" time to complete for her nursing program was three years.

> **Time to completion**:
> Part-time (1 course at a time): 4-4.5 years
> Full-time (2 courses at a time): 2.5-3 years
> Average: 3 years

Ex. 43, July 25, 2016 email from Bridget Rewitzer to Erica Carty. Notably, this email was not produced to Plaintiff during discovery in this action.

**ANSWER:**  Capella states that paragraph 180 purports to quote, describe, or characterize a written document, the terms of which speak for itself, and therefore no response is required.  To the extent a response is required, Capella states that it produced a July 25, 2016 email from Bridget Rewitzer to Erica Carty that contains the language quoted in paragraph 180 during discovery in this action.  *See* CAP00724603; CAP00724605.  Capella disputes the remaining characterizations in paragraph 180, and therefore denies the remaining allegations in paragraph 180 on that basis.

181.    Representations that the DNP programs took on average three years or less were rampant throughout Capella's doctoral program. For example, Enrollment Counselor Rewitzer had informed other prospective nursing doctoral students that "Each individual course is 10 weeks in

length and the average degree completion time is roughly 2.5 - 3 years." Ex. 44, CAP00051509. In fact, the phrase "average degree completion time is roughly" appears in 1,125 emails between Capella and prospective nursing students from multiple enrollment counselors.

**ANSWER:** Capella states that paragraph 181 purports to quote, describe, or characterize a written document, the terms of which speak for itself, and therefore no response is required. To the extent a response is required, Capella admits that it produced documents that contain the phrase "average degree completion time is roughly." Capella disputes the remaining characterizations in paragraph 181, and therefore denies the remaining allegations in paragraph 181 on that basis.

182. Plaintiff Carty relied upon her enrollment counselor's representations when enrolling at Capella, and when re-enrolling each term.

**ANSWER:** Capella denies the allegations in paragraph 182.

183. These representations were false.

**ANSWER:** Capella denies the allegations in paragraph 183.

184. Shockingly, Capella recruiters are not provided "average degree completion times" by Capella. Ex. 23, Koski Dep. Tr. at 78:16-80:14.

**ANSWER:** Capella states that paragraph 184 purports to quote, describe, or characterize deposition testimony, the terms of which speak for itself, and therefore no response is required. To the extent a response is required, Capella disputes the characterizations in paragraph 184, and therefore denies paragraph 184 on that basis.

185. Despite not being provided such information, internal Capella communications confirm that enrollment counselors, including Rewitzer, were instructed by Capella to provide "average times to completion" to prospective doctoral students. See, Group Ex. 45 3/19/2018 ("Overview of what team sells…What is the cost/average time to completion when part time vs

full time?") and 5/15/2017 email ("What does your team sell? What is the cost/average time to completion when part time vs full time?")

**ANSWER:**  Capella states that paragraph 185 purports to quote, describe, or characterize written documents, the terms of which speak for themselves, and therefore no response is required. To the extent a response is required, Capella disputes the characterizations in paragraph 185, and therefore denies paragraph 185 on that basis.

186.    Further, so few doctoral students graduated from the program Plaintiff Carty was interested in that when another prospective learner asked a Capella enrollment counselor to speak with a BSN to DNP graduate, the recruiter could not identify one. Ex. 25, CAP00052487 ("I can absolutely try to get you in contact with someone! Unfortunately, we do not have any BSN-DNP alum in our Ambassador Program right now," and attempting to get a "BSN-DNP current learner" to speak with prospective student).

**ANSWER:**  Capella states that paragraph 186 purports to quote, describe, or characterize a written document, the terms of which speak for itself, and therefore no response is required.  To the extent a response is required, Capella admits that a different prospective learner received an email on July 14, 2016 that contained the language quoted in paragraph 186. *See* CAP00052487. Capella disputes the remaining characterizations in paragraph 186, and therefore denies the remaining allegations in paragraph 186 on that basis.

187.    For her coursework classes at Capella, Plaintiff Carty received high enough grades to proceed into the dissertation process.

**ANSWER:**   Capella states that Plaintiff Carty received As and Bs in her coursework. Capella also states that Plaintiff Carty received S ("Satisfactory") in her Doctoral Capstone and Keystone coursework.  Capella denies the remaining allegations in paragraph 187.

188.    During the dissertation process, however, Plaintiff Carty suffered many delays, received inconsistent feedback and instructions, and was guided incorrectly by her doctoral capstone/dissertation committee. For example, Dr. Maryloise Lacey (Plaintiff Carty's mentor and Capstone I instructor) was replaced after giving Plaintiff Carty an unsuccessful grade that Capella later rescinded after an appeal.

**ANSWER:**  Capella admits that Dr. Marylouis Lacey was Plaintiff Carty's assigned mentor during her enrollment.  Capella admits that Plaintiff Carty was later assigned a different mentor.  Capella further admits that Plaintiff Carty was originally awarded a "Not Satisfactory" grade in her Winter 2020 course, but that grade was later changed to "Satisfactory."  Capella denies the remaining allegations in paragraph 188.

189.    Further, Plaintiff requested a change from Spencer Langenhop, an assigned Academic Coach, to a prior instructor (Walter Ostander) because Mr. Langenhop was condescending and accusatory. This change led to additional delays.

**ANSWER:**  Capella admits that Plaintiff Carty submitted an academic coach change request.  Capella also admits that Plaintiff Carty was later assigned Walter Ostrander as an academic coach.  Capella denies the remaining allegations in paragraph 189.

190.    Despite the promise that the "average" student completed their BSN to DNP degree in three years, Plaintiff Carty was forced to withdraw without receiving her doctoral degree.

**ANSWER:**  Capella admits that Plaintiff Carty withdrew without receiving her doctoral degree.  Capella denies the remaining allegations in paragraph 190.

191.    Plaintiff Carty's grades in the doctoral capstone/dissertation process are admissions that she met all of Capella's requirements and that all delays in the process were due to Capella's actions.

**ANSWER:**  Capella admits that its doctoral students receive grades in accordance with their performance in a particular course, as evaluated by their individual instructors.  Capella denies the remaining allegations in paragraph 191.

192.    Had Capella not misrepresented the success rate, timeline, costs, hurdles to obtaining a doctoral degree, or had it disclosed its true scheme, Plaintiff Carty would not have enrolled at Capella or paid for the educational services offered by Capella, including incurring student loans.

**ANSWER:**  Capella denies the allegations in paragraph 192.

193.    Had Plaintiff Carty not been misinformed about Capella's completion rate or been made aware of Capella's abysmally low completion rate, she would not have enrolled in the doctoral program or paid the tuition, supply costs, and other fees charged by Capella, or incurred student loans.

**ANSWER:**  Capella denies the allegations in paragraph 193.

### PLAINTIFF JENNIFER PROFFITT'S TIME AT CAPELLA

194.    At Capella, Plaintiff Proffitt sought a PhD in Business Management.

**ANSWER:**  Capella admits that Plaintiff Proffitt sought a PhD in Business Management.

195.    Plaintiff Proffitt attended Capella from 2013 until 2018. While attending Capella, Plaintiff resided in Michigan.

**ANSWER:**  Capella admits that Plaintiff Proffitt attended Capella from 2013 through 2018.  Capella also admits that Plaintiff Proffitt testified during her deposition that she resided in Michigan while attending Capella, but Capella itself lacks knowledge sufficient to form a belief about the truth of the allegations in the second sentence of paragraph 195, and therefore denies them.

196.    In 2013, prior to her enrollment, Plaintiff Proffitt received a Roadmap Summary document from Capella. This document was created by Capella as "an estimate to assist you with your enrollment decision." Ex. 18. The Roadmap Summary stated that, "The average time to completion for the Comprehensive/Dissertation phase is approximately two years." *Id.*

**ANSWER:**  Capella states that paragraph 196 purports to quote, describe, or characterize written documents, the terms of which speak for themselves, and therefore no response is required. To the extent a response is required, Capella admits that Plaintiff Proffitt received a roadmap that contains the language quoted in paragraph 196: "The average time to completion for the Comprehensive/Dissertation phase is approximately two years" and "an estimate to assist you with your enrollment decision."  Capella disputes the remaining characterizations in paragraph 196, and therefore denies the remaining allegations in paragraph 196 on that basis.

197.    Capella's Roadmap Summary was a form document sent to many prospective doctoral students. In this action, Capella produced 3,064 Roadmap Summaries, all of which represent the "average time to completion" for the dissertation is "approximately two years."

**ANSWER:**  Capella states that paragraph 197 purports to quote, describe, or characterize written documents, the terms of which speak for themselves, and therefore no response is required. To the extent a response is required, Capella admits that it produced documents containing the phrases "average time to completion" and "approximately two years" quoted in paragraph 197. Capella disputes the remaining characterizations in paragraph 197, and therefore denies the remaining allegations in paragraph 197 on that basis.

198.    Plaintiff Proffitt relied upon these representations when enrolling at Capella, and when re-enrolling each term.

**ANSWER:**  Capella denies the allegations in paragraph 198.

199.    These representations were false.

**ANSWER:**  Capella denies the allegations in paragraph 199.

200.    Capella admitted in December 2014 that this program was actually "designed to take 57 months," with "fewer than 10 students" actually completing the program in 2013-2014—a far cry from the average student completing the dissertation in two years.



Ex. 43.

**ANSWER:**  Capella states that paragraph 200 purports to quote, describe, or characterize a written document, the terms of which speak for itself, and therefore no response is required.  To the extent a response is required, Capella disputes the characterizations in paragraph 200, and therefore denies paragraph 200 on that basis.

201.    During her coursework at Capella, Plaintiff Proffitt received high enough grades during to proceed to the dissertation process.

**ANSWER:**  Capella states that Plaintiff Proffitt received As and Bs in her coursework.  Capella also states that Plaintiff Proffitt received an S ("Satisfactory") in her Dissertation Courserooms.  Capella denies the remaining allegations in paragraph 201.

202.    During the dissertation process, however, Plaintiff Proffitt suffered many delays, received inconsistent feedback and instructions, and was guided incorrectly by her doctoral capstone/dissertation committee.

**ANSWER:**  Capella denies the allegations in paragraph 202.

203.    For example, Plaintiff Proffitt was misled on how her dissertation should proceed by numerous Capella employees who led her to believe she needed a quantitative dissertation, rather than a qualitative dissertation. Because of this, she focused her coursework on quantitative methodologies. During this time, her topic was continually reviewed by Capella employees. However, after two years of working with the same mentor and making no progress, Plaintiff Proffitt changed to a new mentor who had her change her topic to a qualitative dissertation. The years she spent working on a quantitative rather than a qualitative dissertation delayed her progress towards her degree.

**ANSWER:**  Capella admits that Plaintiff Proffitt originally focused her dissertation work on a quantitative methodology.  Capella also admits that Plaintiff Proffitt later expressed an interest in changing her approach to a qualitative methodology.  Capella further admits that Plaintiff Proffitt was assigned a new mentor in Summer 2018.  Capella denies the remaining allegations in paragraph 203.

204.    Plaintiff Proffitt's grades in the doctoral capstone/dissertation process are admissions that she met all of Capella's requirements and that all delays in the process were due to Capella's actions.

**ANSWER:**  Capella admits that its doctoral students receive grades in accordance with their performance in a particular course, as evaluated by their individual instructors.  Capella denies the remaining allegations in paragraph 204.

205.    Despite the promise that the "average" student completed his or her PhD, Plaintiff Proffitt was forced to withdraw without receiving her doctoral degree.

**ANSWER:**  Capella admits that Plaintiff Proffitt withdrew without receiving her doctoral degree.  Capella denies the remaining allegations in paragraph 205.

206.    Had Capella not misrepresented the success rate, timeline, costs, hurdles to obtaining a doctoral degree, or had it disclosed its true scheme, Plaintiff Proffitt would not have enrolled at Capella or paid for the educational services offered by Capella, including incurring student loans.

**ANSWER:**  Capella denies the allegations in paragraph 206.

207.    Had Plaintiff Proffitt not been misinformed about Capella's completion rate or been made aware of Capella's abysmally low completion rate, she would not have enrolled in the doctoral program or paid the tuition, supply costs, and other fees charged by Capella, or incurred student loans.

**ANSWER:**  Capella denies the allegations in paragraph 207.

### CLASS ACTION ALLEGATIONS

208.    The experiences of Plaintiffs at Capella were substantially similar to those experienced by all members of the Class attempting to navigate the process across Capella's doctoral degree programs.

**ANSWER:**  Capella denies the allegations in paragraph 208, including that this action may be maintained as a class action.

209.    Plaintiffs request the Court certify this lawsuit as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

**ANSWER:**  Capella states that the allegations in paragraph 209 contain a request for legal relief, and therefore no response is required.  To the extent a response is required, Capella denies that this action may be maintained as a class action.

210.    Plaintiffs bring this case as a class action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3), on behalf of a nationwide Class under Minnesota law defined as follows:

All current or former students within the United States who enrolled in and paid tuition for a doctoral degree program at Capella University from 2006 until the present and did not receive full reimbursement for tuition, costs and student loans from Defendants (the "Class").

Excluded from the Class are: (i) Defendants and their officers and directors, agents, employees, affiliates, and subsidiaries; (ii) all Class members that timely and validly request exclusion from the Classes; and (iii) the Judge presiding over this action.

**ANSWER:** Capella states that the allegations in paragraph 210 contain a request for legal relief, and therefore no response is required. To the extent a response is required, Capella denies the allegations in paragraph 210, including that this action may be maintained as a class action.

211. Alternatively, Plaintiffs bring this case as a class action pursuant to Fed. R. Civ. P. 23(b)(3), on behalf of the following subclasses:

a) Massachusetts Class, by Plaintiff Ornelas (the "Massachusetts Class"):

All current or former students within the State of Massachusetts who enrolled in and paid tuition for a doctoral degree program at Capella University from 2006 until the present and did not receive full reimbursement for tuition, costs and student loans from Defendants.

b) Idaho Class, by Plaintiff Powers (the "Idaho Class"):

All current or former students within the State of Idaho who enrolled in and paid tuition for a doctoral degree program at Capella University from 2006 until the present and did not receive full reimbursement for tuition, costs and student loans from Defendants.

c) Utah Class, by Plaintiff Powers (the "Utah Class"):

All current or former students within the State of Utah who enrolled in and paid tuition for a doctoral degree program at Capella University from 2006 until the present and did not receive full reimbursement for tuition, costs and student loans from Defendants.

d) Florida Class, by Plaintiffs Seppa and Carty (the "Florida Class"):

All current or former students within the State of Florida who enrolled in and paid tuition for a doctoral degree program at Capella University from 2006 until the present and did not receive full reimbursement for tuition, costs and student loans from Defendants.

e) Illinois Class, by Plaintiff Miller (the "Illinois Class"):

All current or former students within the State of Florida who enrolled in and paid tuition for a doctoral degree program at Capella University from 2006 until the present and did not receive full reimbursement for tuition, costs and student loans from Defendants.

f)      Arizona Class, by Plaintiff Gore (the "Arizona Class"):

All current or former students within the State of Arizona who enrolled in and paid tuition for a doctoral degree program at Capella University from 2006 until the present and did not receive full reimbursement for tuition, costs and student loans from Defendants.

g)      Minnesota Class, by Plaintiff Gore (the "Minnesota Class"):

All current or former students within the State of Minnesota who enrolled in and paid tuition for a doctoral degree program at Capella University from 2006 until the present and did not receive full reimbursement for tuition, costs and student loans from Defendants.

h)      Michigan Class, by Plaintiff Proffitt (the "Michigan Class"):

All current or former students within the State of Michigan who enrolled in and paid tuition for a doctoral degree program at Capella University from 2006 until the present and did not receive full reimbursement for tuition, costs and student loans from Defendants.

Excluded from the Classes are: (i) Defendants and their officers and directors, agents, employees, affiliates, and subsidiaries; (ii) all Class members that timely and validly request exclusion from the Classes; and (iii) the Judge presiding over this action.

**ANSWER:** Capella states that the allegations in paragraph 211 contain a request for legal relief, and therefore no response is required. To the extent a response is required, Capella denies the allegations in paragraph 211, including that this action may be maintained as a class action.

212.    Plaintiff also in the alternative, brings the following subclasses under Fed. R. Civ. P. 23(b)(3):

a.      Under Minnesota law, by Plaintiff Ornelas, the "Schools of Public Service Leadership/ Human Services/Public Safety/Psychology" nationwide class:

All current or former students who received a communication from an enrollment counselor from the Schools of Public Service Leadership, Human Services, Public Safety, or Psychology (including but not limited to a "typical learner" email), who then later enrolled in and paid tuition for a doctoral degree program at Capella University from 2006 until the present and did not receive full reimbursement for tuition, costs and student loans from Defendants.

b.      Under Minnesota law, by Plaintiff Carty, the "School of Nursing" nationwide class:

All current or former students who received a communication from an enrollment counselor from the School of Nursing (including but not limited to an "average degree completion time" email), who then later enrolled in and paid tuition for a doctoral degree program at Capella University from 2006 until the present and did not receive full reimbursement for tuition, costs and student loans from Defendants.

c.      Under Minnesota law, by Plaintiffs Powers and Proffitt, the "School of Business and Information Technology" nationwide class:

All current or former students who received a communication from an enrollment counselor from the School of Business and Information Technology (including but not limited to a "typical time to completion" email) who then later enrolled in and paid tuition for a doctoral degree program at Capella University from 2006 until the present and did not receive full reimbursement for tuition, costs and student loans from Defendants.

d.      Under Minnesota law, by Plaintiff Miller and Seppa, the "School of Education" nationwide class:

All current or former students who received a communication from an enrollment counselor from Capella's School of Education (including but not limited to "average time to completion range" email), who then later enrolled in and paid tuition for a doctoral degree program at Capella University from 2006 until the present and did not receive full reimbursement for tuition, costs and student loans from Defendants.

e.      Under Minnesota law, by Plaintiff Proffitt, the "Roadmap Summary" nationwide class:

All current or former students who received a "Roadmap Summary" from Capella, who then later enrolled in and paid tuition for a doctoral degree program at Capella University from 2006 until the present and did not receive full reimbursement for tuition, costs and student loans from Defendants.

f.      Under Minnesota law, by Plaintiff Gore, the "Brochure" nationwide class:

All current or former students who received a Brochure from Capella with the language "Dissertation Courseroom milestones take, on average, four to eight quarters to complete," who then later enrolled in and paid tuition for a doctoral degree program at Capella University from 2006 until the present and did not receive full reimbursement for tuition, costs and student loans from Defendants.

**ANSWER:**  Capella states that the allegations in paragraph 212 contain a request for legal relief, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 212, including that this action may be maintained as a class action.

213.     Further, as discovery unfolds, additional classes or modified classes might be possible or necessary, perhaps by doctoral program. However, because Capella's fraudulent representations and omissions were made to students of all degree programs (e.g., false completion rates and quicker times to completion that conflicted with actual design times), a single nationwide class is best-suited for this action and places Capella on notice of the broadest possible class that Plaintiffs could move for, as contemplated by the Federal Rules' notice-pleading standard.

**ANSWER:**  Capella denies the allegations in paragraph 213, including that this action may be maintained as a class action.

214.     **Numerosity:** Upon information and belief, the members of the Class number in at least the thousands. As a result, the Class is so numerous that joinder of all members in a single action is impracticable. The members of the Class should be readily identifiable from academic records and enrollment records of Capella. The disposition of these claims will provide substantial benefits to the Class.

**ANSWER:**  Capella states that the allegations in paragraph 214 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 214, including that this action may be maintained as a class action.

215.     **Commonality and Predominance:** There is a well-defined community of interest and common questions of law and fact which predominate over any questions affecting only individual members of the Class. These common legal and factual questions, which will generate common answers which are apt to drive the resolution of the litigation, do not vary between members of the Class. These common questions may be determined without reference to individual circumstances and will provide common answers. The following represent a non-exhaustive list of common questions:

a.      Whether Capella maintains institutional control over its doctoral programs;

b.      Whether, with knowledge of its abysmally low doctoral program completion rate, Capella made misrepresentations regarding the typical/average time for prospective students to complete their doctoral programs;

c.      Whether, with knowledge of its abysmally low doctoral program completion rate, Capella made false representations to its students about the typical/average graduation rate for doctoral programs at Capella;

c.      Whether, with knowledge of its abysmally low doctoral program completion rate, Capella made false representations to its students about their actual chances of even completing a doctoral program at Capella;

d.      Whether Capella constructed and implemented a system which caused the doctoral program to last longer than represented so that Capella could generate additional revenue though tuition payments;

e.      Whether Capella violated consumer protection statues by virtue of its conduct toward the Class; and

f.      Whether, as a result of Capella's conduct, Plaintiffs and the Class are entitled to damages, restitution, equitable relief and/or other relief, and, if so, the amount and nature of such relief.

**ANSWER:**  Capella states that the allegations in paragraph 215 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 215, including that this action may be maintained as a class action.

216.  **Typicality:** The representative Plaintiffs' claims are typical of the claims of the Class. Plaintiffs and all members of the Class were injured by the same wrongful practices in which Capella has engaged. Further, the Plaintiffs and members of the Class seek relief based on the same legal theories. There may be differences in the amount of damages sustained by each member of the Class; however, Class-wide and individual damages can be determined readily. Individual damages issues will not bar Class certification.

**ANSWER:** Capella states that the allegations in paragraph 216 contain legal conclusions, and therefore no response is required. To the extent a response is required, Capella denies the allegations in paragraph 216, including that this action may be maintained as a class action.

217. **Adequacy of Representation:** Plaintiffs will fairly and adequately protect and pursue the interests of the Class. Plaintiffs understand the nature of the claims herein, their role in the proceedings, and have and will vigorously represent the Class. Plaintiffs have retained Class counsel who are experienced in and qualified in prosecution of consumer protection class actions and other forms of complex litigation. Neither Plaintiffs, nor their attorneys, have interests which are contrary to or conflict with those of the Class.

**ANSWER:** Capella states that the allegations in paragraph 217 contain legal conclusions, and therefore no response is required. To the extent a response is required, Capella denies the allegations in paragraph 217, including that this action may be maintained as a class action.

218. **Superiority and Manageability:** A class action is superior to all other available methods of adjudication of this lawsuit. Because individual litigation of the claims of Class members is economically infeasible and judicially impracticable, the class action device is the only way to facilitate adjudication of Plaintiffs' and the Class' claims. Although the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each member resulting from Capella's wrongful conduct are not significant enough for experienced counsel to handle on an individual basis. Further, due to the conduct of Capella, Plaintiffs and members of the Class have significant debt burdens from their time at Capella and cannot afford to hire counsel to pursue their claims on an hourly-fee basis. Even assuming individual Class members could afford it, the likelihood of individual claims being pursued by the Class members is remote. Even then, the burden on the judicial system would be unjustifiable in light of the class

action device. Individual members of the Class do not have significant interest in individually controlling the prosecution of separate actions and individualized litigation could result in varying, inconsistent or contradictory judgments. Plaintiffs know of no reason that this litigation should not proceed as a class action.

**ANSWER:** Capella states that the allegations in paragraph 218 contain legal conclusions, and therefore no response is required. To the extent a response is required, Capella denies the allegations in paragraph 218, including that this action may be maintained as a class action.

219. The nature of notice to the Class is contemplated to be by direct mail upon certification of the Class or, if such notice is not practicable, by best notice possible under the circumstances including, inter alia, email, publication in major newspapers, and maintenance of a website.

**ANSWER:** Capella states that the allegations in paragraph 219 contain legal conclusions, and therefore no response is required. To the extent a response is required, Capella denies the allegations in paragraph 219, including that this action may be maintained as a class action.

## TOLLING AND ESTOPPEL

220. Plaintiffs' causes of action did not arise until Plaintiffs discovered, or by the exercise of reasonable diligence should have discovered, that they were injured by Capella's intentional and deliberate scheme. Plaintiffs did not and could not have discovered the intentional scheme through reasonable diligence or Capella's actual completion rates and average/typical times to completion. For example, only Capella was in possession of completion rates and the length of time its doctoral programs actually lasted, and in this action has classified all such information as CONFIDENTIAL. With this position, Capella confirms all such information was hidden from the public. Further, given Capella is an online university, students were unaware that others were having similar experiences (delays in education).

**ANSWER:**  Capella states that the allegations in paragraph 220 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 220.

221.    The applicable statutes of limitations have been tolled by Capella's knowing and active concealment of the material facts regarding its scheme to intentionally prolong the doctoral program and theses process. Capella kept Plaintiffs and the members of the Class ignorant of the vital information essential to pursue their claims, without any fault or lack of diligence on the part of Plaintiffs and Class members.

**ANSWER:**  Capella states that the allegations in paragraph 221 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 221.

222.    Capella was and is under a continuous duty to disclose to Plaintiffs and the members of the Class the true nature of the scheme that they have implemented to prolong the doctoral process. At all relevant times, and continuing to this day, Capella knowingly, affirmatively, and actively misrepresented and concealed the true character, quality and nature of its scheme.

**ANSWER:**  Capella states that the allegations in paragraph 222 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 222.

223.    Based on the foregoing, Capella is estopped from relying on any statutes of limitation in defense of this action. Capella is also estopped from relying on any statutes of limitation in defense of this action because they failed to disclose the scheme prior to accepting each and every tuition payment in exchange for the provision of educational services.

**ANSWER:** Capella states that the allegations in paragraph 223 contain legal conclusions, and therefore no response is required. To the extent a response is required, Capella denies the allegations in paragraph 223.

224. Pursuant to the doctrines of Equitable Tolling, Equitable Estoppel, Fraudulent Concealment and the Discovery Rule, the period for bringing claims shall not be barred due to any statute of limitations or statute of repose. With respect to each and every cause of action asserted herein, Plaintiffs expressly plead Equitable Tolling, Equitable Estoppel, Fraudulent Concealment and the Discovery Rule and their application thereto.

**ANSWER:** Capella states that the allegations in paragraph 224 contain legal conclusions, and therefore no response is required. To the extent a response is required, Capella denies the allegations in paragraph 224.

225. All conditions precedent to the filing of this Complaint have been satisfied. This action has been filed prior to the expiration of any applicable statute of limitations or statute of repose.

**ANSWER:** Capella states that the allegations in paragraph 225 contain legal conclusions, and therefore no response is required. To the extent a response is required, Capella denies the allegations in paragraph 225.

**FIRST CAUSE OF ACTION**
**Fraud in the Inducement**
**(Brought on behalf of the Nationwide Class, or, in the alternative, Nationwide Subclasses brought by the Schools of Public Service Leadership/ Human Services/Public Safety/Psychology Class, the School of Nursing Class, the School of Business and Information Technology Class, the School of Education Class, the Roadmap Summary Class, and the Brochure Class)**

226. Plaintiffs bring this cause of action on behalf of a nationwide Class or alternative Subclasses under Minnesota common law.

**ANSWER:**  Capella denies the allegations in paragraph 226, including that this action may be maintained as a class action.

227.    Plaintiffs reallege and incorporate the preceding allegations by reference as if set forth fully herein.

**ANSWER:**  Capella incorporates by reference all of its responses as though fully repeated herein.

228.    Capella made actual or implied false representations concerning the timing and cost of a doctoral degree, while concealing the truth from prospective and actual students.

**ANSWER:**  Capella denies the allegations in paragraph 228.

229.    Capella had a duty to disclose that Capella's doctoral programs were designed to take much longer than they represented.

**ANSWER:**  Capella states that the allegations in paragraph 229 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 229.

230.    Capella concealed and is still concealing how long Capella's doctoral programs actually take to complete.

**ANSWER:**  Capella denies the allegations in paragraph 230.

231.    Capella intentionally misled Plaintiffs with promises that their programs would take a shorter time than the programs actually took.

**ANSWER:**  Capella denies the allegations in paragraph 231.

232.    Similar, if not identical, false representations and omissions were made by Capella to other members of the Class and Subclasses about Capella's degree programs.

**ANSWER:**  Capella denies the allegations in paragraph 232.

233.    Capella also misrepresented and concealed the actual percentage of students who graduated with doctoral degrees from Capella.

**ANSWER:**  Capella denies the allegations in paragraph 233.

234.    Further, Capella informed prospective students and current students they would have resources available to them when Capella knew full well that such resources would not be available.

**ANSWER:**  Capella denies the allegations in paragraph 234.

235.    These representations were material to Plaintiffs and the members of the Class or Subclasses.

**ANSWER:**  Capella states that the allegations in paragraph 235 contain legal conclusions, and therefore no response is required. To the extent a response is required, Capella denies the allegations in paragraph 235.

236.    Capella was aware of the falsity of its representations, or at a minimum had an utter disregard for their truthfulness. For example, they purposefully designed Capella's doctoral programs to last a certain, longer time frame, but told students it would take less time.

**ANSWER:**  Capella denies the allegations in paragraph 236.

237.    Capella intended students to rely upon these representations because they were included in marketing materials and on their websites.

**ANSWER:**  Capella states that the allegations in paragraph 237 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 237.

238.    Plaintiffs and members of the Class and Subclasses were justified in relying upon these representations.

**ANSWER:**  Capella states that the allegations in paragraph 238 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 238.

239.   Plaintiffs and members of the Class and Subclasses were injured by relying on these false representations and omissions because had Capella been truthful about the timelines and costs for Capella's doctoral programs, as well as graduation rates and resources actually available, doctoral students would not have enrolled.

**ANSWER:**  Capella states that the allegations in paragraph 239 contain legal conclusions, and therefore no response is required. To the extent a response is required, Capella denies the allegations in paragraph 239.

240.   Defendants' conduct also warrants punitive damages.

**ANSWER:**  Capella states that the allegations in paragraph 240 contain legal conclusions, and therefore no response is required. To the extent a response is required, Capella denies the allegations in paragraph 240.

### SECOND CAUSE OF ACTION
**Violation of Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. §325D.44
(Brought on behalf of the Nationwide Class, or, in the alternative, Nationwide Subclasses brought by the Schools of Public Service Leadership/ Human Services/Public Safety/Psychology Class, the School of Nursing Class, the School of Business and Information Technology Class, the School of Education Class, the Roadmap Summary Class, and the Brochure Class)**

241.   Plaintiffs reallege and incorporate the preceding allegations by reference as if set forth fully herein.

**ANSWER:**  Capella incorporates by reference all of its responses as though fully repeated herein.

242.   Plaintiffs bring this cause of action on behalf of a Nationwide Class and Subclasses. Capella has engaged in unfair, unlawful, and fraudulent business practices, as set forth above.

**ANSWER:**  Capella states that the allegations in paragraph 242 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 242, including that this action can be maintained as a class action.

243.    Minnesota Stat. §325D.44 specifically prohibits the use of unfair or deceptive trade practices in connection with a consumer transaction. For example, Minnesota Stat. §325D.44 prohibits deceptive trade practices which occur when a person "(5) represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have;" "(7) represents that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;" "(9) advertises goods or services with intent not to sell them as advertised" and "(13) engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding."

**ANSWER:**  Capella states that the allegations in paragraph 243 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 243.

244.    Instruction provided by an educational institution is a service, and students paying tuition for that service is a consumer transaction.

**ANSWER:**  Capella states that the allegations in paragraph 244 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 244.

245.    By engaging in the acts and practices described in this complaint, Capella has committed one or more acts of unfair and deceptive trade practices. For example, Capella represented that its doctoral services 1) have characteristics that they do not have and 2) are of a

particular standard, quality, or grade of which they are not. Capella also 3) advertised Capella's doctoral services with intent not to sell them as advertised and 4) engaged in conduct which similarly creates a likelihood of confusion or of misunderstanding.

**ANSWER:** Capella states that the allegations in paragraph 245 contain legal conclusions, and therefore no response is required. To the extent a response is required, Capella denies the allegations in paragraph 245.

246. Specifically, Capella misrepresented that: 1) students had control over how long it would take to obtain their doctoral degree and 2) that their degrees would be obtained or obtainable in a set amount of time.

**ANSWER:** Capella denies the allegations in paragraph 246.

247. Capella also knowingly concealed, omitted and otherwise failed to state material facts about Capella's doctoral education services that would tend to, and did, in fact, deceive students. Specifically, Capella falsely represented the time and tuition costs of obtaining a doctoral degree, not only knowing that such representations were false, but also with no intent to offer such services to its students. Capella also failed to disclose that it intentionally and deliberately used Capella's doctoral programs as a means of improperly extracting tuition and generating revenue. Capella further failed to disclose that it knowingly created and implemented a doctoral program that is fraught with inefficiencies, meant to ensure that students do not receive the timely responses and attention that they were promised.

**ANSWER:** Capella states that the allegations in paragraph 247 contain legal conclusions, and therefore no response is required. To the extent a response is required, Capella denies the allegations in paragraph 247.

248.    Capella knew that its doctoral programs was and continues to be systematically prolonged by the violations set forth herein.

**ANSWER:**  Capella denies the allegations in paragraph 248.

249.    The misrepresentations and omissions were material to Plaintiffs and the members of the Class and Subclasses.

**ANSWER:**  Capella states that the allegations in paragraph 249 contain legal conclusions, and therefore no response is required. To the extent a response is required, Capella denies the allegations in paragraph 249.

250.    Capella's unfair and deceptive trade practices and acts occurred and continue to occur repeatedly during the course of its business. These actions constitute unfair and deceptive trade practices.

**ANSWER:**  Capella states that the allegations in paragraph 250 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 250.

251.    Plaintiffs and members of the Class and Subclasses relied on these representations and omissions in the course of pursuing their doctoral degrees. Furthermore, Capella intended that Plaintiffs and members of the Class and Subclasses would rely on the representations and omissions.

**ANSWER:**  Capella states that the allegations in paragraph 251 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 251.

252.    As a direct and proximate result of Capella's unfair and deceptive practices and acts, Plaintiffs and the Class and Subclasses have suffered and will continue to suffer actual

damages. Had Plaintiffs and the members of the Class Subclasses been aware of the misrepresentations and omissions, they would not have paid tuition to Capella or incurred additional costs including costs for books, technology fees, and student loans for tuition and fees, room and board charges, costs of books and supplies and other expenses, etc. for the educational services that Capella purported to provide.

**ANSWER:**  Capella states that the allegations in paragraph 252 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 252.

253.   Plaintiffs and the Class and Subclasses are entitled to injunctive relief, and attorneys' fees, and all other remedies provided by law or equity. (See Minn. Stat. § 325D.45).

**ANSWER:**  Capella states that the allegations in paragraph 253 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 253.

254.   As a direct and proximate result of the foregoing, Plaintiffs and the Class and Subclasses have been injured and suffered financial loss for which damages, injunctive, declaratory and/or other relief as may be available at law or equity is warranted.

**ANSWER:**  Capella states that the allegations in paragraph 254 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 254.

### THIRD CAUSE OF ACTION
**Violation of the Minnesota Prevention of Consumer Fraud Act, Minn. Stat. § 325F.69
(Brought on behalf of the Nationwide Class, or, in the alternative, Nationwide Subclasses
brought by the Schools of Public Service Leadership/ Human Services/Public
Safety/Psychology Class, the School of Nursing Class, the School of Business and
Information Technology Class, the School of Education Class, the Roadmap Summary
Class, and the Brochure Class)**

255. Plaintiffs reallege and incorporate the preceding allegations by reference as if set forth fully herein.

**ANSWER:** Capella incorporates by reference all of its responses as though fully repeated herein.

256. Minn. Stat. § 325F.69, subdivision 1 provides:

> The act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby, is enjoinable as provided in section 325F.70.

**ANSWER:** Capella states that the allegations in paragraph 256 contain legal conclusions, and therefore no response is required. To the extent a response is required, Capella denies the allegations in paragraph 256.

257. The term "merchandise" within the meaning of Minn. Stat. § 325F.69 includes services. *See* Minn. Stat. § 325F.68, subd. 2.

**ANSWER:** Capella states that the allegations in paragraph 257 contain legal conclusions, and therefore no response is required. To the extent a response is required, Capella denies the allegations in paragraph 257.

258. Defendants' conduct described above constitutes multiple, separate violations of Minn. Stat. § 325F.69, subd. 1. Defendants have engaged in deceptive and fraudulent practices, and have made false and misleading statements, with the intent that others rely thereon in connection with the sale of Defendants' education services. For example, Defendants use high-

pressure sales tactics to solicit and enroll students, and promise these prospective and current students that they can obtain their degree within a specified period of time, and for a certain estimated cost of tuition that, through Defendants' actions, are unattainable in violation of Minn. Stat. § 325F.69. By failing to disclose and omitting material facts which Defendants had a duty to disclose, Defendants have engaged in deceptive and fraudulent practices in violation of the Consumer Fraud Act.

**ANSWER:** Capella states that the allegations in paragraph 258 contain legal conclusions, and therefore no response is required. To the extent a response is required, Capella denies the allegations in paragraph 258.

259. Minn. Stat. §8.31 provides a private right of action for violations of these provisions.

**ANSWER:** Capella states that the allegations in paragraph 259 contain legal conclusions, and therefore no response is required. To the extent a response is required, Capella denies the allegations in paragraph 259.

260. This action will serve a public benefit. Not only were Capella's misrepresentations made to a large segment of the public, Capella's conduct affects the financial aid industry as well. Defendant's conduct alleged here indicates that Defendant has not been, and will not be deterred, absent significant consequences. This action should proceed under Minn. Stat. §8.31 to promote the public benefit by increasing the consequences of misleading potential students into enrolling in a doctoral program, with completion times and tuition estimates that are unattainable, and to provide the deterrence necessary to ensure similar events do not occur in the future.

**ANSWER:** Capella states that the allegations in paragraph 260 contain legal conclusions, and therefore no response is required. To the extent a response is required, Capella denies the allegations in paragraph 260.

261. Plaintiffs and the Class and Subclasses are entitled to compensatory damages and attorneys' fees. (See Minn. Stat. §§ 8.31, subd. 3a and 325D.45. subd. 3).

**ANSWER:** Capella states that the allegations in paragraph 261 contain legal conclusions, and therefore no response is required. To the extent a response is required, Capella denies the allegations in paragraph 261.

262. As a direct and proximate result of the foregoing, Plaintiffs and the Class and Subclasses have been injured and suffered financial loss for which damages, injunctive, declaratory and/or other relief as may be available at law or equity is warranted.

**ANSWER:** Capella states that the allegations in paragraph 262 contain legal conclusions, and therefore no response is required. To the extent a response is required, Capella denies the allegations in paragraph 262.

263. Defendants' conduct also warrants punitive damages.

**ANSWER:** Capella states that the allegations in paragraph 263 contain legal conclusions, and therefore no response is required. To the extent a response is required, Capella denies the allegations in paragraph 263.

**FOURTH CAUSE OF ACTION**
**Fraud in the Inducement**
**(Alternative Massachusetts Subclass)**

264. Plaintiff Ornelas brings this cause of action, in the alternative, on behalf of a Massachusetts Subclass under Massachusetts common law.

**ANSWER:** Capella denies the allegations in paragraph 264, including that this action can be maintained as a class action.

265.    Plaintiff Ornelas realleges and incorporates the preceding allegations by reference as if set forth fully herein.

**ANSWER:**  Capella incorporates by reference all of its responses as though fully repeated herein.

266.    Capella made actual or implied false representations concerning the timing and cost of a doctoral degree, while concealing the truth from prospective and actual students.

**ANSWER:**  Capella denies the allegations in paragraph 266.

267.    Capella had a duty to disclose that Capella's doctoral programs were designed to take much longer than they represented.

**ANSWER:**  Capella states that the allegations in paragraph 267 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 267.

268.    Capella concealed and is still concealing how long Capella's doctoral programs actually take to complete.

**ANSWER:**  Capella denies the allegations in paragraph 268.

269.    Capella also misrepresented and concealed the actual percentage of students who graduated with doctoral degrees from Capella.

**ANSWER:**  Capella denies the allegations in paragraph 269.

270.    Further, Capella informed prospective students and current students they would have resources available to them when Capella knew full well that such resources would not be available.

**ANSWER:**  Capella denies the allegations in paragraph 270.

271.    These representations were material to Plaintiff Ornelas and the members of the Class agreeing to attend Capella.

**ANSWER:**  Capella states that the allegations in paragraph 271 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 271.

272.    Capella was aware of the falsity of its representations, or at a minimum had an utter disregard for their truthfulness. For example, they purposefully designed Capella's doctoral programs to last a certain, longer time frame, but told students they would take less time.

**ANSWER:**  Capella denies the allegations in paragraph 272.

273.    Capella intended students to rely upon these representations because they were included in marketing materials and on their websites.

**ANSWER:**  Capella states that the allegations in paragraph 273 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 273.

274.    Plaintiff Ornelas and members of the Class was justified in relying upon these representations.

**ANSWER:**  Capella states that the allegations in 274 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 274.

275.    Plaintiff Ornelas and members of the class were injured by relying on these false representations and omissions because had Capella been truthful about the timelines and costs for Capella's doctoral programs, as well as graduation rate and resources actually available, doctoral students would not have enrolled.

**ANSWER:**  Capella states that the allegations in paragraph 275 contain legal conclusions, and therefore no response is required. To the extent a response is required, Capella denies the allegations in paragraph 275.

**FIFTH CAUSE OF ACTION**
**Violation of Mass. Gen. Laws. Ch. 93A**
**(Massachusetts Consumer Protection Act)**
**(Alternative Massachusetts Subclass)**

276.    Plaintiff Ornelas realleges and incorporate the preceding allegations by reference as if set forth fully herein.

**ANSWER:**  Capella incorporates by reference all of its responses as though fully repeated herein.

277.    Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A makes it unlawful to engage in any unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.

**ANSWER:**  Capella further states that the allegations in paragraph 277 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 277.

278.    Plaintiff Ornelas brings this cause of action on behalf of a Massachusetts Subclass. Capella has engaged in unfair, unlawful, and fraudulent business practices, as set forth above.

**ANSWER:**  Capella states that the allegations in paragraph 278 contain legal conclusions, and therefore no response is required. To the extent a response is required, Capella denies the allegations in paragraph 278, including that this action can be maintained as a class action.

279.    Through the actions described above, Capella has violated Mass. Gen. Laws ch. 93A.

**ANSWER:**  Capella states that the allegations in paragraph 279 contain legal conclusions, and therefore no response is required. To the extent a response is required, Capella denies the allegations in paragraph 279.

280.    Capella's deceptive acts and practices include, but are not limited to, making knowing representations that 1) the services it offers have characteristics that they do not have; 2) the services it offers are of particular standard, quality, grade, style or model, when they are actually of another which differs materially from the representation; 3) the services it offers has characteristics that Capella did not have a reasonable basis for making such representations; and 4) that its services have characteristics allegedly substantiated by Capella when it has no proof to substantiate such representations. Such representations include, but are not limited to, Capella's representations of an earlier graduation date/faster time to completion than possible.

**ANSWER:**  Capella states that the allegations in paragraph 280 contain legal conclusions, and therefore no response is required. To the extent a response is required, Capella denies the allegations in paragraph 280.

281.    Capella also willfully 1) used oral and written representations that exaggerated, were false and made false innuendoes of material fact and 2) failed to failure to state material facts, and willfully concealed, suppressed or omitted material facts. Such representations include, but are not limited to, Capella's representations of an earlier graduation date/faster time to completion than possible, and omissions include, but are not limited to, its longer times to graduate, slower completion times, and low graduation rates.

**ANSWER:**  Capella states that the allegations in paragraph 281 contain legal conclusions, and therefore no response is required. To the extent a response is required, Capella denies the allegations in paragraph 281.

282.     Capella made false and misleading statements about the nature, quality, style, and model of Capella's doctoral education services. Further, the subject of the Capella doctoral transaction had been supplied in accordance with previous representations made by Capella to Plaintiff Ornelas and members of the Massachusetts Subclass, and those representations were not performed. Specifically, Capella misrepresented that: 1) students had control over how long it would take to obtain their doctoral degree and 2) that their degrees would be obtained or obtainable in a set amount of time.

**ANSWER:** Capella states that the allegations in paragraph 282 contain legal conclusions, and therefore no response is required. To the extent a response is required, Capella denies the allegations in paragraph 282.

283.     Capella also knowingly concealed, omitted and otherwise failed to state material facts about Capella's doctoral education services that would tend to, and did, in fact, deceive students. Specifically, Capella failed to disclose that they intentionally and deliberately used Capella's doctoral process as a means of improperly extracting tuition and generating revenue. Capella further failed to disclose that they knowingly directed and implemented a doctoral program process that is fraught with inefficiencies, meant to ensure that students do not receive the timely responses and attention that they were promised, and creates inordinate turnover of faculty and supervisory committee chairs and members. Capella also knowingly withheld its low graduation rate and actual times to graduation of its doctoral students.

**ANSWER:** Capella states that the allegations in paragraph 283 contain legal conclusions, and therefore no response is required. To the extent a response is required, Capella denies the allegations in paragraph 283.

284.    Capella knew that the doctoral coursework was and continues to be systematically prolonged by the violations set forth herein.

**ANSWER:**  Capella denies the allegations in paragraph 284.

285.    The misrepresentations and omissions were material to Plaintiff Ornelas and the members of the Class.

**ANSWER:**  Capella states that the allegations in paragraph 285 contain legal conclusions, and therefore no response is required. To the extent a response is required, Capella denies the allegations in paragraph 285.

286.    Capella's unfair and deceptive trade practices and acts occurred and continue to occur repeatedly during the course of its business. These actions constitute unfair and deceptive trade practices, in violation of Mass. Gen. Laws ch. 93A.

**ANSWER:**  Capella states that the allegations in paragraph 286 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 286.

287.    Plaintiff Ornelas and members of the Class relied on these representations and omissions in the course of pursuing their doctoral degrees. Furthermore, Capella intended that Plaintiff Ornelas and members of the Class would rely on the representations and omissions.

**ANSWER:**  Capella states that the allegations in paragraph 287 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 287.

288.    As a direct and proximate result of Capella's unfair and deceptive practices and acts, Plaintiff Ornelas and the Class have suffered and will continue to suffer actual damages. Had Plaintiff Ornelas and the members of the Class been aware of the misrepresentations and

omissions, they would not have paid tuition to Capella for the educational services that Defendant purported to provide or incurred students to attend Capella (including for room and board).

**ANSWER:** Capella states that the allegations in paragraph 288 contain legal conclusions, and therefore no response is required. To the extent a response is required, Capella denies the allegations in paragraph 288.

289.    Defendants' conduct also warrants punitive damages.

**ANSWER:** Capella states that the allegations in paragraph 289 contain legal conclusions, and therefore no response is required. To the extent a response is required, Capella denies the allegations in paragraph 289.

## SIXTH CAUSE OF ACTION
### Fraud in the Inducement (Alternative Florida Subclass)

290.    Plaintiffs Seppa and Carty bring this cause of action, in the alternative, on behalf of a Florida Subclass under Florida common law.

**ANSWER:** Capella denies the allegations in paragraph 290, including that this action may be maintained as a class action.

291.    Plaintiffs Seppa and Carty reallege and incorporate the preceding allegations by reference as if set forth fully herein.

**ANSWER:** Capella incorporates by reference all of its responses as though fully repeated herein.

292.    Capella made actual or implied false representations concerning the timing and cost of a doctoral degree, while concealing the truth from prospective and actual students.

**ANSWER:** Capella denies the allegations in paragraph 292.

293.    Capella had a duty to disclose that Capella's doctoral programs were designed to take much longer than they represented.

**ANSWER:**  Capella states that the allegations in paragraph 293 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 293.

294.    Capella concealed and is still concealing how long Capella's doctoral programs actually take to complete.

**ANSWER:**  Capella denies the allegations in paragraph 294.

295.    Capella also misrepresented and concealed the actual percentage of students who graduated with doctoral degrees from Capella.

**ANSWER:**  Capella denies the allegations in paragraph 295.

296.    Further, Capella informed prospective students and current students they would have resources available to them when Capella knew full well that such resources would not be available.

**ANSWER:**  Capella denies the allegations in paragraph 296.

297.    These representations were material to Plaintiffs Seppa and Carty and the members of the Class agreeing to attend Capella.

**ANSWER:**  Capella states that the allegations in paragraph 297 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 297.

298.    Capella was aware of the falsity of its representations, or at a minimum had an utter disregard for their truthfulness. For example, they purposefully designed Capella's doctoral programs to last a certain, longer time frame, but told students they would take less time.

**ANSWER:**  Capella denies the allegations in paragraph 298.

299.    Capella intended students to rely upon these representations because they were included in marketing materials and on their websites.

**ANSWER:**  Capella states that the allegations in paragraph 299 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 299.

300.    Plaintiffs Seppa and Carty and members of the Class was justified in relying upon these representations.

**ANSWER:**  Capella states that the allegations in paragraph 300 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 300.

301.    Plaintiffs Seppa and Carty and members of the class were injured by relying on these false representations and omissions because had Capella been truthful about the timelines and costs for Capella's doctoral programs, as well as graduation rate and resources actually available, doctoral students would not have enrolled.

**ANSWER:**  Capella states that the allegations in paragraph 301 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 301.

302.    Defendants' conduct also warrants punitive damages.

**ANSWER:**  Capella states that the allegations in paragraph 302 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 302.

**SEVENTH CAUSE OF ACTION**
**Violation of Fla. Stat. § 501.201 et seq.**
**(Florida Deceptive and Unfair Trade Practices Act)**
**(Alternative Florida Subclass)**

303.    Plaintiffs Carty realleges and incorporates the preceding allegations by reference as if set forth fully herein.

**ANSWER:**  Capella incorporates by reference all of its responses as though fully repeated herein.

304.    Florida's Deceptive and Unfair Trade Practices Act makes it unlawful to engage in any unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.

**ANSWER:**  Capella states that the allegations in paragraph 304 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 304.

305.    Plaintiffs Carty brings this cause of action on behalf of a Florida Subclass. Capella has engaged in unfair, unlawful, and fraudulent business practices, as set forth above.

**ANSWER:**  Capella states that the allegations in paragraph 305 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 305, including that this action can be maintained as a class action.

306.    Through the actions described above, Capella has violated Fla. Stat. § 501.201 et seq.

**ANSWER:**  Capella states that the allegations in paragraph 306 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 306.

307.    Capella's deceptive acts and practices include, but are not limited to, making knowing representations that 1) the services it offers have characteristics that they do not have; 2) the services it offers are of particular standard, quality, grade, style or model, when they are actually of another which differs materially from the representation; 3) the services it offers has characteristics that Capella did not have a reasonable basis for making such representations; and 4) that its services have characteristics allegedly substantiated by Capella when it has no proof to substantiate such representations. Such representations include, but are not limited to, Capella's representations of an earlier graduation date/faster time to completion than possible.

**ANSWER:**  Capella states that the allegations in paragraph 307 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 307.

308.    Capella also willfully 1) used oral and written representations that exaggerated, were false and made false innuendoes of material fact and 2) failed to failure to state material facts, and willfully concealed, suppressed, or omitted material facts. Such representations include, but are not limited to, Capella's representations of an earlier graduation date/faster time to completion than possible, and omissions include, but are not limited to, its longer times to graduate, slower completion times, and low graduation rates.

**ANSWER:**  Capella states that the allegations in paragraph 308 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 308.

309.    Capella made false and misleading statements about the nature, quality, style, and model of Capella's doctoral education services. Further, the subject of the Capella doctoral transaction had been supplied in accordance with previous representations made by Capella to

Plaintiff Carty and members of the Florida Subclass, and those representations were not performed. Specifically, Capella misrepresented that: 1) students had control over how long it would take to obtain their doctoral degree and 2) that their degrees would be obtained or obtainable in a set amount of time.

**ANSWER:**  Capella states that the allegations in paragraph 309 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 309.

310.    Capella also knowingly concealed, omitted and otherwise failed to state material facts about Capella's doctoral education services that would tend to, and did, in fact, deceive students.  Specifically, Capella failed to disclose that they intentionally and deliberately used Capella's doctoral process as a means of improperly extracting tuition and generating revenue. Capella further failed to disclose that they knowingly directed and implemented a doctoral program process that is fraught with inefficiencies, meant to ensure that students do not receive the timely responses and attention that they were promised, and creates inordinate turnover of faculty and supervisory committee chairs and members. Capella also knowingly withheld its low graduation rate and actual times to graduation of its doctoral students.

**ANSWER:**  Capella states that the allegations in paragraph 310 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 310.

311.    Capella knew that the doctoral coursework was and continues to be systematically prolonged by the violations set forth herein.

**ANSWER:**  Capella denies the allegations in paragraph 311.

312.    The misrepresentations and omissions were material to Plaintiffs Carty and the members of the Class.

**ANSWER:**  Capella states that the allegations in paragraph 312 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 312.

313.    Capella's unfair and deceptive trade practices and acts occurred and continue to occur repeatedly during the course of its business. These actions constitute unfair and deceptive trade practices, in violation of Fla. Stat. § 501.201.

**ANSWER:**  Capella states that the allegations in paragraph 313 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 313.

314.    Plaintiff Carty and members of the Class relied on these representations and omissions in the course of pursuing their doctoral degrees. Furthermore, Capella intended that Plaintiff Carty and members of the Class would rely on the representations and omissions.

**ANSWER:**  Capella states that the allegations in paragraph 314 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 314.

315.    As a direct and proximate result of Capella's unfair and deceptive practices and acts, Plaintiff Carty and the Class have suffered and will continue to suffer actual damages. Had Plaintiff Carty and the members of the Class been aware of the misrepresentations and omissions, they would not have paid tuition to Capella for the educational services that Defendant purported to provide or incurred students to attend Capella (including for room and board).

**ANSWER:** Capella states that the allegations in paragraph 315 contain legal conclusions, and therefore no response is required. To the extent a response is required, Capella denies the allegations in paragraph 315.

### EIGHTH CAUSE OF ACTION
### Fraud in the Inducement
### (Alternative Idaho Subclass)

316.    Plaintiff Powers brings this cause of action, in the alternative, on behalf of an Idaho Subclass under Idaho common law.

**ANSWER:** Capella denies the allegations in paragraph 316, including that this action may be maintained as a class action.

317.    Plaintiff Powers realleges and incorporates the preceding allegations by reference as if set forth fully herein.

**ANSWER:** Capella incorporates by reference all of its responses as though fully repeated herein.

318.    Capella made actual or implied false representations concerning the timing and cost of a doctoral degree, while concealing the truth from prospective and actual students.

**ANSWER:** Capella denies the allegations in paragraph 318.

319.    Capella had a duty to disclose that Capella's doctoral programs were designed to take much longer than they represented.

**ANSWER:** Capella states that the allegations in paragraph 319 contain legal conclusions, and therefore no response is required. To the extent a response is required, Capella denies the allegations in paragraph 319.

320.    Capella concealed and is still concealing how long Capella's doctoral programs actually take to complete.

**ANSWER:** Capella denies the allegations in paragraph 320.

321.    Capella also misrepresented and concealed the actual percentage of students who graduated with doctoral degrees from Capella.

**ANSWER:**  Capella denies the allegations in paragraph 321.

322.    Further, Capella informed prospective students and current students they would have resources available to them when Capella knew full well that such resources would not be available.

**ANSWER:**  Capella denies the allegations in paragraph 322.

323.    These representations were material to Plaintiff Powers and the members of the Class agreeing to attend Capella.

**ANSWER:**  Capella states that the allegations in paragraph 323 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 323.

324.    Capella was aware of the falsity of its representations, or at a minimum had an utter disregard for their truthfulness. For example, they purposefully designed Capella's doctoral programs to last a certain, longer time frame, but told students they would take less time.

**ANSWER:**  Capella denies the allegations in paragraph 324.

325.    Capella intended students to rely upon these representations because they were included in marketing materials and on their websites.

**ANSWER:**  Capella states that the allegations in paragraph 325 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 325.

326.    Plaintiff Powers and members of the Class was justified in relying upon these representations.

**ANSWER:**  Capella states that the allegations in paragraph 326 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 326.

327.    Plaintiff Powers and members of the class were injured by relying on these false representations and omissions because had Capella been truthful about the timelines and costs for Capella's doctoral programs, as well as graduation rate and resources actually available, doctoral students would not have enrolled.

**ANSWER:**  Capella states that the allegations in paragraph 327 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 327.

328.    Defendants' conduct also warrants punitive damages.

**ANSWER:**  Capella states that the allegations in paragraph 328 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 328.

**NINTH CAUSE OF ACTION**
**Violation of Idaho Code § 48-608**
**(Idaho Consumer Protection Act)**
**(Alternative Idaho Subclass)**

329.    Plaintiff Powers realleges and incorporate the preceding allegations by reference as if set forth fully herein.

**ANSWER:**  Capella incorporates by reference all of its responses as though fully repeated herein.

330.    Idaho's Consumer Protection Act (Idaho Code § 48-608) makes it unlawful to engage in any unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.

**ANSWER:**  Capella further states that the allegations in paragraph 330 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 330.

331.    Plaintiff Powers brings this cause of action on behalf of an Idaho Subclass. Capella has engaged in unfair, unlawful, and fraudulent business practices, as set forth above.

**ANSWER:**  Capella states that the allegations in paragraph 331 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 331, including that this action can be maintained as a class action.

332.    Through the actions described above, Capella has violated Idaho Code § 48-608.

**ANSWER:**  Capella states that the allegations in paragraph 332 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 332.

333.    Capella's deceptive acts and practices include, but are not limited to, making knowing representations that 1) the services it offers have characteristics that they do not have; 2) the services it offers are of particular standard, quality, grade, style or model, when they are actually of another which differs materially from the representation; 3) the services it offers has characteristics that Capella did not have a reasonable basis for making such representations; and 4) that its services have characteristics allegedly substantiated by Capella when it has no proof to substantiate such representations. Such representations include, but are not limited to, Capella's representations of an earlier graduation date/faster time to completion than possible.

**ANSWER:**  Capella states that the allegations in paragraph 333 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 333.

334.     Capella also willfully 1) used oral and written representations that exaggerated, were false and made false innuendoes of material fact and 2) failed to failure to state material facts, and willfully concealed, suppressed, or omitted material facts. Such representations include, but are not limited to, Capella's representations of an earlier graduation date/faster time to completion than possible, and omissions include, but are not limited to, its longer times to graduate, slower completion times, and low graduation rates.

**ANSWER:**  Capella states that the allegations in paragraph 334 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 334.

335.     Capella made false and misleading statements about the nature, quality, style, and model of Capella's doctoral education services. Further, the subject of the Capella doctoral transaction had been supplied in accordance with previous representations made by Capella to Plaintiff Powers and members of the Idaho Subclass, and those representations were not performed. Specifically, Capella misrepresented that: 1) students had control over how long it would take to obtain their doctoral degree and 2) that their degrees would be obtained or obtainable in a set amount of time.

**ANSWER:**  Capella states that the allegations in paragraph 335 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 335.

336.     Capella also knowingly concealed, omitted and otherwise failed to state material facts about Capella's doctoral education services that would tend to, and did, in fact, deceive students. Specifically, Capella failed to disclose that they intentionally and deliberately used Capella's doctoral process as a means of improperly extracting tuition and generating revenue.

Capella further failed to disclose that they knowingly directed and implemented a doctoral program process that is fraught with inefficiencies, meant to ensure that students do not receive the timely responses and attention that they were promised, and creates inordinate turnover of faculty and supervisory committee chairs and members. Capella also knowingly withheld its low graduation rate and actual times to graduation of its doctoral students.

**ANSWER:**  Capella states that the allegations in paragraph 336 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 336.

337.    Capella knew that the doctoral coursework was and continues to be systematically prolonged by the violations set forth herein.

**ANSWER:**  Capella denies the allegations in paragraph 337.

338.    The misrepresentations and omissions were material to Plaintiff Powers and the members of the Class.

**ANSWER:**  Capella states that the allegations in paragraph 338 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 338.

339.    Capella's unfair and deceptive trade practices and acts occurred and continue to occur repeatedly during the course of its business. These actions constitute unfair and deceptive trade practices, in violation of Idaho Code § 48-608.

**ANSWER:**  Capella states that the allegations in paragraph 339 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 339.

340.    Plaintiff Powers and members of the Class relied on these representations and omissions in the course of pursuing their doctoral degrees. Furthermore, Capella intended that Plaintiff Powers and members of the Class would rely on the representations and omissions.

**ANSWER:**  Capella states that the allegations in paragraph 340 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 340.

341.    As a direct and proximate result of Capella's unfair and deceptive practices and acts, Plaintiff Powers and the Class have suffered and will continue to suffer actual damages. Had Plaintiff Powers and the members of the Class been aware of the misrepresentations and omissions, they would not have paid tuition to Capella for the educational services that Defendant purported to provide or incurred students to attend Capella (including for room and board).

**ANSWER:**  Capella states that the allegations in paragraph 341 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 341.

342.    Defendants' conduct also warrants punitive damages.

**ANSWER:**  Capella states that the allegations in paragraph 342 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 342.

**TENTH CAUSE OF ACTION**
**Fraud in the Inducement**
**(Alternative Utah Subclass)**

343.    Plaintiff Powers brings this cause of action, in the alternative, on behalf of a Utah Subclass under Utah common law.

**ANSWER:**  Capella denies the allegations in paragraph 343, including that this action may be maintained as a class action.

112

344.    Plaintiff Powers realleges and incorporates the preceding allegations by reference as if set forth fully herein.

**ANSWER:**  Capella incorporates by reference all of its responses as though fully repeated herein.

345.    Capella made actual or implied false representations concerning the timing and cost of a doctoral degree, while concealing the truth from prospective and actual students.

**ANSWER:**  Capella denies the allegations in paragraph 345.

346.    Capella had a duty to disclose that Capella's doctoral programs were designed to take much longer than they represented.

**ANSWER:**  Capella states that the allegations in paragraph 346 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 346.

347.    Capella concealed and is still concealing how long Capella's doctoral programs actually take to complete.

**ANSWER:**  Capella denies the allegations in paragraph 347.

348.    Capella also misrepresented and concealed the actual percentage of students who graduated with doctoral degrees from Capella.

**ANSWER:**  Capella denies the allegations in paragraph 348.

349.    Further, Capella informed prospective students and current students they would have resources available to them when Capella knew full well that such resources would not be available.

**ANSWER:**  Capella denies the allegations in paragraph 349.

350.    These representations were material to Plaintiff Powers and the members of the Class agreeing to attend Capella.

**ANSWER:** Capella states that the allegations in paragraph 350 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 350.

351.    Capella was aware of the falsity of its representations, or at a minimum had an utter disregard for their truthfulness. For example, they purposefully designed Capella's doctoral programs to last a certain, longer time frame, but told students they would take less time.

**ANSWER:**  Capella denies the allegations in paragraph 351.

352.    Capella intended students to rely upon these representations because they were included in marketing materials and on their websites.

**ANSWER:** Capella states that the allegations in paragraph 352 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 352.

353.    Plaintiff Powers and members of the Class was justified in relying upon these representations.

**ANSWER:** Capella states that the allegations in paragraph 353 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 353.

354.    Plaintiff Powers and members of the class were injured by relying on these false representations and omissions because had Capella been truthful about the timelines and costs for Capella's doctoral programs, as well as graduation rate and resources actually available, doctoral students would not have enrolled.

**ANSWER:** Capella states that the allegations in paragraph 354 contain legal conclusions, and therefore no response is required. To the extent a response is required, Capella denies the allegations in paragraph 354.

355. Defendants' conduct also warrants punitive damages.

**ANSWER:** Capella states that the allegations in paragraph 355 contain legal conclusions, and therefore no response is required. To the extent a response is required, Capella denies the allegations in paragraph 355.

**ELEVENTH CAUSE OF ACTION**
**Violation of Utah Code Ann. § 13-11-22**
**(Utah Consumer Sales Practices Act)**
**(Alternative Utah Subclass)**

356. Plaintiff Powers realleges and incorporate the preceding allegations by reference as if set forth fully herein.

**ANSWER:** Capella incorporates by reference all of its responses as though fully repeated herein.

357. Utah's Consumer Sales Practices Act (Utah Code Ann. § 13-11-22) makes it unlawful to engage in any unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.

**ANSWER:** Capella further states that the allegations in paragraph 357 contain legal conclusions, and therefore no response is required. To the extent a response is required, Capella denies the allegations in paragraph 357.

358. Plaintiff Powers brings this cause of action on behalf of a Utah Subclass. Capella has engaged in unfair, unlawful, and fraudulent business practices, as set forth above.

**ANSWER:**  Capella states that the allegations in paragraph 358 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 358, including that this action can be maintained as a class action.

359.    Through the actions described above, Capella has violated Utah Code Ann. § 13-11-22.

**ANSWER:**  Capella states that the allegations in paragraph 359 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 359.

360.    Capella's deceptive acts and practices include, but are not limited to, making knowing representations that 1) the services it offers have characteristics that they do not have; 2) the services it offers are of particular standard, quality, grade, style or model, when they are actually of another which differs materially from the representation; 3) the services it offers has characteristics that Capella did not have a reasonable basis for making such representations; and 4) that its services have characteristics allegedly substantiated by Capella when it has no proof to substantiate such representations. Such representations include, but are not limited to, Capella's representations of an earlier graduation date/faster time to completion than possible.

**ANSWER:**  Capella states that the allegations in paragraph 360 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 360.

361.    Capella also willfully 1) used oral and written representations that exaggerated, were false and made false innuendoes of material fact and 2) failed to failure to state material facts, and willfully concealed, suppressed, or omitted material facts. Such representations include, but are not limited to, Capella's representations of an earlier graduation date/faster time to completion

116

than possible, and omissions include, but are not limited to, its longer times to graduate, slower completion times, and low graduation rates.

**ANSWER:**  Capella states that the allegations in paragraph 361 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 361.

362.    Capella made false and misleading statements about the nature, quality, style, and model of Capella's doctoral education services. Further, the subject of the Capella doctoral transaction had been supplied in accordance with previous representations made by Capella to Plaintiff Powers and members of the Utah Subclass, and those representations were not performed. Specifically, Capella misrepresented that: 1) students had control over how long it would take to obtain their doctoral degree and 2) that their degrees would be obtained or obtainable in a set amount of time.

**ANSWER:**  Capella states that the allegations in paragraph 362 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 362.

363.    Capella also knowingly concealed, omitted and otherwise failed to state material facts about Capella's doctoral education services that would tend to, and did, in fact, deceive students. Specifically, Capella failed to disclose that they intentionally and deliberately used Capella's doctoral process as a means of improperly extracting tuition and generating revenue. Capella further failed to disclose that they knowingly directed and implemented a doctoral program process that is fraught with inefficiencies, meant to ensure that students do not receive the timely responses and attention that they were promised, and creates inordinate turnover of faculty and

supervisory committee chairs and members. Capella also knowingly withheld its low graduation rate and actual times to graduation of its doctoral students.

**ANSWER:**  Capella states that the allegations in paragraph 363 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 363.

364.    Capella knew that the doctoral coursework was and continues to be systematically prolonged by the violations set forth herein.

**ANSWER:**  Capella denies the allegations in paragraph 364.

365.    The misrepresentations and omissions were material to Plaintiff Powers and the members of the Class.

**ANSWER:**  Capella states that the allegations in paragraph 365 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 365.

366.    Capella's unfair and deceptive trade practices and acts occurred and continue to occur repeatedly during the course of its business. These actions constitute unfair and deceptive trade practices, in violation of Utah Code Ann. § 13-11-22.

**ANSWER:**  Capella states that the allegations in paragraph 366 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 366.

367.    Plaintiff Powers and members of the Class relied on these representations and omissions in the course of pursuing their doctoral degrees. Furthermore, Capella intended that Plaintiff Powers and members of the Class would rely on the representations and omissions.

**ANSWER:**  Capella states that the allegations in paragraph 367 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 367.

368.    As a direct and proximate result of Capella's unfair and deceptive practices and acts, Plaintiff Powers and the Class have suffered and will continue to suffer actual damages. Had Plaintiff Powers and the members of the Class been aware of the misrepresentations and omissions, they would not have paid tuition to Capella for the educational services that Defendant purported to provide or incurred students to attend Capella (including for room and board).

**ANSWER:**  Capella states that the allegations in paragraph 368 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 368.

### TWELFTH CAUSE OF ACTION
### Fraud in the Inducement (Alternative Illinois Subclass)

369.    Plaintiff Miller brings this cause of action, in the alternative, on behalf of an Illinois Subclass under Illinois common law.

**ANSWER:**  Capella denies the allegations in paragraph 369, including that this action may be maintained as a class action.

370.    Plaintiff Miller realleges and incorporates the preceding allegations by reference as if set forth fully herein.

**ANSWER:**  Capella incorporates by reference all of its responses as though fully repeated herein.

371.    Capella made actual or implied false representations concerning the timing and cost of a doctoral degree, while concealing the truth from prospective and actual students.

**ANSWER:**  Capella denies the allegations in paragraph 371.

372.     Capella had a duty to disclose that Capella's doctoral programs were designed to take much longer than they represented.

**ANSWER:**  Capella states that the allegations in paragraph 372 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 372.

373.     Capella concealed and is still concealing how long Capella's doctoral programs actually take to complete.

**ANSWER:**  Capella denies the allegations in paragraph 373.

374.     Capella also misrepresented and concealed the actual percentage of students who graduated with doctoral degrees from Capella.

**ANSWER:**  Capella denies the allegations in paragraph 374.

375.     Further, Capella informed prospective students and current students they would have resources available to them when Capella knew full well that such resources would not be available.

**ANSWER:**  Capella denies the allegations in paragraph 375.

376.     These representations were material to Plaintiff Miller and the members of the Class agreeing to attend Capella.

**ANSWER:**  Capella states that the allegations in paragraph 376 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 376.

377.     Capella was aware of the falsity of its representations, or at a minimum had an utter disregard for their truthfulness. For example, they purposefully designed Capella's doctoral programs to last a certain, longer time frame, but told students they would take less time.

**ANSWER:**  Capella denies the allegations in paragraph 377.

378.    Capella intended students to rely upon these representations because they were included in marketing materials and on their websites.

**ANSWER:**  Capella states that the allegations in paragraph 378 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 378.

379.    Plaintiff Miller and members of the Class was justified in relying upon these representations.

**ANSWER:**  Capella states that the allegations in paragraph 379 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 379.

380.    Plaintiff Miller and members of the class were injured by relying on these false representations and omissions because had Capella been truthful about the timelines and costs for Capella's doctoral programs, as well as graduation rate and resources actually available, doctoral students would not have enrolled.

**ANSWER:**  Capella states that the allegations in paragraph 380 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 380.

381.    Defendants' conduct also warrants punitive damages.

**ANSWER:**  Capella states that the allegations in paragraph 381 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 381.

## THIRTEENTH CAUSE OF ACTION
### Violation of 815 ILCS § 505
**(Illinois Consumer Fraud and Deceptive Business Practices Act)**
**(Alternative Illinois Subclass)**

382.     Plaintiff Miller realleges and incorporate the preceding allegations by reference as if set forth fully herein.

**ANSWER:**  Capella incorporates by reference all of its responses as though fully repeated herein.

383.     Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS § 505) makes it unlawful to engage in any unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.

**ANSWER:**  Capella further states that the allegations in paragraph 383 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 383.

384.     Plaintiff Miller brings this cause of action on behalf of an Illinois Subclass. Capella has engaged in unfair, unlawful, and fraudulent business practices, as set forth above.

**ANSWER:**  Capella states that the allegations in paragraph 384 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 384, including that this action can be maintained as a class action.

385.     Through the actions described above, Capella has violated 815 ILCS § 505.

**ANSWER:**  Capella states that the allegations in paragraph 385 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 385.

386.     Capella's deceptive acts and practices include, but are not limited to, making knowing representations that 1) the services it offers have characteristics that they do not have; 2)

122

the services it offers are of particular standard, quality, grade, style or model, when they are actually of another which differs materially from the representation; 3) the services it offers has characteristics that Capella did not have a reasonable basis for making such representations; and 4) that its services have characteristics allegedly substantiated by Capella when it has no proof to substantiate such representations. Such representations include, but are not limited to, Capella's representations of an earlier graduation date/faster time to completion than possible.

**ANSWER:** Capella states that the allegations in paragraph 386 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 386.

387.    Capella also willfully 1) used oral and written representations that exaggerated, were false and made false innuendoes of material fact and 2) failed to failure to state material facts, and willfully concealed, suppressed, or omitted material facts. Such representations include, but are not limited to, Capella's representations of an earlier graduation date/faster time to completion than possible, and omissions include, but are not limited to, its longer times to graduate, slower completion times, and low graduation rates.

**ANSWER:** Capella states that the allegations in paragraph 387 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 387.

388.    Capella made false and misleading statements about the nature, quality, style, and model of Capella's doctoral education services. Further, the subject of the Capella doctoral transaction had been supplied in accordance with previous representations made by Capella to Plaintiff Miller and members of the Illinois Subclass, and those representations were not performed. Specifically, Capella misrepresented that: 1) students had control over how long it

would take to obtain their doctoral degree and 2) that their degrees would be obtained or obtainable in a set amount of time.

**ANSWER:**  Capella states that the allegations in paragraph 388 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 388.

389.    Capella also knowingly concealed, omitted and otherwise failed to state material facts about Capella's doctoral education services that would tend to, and did, in fact, deceive students. Specifically, Capella failed to disclose that they intentionally and deliberately used Capella's doctoral process as a means of improperly extracting tuition and generating revenue. Capella further failed to disclose that they knowingly directed and implemented a doctoral program process that is fraught with inefficiencies, meant to ensure that students do not receive the timely responses and attention that they were promised, and creates inordinate turnover of faculty and supervisory committee chairs and members. Capella also knowingly withheld its low graduation rate and actual times to graduation of its doctoral students.

**ANSWER:**  Capella states that the allegations in paragraph 389 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 389.

390.    Capella knew that the doctoral coursework was and continues to be systematically prolonged by the violations set forth herein.

**ANSWER:**  Capella denies the allegations in paragraph 390.

391.    The misrepresentations and omissions were material to Plaintiff Miller and the members of the Class.

**ANSWER:**  Capella states that the allegations in paragraph 391 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 391.

392.    Capella 's unfair and deceptive trade practices and acts occurred and continue to occur repeatedly during the course of its business. These actions constitute unfair and deceptive trade practices, in violation of 815 ILCS § 505.

**ANSWER:**  Capella states that the allegations in paragraph 392 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 392.

393.    Plaintiff Miller and members of the Class relied on these representations and omissions in the course of pursuing their doctoral degrees. Furthermore, Capella intended that Plaintiff Miller and members of the Class would rely on the representations and omissions.

**ANSWER:**  Capella states that the allegations in paragraph 393 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 393.

394.    As a direct and proximate result of Capella's unfair and deceptive practices and acts, Plaintiff Miller and the Class have suffered and will continue to suffer actual damages. Had Plaintiff Miller and the members of the Class been aware of the misrepresentations and omissions, they would not have paid tuition to Capella for the educational services that Defendant purported to provide or incurred students to attend Capella (including for room and board).

**ANSWER:**  Capella states that the allegations in paragraph 394 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 394.

395.    Defendants' conduct also warrants punitive damages.

**ANSWER:**  Capella states that the allegations in paragraph 395 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 395.

### FOURTEENTH CAUSE OF ACTION
### Fraud in the Inducement
### (Alternative Minnesota State Class)

396.    Plaintiff Gore brings this alternative cause of action on behalf of a statewide Subclass under Minnesota common law.

**ANSWER:**  Capella denies the allegations in paragraph 396, including that this action may be maintained as a class action.

397.    Plaintiff realleges and incorporates the preceding allegations by reference as if set forth fully herein.

**ANSWER:**  Capella incorporates by reference all of its responses as though fully repeated herein.

398.    Capella made actual or implied false representations concerning the timing and cost of a doctoral degree, while concealing the truth from prospective and actual students.

**ANSWER:**  Capella denies the allegations in paragraph 398.

399.    Capella had a duty to disclose that Capella's doctoral programs were designed to take much longer than they represented.

**ANSWER:**  Capella states that the allegations in paragraph 399 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 399.

400.    Capella concealed and is still concealing how long Capella's doctoral programs actually take to complete.

126

**ANSWER:**  Capella denies the allegations in paragraph 400.

401.    Capella intentionally misled Plaintiff with promises that his program would take a shorter time than the programs actually took.

**ANSWER:**  Capella denies the allegations in paragraph 401.

402.    Similar, if not identical, false representations and omissions were made by Capella to other members of the Class about Capella's degree programs.

**ANSWER:**  Capella states that the allegations in paragraph 402 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 402.

403.    Capella also misrepresented and concealed the actual percentage of students who graduated with doctoral degrees from Capella.

**ANSWER:**  Capella denies the allegations in paragraph 403.

404.    Further, Capella informed prospective students and current students they would have resources available to them when Capella knew full well that such resources would not be available.

**ANSWER:**  Capella denies the allegations in paragraph 404.

405.    These representations were material to Plaintiff and the members of the Subclass.

**ANSWER:**  Capella states that the allegations in paragraph 405 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 405.

406.    Capella was aware of the falsity of its representations, or at a minimum had an utter disregard for their truthfulness. For example, they purposefully designed Capella's doctoral programs to last a certain, longer time frame, but told students it would take less time.

**ANSWER:**  Capella denies the allegations in paragraph 406.

407.   Capella intended students to rely upon these representations because they were included in marketing materials and on their websites.

**ANSWER:**  Capella states that the allegations in paragraph 407 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 407.

408.   Plaintiffs and members of the Class and Subclasses were justified in relying upon these representations.

**ANSWER:**  Capella states that the allegations in paragraph 408 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 408.

409.   Plaintiffs and members of the Class and Subclasses were injured by relying on these false representations and omissions because had Capella been truthful about the timelines and costs for Capella's doctoral programs, as well as graduation rates and resources actually available, doctoral students would not have enrolled.

**ANSWER:**  Capella states that the allegations in paragraph 409 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 409.

410.   Defendants' conduct also warrants punitive damages.

**ANSWER:**  Capella states that the allegations in paragraph 410 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 410.

**FIFTEENTH CAUSE OF ACTION**
**Violation of Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. §325D.44**
**(Alternative Minnesota State Class)**

411.    Plaintiff Gore realleges and incorporates the preceding allegations by reference as if set forth fully herein.

**ANSWER:**  Capella incorporates by reference all of its responses as though fully repeated herein.

412.    Plaintiff brings this cause of action on behalf of a statewide Subclass. Capella has engaged in unfair, unlawful, and fraudulent business practices, as set forth above.

**ANSWER:**  Capella states that the allegations in paragraph 412 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 412, including that this action can be maintained as a class action.

413.    Minnesota Stat. §325D.44 specifically prohibits the use of unfair or deceptive trade practices in connection with a consumer transaction. For example, Minnesota Stat. §325D.44 prohibits deceptive trade practices which occur when a person "(5) represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have;" "(7) represents that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;" "(9) advertises goods or services with intent not to sell them as advertised" and "(13) engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding."

**ANSWER:**  Capella further states that the allegations in paragraph 413 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 413.

414.   Instruction provided by an educational institution is a service, and students paying tuition for that service is a consumer transaction.

**ANSWER:** Capella states that the allegations in paragraph 414 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 414.

415.   By engaging in the acts and practices described in this complaint, Capella has committed one or more acts of unfair and deceptive trade practices. For example, Capella represented that its doctoral services 1) have characteristics that they do not have and 2) are of a particular standard, quality, or grade of which they are not. Capella also 3) advertised Capella's doctoral services with intent not to sell them as advertised and 4) engaged in conduct which similarly creates a likelihood of confusion or of misunderstanding.

**ANSWER:** Capella states that the allegations in paragraph 415 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 415.

416.   Specifically, Capella misrepresented that: 1) students had control over how long it would take to obtain their doctoral degree and 2) that their degrees would be obtained or obtainable in a set amount of time.

**ANSWER:** Capella denies the allegations in paragraph 416.

417.   Capella also knowingly concealed, omitted and otherwise failed to state material facts about Capella's doctoral education services that would tend to, and did, in fact, deceive students. Specifically, Capella falsely represented the time and tuition costs of obtaining a doctoral degree, not only knowing that such representations were false, but also with no intent to offer such services to its students. Capella also failed to disclose that it intentionally and deliberately used

Capella's doctoral programs as a means of improperly extracting tuition and generating revenue. Capella further failed to disclose that it knowingly created and implemented a doctoral program that is fraught with inefficiencies, meant to ensure that students do not receive the timely responses and attention that they were promised.

**ANSWER:**  Capella states that the allegations in paragraph 417 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 417.

418.    Capella knew that its doctoral programs was and continues to be systematically prolonged by the violations set forth herein.

**ANSWER:**  Capella denies the allegations in paragraph 418.

419.    The misrepresentations and omissions were material to Plaintiff and the members of the Subclass.

**ANSWER:**  Capella states that the allegations in paragraph 419 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 419.

420.    Capella's unfair and deceptive trade practices and acts occurred and continue to occur repeatedly during the course of its business. These actions constitute unfair and deceptive trade practices.

**ANSWER:**  Capella states that the allegations in paragraph 420 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 420.

421.     Plaintiff and members of the Subclass relied on these representations and omissions in the course of pursuing their doctoral degrees. Furthermore, Capella intended that Plaintiff and members of the Subclass would rely on the representations and omissions.

**ANSWER:**  Capella states that the allegations in paragraph 421 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 421.

422.     As a direct and proximate result of Capella's unfair and deceptive practices and acts, Plaintiff and the Subclass have suffered and will continue to suffer actual damages. Had Plaintiff and the members of the Subclass been aware of the misrepresentations and omissions, they would not have paid tuition to Capella or incurred additional costs including costs for books, technology fees, and student loans for tuition and fees, room and board charges, costs of books and supplies and other expenses, etc. for the educational services that Capella purported to provide.

**ANSWER:**  Capella states that the allegations in paragraph 422 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 422.

423.     Plaintiff and the Subclass are entitled to injunctive relief, and attorneys' fees, and all other remedies provided by law or equity. (See Minn. Stat. § 325D.45).

**ANSWER:**  Capella states that the allegations in paragraph 423 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 423.

424.     As a direct and proximate result of the foregoing, Plaintiff and the Subclass have been injured and suffered financial loss for which damages, injunctive, declaratory, and/or other relief as may be available at law or equity is warranted.

**ANSWER:** Capella states that the allegations in paragraph 424 contain legal conclusions, and therefore no response is required. To the extent a response is required, Capella denies the allegations in paragraph 424.

### SIXTEENTH CAUSE OF ACTION
### Violation of the Minnesota Prevention of Consumer Fraud Act, Minn. Stat. § 325F.69
### (Alternative State Class)

425. Plaintiff Gore realleges and incorporates the preceding allegations by reference as if set forth fully herein.

**ANSWER:** Capella incorporates by reference all of its responses as though fully repeated herein.

426. Minn. Stat. § 325F.69, subdivision 1 provides:

**ANSWER:** Capella states that the allegations in paragraph 426 contain legal conclusions, and therefore no response is required. To the extent a response is required, Capella denies the allegations in paragraph 426.

427. The act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby, is enjoinable as provided in section 325F.70.

**ANSWER:** Capella states that the allegations in paragraph 427 contain legal conclusions, and therefore no response is required. To the extent a response is required, Capella denies the allegations in paragraph 427.

428. [NO TEXT]

**ANSWER:** Capella states that paragraph 428 does not contain any allegations, and therefore no response is required.

429.    The term "merchandise" within the meaning of Minn. Stat. § 325F.69 includes services. See Minn. Stat. § 325F.68, subd. 2.

**ANSWER:**  Capella states that the allegations in paragraph 429 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 429.

430.    Defendants' conduct described above constitutes multiple, separate violations of Minn. Stat. § 325F.69, subd. 1. Defendants have engaged in deceptive and fraudulent practices, and have made false and misleading statements, with the intent that others rely thereon in connection with the sale of Defendants' education services. For example, Defendants use high-pressure sales tactics to solicit and enroll students, and promise these prospective and current students that they can obtain their degree within a specified period of time, and for a certain estimated cost of tuition that, through Defendants' actions, are unattainable in violation of Minn. Stat. § 325F.69. By failing to disclose and omitting material facts which Defendants had a duty to disclose, Defendants have engaged in deceptive and fraudulent practices in violation of the Consumer Fraud Act.

**ANSWER:**  Capella states that the allegations in paragraph 430 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 430.

431.    Minn. Stat. §8.31 provides a private right of action for violations of these provisions.

**ANSWER:**  Capella states that the allegations in paragraph 431 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 431.

432.     This action will serve a public benefit. Not only were Capella's misrepresentations made to a large segment of the public, Capella's conduct affects the financial aid industry as well. Defendant's conduct alleged here indicates that Defendant has not been, and will not be deterred, absent significant consequences. This action should proceed under Minn. Stat. §8.31 to promote the public benefit by increasing the consequences of misleading potential students into enrolling in a doctoral program, with completion times and tuition estimates that are unattainable, and to provide the deterrence necessary to ensure similar events do not occur in the future.

**ANSWER:**  Capella states that the allegations in paragraph 432 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 432.

433.     Plaintiff and the Subclass are entitled to compensatory damages and attorneys' fees. (See Minn. Stat. §§ 8.31, subd. 3a and 325D.45. subd. 3).

**ANSWER:**  Capella states that the allegations in paragraph 433 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 433.

434.     As a direct and proximate result of the foregoing, Plaintiff and the Subclass have been injured and suffered financial loss for which damages, injunctive, declaratory, and/or other relief as may be available at law or equity is warranted.

**ANSWER:**  Capella states that the allegations in paragraph 434 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 434.

435.     Defendants' conduct also warrants punitive damages.

**ANSWER:** Capella states that the allegations in paragraph 435 contain legal conclusions, and therefore no response is required. To the extent a response is required, Capella denies the allegations in paragraph 435.

**SEVENTEENTH CAUSE OF ACTION**
**Fraud in the Inducement (Alternative Arizona State Class)**

436. Plaintiff Gore brings this alternative cause of action on behalf of a statewide Subclass under Arizona common law.

**ANSWER:** Capella denies the allegations in paragraph 436, including that this action may be maintained as a class action.

437. Plaintiff realleges and incorporates the preceding allegations by reference as if set forth fully herein.

**ANSWER:** Capella incorporates by reference all of its responses as though fully repeated herein.

438. Capella made actual or implied false representations concerning the timing and cost of a doctoral degree, while concealing the truth from prospective and actual students.

**ANSWER:** Capella denies the allegations in paragraph 438.

439. Capella had a duty to disclose that Capella's doctoral programs were designed to take much longer than they represented.

**ANSWER:** Capella states that the allegations in paragraph 439 contain legal conclusions, and therefore no response is required. To the extent a response is required, Capella denies the allegations in paragraph 439.

440. Capella concealed and is still concealing how long Capella's doctoral programs actually take to complete.

**ANSWER:** Capella denies the allegations in paragraph 440.

136

441.    Capella intentionally misled Plaintiff with promises that his program would take a shorter time than the programs actually took.

**ANSWER:**  Capella denies the allegations in paragraph 441.

442.    Similar, if not identical, false representations and omissions were made by Capella to other members of the Class about Capella's degree programs.

**ANSWER:**  Capella states that the allegations in paragraph 442 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 442.

443.    Capella also misrepresented and concealed the actual percentage of students who graduated with doctoral degrees from Capella.

**ANSWER:**  Capella denies the allegations in paragraph 443.

444.    Further, Capella informed prospective students and current students they would have resources available to them when Capella knew full well that such resources would not be available.

**ANSWER:**  Capella denies the allegations in paragraph 444.

445.    These representations were material to Plaintiff and the members of the Subclass.

**ANSWER:**  Capella states that the allegations in paragraph 445 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 445.

446.    Capella was aware of the falsity of its representations, or at a minimum had an utter disregard for their truthfulness. For example, they purposefully designed Capella's doctoral programs to last a certain, longer time frame, but told students it would take less time.

**ANSWER:**  Capella denies the allegations in paragraph 446.

447.    Capella intended students to rely upon these representations because they were included in marketing materials and on their websites.

**ANSWER:**  Capella states that the allegations in paragraph 447 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 447.

448.    Plaintiffs and members of the Class and Subclasses were justified in relying upon these representations.

**ANSWER:**  Capella states that the allegations in paragraph 448 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 448.

449.    Plaintiffs and members of the Class and Subclasses were injured by relying on these false representations and omissions because had Capella been truthful about the timelines and costs for Capella's doctoral programs, as well as graduation rates and resources actually available, doctoral students would not have enrolled.

**ANSWER:**  Capella states that the allegations in paragraph 449 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 449.

450.    Defendants' conduct also warrants punitive damages.

**ANSWER:**  Capella states that the allegations in paragraph 450 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 450.

## EIGHTEENTH CAUSE OF ACTION
### Violation of Arizona Consumer Fraud Act, A.R.S. §44-1521 et seq. (Alternative Arizona State Class)

451.    Plaintiff Gore realleges and incorporates the preceding allegations by reference as if set forth fully herein.

**ANSWER:**  Capella incorporates by reference all of its responses as though fully repeated herein.

452.    Plaintiff brings this cause of action on behalf of a statewide Subclass. Capella has engaged in unfair, unlawful, and fraudulent business practices, as set forth above.

**ANSWER:**  Capella states that the allegations in paragraph 452 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 452, including that this action can be maintained as a class action.

453.    A.R.S. §44-1521 et seq. specifically prohibits the use of unfair or deceptive trade practices in connection with a consumer transaction. For example, Arizona Stat. §325D.44 prohibits deceptive trade practices which occur when a person "(5) represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have;" "(7) represents that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;" "(9) advertises goods or services with intent not to sell them as advertised" and "(13) engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding."

**ANSWER:**  Capella states that the allegations in paragraph 453 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 453.

454.    Instruction provided by an educational institution is a service, and students paying tuition for that service is a consumer transaction.

**ANSWER:**  Capella states that the allegations in paragraph 454 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 454.

455.    By engaging in the acts and practices described in this complaint, Capella has committed one or more acts of unfair and deceptive trade practices. For example, Capella represented that its doctoral services 1) have characteristics that they do not have and 2) are of a particular standard, quality, or grade of which they are not. Capella also 3) advertised Capella's doctoral services with intent not to sell them as advertised and 4) engaged in conduct which similarly creates a likelihood of confusion or of misunderstanding.

**ANSWER:**  Capella states that the allegations in paragraph 455 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 455.

456.    Specifically, Capella misrepresented that: 1) students had control over how long it would take to obtain their doctoral degree and 2) that their degrees would be obtained or obtainable in a set amount of time.

**ANSWER:**  Capella denies the allegations in paragraph 456.

457.    Capella also knowingly concealed, omitted and otherwise failed to state material facts about Capella's doctoral education services that would tend to, and did, in fact, deceive students. Specifically, Capella falsely represented the time and tuition costs of obtaining a doctoral degree, not only knowing that such representations were false, but also with no intent to offer such services to its students. Capella also failed to disclose that it intentionally and deliberately used

Capella's doctoral programs as a means of improperly extracting tuition and generating revenue. Capella further failed to disclose that it knowingly created and implemented a doctoral program that is fraught with inefficiencies, meant to ensure that students do not receive the timely responses and attention that they were promised.

**ANSWER:**  Capella states that the allegations in paragraph 457 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 457.

458.    Capella knew that its doctoral programs was and continues to be systematically prolonged by the violations set forth herein.

**ANSWER:**  Capella denies the allegations in paragraph 458.

459.    The misrepresentations and omissions were material to Plaintiff and the members of the Subclass.

**ANSWER:**  Capella states that the allegations in paragraph 459 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 459.

460.    Capella's unfair and deceptive trade practices and acts occurred and continue to occur repeatedly during the course of its business. These actions constitute unfair and deceptive trade practices.

**ANSWER:**  Capella states that the allegations in paragraph 460 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 460.

461.    Plaintiff and members of the Subclass relied on these representations and omissions in the course of pursuing their doctoral degrees. Furthermore, Capella intended that Plaintiff and members of the Subclass would rely on the representations and omissions.

**ANSWER**:  Capella states that the allegations in paragraph 461 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 461.

462.    As a direct and proximate result of Capella's unfair and deceptive practices and acts, Plaintiff and the Subclass have suffered and will continue to suffer actual damages. Had Plaintiff and the members of the Subclass been aware of the misrepresentations and omissions, they would not have paid tuition to Capella or incurred additional costs including costs for books, technology fees, and student loans for tuition and fees, room and board charges, costs of books and supplies and other expenses, etc. for the educational services that Capella purported to provide.

**ANSWER**:  Capella states that the allegations in paragraph 462 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 462.

463.    Plaintiff and the Subclass are entitled to injunctive relief, and attorneys' fees, and all other remedies provided by law or equity. (See A.R.S. §44-1521 et seq.).

**ANSWER**:  Capella states that the allegations in paragraph 463 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 463.

464.    As a direct and proximate result of the foregoing, Plaintiff and the Subclass have been injured and suffered financial loss for which damages, injunctive, declaratory, and/or other relief as may be available at law or equity is warranted.

**ANSWER:**  Capella states that the allegations in paragraph 464 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 464.

465.    Defendants' conduct also warrants punitive damages.

**ANSWER:**  Capella states that the allegations in paragraph 465 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 465.

### NINETEENTH CAUSE OF ACTION
### Fraud in the Inducement
### (Alternative Michigan Subclass)

466.    Plaintiff Proffitt brings this cause of action, in the alternative, on behalf of a Michigan Subclass under Michigan common law.

**ANSWER:**  Capella denies the allegations in paragraph 466, including that this action may be maintained as a class action.

467.    Plaintiff Proffitt realleges and incorporates the preceding allegations by reference as if set forth fully herein.

**ANSWER:**  Capella incorporates by reference all of its responses as though fully repeated herein.

468.    Capella made actual or implied false representations concerning the timing and cost of a doctoral degree, while concealing the truth from prospective and actual students.

**ANSWER:**  Capella denies the allegations in paragraph 468.

469.    Capella had a duty to disclose that Capella's doctoral programs were designed to take much longer than they represented.

**ANSWER:** Capella states that the allegations in paragraph 469 contain legal conclusions, and therefore no response is required. To the extent a response is required, Capella denies the allegations in paragraph 469.

470. Capella concealed and is still concealing how long Capella's doctoral programs actually take to complete.

**ANSWER:** Capella denies the allegations in paragraph 470.

471. Capella also misrepresented and concealed the actual percentage of students who graduated with doctoral degrees from Capella.

**ANSWER:** Capella denies the allegations in paragraph 471.

472. Further, Capella informed prospective students and current students they would have resources available to them when Capella knew full well that such resources would not be available.

**ANSWER:** Capella denies the allegations in paragraph 472.

473. These representations were material to Plaintiff Proffitt and the members of the Class agreeing to attend Capella.

**ANSWER:** Capella states that the allegations in paragraph 473 contain legal conclusions, and therefore no response is required. To the extent a response is required, Capella denies the allegations in paragraph 473.

474. Capella was aware of the falsity of its representations, or at a minimum had an utter disregard for their truthfulness. For example, they purposefully designed Capella's doctoral programs to last a certain, longer time frame, but told students they would take less time.

**ANSWER:** Capella denies the allegations in paragraph 474.

475.   Capella intended students to rely upon these representations because they were included in marketing materials and on their websites.

**ANSWER:**  Capella states that the allegations in paragraph 475 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 475.

476.   Plaintiff Proffitt and members of the Class was justified in relying upon these representations.

**ANSWER:**  Capella states that the allegations in paragraph 476 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 476.

477.   Plaintiff Proffitt and members of the class were injured by relying on these false representations and omissions because had Capella been truthful about the timelines and costs for Capella's doctoral programs, as well as graduation rate and resources actually available, doctoral students would not have enrolled.

**ANSWER:**  Capella states that the allegations in paragraph 477 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 477.

478.   Defendants' conduct also warrants exemplary damages.

**ANSWER:**  Capella states that the allegations in paragraph 478 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 478.

**TWENTIETH CAUSE OF ACTION 1976 PA §331**
**(Michigan Violation of Consumer Protection Act)**
**(Alternative Michigan Subclass)**

479.    Plaintiff Proffitt realleges and incorporate the preceding allegations by reference as if set forth fully herein.

**ANSWER:**  Capella incorporates by reference all of its responses as though fully repeated herein.

480.    Michigan's Consumer Protection Act (1976 PA §331) makes it unlawful to engage in any unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.

**ANSWER:**  Capella states that the allegations in paragraph 480 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 480.

481.    Plaintiff Proffitt brings this cause of action on behalf of a Michigan Subclass. Capella has engaged in unfair, unlawful, and fraudulent business practices, as set forth above.

**ANSWER:**  Capella states that the allegations in paragraph 481 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 481, including that this action can be maintained as a class action.

482.    Through the actions described above, Capella has violated 1976 PA §331.

**ANSWER:**  Capella states that the allegations in paragraph 482 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 482.

483.    Capella's deceptive acts and practices include, but are not limited to, making knowing representations that 1) the services it offers have characteristics that they do not have; 2) the services it offers are of particular standard, quality, grade, style or model, when they are

146

actually of another which differs materially from the representation; 3) the services it offers has characteristics that Capella did not have a reasonable basis for making such representations; and 4) that its services have characteristics allegedly substantiated by Capella when it has no proof to substantiate such representations. Such representations include, but are not limited to, Capella's representations of an earlier graduation date/faster time to completion than possible.

**ANSWER:** Capella states that the allegations in paragraph 483 contain legal conclusions, and therefore no response is required. To the extent a response is required, Capella denies the allegations in paragraph 483.

484. Capella also willfully 1) used oral and written representations that exaggerated, were false and made false innuendoes of material fact and 2) failed to failure to state material facts, and willfully concealed, suppressed, or omitted material facts. Such representations include, but are not limited to, Capella's representations of an earlier graduation date/faster time to completion than possible, and omissions include, but are not limited to, its longer times to graduate, slower completion times, and low graduation rates.

**ANSWER:** Capella states that the allegations in paragraph 484 contain legal conclusions, and therefore no response is required. To the extent a response is required, Capella denies the allegations in paragraph 484.

485. Capella made false and misleading statements about the nature, quality, style, and model of Capella's doctoral education services. Further, the subject of the Capella doctoral transaction had been supplied in accordance with previous representations made by Capella to Plaintiff Proffitt and members of the Michigan Subclass, and those representations were not performed. Specifically, Capella misrepresented that: 1) students had control over how long it

would take to obtain their doctoral degree and 2) that their degrees would be obtained or obtainable in a set amount of time.

**ANSWER:**  Capella states that the allegations in paragraph 485 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 485.

486.     Capella also knowingly concealed, omitted and otherwise failed to state material facts about Capella's doctoral education services that would tend to, and did, in fact, deceive students.  Specifically, Capella failed to disclose that they intentionally and deliberately used Capella's doctoral process as a means of improperly extracting tuition and generating revenue. Capella further failed to disclose that they knowingly directed and implemented a doctoral program process that is fraught with inefficiencies, meant to ensure that students do not receive the timely responses and attention that they were promised, and creates inordinate turnover of faculty and supervisory committee chairs and members. Capella also knowingly withheld its low graduation rate and actual times to graduation of its doctoral students.

**ANSWER:**  Capella states that the allegations in paragraph 486 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 486.

487.     Capella knew that the doctoral coursework was and continues to be systematically prolonged by the violations set forth herein.

**ANSWER:**  Capella denies the allegations in paragraph 487.

488.     The misrepresentations and omissions were material to Plaintiff Proffitt and the members of the Class.

**ANSWER:**  Capella states that the allegations in paragraph 488 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 488.

489.    Capella 's unfair and deceptive trade practices and acts occurred and continue to occur repeatedly during the course of its business. These actions constitute unfair and deceptive trade practices, in violation of 1976 PA §331.

**ANSWER:**  Capella states that the allegations in paragraph 489 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 489.

490.    Plaintiff Proffitt and members of the Class relied on these representations and omissions in the course of pursuing their doctoral degrees. Furthermore, Capella intended that Plaintiff Proffitt and members of the Class would rely on the representations and omissions.

**ANSWER:**  Capella states that the allegations in paragraph 490 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 490.

491.    As a direct and proximate result of Capella's unfair and deceptive practices and acts, Plaintiff Proffitt and the Class have suffered and will continue to suffer actual damages. Had Plaintiff Proffitt and the members of the Class been aware of the misrepresentations and omissions, they would not have paid tuition to Capella for the educational services that Defendant purported to provide or incurred students to attend Capella (including for room and board).

**ANSWER:**  Capella states that the allegations in paragraph 491 contain legal conclusions, and therefore no response is required.  To the extent a response is required, Capella denies the allegations in paragraph 491.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and members of the Class and Subclasses request that the Court enter an Order or judgment against Capella as follows:

A.     Certifying this case as a class action and appointing Plaintiffs and their counsel to represent the Class;

B.     Awarding Plaintiffs and other members of the Class damages and all other relief available under the claims alleged;

C.     Awarding Plaintiffs and other members of the Class pre-judgment and post judgment interest as a result of the wrongs complained of herein;

D.     Requiring Capella to disgorge the revenue earned through the excessive doctoral program coursework;

E.     Enjoining Capella from engaging in the conduct described herein;

F.     Awarding Plaintiffs and other members of the Class restitution;

G.     Awarding Plaintiffs and the members of the Class punitive and/or exemplary damages due to Defendants' behavior;

H.     Awarding Plaintiffs and other members of the Class their costs and expenses in this litigation, including reasonable attorneys' fees and other costs of litigation; and

I.     Awarding such other relief as the Court deems just and proper.

**ANSWER:**   Capella denies that named plaintiffs or any putative class members are entitled to any relief.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

**ANSWER:**   Capella demands a jury trial on any claims brought by named plaintiffs or any putative class, as well as any affirmative defense, for which it is entitled to trial by jury.

150

## AFFIRMATIVE AND OTHER DEFENSES

In addition to the foregoing responses, Capella generally denies liability for all claims alleged in the Second Amended Complaint, denies each allegation that has not been expressly admitted, and asserts the following affirmative defenses to the claims alleged.  In doing so, Capella does not assume the burden of proof on these defenses where applicable law provides otherwise. Capella reserves the right to assert additional affirmative defenses as discovery progresses.

1. The claims of Plaintiffs and any putative class are barred by the educational-malpractice doctrine.

2. The claims of Plaintiffs and any putative class are barred by the doctrine of primary jurisdiction.

3. The claims of Plaintiffs and any putative class are barred by the applicable statutes of limitation.

4. The claims of Plaintiffs and any putative class are barred by the doctrine of laches.

5. The claims of Plaintiffs and any putative class are barred by the doctrine of waiver.

6. The claims of Plaintiffs and any putative class are barred by the doctrine of estoppel.

7. The claims of Plaintiffs and any putative class are barred, in whole or in part, for lack of standing because they have not suffered any actual injury or damage as a result of any conduct alleged as a basis of this lawsuit.

8. The claims of Plaintiffs and any putative class are barred, in whole or in part, due to assumption of risk.

9. The claims of Plaintiffs and any putative class are barred, in whole or in part, by intervening causes outside of Capella's control.

10. The claims of Plaintiffs and any putative class are barred, in whole or in part, for failure to mitigate alleged injuries and damages.

11. To the extent punitive damages are sought, the claims of Plaintiffs and any putative class for punitive or exemplary damages have no basis in law or fact and are not recoverable because the allegations in the Amended Complaint are legally insufficient to support a claim for punitive or exemplary damages.

12. To the extent special damages are sought, the claims of Plaintiffs and any putative class fail because such damages, including consequential and incidental damages, must be specifically pleaded and are otherwise without basis.

DATE: November 1, 2021

/s/ K. Winn Allen, P.C.

K. Winn Allen, P.C. (*pro hac vice*)
Ronald K. Anguas (*pro hac vice*)
Emily Merki Long (*pro hac vice*)
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., N.W.
Washington, D.C., 20004
Telephone: (202) 389-5000
Email: winn.allen@kirkland.com
Email: ronald.anguas@kirkland.com
Email: emily.long@kirkland.com

Donald M. Lewis, #62844
John J. Wackman, #251884
Courtney E. Ward-Reichard, #232324
NILAN JOHNSON LEWIS PA
250 Marquette Ave South, Suite 800
Minneapolis, MN 55401
Telephone: (612) 305-7500
Email: dlewis@nilanjohnson.com
Email: jwackman@nilanjohnson.com
Email: cward@nilanjohnson.com

*Counsel for Defendants Capella Education Company and Capella University, LLC (formerly Capella University, Inc.)*